UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATIC CONTROL COMPONENTS, INC.

     PLAINTIFF

v.

                                  Misc. Action No. 06-478 (JDB)

LEXMARK INTERNATIONAL, INC.,

     DEFENDANT

**CONSTANTINE CANNON, P.C.'S REPLY
IN SUPPORT OF MOTION TO QUASH SUBPOENA
SERVED ON OPPOSING PARTY'S TRIAL COUNSEL**

Constantine Cannon, P.C. ("Constantine Cannon"), counsel to Static Control

Components, Inc. ("Static Control") in a case pending in the Eastern District of Kentucky (Civil

Action 04-CV-84-GFVT), filed its Motion to Quash a subpoena for testimony and documents

predicated on an assertion of an advice of counsel defense by another of the four counterclaim

co-defendants in that underlying litigation.  Attempting to defend its improper subpoena,

Lexmark International Inc. ("Lexmark") changes course and now argues that it is seeking

information based on an entirely different claim of waiver, one that was made allegedly by Static

Control.  That separate alleged waiver, however, is not the subject of the October 19th subpoena

(and is not based on an advice of counsel defense), but instead of a separate subpoena that

Lexmark recently served on Static Control's counsel in the Kentucky case and that the parties

have agreed to hold in abeyance.  By failing to address the arguments in Constantine Cannon's

Motion to Quash and raising the issue of a different waiver altogether, Lexmark has in essence

conceded that it had no legal basis for serving the October 19, 2006 subpoena that seeks

privileged documents and testimony from Constantine Cannon.

83542.2

Because Lexmark continues to persist in pursuing an improper subpoena served on opposing trial counsel when it has no basis in law and that seeks obviously privileged communication, this Court should grant Constantine Cannon's motion to quash and award Static Control and Constantine Cannon their attorneys' fees.

I.    **Lexmark Does Not Contest That The Subpoena Must Be Quashed Because It Improperly Seeks Privileged Communications From Constantine Cannon Based On Pendl's Advice of Counsel Defense.**

The October 19th subpoena at issue directs Constantine Cannon to produce documents and provide testimony relating to the subject matter contained in a 1999 opinion letter from Robert Becker of Coudert Brothers to Pendl ("Becker Letter"), the opinion on which one of the four counterclaim co-defendants, Pendl Companies, Inc. ("Pendl"), is basing its advice of counsel defense. *See* Subpoena, Request 1 and Deposition Topic 1, attached as Exhibit 3 to the Declaration of Seth Greenstein ("Greenstein Decl.") submitted with Constantine Cannon's Motion to Quash.  The subpoena also seeks documents and testimony consisting of or reflecting communications between Constantine Cannon and Pendl's counsel or Pendl.  Subpoena at Request Nos. 2-9 and Deposition Topics 2-9. The gist of Lexmark's argument is that because Pendl has elected to waive its attorney-client privilege when it asserted an advice of counsel defense, such waiver would extend to reach not only Pendl's trial counsel, but every other counterclaim defendant's privilege and their trial counsel's work product as well.

This argument has been squarely rejected on a number of occasions.  As set forth in Constantine Cannon's motion to quash, it is beyond dispute that the assertion of an advice of counsel defense by one party cannot waive the privileges of other parties.  *See Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) ("[A] municipal official's assertion of the advice of counsel defense does not require the City [of Memphis] to relinquish the privilege it holds.");

-2-

83542.2

*Interfaith Hous. Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1402 (D. Del. 1994)

("[W]hen one of two or more clients with common interests waives the attorney-client privilege

in a dispute with a third party [raising an advice of counsel defense], that one individual's waiver

does not effect a waiver as to the others' attorney-client privilege."); *AT&T Corp. v. Microsoft

Corp.*, No. 02-0164 MHP (JL), 2003 U.S. Dist. LEXIS 8710 *20 (N.D. Cal. April 18, 2003)

("this court could not locate any precedent that allows a party in [a] litigation to waive the

privilege claims of a third party through the assertion of an advice of counsel defense").

Likewise, one party cannot unilaterally waive a joint defense/common interest privilege.

Indeed, exactly the opposite is true-- the joint defense privilege *prohibits* one party's disclosure

from waiving any other party's privilege.  *See, e.g., John Morrell & Co. v. Local Union 304A of

United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 555-56 (8th Cir. 1990) (it is

fundamental that the joint defense privilege cannot be waived without the consent of all parties

to the defense) (citing cases); *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902

F.2d 244 (4th Cir. 1990) (one participant in common interest privilege cannot unilaterally waive

privilege without consent of other participants in the privilege).

Lexmark has not cited *one single case* that contravenes this well-settled principle.

Instead, Lexmark injects red herrings and straw arguments on matters that are not at issue.  For

example, Lexmark argues that despite repeated requests, "the counterclaim defendants have

refused to produce any such common interest agreement."  Opposition at 2 fn.1; *see also*

Opposition at 11.  Whether Lexmark would be entitled to the common interest agreement itself,

however, is irrelevant to maintaining a common interest/joint defense privilege.  As the D.C.

Circuit has explained, the only elements that a party asserting the privilege must satisfy are that:

"(1) the communications were made in the course of a joint defense effort; (2) the statements

-3-

83542.2

were designed to further the effort; and (3) the privilege has not been waived." *In re Sealed Case*, 29 F.3d 715, 719 n. 5 (D.C. Cir. 1994); *see also United States v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts."). As the Greenstein Declaration states, Constantine Cannon has participated with counsel for all the counterclaim defendants in privileged communications concerning matters of common interest in preparation for trial and has done so pursuant to a common interest agreement. Greenstein Decl. ¶ 7.

Lexmark also attempts to bypass the common interest privilege by recasting the common interest communications by Constantine Cannon as "advice" to Pendl and Pendl's counsel, and argues that *In re Echostar Commc'n Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), and other federal court decisions permit it to inquire into any advice received by litigation counsel. This argument, however, is without merit.

To begin with, Constantine Cannon is not Pendl's counsel. Therefore, *Echostar* and the other cases cited by Lexmark are inapposite to this motion because those cases address the ability to obtain documents from the litigation counsel of the party asserting the advice of counsel defense—in this case, Pendl's counsel. No other party here has asserted an advice of counsel defense. Lexmark therefore may not use Pendl's waiver to obtain privileged information from the litigation counsel of Static Control and of the other counterclaim defendants.

Moreover, any "advice" that Constantine Cannon may have given to Pendl's counsel is not only protected by the joint defense/common interest privilege, but is also irrelevant to Pendl's advice of counsel defense because it does not inform the court as to Pendl's state of mind. As this Court has stated, "The Federal Circuit has made it clear that the infringer's intent,

-4-

83542.2

not that of counsel, is the relevant issue." *Intex Recreation Corp. v. Metalast*, Civil Action No.

01-1213 (JDB), 2005 U.S. Dist. LEXIS 10149 at *9 (D.D.C. March 2, 2005) (quotations

omitted); *see also Echostar*, 448 F.3d at 1303 ("It is what the alleged infringer knew or believed,

and by contradistinction not what other items counsel may have prepared but did not

communicate to the client, that informs the court of an infringer's willfulness.").

The only other manner in which Lexmark directly addresses the common interest

privilege is to suggest to the Court that the common interest claim is "curious" given that one of

the counterclaim defendants has asserted a cross-claim against Static Control in the underlying

litigation, and the Court should therefore not give the common interest claim any weight.[1]

Opposition at 2 fn. 1.  The existence of a potential cross-claim, however, does not destroy the

common interest privilege with respect to third parties.  *See, e.g., In re LTV Secs. Litig.*, 89

F.R.D. 595, 604-05 (N.D. Tex. 1981) ("The Court finds little merit in the class' contention that

the joint defense privilege does not extend to civil defendants . . . who may assert cross-claims

against each other.  Even should such allies later become estranged, they would arguably be

entitled jointly to invoke the attorney-client privilege to protect shared confidences from

disclosure at the behest of a third party."); *In the Matter of Grand Jury Subpoena Duces Tecum*,

406 F. Supp. 381, 386 (S.D.N.Y. 1975) (holding that while disclosures by clients to jointly

---

[1] Lexmark cites one case to support the obvious conclusion that "the common interest doctrine does not apply between two parties with divergent legal interests." Opposition at 11 fn.6.  That case, however, *North River Ins. Co. v. Columbia Casualty Co.*, No. 90-2518, 1995 WL 5792 (S.D.N.Y. Jan. 5, 1995), is clearly distinguishable.  In that case, the court held that an insurance company had not established the existence of a common interest privilege between it and one of its reinsurers because, among other things, there was no "evidence that the two coordinated litigation strategy in any way." *Id.* at *5.  It stated, "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." *Id.* at *4.  In this case, the counterclaim defendants share more than theoretically similar interests in the Kentucky litigation—they have coordinated trial strategy, entered into a common interest agreement, and participated in a joint defense of a common legal goal.  Greenstein Decl. ¶ 7.

83542.2

retained counsel would not be confidential *inter sese* in any later controversy between them, "in the absence of such an event and in relation to the rest of the world, the attorney-client communications issuing from such a joint conference are invested with an absolute secrecy.").

Whatever the scope of Pendl's waiver of its own attorney-client privilege, Lexmark has conceded that Pendl cannot waive either the privilege of the other counterclaim defendants or the common interest privilege.

## II.    The Issue of Whether Or Not Static Control Waived Its Own Privilege Is Pending Before Judge Van Tatenhove And The Subject of A Different Subpoena, Not the One at Issue.

Instead of withdrawing the October 19th subpoena at issue, Lexmark advances a new theory not found in the October 19th subpoena. Its position, in essence, is that no matter how deficient or baseless the October 19th subpoena may be in seeking privileged information from Constantine Cannon based on Pendl's advice of counsel defense, Constantine Cannon should be required to comply with the subpoena because it would be required to do so under an independent waiver by Static Control when it disseminated a letter from a law professor, Walker Blakely ("Blakely Letter").[2]  Reliance on Static Control's alleged waiver to justify its October 19th subpoena, however, is improper for several reasons.

First, neither Static Control's alleged waiver or the Blakely Letter has any relation to the October 19th subpoena because that subpoena is explicitly premised on *Pendl's* waiver and advice of counsel defense.  See Greenstein Decl., Exhibit 4.  The October 19th subpoena does not mention the Blakely Letter or Static Control's alleged waiver.  Lexmark's counsel has admitted that the October 19th subpoena is "seeking discovery relating to Pendl's advice of counsel

---

[2] In the motion to quash, Constantine Cannon informed the Court of the separate waiver issue concerning Static Control.  Motion to Quash at 11 fn. 6.

defense," and the requests contained in the October 19th subpoena are specific to Pendl and the Becker Letter. *See* Greenstein Decl. Exhs. 3 and 4.

Second, Lexmark is well aware that the October 19th subpoena is not premised on Static Control's alleged waiver. Only one day before filing this Opposition, on November 8, 2006, Lexmark served a new round of subpoenas on all of Static Control's attorneys seeking testimony and documents, "both privileged and non-privileged, relating to [Static Controls'] efforts to defeat Lexmark's Prebate Program." See Notices of Deposition and Subpoena Duces Tecum, dated November 8, 2006 (collectively, the "November 8th Subpoena"), attached hereto as Exhibit A.

Third, any argument by Lexmark that this Court may consider Static Control's alleged waiver in compelling Constantine Cannon to produce privileged information inappropriately suggests that the issue of Static Control's waiver is already settled when in fact it is not. Although the Magistrate Judge concluded initially that such a waiver occurred, the decision is presently on appeal to Judge Van Tatenhove. Motion to Quash at 11 fn. 6; Opposition at 2 fn.2. Consequently, the parties have agreed to hold the November 8th Subpoena in abeyance pending a ruling from the District Court.[3] See Agreed Order, signed November 14, 2006, attached hereto as Exhibit B. Lexmark's arguments to this Court that Constantine Cannon should be required to produce documents based on an alleged waiver of Static Control's privilege would therefore constitute a request for this Court to predetermine the objections pending before Judge Van Tatenhove in the Eastern District of Kentucky.

---

[3] Lexmark's arguments therefore relating to the scope of any alleged waiver by Static Control and the extent to which it reaches Constantine Cannon and other trial counsel under *Echostar* have no bearing on the October 19th subpoena but are better directed to any subsequent motion for a protective order for the November 8th Subpoena.

-7-

83542.2

Finally, just as Pendl cannot unilaterally waive the common interest privilege without consent of all the parties, any alleged waiver by Static Control with respect to its own privilege or work product similarly cannot waive the counterclaim defendants' common interest privilege. *See infra* at 3. The October 18th subpoena explicitly demands documents and testimony relating to communications between counsel. *See* Subpoena at Request 2-9 and deposition topics 2-9 (seeking documents and communications between Pendl and Constantine Cannon) and Opposition at 19 ("Lexmark's subpoena to Constantine seeks discovery of Pendl's communications with Constantine, including communications through Pendl's counsel"). Thus, even if Static Control is ultimately found to have waived its attorney-client privilege and communications between Static Control and its own attorneys, Lexmark would not be entitled to privileged documents or communications between or amongst the counterclaim defendants or their attorneys without the consent of all of the parties.

## III.    Lexmark Cannot Depose Constantine Cannon Regarding Pendl's Waiver.

Lexmark has failed to address any of the standards for deposing opposing counsel. It has failed to articulate any basis for, much less satisfy, the three conditions required for deposing opposing counsel under *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987): (1) that the information sought is relevant and non-privileged; (2) that "no other means exists to obtain the information; and (3) that "the information is crucial to the preparation of the case." *See* Motion to Quash at 13-15. Nor has Lexmark attempted to show how Constantine Cannon may have had involvement in the underlying events giving rise to the transaction or that only it has "key facts" to the case under standards used by other courts in this Circuit. *Id.* at 15. As Constantine Cannon had no knowledge about the Becker Letter until it was disclosed by Pendl, Lexmark simply cannot make this showing. *See* Greenstein Decl. ¶ 14.

-8-

Lexmark's only argument again is to rely on Static Control's alleged waiver of its attorney-client privilege. Opposition at 20-21. As set forth above, however, the October 19th subpoena is not premised on Static Control's waiver but on Pendl's waiver. Lexmark has cited no case, nor can it, that allows it to use the advice of counsel defense by one party to depose the trial counsel of another party. *Cf. Convolve, Inc. v. Compaq Computer Corp. and Seagate Technology, Inc.*, 00 Civ. 5141 (GBD), 2006 U.S. Dist LEXIS 69425 (S.D.N.Y. September 27, 2006) (ordering party asserting advice of counsel defense to produce deposition testimony concerning communications between it and any of *its* attorneys, including trial counsel).

## IV.    Lexmark's Attempts To Narrow The Subpoena Only Confirm That It Must Be Quashed Because It Is Overly Broad, Burdensome and Duplicative.

As stated above, the October 19th subpoena is predicated on Pendl's advice of counsel defense, whereas the November 8th Subpoena is predicated on Static Control's alleged waiver. Therefore, to the extent that the October 19th subpoena purports to request information from Static Control pertaining to its own alleged waiver, the subpoena is duplicative of the November 8th Subpoena, and must be quashed.

To the extent Lexmark seeks discovery from Constantine Cannon relating to *Pendl's* waiver, the October 18th subpoena must be quashed on the additional grounds that it is overbroad and unduly burdensome. Lexmark's attempt to clarify the requests only confirms its deficiencies.

For example, although Lexmark attempts now in its Opposition filed with the Court to limit the subpoena by stating that it is not "seeking litigation or trial strategy from Constantine" (Opposition at 4 n. 3 and 12), the subpoena does not contain the same limitation. To the contrary, it seeks "all documents and things relating to the subject matter discussed" in the Becker Letter and "all documents and things that reflect, embody, or discuss communications

83542.2

between Constantine and Pendl" relating to virtually every issue in the underlying litigation. *See* Subpoena Requests 1-9 and Deposition topics 1-8. Since Constantine Cannon was retained only as trial counsel to Static Control and have participated with Pendl's counsel on matters relating to their common interest, the subpoena appears to have been worded specifically to seek litigation or trial strategy.

Lexmark also attempts to distinguish "advice" given to Pendl, which it claims is discoverable, to litigation or trial strategy, which it concedes is not . *See, e.g.,* Opposition at 8, 11, 12. This distinction, however, presents an array of problems. As an initial matter, because neither Pendl nor Pendl's counsel are clients of Constantine Cannon, Constantine Cannon cannot have given any "legal advice" to either of them. Greenstein Decl. ¶ 6. All Constantine Cannon could have done is to have participated in privileged discussions with counsel for counterclaim defendants on matters of common interest and in preparation for trial. *Id.* ¶ 7.

Additionally, Lexmark argues that it is entitled to discover "Constantine's advice to Pendl's counsel that was then provided to Pendl." Opposition at 12. Even if this were correct as a matter either of law or fact, this clarification would still be overly burdensome, if not impossible, to comply with because Constantine Cannon would have no way of knowing what, if any, "advice" to Pendl's counsel was then further communicated by Pendl's counsel to Pendl. To the extent that any of Constantine Cannon's communications to Pendl's counsel may have been provided to Pendl, could be deemed to constitute "advice" and otherwise would be discoverable under the joint defense privilege, Lexmark presumably has already requested that information from Pendl itself.

Because the October 19th subpoena is overbroad, vague, burdensome and duplicative with respect to any request concerning Pendl's advice of counsel defense, and it is duplicative of the

-10-

November 18th Subpoena to the extent it seeks information relating to Static Control's alleged

waiver, it should be quashed in its entirety.

## V.    Static Control Should Be Awarded Attorneys' Fees.

As explained above and in Constantine Cannon's motion to quash, Lexmark has served a

defective subpoena.  Any cursory analysis of the law would have revealed to Lexmark that the

October 19th subpoena had no basis in law.  Rather than withdraw the subpoena, Lexmark

instead abandons the rationale in the October 19th subpoena and argues the merits of a different

waiver that is the subject of a new subpoena which it has agreed to hold in abeyance.  Lexmark's

actions have imposed an undue burden and expense on Constantine Cannon.  Accordingly, this

Court should award Static Control and Constantine Cannon their attorneys' fees incurred in

connection with this motion.  *See, e.g., American Int'l Life Assurance. Co. of New York v.*

*Vazquez*, No. 02 Civ. 141 (HB), 2003 WL 548736 at *3 (S.D.N.Y. Feb. 25, 2003)(awarding

attorneys' fees and costs for "sweeping subpoena" served on counsel); *Mattel, Inc. v. Walking*

*Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (affirming attorneys' fees and expenses for

serving subpoena on non-party that was overbroad and not tailored to the immediate needs of the

case and served for improper purpose).

-11-

**CONCLUSION**

For all of the foregoing reasons, this Court should quash Lexmark's subpoena to Constantine Cannon and Static Control and Constantine Cannon should be awarded their reasonable attorneys' fees for responding to the subpoena.

Respectfully submitted,

_____/s/_____
Seth D. Greenstein (DC Bar # 416733)
Julie Chen Clocker (DC Bar # 435434)
CONSTANTINE CANNON, P.C.
1627 Eye Street, N.W.
Washington, DC 20006
Telephone (202) 204-3509
Fax (202) 204-3501

*For itself and as attorneys for*
*Plaintiff/Counterclaim Defendant*
*STATIC CONTROL COMPONENTS, INC.*

Dated: November 16, 2006

-12-

# Exhibit A



# S T O L L · K E E N O N · O G D E N
### PLLC

300 West Vine Street
Suite 2100
Lexington, KY 40507-1801
(859) 231-3000
Fax: (859) 253-1093

A. J. SINGLETON
859-231-3692

November 8, 2006

(by e-mail and U.S. Mail)

Joseph C. Smith, Jr., Esq.
Alison G. Wheeler, Esq.
Bartlit Beck Herman Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202

Mickey T. Webster, Esq.
Wyatt, Tarrant & Combs, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507

Paul E. Poirot, Esq.
McDermott Will & Emery LLP
600 13th St., N.W.
Washington, DC 20005

Seth D. Greenstein, Esq.
Constantine Cannon, PC
1627 Eye Street, NW
Tenth Floor
Washington, D.C. 20006

Stanley L. Amberg, Esq.
11 Carolyn Lane
Chappaqua, NY 10514

RE:    Lexmark v. Static Control Components, Inc.

All:

        Attached and/or enclosed for each of you is a subpoena duces tecum to you
and/or your law firm. Based on agreements of counsel between Steven Loy of Stoll
Keenon Ogden and Alison Wheeler of Bartlit Beck Harman Palenchar & Scott, LLP, we

Page 2

understand that Static Control's law firms will accept service of the enclosed subpoenas electronically.

As Static Control voluntarily agreed to hold Static Control's subpoenas to Lexmark in abeyance, Lexmark is likewise willing to join in an agreed order to hold in abeyance the commanded document production and testimony for the enclosed subpoenas pending the Court's ruling on "Plaintiff Static Control Components' Renewed Objections to Memorandum Opinion and Order dated March 31, 2006, and Objections to Amended Memorandum Opinion and Order Dated June 15, 2006."

We are likewise willing to enter an agreed order to hold in abeyance the subpoenas that will be issued to Moore & Van Allen and Andrew Cohen, and are likewise willing to include in such agreed order the outstanding subpoena to David Harlow. Should such an arrangement be acceptable to Static Control, we look forward to receiving from you a draft agreed order setting forth language for us to review.

Very truly yours,

STOLL KEENON OGDEN PLLC

A. J. Singleton

cc:    Charles E. Shivel, Jr., Esq.
       Steven B. Loy, Esq.
       Hanly A. Ingram, Esq.
       Christopher B. Roth, Esq.
       Binal J. Patel, Esq.
       W. Andrew Copenhaver, Esq.
       Hada V. Haulsee, Esq.

LEX 004155/113780/3467784.1

Issued by the

# United States District Court

### DISTRICT OF D.C.

SUBPOENA DUCES TECUM
IN A CIVIL CASE

Static Control Components, Inc.
    Plaintiff/Counterclaim Defendant

v.

Lexmark International, Inc.
    Defendant/Counterclaim Plaintiff

v.

Wazana Brothers International, Inc.
d/b/a Micro Solutions Enterprises
    Counterclaim Defendant

v.

Pendl Companies, Inc.
    Counterclaim Defendant

v.

NER Data Products, Inc.
    Counterclaim Defendant

Civil Action No. 04-CV-84-GFVT
Pending in United States District Court,
Eastern District of Kentucky
Honorable Gregory F. Van Tatenhove

To: **Constantine Cannon, PC**
    **Attn: Seth D. Greenstein**
    1627 Eye Street, NW
    Tenth Floor
    Washington, D.C. 20006

_____ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

__X__ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case pursuant Fed. R. Civ. P. 30(b)(6) and Fed. R. Civ. P. 45. See Exhibit B for the deposition topics.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Constantine Cannon, P.C.<br>1627 Eye Street NW, Tenth Floor<br>Washington, D.C. 20006<br>(or other mutually agreeable location) | November 15, 2006 at 9:00 a.m. |

___**X**___ YOU ARE COMMANDED to produce and permit inspection and copying of documents or things at the place, date, and time specified below. See Exhibit A for the requests for documents and things.

| PLACE | DATE AND TIME |
|---|---|
| Banner & Witcoff, Ltd.<br>1001 G St., N.W.<br>Suite 1100<br>Washington, D.C. 20001<br>(or other mutually agreeable location) | November 13, 2006 at 9:00 a.m. |

_____ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)<br>Attorney for Defendant/Counterclaim Plaintiff, Lexmark International, Inc. | Date<br><br>November 8, 2006 |
|---|---|

Issuing Officer's Name, Address, and Phone Number
Hanly Ingram, Stoll Keenon Ogden PLLC, 300 West Vine Street, Suite 2100, Lexington, KY 40507-1801 (859)231-3000

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

**I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.**

Executed on:_____
DATE

Signature of server:

Address of server:

## Rule 45, Federal Rule of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUB-POENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(I) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(I) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

**EXHIBIT A**

Pursuant to Federal Rule of Civil Procedure 45 and directed by the subpoena attached hereto, which has been issued by the District of D.C., you are requested to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control. With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

## DEFINITIONS

1.      The term "Constantine Cannon, PC" means Constantine Cannon, PC, its past and current employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Constantine Cannon, PC is or was doing business, its predecessors, partners, members, directors, officers, employees, agents, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Seth D. Greenstein.

2.      The term "Lexmark" means Lexmark International, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Lexmark is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

3.      The term "SCC" means Static Control Components, Inc., as well as its

employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which SCC is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

4.    The term "MSE" means Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises, as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which MSE is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

5.    The term "Pendl" means Pendl Companies, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Pendl is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

6.    The term "NER" means NER Data Products, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which NER is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents,

distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

7.    The term "Lexmark Patents" means U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231, 5,758,233, 5,768,661, 5,802,432, 5,804,114, 5,874,172, 5,875,378, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,009,291, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,459,876, 6,487,383, 6,492,083, D399,249, and D458,300.

8.    The term "Prebate Program" means and refers to Lexmark's Prebate program for the sale of certain Lexmark toner cartridges that are sold at a special price subject to a restriction that the cartridge be used only once and returned only to Lexmark. Lexmark's Prebate program was renamed the "Lexmark Return Program" on April 22, 2003.

9.    The terms "document" or "documents" mean anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, electronic or electrical means whatsoever, including without limitation, memoranda, correspondence, electronic mail, electronic data compilations, notes, books, records, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints,

maps, plats, surveys, drawings, sketches, graphs, charts, plans, laboratory or engineering reports, notebooks, worksheets, reports, lists, analyses, summaries, ledger accounts, audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registration, solicitations, minutes, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agenda, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, instrument assignments, applications, offers, acceptances, proposals, financing statements, documents of title, appraisals, purchase orders, invoices, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, x-rays, video or audio tapes and recordings.

10.    The terms "thing" or "things" mean any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

11.    The term "relating to" means alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

12.    "And," "or," as well as "and/or," shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

13.    The terms "any" and "all" shall be read to mean each and every.

14.    The term "person" means a natural or judicial person, including any corporation, proprietorship, partnership, agency, or business association of any type.

## INSTRUCTIONS

1.    In producing documents and things responsive to these requests, Constantine Cannon, PC shall furnish all documents and things within its possession, custody or control, as they are kept in the ordinary course of business or they shall be organized and labeled to correspond with the document requests to which they are responsive, regardless of whether these documents and things are possessed directly by Constantine Cannon, PC or by its present or past agents, employees, companies, licensees, representatives, investigators, or attorneys.

2.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)    the specific ground(s) for not producing the document or thing in full;

(b)    the basis for such a claim of privilege or immunity and the facts supporting that basis; and

(c)    fully identify the information or material contained within the document or thing for which such privilege or immunity is asserted, including as applicable, the name of any document or thing; its date; the name, address and job title of each author or other person involved in its preparation, each addressee and each person to whom a copy of the document or thing has been sent or received; and the general nature of the document or thing (e.g., memoranda, letter).

3.    Where an objection is made to a request, state all grounds upon which Constantine Cannon, PC's objection is based.

4.    If, after exercising due diligence, Constantine Cannon, PC is unable to determine the existence of any documents or things falling within a specific request, Constantine Cannon, PC shall so state in its written response.

5.    With respect to each of the following requests, Constantine Cannon, PC shall identify and/or produce all documents which are known to it or which can be located or discovered by Constantine Cannon, PC through diligent effort on Constantine Cannon, PC's part, including, but not limited to, all documents which are in the business, personnel, and/or personal files of Constantine Cannon, PC employees or contained or stored within a computer in the possession of Constantine Cannon, PC or its representatives, attorneys, or accountants, or accessible to Constantine Cannon, PC, its employees, or its representatives, attorneys, or accountants.

6.    Whenever used herein, the singular shall be deemed to include the plural and the plural shall be deemed to include the singular and the disjunctive shall be deemed to include the conjunctive and the conjunctive shall be deemed to include the disjunctive so as to elicit all information potentially responsive to the request for production and all of its context.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:**    All documents, both privileged and non-privileged, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Request No. 2:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between Constantine Cannon, PC and

SCC relating to SCC's efforts to defeat Lexmark's Prebate Program. This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 3:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between SCC and MSE, including counsel for MSE, relating to SCC's efforts to defeat Lexmark's Prebate Program. This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 4:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between Constantine Cannon, PC and MSE, including counsel for MSE, relating to SCC's efforts to defeat Lexmark's Prebate Program. This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 5:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between SCC and Pendl, including counsel for Pendl, relating to SCC's efforts to defeat Lexmark's Prebate Program. This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 6:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between Constantine Cannon, PC and Pendl, including counsel for Pendl, relating to SCC's efforts to defeat Lexmark's Prebate Program. This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 7:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between SCC and NER, including counsel for NER, relating to SCC's efforts to defeat Lexmark's Prebate Program.  This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 8:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between Constantine Cannon, PC and NER, including counsel for NER, relating to SCC's efforts to defeat Lexmark's Prebate Program.  This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 9:**    All documents and things, relating to any claims or defenses of any party, for which the Court in this action rules that SCC has waived any claim of privilege.

**EXHIBIT B**

The definitions set forth in Exhibit A are incorporated herein by reference.

## DEPOSITION TOPICS

**Deposition Topic No. 1:**  Communications, both privileged and non-privileged, between Constantine Cannon, PC and SCC relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 2:**  Communications, both privileged and non-privileged, between SCC and MSE, including counsel for MSE, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 3:**  Communications, both privileged and non-privileged, between Constantine Cannon, PC and MSE, including counsel for MSE, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 4:**  Communications, both privileged and non-privileged, between SCC and Pendl, including counsel for Pendl, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 5:**  Communications, both privileged and non-privileged, between Constantine Cannon, PC and Pendl, including counsel for Pendl, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 6:**  Communications, both privileged and non-privileged, between SCC and NER, including counsel for NER, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 7:**  Communications, both privileged and non-privileged, between Constantine Cannon, PC and NER, including counsel for NER, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 8:**  Communications, relating to any claims or defenses of any party, for which the Court in this action rules that SCC has waived any claim of privilege.

LEX 004155/113780/3467715.2



STOLL KEENON OGDEN PLLC

300 West Vine Street, Suite 2100
LEXINGTON, KENTUCKY 40507-1801

CHECK    052415

PAY    Forty-five and 00/100************************************************************

DOLLARS ***45.00***

DATE    November 8, 2006

TO THE
ORDER
OF    Constantine Cannon, PC

73-14
421

Central Bank

STOLL KEENON OGDEN PLLC

BY

FOR SECURITY PURPOSES THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING

THE REVERSE SIDE OF THIS DOCUMENT INCLUDES AN ARTIFICIAL WATERMARK • HOLD AT AN ANGLE TO VIEW

VOID VOID VOID

⑆052415⑆ ⑈04210014⑉ ⑈1037760 2⑈

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CASE NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.   PLAINTIFF/COUNTERCLAIM DEFENDANT

LEXMARK INTERNATIONAL, INC.         DEFENDANT/COUNTERCLAIM PLAINTIFF

V.

WAZANA BROTHERS INTERNATIONAL, INC.
d/b/a MICRO SOLUTIONS ENTERPRISES        COUNTERCLAIM DEFENDANT

V.

PENDL COMPANIES, INC.                COUNTERCLAIM DEFENDANT

V.

NER DATA PRODUCTS, INC.              COUNTERCLAIM DEFENDANT

****************************

### NOTICE OF DEPOSITION OF CONSTANTINE CANNON, PC

PLEASE TAKE NOTICE that pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure, Lexmark International, Inc., will take the video deposition upon oral examination of Constantine Cannon, PC, before an authorized court reporter. Said deposition will take place at the offices of Constantine Cannon, PC, 1627 Eye Street NW, Tenth Floor, Washington, D.C. 20006, on November 15, 2006 at 9:00 a.m., or at some other date, time or place if agreed to by counsel, and will continue thereafter from day to day until completed. Further, said deposition will be used for any and all purposes permitted under the Federal Rules of Civil Procedure.

Prior to the deposition, on November 13, 2006 at 9:00 a.m., the deponent is requested to produce for inspection and copying, those items listed on the attached

Exhibit "A" at the offices of Banner & Witcoff, Ltd., 1001 G. Street, NW, Suite 1100, Washington, D.C. 20001, or at some other date, time or place if agreed to by counsel.

Lexmark International, Inc. will take the deposition of Constantine Cannon, PC, to testify regarding the topics identified on the attached Exhibit "B".

Please take notice that the deponent, Constantine Cannon, PC, is to designate the person or persons to testify fully on its behalf to each of the matters described above on which examination is requested. The deponent may, if it so desires, designate the matters on which each person will testify. The person or persons designated to testify shall appear at the time in this Notice to give testimony.

Dated: November 8, 2006

CHARLES E. SHIVEL, JR.
(charles.shivel@skofirm.com)
STEVEN B. LOY (steven.loy@skofirm.com)
HANLY A. INGRAM (hanly.ingram@skofirm.com)
STOLL KEENON OGDEN PLLC
300 WEST VINE STREET, SUITE 2100
LEXINGTON, KY 40507
TELEPHONE: (859) 231-3000

JOSEPH M. POTENZA
(jpotenza@bannerwitcoff.com)
FREDERIC M. MEEKER
(fmeeker@bannerwitcoff.com)
CHRISTOPHER B. ROTH
(croth@bannerwitcoff.com)
BANNER & WITCOFF, LTD.
1001 G STREET, N.W., 11TH FLOOR
WASHINGTON, DC 20001
TELEPHONE: (202) 824-3000

MARK T. BANNER
(mbanner@bannerwitcoff.com)
CHRISTOPHER J. RENK
(crenk@bannerwitcoff.com)

TIMOTHY C. MEECE
  (tmeece@bannerwitcoff.com)
BINAL J. PATEL (bpatel@bannerwitcoff.com)
MATTHEW P. BECKER
  (mbecker@bannerwitcoff.com)
JASON S. SHULL (jshull@bannerwitcoff.com)
BANNER & WITCOFF, LTD.
10 S. WACKER DRIVE, SUITE 3000
CHICAGO, IL 60606
TELEPHONE: (312) 463-5000

W. ANDREW COPENHAVER
  (acopenhaver@wcsr.com)
HADA V. HAULSEE (hhaulsee@wcsr.com)
MARK N. POOVEY (mpoovey@wcsr.com)
WOMBLE CARLYLE SANDRIDGE & RICE,
PLLC
ONE WEST FOURTH STREET
WINSTON-SALEM, NC 27101
TELEPHONE: 336-721-3655

**ATTORNEYS FOR LEXMARK INTERNATIONAL, INC.**

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY THAT ON THIS THE 8TH DAY OF NOVEMBER, 2006, I SERVED A COPY OF THE FOREGOING NOTICE OF DEPOSITION TO THE FOLLOW COUNSEL BY ELECTRONIC TRANSMISSION:

W. Craig Robertson III (wrobertson@wyattfirm.com)
Mickey T. Webster (mwebster@wyattfirm.com)
Wyatt Tarrant & Combs, LLP
250 W. Main Street, Suite 1600
Lexington KY 40507
Attorneys for Static Control Components, Inc.

Seth D. Greenstein
(sgreenstein@constantinecannon.com)
Constantine Cannon, P.C.
1627 Eye Street, NW
Tenth Floor
Washington, D.C. 20006
Attorneys for Static Control Components, Inc.

Stefan M. Meisner (smeisner@mwe.com)
William H. Barrett (wbarrett@mwe.com)
Melise R. Blakeslee (mblakeslee@mwe.com)
Paul E. Poirot (ppoirot@mwe.com)
McDermott, Will & Emery
600 13TH Street, N.W.
Washington, D.C. 20005-3096
Attorneys for Static Control Components, Inc.

Kevin M. Bolan (kbolan@mwe.com)
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-1775
Attorneys for Static Control Components, Inc.

William L. London (skipl@scc-inc.com)
Static Control Components, Inc.
3010 Lee Avenue, P.O. Box 152
Sanford, North Carolina 27331
Attorneys for Static Control Components, Inc.

James B. Heaton, III (jb.heaton@barlit-beck.com)
Allison W. Freedman (Allison.freedman@bartlit-beck.com)
Barlit Beck Herman Palenchar & Scott, LLP – Chicago

54 W. Hubbard Street
Suite 300
Chicago, IL 60610
Attorneys for Static Control Components, Inc.

Joseph C. Smith, Jr. (joseph.smith@bartlit-beck.com)
Alison G. Wheeler (alison.wheeler@bartlit-beck.com)
Barlit Beck Herman Palenchar & Scott, LLP – Denver
1899 Wynkoop Street
8th Floor
Denver, CO 80202
Attorneys for Static Control Components, Inc.

Douglas L. McSwain (dmcswain@sturgillturner.com)
Andrew DeSimone (adesimone@sturgillturner.com)
Sturgill, Turner, Barker & Moloney, PLLC
155 East Main Street
Lexington, KY 40507
Attorneys for Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises

Darren S. Enenstein (denenstein@mdfslaw.com)
Steven Dotan (sdotan@mdfslaw.com)
Ned Gelhaar (ngelhaar@mdfslaw.com)
O. Andrew Wheaton (awheaton@mdfslaw.com)
Geronimo Perez (gperez@mdfslaw.com)
Stephen J. Rafferty (srafferty@mdfslaw.com)
Moldo Davidson Fraioli Seror &
Sestanovich, LLP
2029 Century Park East, 21st Floor
Los Angeles, CA 90067
Attorneys for Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises

Elizabeth L. Swanson (els@elswanson.com)
Swanson and Associates
9454 Wilshire Boulevard
Suite 500
Beverly Hills, CA 90212
Attorneys for Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises

Michael R. Reinemann (mreinemann@c-m.com)
Thomas C. O'Konski (tok@c-m.com)
Cesari & McKenna, LLP
88 Black Falcon Avenue
Boston, Massachusetts 02210
Attorneys for NER Data Products, Inc

Jay E. Ingle (jingle@jacksonkelly.com)
Jackson Kelly PLLC
P.O. Box 2150
175 E. Main Street, Suite 500
Lexington, KY 40588-9945
Attorneys for NER Data Products, Inc

Elizabeth Thompson (ethompsonbk@stites.com)
Daniel E. Danford (ddanford@stites.com)
Stites & Harbison, PLLC
Suite 2300, 250 W. Main Street
Lexington, KY 40507
Attorneys for Pendl Companies, Inc.

Jack A. Wheat (jwheat@stites.com)
Joel T. Beres (jberes@stites.com)
Jennifer Kovalcik (jkovalcik@stites.com)
William Charles Ferrell, Jr. (wferrell@stites.com)
Stites & Harbison, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Attorneys for Pendl Companies, Inc.

James R. Michels (randy.michels@stites.com)
Stites & Harbison, PLLC
424 Church Street, Suite 1800
Nashville, TN 37219
Attorneys for Pendl Companies, Inc.

David H. Weber (dhw@lcojlaw.com)
Liebmann, Conway, Olejniczak
& Jerry, S.C.
231 South Adams Street
Green Bay, Wisconsin 54301
Attorneys for Pendl Companies, Inc.

Michael P. Foley (mfoley@rendigs.com)
Rendigs, Fry, Kiely & Dennis, L.L.P.
900 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202-3688
Attorneys for Pendl Companies, Inc.

Terry J. Booth (tjb@piperschmidt.com)
Amy E. Wochos (aew@piperschmidt.com)
Piper & Schmidt

Fifth Floor – Van Buren Building
733 North Van Buren Street
Milwaukee, WI 53202-4709
Attorneys for American Family Mutual Insurance Company

Steven P. Bogart (sbogart@reinhartlaw.com)
Reinhart Boerner Van Deuren S.C.
1000 N. Water Street
Suite 2100
Milwaukee, WI 53202
Attorneys for Wazana Brothers International, Inc.  d/b/a Micro Solutions Enterprises

Andrew Oatway (aco@morisi.com)
Morisi & Oatway, P.C.
1400 Hancock Street, 3rd Floor
Quincy, MA 02169-5203
Attorneys for NER Data Products, Inc.

Stanley L. Amberg (via U.S. Mail)
11 Carolyn Lane
Chappaqua, New York 10514
Attorneys for Static Control Components, Inc

Attorney for Lexmark International, Inc.
Stoll Keenon Ogden, PLLC
300 W. Vine Street, Suite 2100
Lexington, KY  40507
(859) 231-3000 (Telephone)
(859) 253-1093 (Facsimile)
(hanly.ingram@skofirm.com)

## EXHIBIT A

Pursuant to Federal Rule of Civil Procedure 45 and directed by the subpoena attached hereto, which has been issued by the District of D.C., you are requested to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control.  With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

### DEFINITIONS

1.      The term "Constantine Cannon, PC" means Constantine Cannon, PC, its past and current employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Constantine Cannon, PC is or was doing business, its predecessors, partners, members, directors, officers, employees, agents, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Seth D. Greenstein.

2.      The term "Lexmark" means Lexmark International, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Lexmark is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

3.      The term "SCC" means Static Control Components, Inc., as well as its

employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which SCC is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

4.    The term "MSE" means Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises, as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which MSE is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

5.    The term "Pendl" means Pendl Companies, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Pendl is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

6.    The term "NER" means NER Data Products, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which NER is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents,

distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

7.    The term "Lexmark Patents" means U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231, 5,758,233, 5,768,661, 5,802,432, 5,804,114, 5,874,172, 5,875,378, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,009,291, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,459,876, 6,487,383, 6,492,083, D399,249, and D458,300.

8.    The term "Prebate Program" means and refers to Lexmark's Prebate program for the sale of certain Lexmark toner cartridges that are sold at a special price subject to a restriction that the cartridge be used only once and returned only to Lexmark. Lexmark's Prebate program was renamed the "Lexmark Return Program" on April 22, 2003.

9.    The terms "document" or "documents" mean anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, electronic or electrical means whatsoever, including without limitation, memoranda, correspondence, electronic mail, electronic data compilations, notes, books, records, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints,

maps, plats, surveys, drawings, sketches, graphs, charts, plans, laboratory or engineering reports, notebooks, worksheets, reports, lists, analyses, summaries, ledger accounts, audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registration, solicitations, minutes, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agenda, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, instrument assignments, applications, offers, acceptances, proposals, financing statements, documents of title, appraisals, purchase orders, invoices, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, x-rays, video or audio tapes and recordings.

10.    The terms "thing" or "things" mean any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

11.    The term "relating to" means alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

12.    "And," "or," as well as "and/or," shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

13.    The terms "any" and "all" shall be read to mean each and every.

14.    The term "person" means a natural or judicial person, including any corporation, proprietorship, partnership, agency, or business association of any type.

**INSTRUCTIONS**

1.    In producing documents and things responsive to these requests, Constantine Cannon, PC shall furnish all documents and things within its possession, custody or control, as they are kept in the ordinary course of business or they shall be organized and labeled to correspond with the document requests to which they are responsive, regardless of whether these documents and things are possessed directly by Constantine Cannon, PC or by its present or past agents, employees, companies, licensees, representatives, investigators, or attorneys.

2.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)    the specific ground(s) for not producing the document or thing in full;

(b)    the basis for such a claim of privilege or immunity and the facts supporting that basis; and

(c)    fully identify the information or material contained within the document or thing for which such privilege or immunity is asserted, including as applicable, the name of any document or thing; its date; the name, address and job title of each author or other person involved in its preparation, each addressee and each person to whom a copy of the document or thing has been sent or received; and the general nature of the document or thing (e.g., memoranda, letter).

3.    Where an objection is made to a request, state all grounds upon which Constantine Cannon, PC's objection is based.

4.    If, after exercising due diligence, Constantine Cannon, PC is unable to determine the existence of any documents or things falling within a specific request, Constantine Cannon, PC shall so state in its written response.

5.    With respect to each of the following requests, Constantine Cannon, PC shall identify and/or produce all documents which are known to it or which can be located or discovered by Constantine Cannon, PC through diligent effort on Constantine Cannon, PC's part, including, but not limited to, all documents which are in the business, personnel, and/or personal files of Constantine Cannon, PC employees or contained or stored within a computer in the possession of Constantine Cannon, PC or its representatives, attorneys, or accountants, or accessible to Constantine Cannon, PC, its employees, or its representatives, attorneys, or accountants.

6.    Whenever used herein, the singular shall be deemed to include the plural and the plural shall be deemed to include the singular and the disjunctive shall be deemed to include the conjunctive and the conjunctive shall be deemed to include the disjunctive so as to elicit all information potentially responsive to the request for production and all of its context.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:**    All documents, both privileged and non-privileged, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Request No. 2:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between Constantine Cannon, PC and SCC relating to SCC's efforts to defeat Lexmark's Prebate Program.    This Request

includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

Request No. 3:    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between SCC and MSE, including counsel for MSE, relating to SCC's efforts to defeat Lexmark's Prebate Program.  This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

Request No. 4:    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between Constantine Cannon, PC and MSE, including counsel for MSE, relating to SCC's efforts to defeat Lexmark's Prebate Program.  This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

Request No. 5:    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between SCC and Pendl, including counsel for Pendl, relating to SCC's efforts to defeat Lexmark's Prebate Program.  This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

Request No. 6:    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between Constantine Cannon, PC and Pendl, including counsel for Pendl, relating to SCC's efforts to defeat Lexmark's Prebate Program. This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 7:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between SCC and NER, including counsel for NER, relating to SCC's efforts to defeat Lexmark's Prebate Program. This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 8:**    All documents and things, both privileged and non-privileged, that reflect, embody, or discuss communications between Constantine Cannon, PC and NER, including counsel for NER, relating to SCC's efforts to defeat Lexmark's Prebate Program.  This Request includes, but is not limited to, any documents or things on which Constantine Cannon, PC and/or SCC are/were carbon copied or blind copied.

**Request No. 9:**    All documents and things, relating to any claims or defenses of any party, for which the Court in this action rules that SCC has waived any claim of privilege.

**EXHIBIT B**

The definitions set forth in Exhibit A are incorporated herein by reference.

## DEPOSITION TOPICS

**Deposition Topic No. 1:**  Communications, both privileged and non-privileged, between Constantine Cannon, PC and SCC relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 2:**  Communications, both privileged and non-privileged, between SCC and MSE, including counsel for MSE, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 3:**  Communications, both privileged and non-privileged, between Constantine Cannon, PC and MSE, including counsel for MSE, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 4:**  Communications, both privileged and non-privileged, between SCC and Pendl, including counsel for Pendl, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 5:**  Communications, both privileged and non-privileged, between Constantine Cannon, PC and Pendl, including counsel for Pendl, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 6:**  Communications, both privileged and non-privileged, between SCC and NER, including counsel for NER, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 7:** Communications, both privileged and non-privileged, between Constantine Cannon, PC and NER, including counsel for NER, relating to SCC's efforts to defeat Lexmark's Prebate Program.

**Deposition Topic No. 8:** Communications, relating to any claims or defenses of any party, for which the Court in this action rules that SCC has waived any claim of privilege.

LEX 004155/113780/3467724.1

# Exhibit B

Eastern District of Kentucky

F I L E D

NOV 1 4 2006

AT LEXINGTON
LESLIE G. WHITMER
CLERK U S DISTRICT COURT

FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CASE NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.    PLAINTIFF/COUNTERCLAIM DEFENDANT

v.

**AGREED ORDER TO HOLD IN ABEYANCE
SUBPOENAS SERVED ON COUNSEL
FOR STATIC CONTROL COMPONENTS, INC.**

LEXMARK INTERNATIONAL, INC.    DEFENDANT/COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.
d/b/a MICRO SOLUTIONS ENTERPRISES    COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.    COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.    COUNTERCLAIM DEFENDANT

*****************************

This matter is before the Court as a result of Lexmark International, Inc. having served

certain notices of deposition and subpoenas *duces tecum* on counsel for Static Control

Components, Inc., including (a) the notices of deposition and subpoenas *duces tecum* dated

November 8, 2006 on (i) the law firm of Bartlit Beck Herman Palenchar & Scott, LLP, attn.

Joseph C. Smith, Jr.; (ii) the law firm of McDermott Will & Emery LLP, attn. Paul E. Poirot; (iii)

the law firm of Constantine Cannon, PC, attn. Seth D. Greenstein; (iv) the law firm of Wyatt,

Tarrant & Combs, LLP, attn. Mickey T. Webster, and (v) Stanley L. Amberg; and (b) notices of

deposition and/or subpoenas *duces tecum* issued or which will be issued to (i) the law firm of

83515.1

Moore & Van Allen, PLLC; (ii) Andrew Cohen; and (iii) David Harlow (collectively "Counsel for Static Control").

By agreement of the parties, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** and **ADJUDGED** as follows:

(1)    The notices of depositions and subpoenas are HELD IN ABEYANCE until the Court rules on "Plaintiff Static Control Components' Renewed Objections to Memorandum Opinion and Order Dated March 31, 2006, and Objections to Amended Memorandum Opinion and Order Dated June 15, 2006" ("Static Control's Objections") (Docket Entry # 337); and

(2)    Static Control and Counsel for Static Control are hereby granted an extension of time to and including five (5) business days from date of the Court's ruling on Static Control's Objections within which to serve objections to the notices of depositions and subpoenas, move to quash the subpoenas, or otherwise seek any other relief to which they may be entitled from the issuance and/or service of the notices of depositions and subpoenas.

Entered this 14th day of November, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT

AGREED TO; TO BE ENTERED:

*s/Charles E. Shivel, Jr. by W. Craig Robertson, III with permission*
Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507

Joseph M. Potenza
Frederic M. Meeker

2

83515.1

Christopher B. Roth
Robert F. Altherr, Jr.
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC 20001

Mark T. Banner
Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Matthew P. Becker
Jason S. Shull
Michael L. Krashin
Allen E. Hoover
Bradley Rademaker
Robert H. Resis
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606

W. Andrew Copenhaver
Mark N. Poovey
Hada V. Haulsee
WOMBLE CARLYLE SANDRIDGE
AND RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101

*ATTORNEYS FOR LEXMARK INTERNATIONAL, INC.*

*s/W. Craig Robertson, III*
W. Craig Robertson III
Mickey T. Webster
WYATT TARRANT & COMBS, LLP
250 W. Main Street, Suite 1600
Lexington, KY 40507

Joseph C. Smith, Jr.
Alison G. Wheeler
BARLIT BECK HERMAN PALENCHAR & SCOTT, LLP -- Denver
1899 Wynkoop Street
8th Floor
Denver, CO 80202

3

83515.1

James B. Heaton, III
Allison W. Freedman
BARLIT BECK HERMAN PALENCHAR & SCOTT, LLP -- Chicago
54 W. Hubbard Street
Suite 300
Chicago, IL  60610

Seth D. Greenstein
CONSTANTINE CANNON, P.C.
1627 Eye Street, NW
Tenth Floor
Washington, D.C.  20006

Stefan M. Meisner, William H. Barrett,
Melise R. Blakeslee, Paul E. Poirot, John J. Dabney
McDERMOTT, WILL & EMERY LLP
600 13TH Street, N.W.
Washington, D.C. 20005-3096

Kevin M. Bolan
McDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775

William L. London
Static Control Components, Inc.
3010 Lee Avenue, P.O. Box 152
Sanford, North Carolina  27331

Stanley L. Amberg
11 Carolyn Lane
Chappaqua, New York 10514

*Attorneys for Static Control Components, Inc.*

30431437.1

83515.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Constantine Cannon P.C.'s Reply In Support of Motion to Quash Subpoena Served on Opposing Party's Trial Counsel was served this 16th day of November 2006 by electronic mail to the following (*) individuals:

Charles F. Shivel, Jr.
Steven B. Loy*
Hanly A. Ingram
STOLL, KEENON & PARK, LLP
300 West Vine St., Suite 2100
Lexington, KY 40507
Fax: (859) 253-1093
Steven.Loy@SKOFirm.com
*Counsel for Lexmark Int'l, Inc.*

Joseph M. Potenza*
BANNER & WITCOFF, LTD.
1001 G Street, NW, 11th Floor
Washington, DC 20001
Fax: (202) 508-9299
JPotenza@BannerWitcoff.com
*Counsel for Lexmark Int'l, Inc.*

Michael L. Krashin
Christopher J. Renk
Binal J. Patel*
Jason S. Shull
Timothy C. Meece
BANNER & WITCOFF, LTD.
10 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Fax: (312) 715-1234
BPatel@BannerWitcoff.com
*Counsel for Lexmark Int'l, Inc.*

Andrew CopenHaver
Hada Haulsee
WOMBLE CARLYLE SANDRIDGE
 AND RICE, PLLC
One West Fourth St.
Winston-Salem, NC 27101
Fax: (336) 721-3660
ACopenHaver@WCSR.com
*Counsel for Lexmark Int'l, Inc.*

Andrew D. DeSimone*
Douglas L. McSwain
STURGILL, TURNER, BARKER
 & MOLONEY PLLC
155 E. Main St., Suite 400
Lexington, KY 40507-1317
Fax: (859) 231-0851
ADesimone@SturgillTurner.com
*Counsel for Wazana Brothers Int'l, Inc.*

A. Steven Dotan*
Darren S. Enenstein
Ned Gelhaar
James M. Gilbert
Jeffrey R. Glassman
Gregory Kim
Kimberly D. Lewis
Steven E. Moyer
Ira M. Siegel
MOLDO DAVIDSON FRAIOLI
SEROR & SESTANOVICH, LLP
1925 Century Park East, 16th Floor
Los Angeles, CA 90067
SDotan@MDFSLaw.com
*Counsel for Wazana Brothers Int'l, Inc.*

Joel T. Beres*
Jack A. Wheat
Jennifer L. Kovalcik
STITES & HARBISON, PLLC
400 W. Market St., Suite 1800
Louisville, KY 40202
Fax: (502) 587-6391
JBeres@Stites.com
*Counsel for Pendl Cos., Inc.*

Daniel E. Danford*
Elizabeth L. Thompson
STITES & HARBISON, PLLC
250 W. Main Street
2300 Lexington Financial Center
Lexington, KY 40507
Fax: (859) 253-9144
DDanford@Stites.com
*Counsel for Pendl Cos., Inc.*

- 1 -

Jay E. Ingle*
JACKSON & KELLY
175 E. Main Street
P.O. Box 2150
Lexington, KY 40588
Fax: (859) 288-2849
Jingle@JacksonKelly.com
*Counsel for NER Data Products, Inc.*

Thomas C. O'Konski*
Michael R. Reinemann
CESARI & MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
Fax: (617) 951-3927
TOK@C-M.com
*Counsel for NER Data Products, Inc.*

Andrew C. Oatway
MORISI & OATWAY
1400 Hancock St., 3rd Floor
Quincy, MA 02169
Fax: (617) 479-6885
ACO@Morisi.com
*Counsel for NER Data Products, Inc.*

**Constantine Cannon, P.C**

82786.1