UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATIC CONTROL COMPONENTS, INC.,

    PLAINTIFF/COUNTERCLAIM
    DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.,

    DEFENDANT/COUNTERCLAIM
    PLAINTIFF

v.

Civil Action No. 04-CV-84-GFVT
Pending in United States District Court
East District of Kentucky
Honorable Gregory F. Van Tatenhove

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

Miscellaneous Action No. 06-00478-JDB

    COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.

    COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

    COUNTERCLAIM DEFENDANT

**LEXMARK INTERNATIONAL, INC.'S SUR-REPLY TO CONSTANTINE'S REPLY IN
SUPPORT OF MOTION TO QUASH SUBPOENA SERVED ON
OPPOSING PARTY'S TRIAL COUNSEL**

    Defendant and Counterclaim Plaintiff Lexmark International, Inc. ("Lexmark") files this

sur-reply to respond to new arguments raised by Constantine Cannon, P.C ("Constantine") in its

reply in support of Constantine's motion to quash and inform the Court of related developments.

## I.    CONSTANTINE'S MOTION SHOULD BE DENIED OR HELD IN ABEYANCE

Constantine's motion should be denied or held in abeyance. The issues presented by Constantine are already before the Kentucky court for decision.[1]  These motions are as follows:[2]

1.  Pendl Companies, Inc. ("Pendl") filed a motion for protective order in the Kentucky court regarding Lexmark's subpoena on Pendl's counsel for discovery on the willfulness of Pendl's infringement (*i.e.,* Pendl's state of mind during its patent infringement that continues through the present). (*See* Exhibit L, Pendl's Motion for Protective Order; Exhibit M, Lexmark's Opposition thereto (redacted); Exhibit N Pendl's Reply).

2.  Constantine's co-counsel, Wyatt, Tarrant & Combs, LLP ("Wyatt") filed a motion to quash a subpoena from Lexmark that is substantially the same as Lexmark's October 19th subpoena to Constantine that is the subject of Constantine's motion. (See Exhibit O, Wyatt's Motion to Quash; Exhibit P, Lexmark's Opposition thereto (redacted)).

Lexmark anticipates that Static Control, Pendl, and their law firms will be ordered to produce the documents that are the subject of the various waivers in this case including the documents associated with this subpoena. Unfortunately, Constantine has decided against holding this subpoena in abeyance pending a decision on the waiver issues in the underlying Kentucky Litigation. By filing its motion to quash, Constantine has forced unnecessary, needless, and time consuming motion practice in this Court after the close of discovery that is not currently authorized in the Kentucky Litigation, and that in all likelihood will be decided by the Kentucky court. While the subpoena is necessary to take discovery of Constantine, common sense would seem to dictate that because lawyers associated with that firm are before the

---

[1] Although fact discovery has now closed in Kentucky, a ruling concerning the waiver issue and associated discovery is anticipated from the court in Kentucky.

[2] Also pending with the Kentucky court are Static Control's Renewed Objections (filed June 26, 2006) relating to the Magistrate Judge's determination that Constantine's client Static Control Components, Inc. ("Static Control") has waived privilege relating to the Blakey Opinion.

Kentucky court, those lawyers would have agreed to abide by the outcome of the motions in the Kentucky Litigation. Unfortunately, Constantine has refused to abide by that decision and instead has sought to bother this Court with a motion to quash.

Notwithstanding Constantine's decision to proceed with the instant motion, this Court should hold Constantine's motion in abeyance pending resolution by the Kentucky court of the above-cited motions by Pendl and Wyatt. By holding Constantine's motion in abeyance pending the Kentucky Court's ruling on these issues, this Court will (1) avoid unnecessary duplication of effort; (2) conserve this Court's resources; (3) avoid conflicting rulings; and (4) obtain persuasive guidance as to how it should rule on Constantine's motion.

## II.   CONSTANTINE'S PRIVILEGE CLAIM CANNOT TRUMP PENDL'S WAIVER

Turning to the substance of Constantine's Reply, Constantine argues that Lexmark is seeking information based on an entirely different claim of waiver – one made by its client Static Control. Constantine's reply confuses the issue. ***To be clear, Lexmark's subpoena of Constantine seeks discovery relating to Pendl's waiver and covering communications with Pendl relating to the subject matter of the Becker Opinion.*** Lexmark's discovery relating to the Static Control's waiver (by way of the Blakey Opinion) is a separate set of subpoenas that the parties have agreed to hold in abeyance pending resolution of the waiver issue by the Kentucky Court.

Constantine does not itself have any privilege associated with the documents subject to the subpoena. The only privilege at issue here – and that is the subject of the instant motion – is Pendl's privilege to the extent that Constantine has communicated to Pendl relating to certain

3

subject matter. Pendl voluntarily waived that privilege by virtue of its reliance on an opinion of counsel ("the Becker Opinion").[3]

Constantine does not possess some undefined special attorney-client privilege that cannot be waived by its clients (Static Control or Pendl) by virtue of some alleged common interest agreement between Static Control and Pendl or anyone else. Constantine has the burden of proving the terms of any such alleged common interest agreement by putting forth admissible evidence of the terms of any alleged agreement. Constantine has utterly failed to meet this burden. Further, even if it could prove a common interest agreement existed and the terms of that agreement, such an agreement does not expand the attorney-client privileges that Constantine has with its client or the ability of Static Control and Pendl to waive that attorney-client privilege. Once waived, it is gone forever, extinguished; Constantine cannot rely on that alleged attorney-client privilege as a basis for moving to quash the present subpoena.

The October 19th subpoena to Constantine seeks communications between Constantine and Pendl in view of the waiver of the Becker Opinion by Pendl. As held by the Federal Circuit in *In re EchoStar*, 448 F.3d 1294, 1301, 1303 (Fed. Cir. 2006), by asserting the advice of counsel defense to a charge of willful infringement, the accused infringer's waiver extends "so far as to inform the court of the infringer's state of mind" including its communications with "litigation counsel."

Constantine does not dispute that Pendl has asserted the advice of counsel defense and that Pendl is relying upon the Becker Opinion in response to the charge of willful infringement. Constantine does not dispute that its communications with Pendl (directly or indirectly through

---

[3] To the extent Constantine is claiming some privilege with Static Control as the basis to withhold its communications with Pendl, the Magistrate Judge in the Kentucky Litigation has already ruled that Static Control has waived its privilege related to the Blakey Opinion. Although that ruling was appealed to the District Court, and the parties have agreed to hold it in abeyance until it is decided in the Kentucky court, that waiver ruling does not affect the waiver created Pendl.

4

Pendl's counsel) are relevant to Pendl's state of mind. Instead, Constantine argues that an alleged and unproven common interest agreement has terms that create a new type of attorney-client privilege that trumps the Federal Circuit's holding in *EchoStar*. Constantine is simply trying to use an older opinion that is favorable so Pendl may defend against a charge of willful infringement while shielding all of the unfavorable communications provided by Constantine from disclosure to the jury. However, Constantine is not entitled to make that choice because Constantine does not hold some special attorney-privilege separate and apart from the privilege held by Pendl. Pendl already waived its attorney-client privilege and Constantine must be compelled to produce documents responsive to the subpoena.

Even if it is somehow deemed that a common interest agreement exists and the terms of that agreement were proven, Lexmark is entitled to discovery of Pendl's communications with its lawyers regardless of whether those lawyers also represent other defendants and regardless of whether those defendants have a contract between themselves. *Autobytel, Inc. v. Dealix Corp.*, 2006 U.S. Dist. LEXIS 72032 (E.D. Tex., October 3, 2006), attached as Exhibit Q ("When Dealix asserted the advice-of-counsel defense, it waived the [common legal interest] privilege as to communications or communicated work product related to potential infringement of the [asserted] patent or related to the non-infringement opinion." *Id.* at 18-19). To the extent that Pendl or Static Control breached some alleged and unproven contractual agreement not to waive its privilege, the remedy that the other defendants would have would be a contractual remedy against Pendl or Static Control and not the creation of some new super attorney-privilege that cannot be waived by a client. The attorney-client privilege is a well settled doctrine and parties cannot expand that doctrine simply because they have signed a contract. Common interest

agreements do not have such an elevated place in the law and they do not empower or entitle the parties thereto to deprive an adverse party of otherwise discoverable information.

Pendl and Static Control *chose* to enter into a common interest agreement. Pendl then *chose* to rely on the Becker Opinion in defending against Lexmark's willfulness allegations – an opinion that is incredibly broad, touching on patent, contract and antitrust laws. Neither of these choices was made by Lexmark. They were choices made by Pendl and/or Static Control and were made with the active assistance of their able attorneys. Those choices may have advantages, and they may have disadvantages, but they certainly have consequences and one of those consequences is that Lexmark is entitled to discover communications with Pendl relating to the subject matter of the Becker Opinion regardless of the source of those communications.

The cases cited in Constantine's Reply at pp. 2-3 all pre-date the Federal Circuit's decision in *Echostar*, and none of these cases involved a party charged with willful patent infringement who had waived the advice of counsel to rebut the charge of willfulness. Constantine's cited cases are also distinguishable for the following additional reasons.

In *Ross v. City of Memphis*, 423 F.3d 596 (6th Cir. 2005), the Court held that the importance of privileged communications between a City employee and City attorneys (which the City employee sought to rely upon personally) was outweighed by the City's interest in maintaining the privilege, particularly where the advice of counsel is not usually a component of the qualified immunity defense. 423 F.3d at 603.

In *Interfaith Hos. Delaware, Inc. v. Town of Georgetown*, 841 F. Supp 1393, 1402 (D. Del. 1994), the Court held that one defendant's statement with respect to advice of counsel had waived his attorney-client privilege. Significantly, and contrary to Constantine's position, the Court ordered *all* defendants to produce any and all documents relating to the waived subject

6

matter (namely, the Town Council's authority to impose a certain Stipulation). The Court also ruled that this evidence would be admissible only as to the waiving defendant and not as to any other defendant.

In *AT&T Corp. v. Microsoft Corp.*, No. 02-1064 MHP (JL), 2003 U.S. Dis. LEXIS 8710 *20 (N.D. Cal. April 18, 2003), the Court held that non-party DSP did not waive its attorney-client and work product claims because it had ***not*** asserted the advice of counsel defense, and that there was no waiver by the accused infringer (Microsoft) because it did not know about a third party's investigations or opinions by that third party's counsel. Accordingly, *AT&T* is inapposite, both factually and legally, to the current situation.

In *John Morrell & Co. v. Local Union 304A of the United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544 (8th Cir. 1990), the Court held that one party's (Morrell) waiver of privilege as to four documents in a prior suit did not waive privilege to other documents, and the fact that the opposing party inadvertently gained access in a later suit did not affect this ruling. 913 F.2d at 556.

In *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244 (4th Cir. 1990), the Court held that where "Movant" had created "Subsidiary," and later divested Subsidiary, then Subsidiary could unilaterally waive any privilege in documents not related to the Movant's claim against the Army or to Movant's defense of the Army's counterclaim. There is no indication that the state of mind of the Subsidiary was at issue. Accordingly, *In re Grand Jury Subpoenas* is inapposite, both factually and legally, to the current situation.

In sum, because Constantine's communications with Pendl relating to the subject matter of the Becker Opinion, such as communications with Pendl via Pendl's counsel, are relevant to Pendl's state of mind, those communications are discoverable and cannot be kept hidden by

Constantine where Pendl has waived advice of counsel in defense to a claim that its infringement of Lexmark's patents was and continues to be willful.

In conclusion, Lexmark is entitled to the subpoenaed information from Constantine. However, in view of the passage of the discovery deadline and the pending motions in the Kentucky Litigation, this Court should hold Constantine's motion to quash in abeyance. In the alternative, this Court should deny Constantine's motion.

Respectfully submitted,

Dated: November 30, 2006

By: _____

Joseph M. Potenza
Robert S. Katz
Frederic M. Meeker
Christopher B. Roth
BANNER & WITCOFF, LTD.
1001 G Street, N.W., Suite 1100
Washington, DC 20001
Telephone: (202) 824-3000
Facsimile: (202) 824-3001

Mark T. Banner
Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Matthew P. Becker
Jason S. Shull
Robert H. Resis
Allen E. Hoover
Bradley Rademaker
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Andrew CopenHaver
Hada Haulsee
WOMBLE CARLYLE SANDRIDGE
AND RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3629
Facsimile: (336) 721-3660

Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507
Telephone: (859) 231-3000
    Facsimile: (859) 253 1093

**Attorneys for
Defendant/Counterclaim Plaintiff,
Lexmark International, Inc.**

## CERTIFICATION

This is to certify that a true and accurate copy of the foregoing has been served November 30, 2006 via email (on * individuals) and U.S. Mail as follows:

## COUNSEL FOR STATIC CONTROL COMPONENTS, INC.

| | |
|---|---|
| Mickey T. Webster<br>W. Craig Robertson, III<br>WYATT, TARRANT & COMBS, LLP<br>250 West Main Street, Suite 1600<br>Lexington, KY 40507 | Seth D. Greenstein[*]<br>CONSTANTINE CANNON, PC<br>1627 Eye Street, N.W.<br>Tenth Floor<br>Washington, DC 20006 |
| Paul E. Poirot[*]<br>William H. Barrett<br>Melise R. Blakeslee<br>Stefan M. Meisner<br>MCDERMOTT, WILL & EMERY<br>600 13th Street, N.W.<br>Washington, D.C. 20005-3096 | Kevin M. Bolan<br>MCDERMOTT, WILL & EMERY<br>28 State Street<br>Boston, MA 02109-1775 |
| William L. London<br>STATIC CONTROL COMPONENTS, INC.<br>3010 Lee Avenue, P.O. Box 152<br>Sanford, North Carolina 27331 | Allison W. Freedman<br>James B. Heaton, III<br>BARTLIT BECK HERMAN PALENCHAR &<br>SCOTT, LLP<br>54 W. Hubbard Street<br>Chicago, IL 60610 |
| Joseph C. Smith, Jr.[*]<br>Alison G. Wheeler<br>BARTLIT BECK HERMAN PALENCHAR &<br>SCOTT, LLP<br>1899 Wynkoop Street, 8th Floor<br>Denver, CO 80202 | |

## COUNSEL FOR WAZANA BROTHERS INTERNATIONAL, INC. d/b/a MICRO SOLUTIONS ENTERPRISES

| | |
|---|---|
| Andrew D. DeSimone<br>Douglas L. McSwain<br>STURGILL, TURNER, BARKER<br>& MOLONEY, PLLC<br>155 E. Main St., Suite 400<br>Lexington, KY 40507-1317 | A. Steven Dotan[*]<br>Darren S. Enenstein<br>Geronimo Perez<br>Ned Gelhaar<br>O. Andrew Wheaton<br>Stephen J. Rafferty<br>MOLDO, DAVIDSON, FRAIOLI, SEROR &<br>SESTANOVICH, LLP<br>2029 Century Park East, 21st Floor<br>Los Angeles, CA 90067 |
| Elizabeth L. Swanson<br>SWANSON AND ASSOCIATES<br>9454 Wilshire Boulevard<br>Suite 500<br>Beverly Hills, CA 90212 | Steven P. Bogart<br>REINHART BOERNER VAN DEUREN S.C.<br>1000 N. Water Street<br>Suite 2100<br>Milwaukee, WI 53202 |

## COUNSEL FOR NER DATA PRODUCTS, INC.

| | |
|---|---|
| Andrew C. Oatway<br>MORISI & OATWAY<br>1400 Hancock St., 3rd Floor<br>Quincy, MA 02169 | Thomas C. O'Konski<br>Michael R. Reinemann[*]<br>CESARI & MCKENNA, LLP<br>88 Black Falcon Avenue<br>Boston, Massachusetts 02210 |
| Jay E. Ingle<br>JACKSON & KELLY<br>175 E. Main Street<br>P.O. Box 2150<br>Lexington, KY 40588 | Daniel E. Danford<br>Elizabeth L. Thompson<br>STITES & HARBISON, PLLC<br>250 W. Main Street<br>2300 Lexington Financial Officer<br>Lexington, KY 40507 |

**COUNSEL FOR NER PENDL COMPANIES, INC.**

| | |
|---|---|
| Joel T. Beres[*]<br>Jack A. Wheat<br>Jennifer L. Kovalcik<br>William Charles Ferrell, Jr.<br>STITES & HARBISON, PLLC<br>400 West Market Street<br>Suite 1800<br>Louisville, KY 40202-3352 | James R. Michels[*]<br>STITES & HARBISON, PLLC<br>424 Church Street<br>Suite 1800<br>Nashville, TN 37219 |
| David H. Weber<br>LIEBMANN, CONWAY, OLEJNICZAK &<br>JERRY, S.C.<br>231 South Adams Street<br>Green Bay, WI 54301 | Michael P. Foley<br>RENDIGS, FRY, KIELY & DENNIS, L.L.P.<br>900 Fourth & Vine Tower<br>One West Fourth Street<br>Cincinnati, OH 45202-3688 |

BY: _____

ATTORNEYS FOR LEXMARK

# EXHIBIT L

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC., | |
|     PLAINTIFF/COUNTERCLAIM DEFENDANT | |
| v. | |
| LEXMARK INTERNATIONAL, INC., | Civil Action No. 04-CV-84-GFVT |
|     DEFENDANT/COUNTERCLAIM PLAINTIFF | Honorable Gregory F. Van Tatenhove |
| v. | |
| WAZANA BROTHERS INTERNATIONAL, INC. d/b/a MICRO SOLUTIONS ENTERPRISES | |
|     COUNTERCLAIM DEFENDANT | |
| v. | |
| PENDL COMPANIES, INC. | |
|     COUNTERCLAIM DEFENDANT | |
| v. | |
| NER DATA PRODUCTS, INC. | |
|     COUNTERCLAIM DEFENDANT | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MOTION FOR PROTECTIVE ORDER REGARDING PENDL'S ADVICE OF COUNSEL DEFENSE

Pendl Companies, Inc. ("Pendl"), by counsel and pursuant to Federal Rule 26(c), moves

this Court for a protective order regarding its advice of counsel defense to Lexmark's allegations

of willful patent infringement enjoining enforcement of a subpoena served by Lexmark on

Pendl's *trial counsel* – Stites & Harbison –in the United States District Court for the Western District of Kentucky ("the "Western District"), as well as subpoenas served on other trial counsel, subpoenas served on other Pendl counsel who are not involved in this trial, and depositions sought by Lexmark of Pendl representatives Gary Pendl and Randy Pendl. The subpoena served on Stites & Harbison – which is virtually identical to sixteen additional subpoenas Lexmark served all other opposing trial counsel[1] – seeks deposition testimony and documents from trial counsel on topics specifically seeking privileged information and work product related to each claim in the litigation. The subpoena is Lexmark's unabashed attempt to discover trial strategy and work product from *all* of its opposing parties' trial counsel in order to gain an advantage in that litigation. A protective order is necessary to protect Pendl from "oppression" and "undue burden or expense" under Rule 26. *See* Fed. R. Civ. P. 26(c).

## FACTS

### A.    Lexmark Sued Pendl And Others Before This Court.

This Court is familiar with the facts of this lawsuit. The actions concern certain laser printer toner cartridges manufactured by Lexmark. Lexmark makes and sells laser printers and then attempts to "license" toner cartridges for those printers by means that include affixing fine-print labels to the cartridges in an effort to declare unilaterally that anyone who opens the cartridge box or uses the cartridge is a patent licensee of Lexmark, bound by the label "license" to use the cartridge only once and then return it to Lexmark. The object of this scheme is to prevent used cartridges from falling into the hands of companies known as "remanufacturers," which recycle used cartridges by repairing them and refilling them with toner so that they can be

---

[1] The additional subpoenas have been issued from district courts all over the United States including the Eastern District of Kentucky, the District of Colorado, the District of D.C., the District of Massachusetts, the Southern District of New York, the Southern District of Ohio, the Eastern District of Wisconsin, and the Northern and Central Districts of California.

used again – at a price far below that of buying a new Lexmark cartridge.  There are thousands of such remanufacturers in the United States.

Lexmark's adversaries in these actions are three specific remanufacturers – NER Data Products, Inc.; Pendl Companies, Inc. ("Pendl"); and Wazana Brothers International, Inc. (collectively, the "Remanufacturers") – along with the industry's largest supplier of parts to such remanufacturers, Static Control.

In broad terms, Static Control and the Remanufacturers contend that Lexmark's "licensing" scheme entails false advertising, constitutes patent misuse, and is otherwise improperly anti-competitive, while Lexmark contends that Static Control and the Remanufacturers are willfully infringing Lexmark's patents, and/or willfully inducing the infringement of Lexmark's patents, by enabling consumers to re-use toner cartridges that Lexmark alleges were licensed to those consumers for only one use.

### B.   Pendl Retained Stites & Harbison Solely As Trial Counsel To Defend Lexmark's Lawsuit.

After receiving Lexmark's Counterclaim, Pendl retained the law firm of Stites & Harbison as trial counsel for its defense.  (*See* affidavit of Joel Beres, attached as Exh. 1, at ¶ 2.) Stites & Harbison had never performed legal work of any kind for Pendl before this retention. (*Id*. at ¶ 3.)  Instead, it was retained and has served solely as <u>trial counsel</u>.  (*Id*. at ¶ 4.)  In fact, the retention agreement between Pendl and Stites & Harbison limits Stites & Harbison's representation to defending Lexmark's suit.  (*Id*. at ¶ 5.)

On October 13, 2006, Pendl disclosed to Lexmark a written opinion of counsel that it procured in 1999 from a law firm entirely unrelated to its current trial counsel.  The opinion supports an "advice of counsel" defense to willful patent infringement.  *See generally, e.g., Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996) (whether infringer acted

willfully is a question of fact that rests on determination of infringer's state of mind; infringer's good faith reliance on competent advice of counsel constitutes defense to willfulness).

Pendl has never received advice from Stites & Harbison as to the validity of any Lexmark patent. (Exh. 1, at ¶ 6.) Further, Stites & Harbison has never provided advice on the validity of the advice in the 1999 opinion, which forms the basis for Pendl's advice of counsel defense. (*Id.* at ¶ 7.) Instead, each and every communication between Pendl and Stites & Harbison has been limited to discussions of litigation or trial strategy. (*Id.* at ¶ 8.) Each and every document provided to Pendl has similarly dealt solely with such litigation and trial strategy. (*Id.* at ¶ 9.)

### C. **Lexmark Has Subpoenaed Stites & Harbison Seeking Pendl's Trial Strategy.**

Despite knowing its role as trial counsel, Lexmark subpoenaed Stites & Harbison– *as well as each and every other opposing litigant's trial counsel* – on October 18, 2006. (*See* Subpoena, attached as Exh. 2.) It demanded production of documents on October 27, 2006, nine days later, and deposition testimony from Pendl's trial counsel shortly thereafter. (*Id.* at 2.) The subpoena's document and deposition demands on Stites & Harbison – as well as trial counsel for NER, MSE, and SCC – seek all privileged communications between the party and their trial counsel and all work product produced by trial counsel during litigation. The requests on Stites & Harbison include the following:

- All communications and work product involving antitrust claims made against Lexmark. (*Id.* at Request 6.)

- All communications and work product involving contract law concerns related to Lexmark. (*Id.* at Request 7.)

- All communications between Pendl and its trial counsel concerning Lexmark's printer/toner cartridge program. (*Id.* at Request 4.)

- All communications or documents discussing communications between trial counsel and Pendl in any way "relating" to the topic of patent infringement. (*Id.* at Request 2, 5, 9.)

- 4 -

- All communication and work product concerning Pendl's decision to invoke the advice of counsel defense in its complaint.  (*Id.* at Request 3.)

- All documents – whether work product or not – "relating to" whether Pendl's actions have violated any Lexmark patent.  (*Id.* at Request 1.)

After being served with its subpoena, Pendl's trial counsel filed a motion to quash the subpoena in the Western District.

As a basis for subpoenaing trial counsel, Lexmark has suggested Pendl's assertion of the "advice of counsel" defense has waived privilege over certain communications reflecting Pendl's state of mind concerning the patent infringement claims.  However, Lexmark's actual intentions are apparent from the fact that at least three topics demanded by its subpoena <u>do not address or relate to such claims</u>.  (*See* Request 6 (antitrust claims); Request 7 (contract claims); Request 4 (program claims).)  Instead, Lexmark's subpoena blatantly attempts to "pillage" opposing counsel's litigation files and gain an advantage before this Court.  In addition, Lexmark served all other counsel of Pendl and all other trial counsel in this matter.  Lexmark also seeks to depose Pendl represantatives – presumably on the same broad topics listed in the subpoena served on law firms across the country.  A protective order is necessary to protect Pendl from the effects of these oppressive subpoenas and to prevent Lexmark's attempts to violate Pendl's lawful privileges.

## ARGUMENT

### I.    PENDL IS ENTITLED TO A PROTECTIVE ORDER BECAUSE THE SUBPOENA SEEKS INFORMATION PROTECTED BY THE COMMON INTEREST PRIVILEGE, ATTORNEY-CLIENT PRIVILEGE, AND WORK-PRODUCT DOCTRINE.

Rule 26(c) provides that the court in which an action is pending "may make *any* order which justice requires to protect a party or person from annoyance, embarrassment, oppression,

or undue burden or expense." Fed. R. Civ. P. 26(c). This includes requiring "that certain matters not be inquired into." *Id.*

### A. Pendl has not waived its attorney-client or work product privileges with Stites & Harbison

1. The Attorney-Client Privilege.

The Sixth Circuit has set forth the essential elements of the attorney-client privilege as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. *United States v. Goldfarb,* 328 F.2d 280, 281 (6th Cir.), *cert. denied,* 377 U.S. 976, 84 S. Ct. 1883, 12 L. Ed. 2d 746 (1964).

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. . . . Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981). Thus, when evaluating the attorney-client privilege, a court should begin its analysis with a presumption in favor of preserving the privilege. *In re Perrigo Co.*, 128 F.3d 430, 440 (6th Cir. 1997) (recognizing the client's right to assert the privilege and holding that it is "not within the power of the court or any party to waive the attorney-client privilege for the client.").

2. The Work Product Doctrine.

Work product "prepared in anticipation of litigation or for trial" is discoverable only upon a showing of substantial need of the privileged materials and inability, without undue

hardship, to obtain their substantial equivalent elsewhere. Fed. R. Civ. P. 26(b)(3). Rule

26(b)(3) specifically instructs that, *even where a showing of substantial need and inability to*

*discovery the information elsewhere is made*, the Court "shall protect against disclosure of the

mental impressions, conclusions, opinions, or legal theories of an attorney or other representative

of a party concerning the litigation." *Id.* Further, while in certain circumstances the attorney-

client privilege can be waived through inadvertent disclosure of the privileged information, the

work-product privilege is not easily waived. Thus, only under extraordinary circumstances

should a Court order that documents protected by the work product doctrine be produced. Fed.

R. Civ. P. 26(b)(3); s*ee also Hickman v. Taylor*, 329 U.S. 495, 510-13 (1947) ("Were [an

attorney's 'statements, memoranda, correspondence, briefs, mental impressions, personal

beliefs'] open to opposing counsel on mere demand, much of what is now put down in writing

would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.

Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal

advice and in the preparation of cases for trial.").

        3.    Pendl has not waived its attorney-client or work product privileges with
             Stites & Harbison or its other counsel

Pendl asserts its attorney-client and work-product privileges and therefore seeks a

protective order enjoining Lexmark's subpoena and instructing Lexmark to cease subpoenaing

its counsel and opposing trial counsel or to improperly seek discovery of such information from

Pendl representatives through deposition.. This protective order should further apply to the

entire subpoena, as each of Lexmark's subpoena requests and topics demand that Pendl's trial

counsel divulge its privileged communications and work product. (*See, e.g.,* Requests 1-7

(demanding all communications and documents between trial counsel and client.)) The requests

are not tailored for discovery of non-privileged information; indeed they specifically seek

privileged information related to each and every claim asserted in the litigation.  Lexmark should

know such communications are privileged.

Pendl has not waived any privilege over communications with its trial counsel or work

product produced by trial counsel by asserting its advice of counsel defense.  Waiver created by

the advice of counsel defense does not extend to litigation documents created in anticipation of,

or for use at, trial.  *See Intex Recreation Corp. v. Metalast*, Civ. No. 01-1213 (JDB), 2005 U.S.

Dist. LEXIS 10149, at *10 (D.D.C. March 2, 2005).  In fact, many courts hold that the waiver

applies only to communications and documents created ***before*** the filing of a lawsuit;

communications and documents created thereafter retain their privilege.  *See Dunhall Pharms. v.*

*Discus Dental*, 994 F.Supp. 1202, 1206 (C.D. Cal. 1998) ("Once the lawsuit is filed, the waiver

of work product protection ends."); *Motorolla v. Vosi Techs*., 2002 U.S. Dist. LEXIS 15655 at *2

(N.D. Ill. 2002).  Such a limitation "follows the enhanced interest" in protecting a party against

wholesale "disclosure of trial strategy and planning."  *Dunhill*, 994 F.Supp. at 1206.

Some courts find that the waiver extends beyond the filing of the lawsuit.  These courts

nevertheless limit post-filing discovery to ***non-litigation counsel***.  They continue to protect

litigation counsel and apply the privilege to their advice.  *See Tivo v. Echostar*, Civ. No. 2:04-

CV-1, 2005 U.S. Dist. LEXIS 42481, at **18-19 (E.D. Tex. Sept. 26, 2005) (denying discovery

into opinions by litigation counsel).  Even courts applying the most liberal and expansive form of

waiver still protect litigation files, limiting any production to litigation counsel opinions that

contradict the client's previous patent opinions.  *See Intex*, 2005 U.S. Dist. LEXIS at *15.  All of

these interpretations stand for the general premise that regardless of court's interpretation of

waiver, a party cannot – under the guise of discovery pursuant to an advice of counsel defense –

"pillage" its opponent's litigation files.  *In re Echostar*, 448 F.3d 1294, 78 USPQ2d 1676, at 1682 (Fed. Cir. 1996).

By seeking documents and testimony from Pendl's litigation counsel – and even seeking such discovery on topics wholly unrelated to the advice of counsel defense – Lexmark is attempting to do just that.  As noted, Pendl engaged Stites & Harbison **after** it was sued and solely as litigation counsel.  It has never obtained an opinion Stites & Harbison on the validity or infringement of any patent involved.  (Exh. 1 at ¶¶ 2-6.)  Stites & Harbison has further never offered an opinion as to the validity of Mr. Becker's opinion letter to Pendl, much less disagreed with it.  (*Id.* at ¶ 7.)  Instead, it has solely provided advice concerning litigation and trial strategy.  (*Id.* at ¶¶ 8-9.)  Requiring production from Pendl's trial would therefore be contrary to case law concerning potential waiver pursuant to the advice of counsel defense.

### B.    Pendl has not waived its co-counterclaim defendants' common interest privilege

1.    The Common Interest Privilege

The common interest privilege protects communications between the parties where they are "part of an on-going and joint effort to set up a common defense strategy" in connection with actual or prospective litigation.  *In re Bevill, Bresler & Schulman Asset Management*, 805 F.2d 120, 126 (3d Cir. 1986); see also *In re Grand Jury Subpoena*, 274 F.3d 563, 575 (1st Cir. 2001).

"The rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine."  *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990);  *see also Lugosch v. Congel*, 219 F.R.D. 220, 240 (N.D.N.Y. 2003) ("The exchange of work product among attorneys with identical litigation perspectives should not render such tangible information vulnerable to pretrial discovery.").

2.      Any alleged waiver of privilege by Pendl cannot extend to
        communications with the other counterclaim defendants counsel

Lexmark cannot succeed in any assertion that an alleged waiver of privilege by Pendl
would extend to communications with the other counterclaim defendants counsel.

*First,* any alleged waiver of privilege could not vitiate the common interest agreement the
co-defendants counsel entered into for trial preparation, years after Pendl received the legal
opinion that it now relies upon to refute willful infringement.  Lexmark's assertion that Pendl's
advice of counsel defense waives privilege as to all co-defendants is both wrong and completely
backwards; because the existence of the common interest agreement *prohibits* one party's
disclosure from waiving any other party's privilege.  *See, e.g., John Morrell & Co. v. Local
Union 304A of United Food and Commercial Workers*, *AFL-CIO*, 913 F.2d 544, 555-56 (8th Cir.
1990) (it is fundamental that joint defense privilege cannot be waived without consent of all
parties to the defense) (citing cases); *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-
129*, 902 F.2d 244 (4th Cir. 1990) (one participant in common interest privilege cannot
unilaterally waive privilege without consent of other participants in the privilege).

In particular, in the specific context of an advice of counsel defense, one co-defendant's
decision to raise the defense does not waive the privilege rights of his fellow co-defendants who
share a common-interest agreement to defend themselves in a litigation.  *Interfaith Housing
Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1402 (D. Del. 1994) ("[W]hen one of
two or more clients with common interests waives the attorney-client privilege in a dispute with
a third party [raising an advice of counsel defense], that one individual's waiver does not effect a
waiver as to the others' attorney-client privilege.")

*Second,* even in the absence of a joint defense privilege attaching under a common
interest agreement, a co-defendant's advice of counsel defense cannot waive privilege as to other

co-defendants. *See Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) ("[A] municipal official's assertion of the advice of counsel defense does not require the City [of Memphis] to relinquish the privilege it holds."); *AT&T Corp. v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8710 *20 (N.D. Cal. April 18, 2003) ("this court could not locate any precedent that allows a party in [a] litigation to waive the privilege claims of a third party through the assertion of an advice of counsel defense").

## II.    PENDL IS ENTITLED TO A PROTECTIVE ORDER BECAUSE THE SUBPOENA FAILS TO MEET MANDATORY PREREQUISITES FOR DEPOSING OPPOSING COUNSEL.

The subpoena also seeks to take the deposition of Pendl's trial counsel despite the fact that Pendl has not relied on any advice from trial counsel relating to the validity of any patent. Depositions of opposing counsel are disfavored. *RESQNET.com v. Lansa, Inc.*, 59 Fed. R. Serv. 3d (Callaghan) 122, 2004 U.S. Dist. LEXIS 13579, at * 5 (S.D.N.Y. July 23, 2004) (quoting *United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)).  Even "a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." *Id.* (citing *Alcorn Labs v. Pharmacia Corp.*, 225 F.Supp. 2d 340 (S.D.N.Y. 2002)).  Taking the deposition of opposing counsel not only "lowers the standards of the profession," but also "detracts from the quality of client representation." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987).  Counsel should instead be free to devote his or her time and efforts to preparing the client's case "without fear of being interrogated by his or her opponent." *Id.*

To address these concerns, the Sixth Circuit has adopted the strict test announced by the Eight Circuit in *Shelton*.  *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628-29 (6th Cir. 2002).  The *Shelton* test first states that opposing counsel cannot be deposed if the information being sought is privileged.  *Id.*  Where the information sought is non-privileged,

opposing counsel may still not be deposed unless (1) "no other means exists to obtain the information" and (2) "the information is crucial to the preparation of the case." *Id.* (citing *Shelton*, 805 F.2d at 1327).

Lexmark cannot meet any of these prerequisites. First, the information sought is privileged; Pendl has not waived his attorney-client and work-product protections. *See* II, *infra*.[2] Second, Lexmark cannot prove that no other means exist to discover the information. The deposition topics seek testimony on communications between Pendl and trial counsel, or Mr. Becker and Pendl. Lexmark can simply depose Pendl. Discovering the information from an alternate source is therefore not only possible, but convenient.[3] Third, Lexmark has not and cannot show that deposing Stites & Harbison is "crucial" to its case. Discovering opposing counsel's trial strategy is not appropriate, much less "crucial." Based on Lexmark's inability to meet any of *Shelton*'s prerequisites, this Court should enter a protective order enjoining Lexmark from deposing trial counsel.

## III.    A PROTECTIVE ORDER IS NECESSARY BECAUSE THE SUBPOENA DOES NOT PROVIDE A SUFFICIENT RESPONSE TIME, AND IS OVERLY BROAD, UNDULY BURDENSOME, AND SEEKS DUPLICATIVE DOCUMENTS.

A protective order is further necessary because of the subpoena's other deficiencies. A protective order is an appropriate remedy when the proposed discovery is unnecessary, imposes undue burden or expense, or is inefficient. *Rolex Watch, U.S.A. v. Crowley*, 74 F.3d 716 (6th Cir. 1996); *State of N.Y. v. United States Metal Refining Co.*, 771 F.2d 796, 805 (3rd Cir. 1985).

Pendl is entitled to a protective order because of multiple problems in Lexmark's subpoena. First, it allows only nine days for compliance. (Exh. 2 at 2.) This constitutes an

---

[2] Even if a waiver has occurred – which it has not – it would not apply to numerous topics included in the subpoena. (*See* Requests 4, 6, and 7.)

[3] As noted earlier, however, Stites & Harbison believes the subpoena topics are privileged and have not been subject to any waiver.

"undue burden" under Federal Rule 26(c).  *See* Fed. R. Civ. P. 26(c).  Second, the subpoena is

overly broad and, therefore, unduly burdensome.  For instance, it requests all documents and

testimony "relating to" the "subject matter" of a letter from August, 1999.  Not only is this

request vague, but it could be read to include all statutes and case law, as well as every document

ever written, on patent infringement.  As such the subpoena is overly burdensome and Pendl is

entitled to a protective order.  *See* Fed. R. Civ. P. 26(c)(stating that courts may enter any order

that justice requires to protect a party from oppression or undue burden or expense.)  Finally, the

subpoena seeks duplicative documents already sought from the appropriate party – Pendl.

Allowing an opposing litigant to serve discovery on a party and then subpoena its opposing

counsel for the same documents is wasteful.  Rule 26(c) is designed to protect parties from such

undue expense.  *See* Fed. R. Civ. P. 26(c).  Indeed, the subpoena not only unduly taxes the

counterclaim defendants, but also the resources of this Court, and the Western District.  For each

of these deficiencies protected under Rule 26(c), the Court should issue an order protecting Pendl

from the requests and deposition topics in the subpoenas to trial counsel.

## IV.  PENDL SHOULD BE AWARDED ATTORNEY FEES.

Rule 37 provides the Court with broad discretion to award reasonable attorney's fees

associated with filing a motion under Federal Rule 26(c).  *See* Fed. R. Civ. P. 37.  Any serious

consideration of the attorney-client privilege should have put Lexmark on notice that its

document requests and deposition topics were impermissible.  *See* I, *infra*.  Furthermore, a

superficial glance at the Sixth Circuit's prerequisites for deposing litigation counsel should have

put Lexmark on notice of the impropriety of their subpoena.  *See* II, *infra*.  Finally, regardless of

whether Lexmark may believe it has appropriate grounds to seek certain documents based on

Pendl's assertion of the advice of counsel defense, it is undeniable that it has sought documents

and testimony far exceeding that topic.  Given Lexmark's unnecessarily harassing and careless

approach to an issue that should be handled respectfully and carefully, Pendl should be awarded its attorney's fees in connection with this motion.

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should issue a protective order regarding Pendl's advice of counsel defense enjoining the enforcement of Lexmark's subpoenas issued regarding this defense and the deposition of Pendl representatives.  Seeking all privileged material on all claims related to a litigation is not only contrary to law, but is also reprehensible and detrimental to the litigation process.  This Court should not tolerate its litigants from seeking – under the guise of an advice of counsel defense – all privileged material on each and every topic of a litigation.

Respectfully submitted,

Dated:  November 3, 2006

/Joel T. Beres/
Joel T. Beres
Jack A Wheat
Jennifer L. Kovalcik
William Charles Ferrell, Jr.
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202-3352

James R. Michels
STITES & HARBISON, PLLC
424 Church Street
Suite 1800
Nashville, TN 37219

Daniel E. Danford
Elizabeth L. Thompson
STITES & HARBISON, PLLC
250 W. Main Street
2300 Lexington Financial Center
Lexington, KY  40507

**Attorneys for Pendl Companies, Inc.**

# CERTIFICATION

I hereby certify that a copy of the foregoing was filed electronically this 3rd day of November 2006, and will be served electronically to designated counsel through the Court's electronic filing system and via U.S. Mail, postage prepaid to:

Stanley L. Amberg
11 Carolyn Lane
Chappaqua, NY 10514

Nanci Marian House
White, McCann & Stewart
125 South Main Street
P.O. Box 578
Winchester, KY 40392-578

Christopher Lee
7475 Wisconsin Avenue
Suite 300
Bethesda, MD 20814

Robert F. Altherr
Banner & Witcoff, LTD - DC
1001 G Street, N.W.
Suite 1100
Washington, DC 20001

BY:    /Joel T. Beres/
       One of Counsel for Pendl Companies, Inc.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STATIC CONTROL COMPONENTS, INC.,

    PLAINTIFF/COUNTERCLAIM
    DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.,

    DEFENDANT/COUNTERCLAIM
    PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

    COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.

    COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

    COUNTERCLAIM DEFENDANT

|  |
|---|
| WESTERN DISTRICT OF KENTUCKY CIVIL ACTION NO. _____ |
| Civil Action No. 04-CV-84-GFVT Pending in United States District Court Eastern District of Kentucky Honorable Gregory F. Van Tatenhove |

**DECLARATION OF JOEL T. BERES**

I, Joel T. Beres, declare as follows:

1.    I am a Member of Stites & Harbison, PLLC and lead trial attorney representing

Pendl Companies, Inc. ("Pendl") Civil Action No. 04-CV-84-GFVT currently pending in United

States District Court for the Eastern District of Kentucky.

2. After receiving Lexmark's Counterclaim, Pendl retained the law firm of Stites & Harbison as trial counsel for its defense.

3. Stites & Harbison had never performed legal work of any kind for Pendl before this retention.

4. Stites & Harbison was retained and has served solely as Pendl's trial counsel in this matter.

5. The retention agreement between Stites & Harbison and Pendl limits Stites & Harbison's representation to defending Lexmark's suit.

6. Stites & Harbison has never provided Pendl advice as to validity of any Lexmark patent.

7. Stites & Harbison has never provided advice on the validity of Mr. Robert Becker's advice in 1999, which forms the basis for Pendl's advice of counsel defense.

8. Each and every communication between Stites & Harbison and Pendl has been limited to discussions of litigation or trial strategy.

9. Each and every document provided to Pendl has similarly dealt solely with such litigation and trial strategy.


I make this declaration under penalties of perjury pursuant to 28 US.C. § 1746, and I state that the facts set forth herein are true.


J. Beres
Joel T. Beres

Dated: October 30, 2006

Exhibit 4

Issued by the

# United States District Court
### WESTERN DISTRICT OF KENTUCKY

SUBPOENA IN A CIVIL CASE

Static Control Components, Inc.
    Plaintiff/Counterclaim Defendant

v.

Lexmark International, Inc.
    Defendant/Counterclaim Plaintiff

v.

Wazana Brothers International, Inc.
d/b/a Micro Solutions Enterprises
    Counterclaim Defendant

v.

Pendl Companies, Inc.
    Counterclaim Defendant

v.

NER Data Products, Inc.
    Counterclaim Defendant

Civil Action No. 04-CV-84-GFVT
Pending in United States District Court,
Eastern District of Kentucky
Honorable Gregory F. Van Tatenhove

To: **Stites & Harbison PLLC**
    Attn: Joel T. Beres
    400 West Market Street, Suite 1800
    Louisville, Kentucky 40202

_____   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time
specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

**__X__** YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case pursuant Fed. R. Civ. P. 45. See Exhibit B for the deposition topics.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Courtyard by Marriott<br>100 South 2nd Street<br>Louisville, Kentucky 40202<br>(or other mutually agreeable location) | November 2, 2006 at 9:00 a.m. |

**__X__** YOU ARE COMMANDED to produce and permit inspection and copying of documents or things at the place, date, and time specified below. See Exhibit A for the requests for documents and things.

| PLACE | DATE AND TIME |
| --- | --- |
| Banner & Witcoff, Ltd.<br>10 South Wacker Drive<br>Suite 3000<br>Chicago, Illinois 60606<br>(or other mutually agreeable location) | October 27, 2006 at 9:00 a.m. |

**_____** YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)<br>Attorney for Defendant/Counterclaim Plaintiff, Lexmark International, Inc. | Date<br>October 18, 2006 |
| --- | --- |
| Issuing Officer's Name, Address, and Phone Number<br>Jason S. Shull, Banner & Witcoff, Ltd., 10 South Wacker Drive, Suite 3000, Chicago, Illinois, 60606, (312) 463-5000 | |

## PROOF OF SERVICE

| | DATE | | PLACE | |
| --- | --- | --- | --- | --- |
| SERVED | | | | |
| SERVED ON (PRINT NAME) | | | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | | | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

| Executed on: _____<br>DATE | Signature of server: |
| --- | --- |
| | Address of server: |

## Rule 45, Federal Rule of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUB-POENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

Pursuant to Federal Rule of Civil Procedure 45 and directed by the subpoena attached hereto, which has been issued by the Western District of Kentucky, you are requested to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control. With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

### DEFINITIONS

1.    The term "Stites & Harbison" means Stites & Harbison PLLC, its past and current employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Stites & Harbison is or was doing business, its predecessors, directors, officers, employees, agents, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Joel T. Beres, Jack A. Wheat, Jennifer L. Kovalcik, William Charles Ferrell, Jr., and James R. Michels.

2.    The term "Lexmark" means Lexmark International, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Lexmark is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

3.    The term "Pendl" means Pendl Companies, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name

under which Pendl is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Robert D. Becker (the author of the letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1)).

4.     The term "Lexmark's Patents" means U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231, 5,758,233, 5,768,661, 5,802,432, 5,804,114, 5,874,172, 5,875,378, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,009,291, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,459,876, 6,487,383, 6,492,083, D399,249, and D458,300.

5.     The term "Prebate Program" means and refers to Lexmark's Prebate program for the sale of certain Lexmark toner cartridges that are sold at a special price subject to a restriction that the cartridge be used only once and returned only to Lexmark. Lexmark's Prebate program was renamed the "Lexmark Return Program" on April 22, 2003.

6.     The terms "document" or "documents" mean anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, electronic or electrical means whatsoever, including without limitation, memoranda, correspondence, electronic mail, electronic data compilations, notes, books, records, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints, maps, plats, surveys, drawings, sketches, graphs, charts, plans, laboratory or

engineering reports, notebooks, worksheets, reports, lists, analyses, summaries, ledger accounts, audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registration, solicitations, minutes, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agenda, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, instrument assignments, applications, offers, acceptances, proposals, financing statements, documents of title, appraisals, purchase orders, invoices, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, x-rays, video or audio tapes and recordings.

7.     The terms "thing" or "things" mean any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

8.     The term "relating to" means alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

9.     "And," "or," as well as "and/or," shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

10.    The terms "any" and "all" shall be read to mean each and every.

11.    The term "person" means a natural or judicial person, including any corporation, proprietorship, partnership, agency, or business association of any type.

## INSTRUCTIONS

1.     In producing documents and things responsive to these requests, Stites & Harbison shall furnish all documents and things within its possession, custody or control, as they

are kept in the ordinary course of business or they shall be organized and labeled to correspond with the document requests to which they are responsive, regardless of whether these documents and things are possessed directly by Stites & Harbison or by its present or past agents, employees, companies, licensees, representatives, investigators, or attorneys.

2.    If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)    the specific ground(s) for not producing the document or thing in full;

(b)    the basis for such a claim of privilege or immunity and the facts supporting that basis; and

(c)    fully identify the information or material contained within the document or thing for which such privilege or immunity is asserted, including as applicable, the name of any document or thing; its date; the name, address and job title of each author or other person involved in its preparation, each addressee and each person to whom a copy of the document or thing has been sent or received; and the general nature of the document or thing (e.g., memoranda, letter).

3.    Where an objection is made to a request, state all grounds upon which Stites & Harbison's objection is based.

4.    If, after exercising due diligence, Stites & Harbison is unable to determine the existence of any documents or things falling within a specific request, Stites & Harbison shall so state in its written response.

5.    With respect to each of the following requests, Stites & Harbison shall identify and/or produce all documents which are known to it or which can be located or discovered by Stites & Harbison through diligent effort on Stites & Harbison's part, including, but not limited to, all documents which are in the business or personnel files of Stites & Harbison employees or contained or stored within a computer in the possession of Stites & Harbison or its representatives, attorneys, or accountants, or accessible to Stites & Harbison, its employees, or its representatives, attorneys, or accountants.

6.    Whenever used herein, the singular shall be deemed to include the plural and the plural shall be deemed to include the singular and the disjunctive shall be deemed to include the conjunctive and the conjunctive shall be deemed to include the disjunctive so as to elicit all information potentially responsive to the request for production and all of its context.

### REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:**    All documents and things relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1).

**Request No. 2:**    All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999.

**Request No. 3:**    All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Request No. 4:**    All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Request No. 5:**    All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to communications with Pendl regarding the infringement of Lexmark's Patents.

**Request No. 6:**    All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Request No. 7:**    All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Request No. 8:**    All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Request No. 9:**    All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

## EXHIBIT B

The definitions set forth in Exhibit A are incorporated herein by reference.

### DEPOSITION TOPICS

**Deposition Topic No. 1:**    Communications between Stites & Harbison and Pendl relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999.

**Deposition Topic No. 2:**    Communications between Stites & Harbison and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Deposition Topic No. 3:**    Communications between Stites & Harbison and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Deposition Topic No. 4:**    Communications between Stites & Harbison and Pendl relating to the infringement of Lexmark's Patents.

**Deposition Topic No. 5:**    Communications between Stites & Harbison and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 6:**    Communications between Stites & Harbison and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 7:**    Communications between Stites & Harbison and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Deposition Topic No. 8:**    Communications between Stites & Harbison and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION
# CASE NO. 04-cv-84-GFVT

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC. | PLAINTIFF/<br>COUNTERCLAIM DEFENDANT |
| v. | |
| LEXMARK INTERNATIONAL, INC. | DEFENDANT/<br>COUNTERCLAIM PLAINTIFF |
| v. | |
| WAZANA BROTHERS INTERNATIONAL, INC.<br>d/b/a MICRO SOLUTIONS ENTERPRISES | COUNTERCLAIM DEFENDANT |
| v. | |
| PENDL COMPANIES, INC. | COUNTERCLAIM DEFENDANT |
| v. | |
| NER DATA PRODUCTS, INC. | COUNTERCLAIM DEFENDANT |

*** *** *** *** *** *** *** *** ***

## ORDER

Having reviewed and considered Stites & Harbison's motion for a protective order regarding Pendl's advice of counsel defense, all papers filed in connection with the Motion, and the argument of counsel;

IT IS HEREBY ORDERED that the motion for a protective order be and hereby is **GRANTED;**

IT IS HEREBY FURTHER ORDERED that Stites & Harbison be and hereby is awarded its attorney's fees in connection with this dispute and Pendl shall submit an affidavit detailing these fees at which such time the amount awarded shall be determined.

Tendered by:


  /Joel T. Beres/                   
Joel T. Beres
STITES & HARBISON, PLLC
400 W. Market St., Suite 1800
Louisville, Kentucky  40202
Telephone:  (502) 587-3400
Facsimile:  (502) 587-6391
Attorney for Stites & Harbison

# EXHIBIT M

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## AT LEXINGTON
## CASE NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.                        PLAINTIFF/
                                              COUNTERCLAIM DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.                           DEFENDANT/
                                              COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.           COUNTERCLAIM DEFENDANT
d/b/a MICRO SOLUTIONS ENTERPRISES

v.

PENDL COMPANIES, INC.                         COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.                       COUNTERCLAIM DEFENDANT

****************************

## LEXMARK INTERNATIONAL, INC.'S OPPOSITION TO PENDL'S MOTION FOR PROTECTIVE ORDER REGARDING PENDL'S ADVICE OF COUNSEL DEFENSE

Defendant and Counterclaim Plaintiff Lexmark International, Inc. ("Lexmark") opposes Pendl Companies, Inc.'s ("Pendl") motion for protective order regarding Pendl's advice of counsel defense. Lexmark asserts that Pendl Companies, Inc. ("Pendl") willfully infringed and continues to willfully infringe Lexmark's patents. In an attempt to argue that any infringement by Pendl of Lexmark's patents, including Pendl's ongoing infringement, was and is somehow not willful, Pendl recently decided to rely on a legal opinion from one of its attorneys ("the Becker opinion") (Exhibit G). This opinion broadly covers a wide range of topics, including the validity and enforceability of Lexmark's Prebate program (discussed below) in view of patent, contract, and antitrust laws. Because Pendl has asserted its advice-of-counsel defense, Pendl

automatically waived its claim for privilege and/or work product for **all** such communications (including those with trial counsel) regarding the subject matter of the Becker opinion.

Pendl seeks to use the advice it received as both a sword (by waiving privilege to allegedly favorable advice) and a shield (by asserting privilege to unfavorable advice). To prevent this inequitable result, however, the Federal Circuit has recently affirmed the notion that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to **all** such communications regarding the same subject matter. *In re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006). Post-*Echostar*, district courts have also confirmed that *the scope of the waiver extends to pre-suit and post-suit communications and to communications on the same subject matter between the client and its counsel, including litigation counsel*. The inquiry is focused therefore on the **subject matter** of the communications, not the timing or authors of them. Significantly, the Magistrate recently reached the same conclusion regarding a similar waiver by Pendl's co-defendant, Static Control Components, Inc. ("Static Control"). *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2006 U.S. Dist. LEXIS 40612 (E.D. Ky., June 15, 2006) (Docket Entry No. 335).

In short, Lexmark is entitled to discovery of the entire scope of the subject matter that Pendl waived by virtue of now seeking to rely on the Becker opinion. Rather than promptly provide this discovery (and minimize the prejudice of delay already suffered by Lexmark), Pendl decided to unilaterally stall discovery and seek by its motions a protective order and bifurcation. In doing so, Pendl has stalled Lexmark's ability to taking any of the following discovery: (1) depositions of Pendl representatives receiving the advice of counsel, Gary Pendl and Randy Pendl; (2) document discovery relating to the subject matter waived by Pendl relating to the

Becker opinion; (3) document and deposition discovery of Pendl's opinion counsel, Mr. Robert

Becker and his law firm; and (4) document and deposition discovery of Pendl's trial counsel.

Pendl's Motion for Protective Order therefore be denied and Pendl and its counsel should

be ordered to immediately provide the discovery relating to its advice of counsel defense.[1]

## I.    PENDL BELATEDLY ASSERTED AN ADVICE-OF-COUNSEL DEFENSE TO ARGUE THAT ANY PATENT INFRINGEMENT BY PENDL WAS SOMEHOW NOT WILLFUL

From the inception of its claims against Pendl, Lexmark asserted that Pendl willfully

infringed and continues to willfully infringe Lexmark's patents-in-suit.  In addition, *nearly 15*

*months ago*, on August 25, 2005, Lexmark requested Pendl to produce "all documents and things

relating to Pendl's reliance, if any, on the advice of counsel as a defense to the charge of willful

infringement."  (Exhibit A, Request for Production No. 48).  Pendl refused to produce documents

in response to Lexmark's request on the basis that the request sought documents that are

protected from discovery by the attorney-client privilege and/or work product doctrine.  (Exhibit

B, pp. 39-40).

Furthermore, on October 2, 2006, during the deposition of Pendl's CEO, Gary Pendl,

counsel for Pendl represented on the record that Pendl had not pled the advice of counsel

defense:

> Mr. Patel: And, Mr. Beres, you are not asserting the advice of counsel defense in this case; is that correct?

---

[1] The basis for Pendl's motion is curious because Pendl, through its counsel Stites & Harbison ("Stites"), claims that Stites lawyers have never given any advice to Pendl regarding the validity of Lexmark's patents or the validity of legal advice conveyed in the Becker opinion.  Mr. Beres further states that each and every communication the Stites firm has had with Pendl has been limited to "litigation or trial strategy."  First, it stains credibility to think that Stites has never communicated with its client the merits of Lexmark's patent infringement claims.  Second, if Stites' claims were somehow true, it would have entirely obviated the instant motion.  As counsel for Lexmark has already conveyed to counsel for Stites, Lexmark does not seek discovery of litigation or trial strategy.  Instead, Lexmark seeks that to which it is entitled to under *In re Echostar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006), namely communications relating to the subject matter of the Becker opinion.  The fact that Pendl nonetheless filed its motion suggests that Stites has in fact communicated with Pendl regarding subject matter falling within the scope of the waiver.

> Mr. Beres:  I do not believe that's been pled at this time with respect to a prebate agreement or with respect to -- at this point I do not believe it's an affirmative defense that's been pled.
> Mr. Patel:  With respect to the prebate agreement or with respect to patent infringement issues?
> Mr. Beres:  Correct.

(Exhibit C, p. 70, line 19 – p. 71, line 5).  On October 6, 2006, Lexmark requested all defendants to promptly make a decision as to whether or not they would rely on the advice of counsel defense.  (Exhibit D).  On October 12, 2006, after hiding behind the shield of the attorney-client privilege for nearly 15 months, counsel for Pendl, the Stites & Harbison firm ("Stites"), stated:

> We carefully considered your request regarding Pendl's assertion of the advice of counsel defense.  Please be advised that Pendl will be relying at trial on advice of counsel as one of its defenses to Lexmark's claim of willful patent infringement.  In addition to all other documents previously produced in this matter, we will also produce to you a copy of the opinion of counsel tomorrow as requested in your recent letter.

(Exhibit E).

Pendl produced its opinion of counsel (referred to as the Becker Opinion) on October 13, 2006, thereby waiving any claim to privilege and/or word product pertaining to the subject matter of that opinion.  *In re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006).  In addition, Pendl's counsel represented that would provide additional discovery pertaining to its advice of counsel defense.  Specifically, counsel for Pendl wrote: "We are already working on supplementing the production and checking dates for Randy Pendl's deposition.  As mentioned when I saw you in Chicago, we will also make Gary Pendl available for additional questioning . . . ."  (Exhibit F).

Despite its representations, Pendl's counsel has failed to produce any other additional documents or provide deposition discovery relating to its advice of counsel defense.  Instead, with the close of discovery in the case rapidly approaching, Pendl and its counsel – including

Stites – continue to obstruct discovery by seeking a protective order from such further discovery. Equally troubling, Static Control and its counsel have taken the same position as Pendl, and refuse to produce communications between Static Control and Pendl relating to the same subject matter each has waived.

After hiding behind its privilege shield for well over a year, Pendl now attempts via its motion to bifurcate and stay discovery to benefit from its delay. Pendl infers that it is too burdensome at this late date to resolve discovery disputes relating to Pendl's advice of counsel – yet Pendl ignores that it was *Pendl's eleventh-hour decision to assert the advice of counsel* that precluded resolution of such disputes sooner in the litigation.

## II.    PENDL WAIVED IMMUNITY ONCE IT DECIDED TO ASSERT THE ADVICE OF COUNSEL DEFENSE

Is it well settled that when a party voluntarily discloses privileged communications to a third party, that disclosing party waives its attorney-client privilege and work product immunity protections for all documents on the same subject matter. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302-07 (6th Cir. 2002). It is also well established that when a party puts its counsel's advice at issue in a case, that party waives attorney-client privilege and work product protections with respect to the subject matter of that advice. *In re Powerhouse Licensing*, 441 F.3d 467 473 (6th Cir. 2006) ("[C]ertain statements contained in the affidavit represented opinions . . . that go to the heart of the legal claims at issue. By including these communications in the affidavit, counsel for petitioners effectively waived the attorney-client privilege.").

Similarly, the Federal Circuit has long held that "[o]nce a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived." *In re Echostar Communications Corp.*, 448 F.3d 1294,

1299 (Fed. Cir. 2006).[2]  "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Id.*, citing *James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005).  This rule of law is necessary to prevent the "inequitable result that the waiving party could use the attorney-client privilege as both a sword and a shield by selectively waiving only favorable advice, and asserting privilege on unfavorable advice regarding the same subject matter." *Id. at 1301*.

Thus, "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to ***all*** such communications [whether written or oral] regarding the same subject matter." *Id.* at 1301 (emphasis added).  The alleged infringer "waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused." *Id.* at 1304.  "This waiver … includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client." *Id.*

Here, it is undisputed that Pendl asserts an advice-of-counsel defense.  Under *Echostar*, Pendl automatically waived immunity for any document or opinion that embodies or discusses a

---

[2] *See, e.g., In re EchoStar, 448 F.3d at 1299 ("[W]hen EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel"); Fort James Corp v. Solo Cup Co.*, 412 F.3d 1340, 1350-51 (Fed. Cir. 2005) (finding that the disclosure of counsel's legal advice in a development engineering report waived the attorney-client privilege for other documents on the same subject matter); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (finding attorney-client privilege waived when party "retained the attorneys primarily for the commercial purpose of obtaining written tax opinions to include in their coal lease promotion brochures rather for their own guidance"); *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98, 104 (S.D.N.Y. 2004) (attorney-client privilege waived "with respect to all communications not only with [opinion counsel], but also with its other attorneys, including trial counsel, concerning the subject matter of [the legal opinion]"); *Union Pac. Res. Co. v. Natural Gas Pipeline Co.*, Case No. 90 C 5378, 1991 WL 105505, at *4 (N.D. Ill. June 10, 1991)("The circumstances of UPR's 1985 disclosure dictate that it has waived the attorney-client privilege as to not only the documents it produced in 1985, but as to all others on the same subject matter.").

communication to or from it concerning the subject matter of the Becker Opinion.  *Id.* at 1304.

Pendl's waiver includes not only any letters, memorandum, conversation, or the like between

Pendl's counsel and Pendl, but also includes, when appropriate, any documents referencing a

communication between Pendl's counsel and Pendl.  *Id.*

### A.  Waiver of Privilege and Work Product Applies to Litigation Counsel

Pendl's argument that it has not waived any privilege over communications with its trial

counsel by asserting the advice of counsel defense has no merit.[3]  Pendl's motion entirely ignores

the Federal Circuit's recent decisions *In re Echostar Communications Corp.*, 448 F.3d 1294

(Fed. Cir. 2006) and *James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005), *supra*,

govern here.[4]  The Federal Circuit held in *Echostar* that waiver of opinions ***does extend*** to advice

and work product given after litigation began "when the advice is relevant to relevant to ongoing

willful infringement, so long as that ongoing infringement is at issue in the litigation."  *In re*

*Echostar Communications Corp.*, 448 F.3d at 1303, citing with approval *Akeva LLC,* 243 F.

Supp. 2d 418, 423 (M.D.N.C. 2003) ("Once a party asserts the defense of advice of counsel, this

opens to inspection the advice received during the entire course of the alleged infringement."),

and *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1351-

1353 (Fed. Cir. 2001) (noting that an infringer may continue its infringement after notification of

the patent by filing suit and that the infringer has a duty of due care to avoid infringement after

such notification).  Here, Lexmark asserts ongoing willful infringement by Pendl.

---

[3] To be clear, Lexmark is not seeking litigation or trial strategy from Pendl's counsel.  But its Pendl's waiver applies to many other documents and/or information that does not constitute litigation or trial strategy.  For example, Pendl's communications with its counsel (litigation or otherwise) regarding the enforceability Lexmark's patents has been waived by Pendl and is discoverable.  Pendl's communications with Stites regarding which witnesses to use to present Pendl's case of patent unenforceability is litigation or trial strategy that Lexmark does not seek.

[4] The district court cases cited by Stites, *i.e., Intex Recreation Corp. v. Metalast*, Civ. No. 01-1213 (JDB), 2005 U.S. Dist. LEXIS 10149 (D.D.C. March 2, 2005), *Dunhall Pharms v. Discus Dental*, 994 F. Supp. 2d 1202 (C.D. Cal. 1998), and *Motorolla v. Vosi Techs.*, 2002 U.S. Dist. LEXIS 15655 (N.D. Ill. 2002), all pre-date the Federal Circuit's decisions in *Echostar* and *James Corp.* and therefore are not controlling.

The *Echostar* Court's favorable citing to *Akeva* is particularly important here.  In *Akeva*, the court held that "all opinions received by the client relating to infringement must be revealed, ***even if they come from defendants' trial attorney***."  243 F. Supp. 2d at 423 (emphasis added).  While *Echostar* did not involve trial counsel, the supporting citation to *Akeva* in describing the scope of the waiver, together with the reasoning of the *Echostar* Court shows Pendl's waiver extends to ***all*** attorneys who provided advice to Pendl on whether each of Lexmark's asserted patents is valid, enforceable, or infringed by Pendl.  Such advice includes the scope, validity and/or enforceability of Lexmark's Prebate Program.  In short, ***the scope of the waiver extends to pre-suit and post-suit communications and to communications on the same subject matter between Pendl and all other counsel, including Pendl's litigation counsel.***

Pendl's arguments to the contrary are fundamentally at odds with the principal purpose of the waiver doctrine, which is to protect against the unfairness that would result from a party selectively disclosing legal advice for its own benefit, revealing only the advice that supports its cause while claiming the shelter of privilege to avoid disclosing other advice on the same subject matter that is less favorable.  *See, e.g., In re EchoStar*, 448 F.3d at 1301 ("However, selective waiver of the privilege may lead to the inequitable result that the waiving party could waive privilege for favorable advice while asserting its privilege on unfavorable advice.  In such a case the party uses the attorney-client privilege as both a sword and a shield.  To prevent such abuses we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.") (citing *XYZ Corp v. United States*, 348 F.3d 16, 24 (1st  Cir. 2003) and *Fort James Corp.*, 412 F.3d at 1349).

Pendl is intending to rely on the Becker opinion to argue that any patent infringement by Pendl was somehow not willful.  Because Pendl deliberately chose to create a dispute with Lexmark based upon the Becker opinion, fairness dictates that Lexmark be allowed to access all documents, from any counsel at any time period, discussing, casting doubt, or contradicting all subject matter contained in that opinion.  It would be fundamentally unfair to permit Pendl to disclose favorable legal opinions, but yet allow Pendl to protect unfavorable communications that go to the heart of Lexmark's patent infringement allegations under the guise of the attorney-client privilege and/or work product immunity.

Significantly, Pendl fails to cite a single Federal Circuit case that holds waiver does not extend to advice of litigation counsel when that advice is relevant to ongoing willful infringement at issue in the litigation.  Pendl ignores that district courts applying the Federal Circuit holdings in *Echostar* have held that waiver extends to advice of litigation counsel when the advice is relevant to ongoing willful infringement at issue in the case.

### 1. This Court Has Already Found Waiver to Extend to Litigation Counsel

The Magistrate in the present case has already ruled in a similar manner against Pendl's co-defendant Static Control Components, Inc ("Static Control").  *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2006 U.S. Dist. LEXIS 40612 (E.D. Ky., June 15, 2006) (Docket Entry No. 335).  The Magistrate ruled that Static Control waived the attorney/client and work product privileges for all documents pertaining to Lexmark's Prebate program.  *Id.* at Slip Op. 20-23.[5]  The Magistrate in the underlying case ordered Static Control "to produce *all documents*, both privileged and non-privileged, relating to Static Control's efforts to defeat

---

[5] Static Control has filed objections to the Magistrate's decision, and those objections are currently pending.

Lexmark's Prebate program." *Id.* at Slip Op. 23. The Magistrate's Order does not exclude waiver with respect to litigation counsel.

**2.     Pendl's Litigation Counsel – Stites – has Been Ordered to Produce Similar Waived Documents in at Least one Other Litigation**

Indeed, in one recent district court case wherein Pendl's counsel Stites was initial litigation counsel for an accused infringer (Union Rich) who asserted the advice-of-counsel defense, a subpoenaed Stites attorney (Ms. Mandy Decker) was ordered to produce: "All documents that reflect communications (including all electronic communications) between Ms. Decker and Union Rich that relate to the scope, validity, infringement, and/or enforceability of the [asserted] patents, including any and all attorney notes, summaries, documents and drafts of documents related to the same subject matters and that embody or discuss a communication between Ms. Decker and Union Rich." *Outside The Box Innovations, LLC, d/b/a Union Rich USA v. Travel Caddy, Inc. et al.,* 2006 U.S. Dist. LEXIS 74060 (N.D. Ga., October 5, 2006) (a copy of this case is attached as Exhibit H).

The *Union Rich* court also ordered "Any such document that includes Ms. Decker's opinions or mental impressions never communicated to Union Rich may be redacted to exclude those uncommunicated portions." *Id.* The district court also ordered "Ms. Decker may redact any information that she considers solely related to trial strategy." *Id.*

The district court also ordered "Furthermore, consistent with the *Echostar* holding, the overall scope of Union Rich's waiver in relying on the advice-of-counsel defense includes:

> Any document or opinion that embodies or discusses a communication to or from Union Rich concerning whether the [asserted] patents are valid, enforceable, and infringed by Union Rich, ***regardless of the counsel involved***, and ***regardless of the date***. Any such document or opinion that falls within the scope of the waiver, but which includes opinions or mental impressions never communicated to Union Rich, may be redacted to exclude those uncommunicated portions. Union Rich

10

may redact any information that it considers solely related to trial strategy." *Id* (emphasis added).

Lexmark requests a similar Order issue in the present case. *See* Lexmark's Proposed Order concurrently filed herewith.

### 3. Static Control's Litigation Counsel – McDermott – Also Has Been Ordered to Produce Similar Waived Documents in at Least One Other Litigation

In one recent district court case wherein Static Control's litigation counsel McDermott, Will & Emery ("MWE") was litigation counsel for an accused infringer (Seagate) who asserted the advice-of-counsel defense, it was held that waiver applied to MWE. *Convolve, Inc. v. Compaq Computer Corp. and Seagate Technology, Inc.*, 2006 U.S. Dist. LEXIS 69425 (S.D.N.Y., September 27, 2006), denying interlocutory appeal of Magistrate's Memorandum and Order reported at 224 F.R.D. 98 (S.D.N.Y., May 28, 2004).

In *Convolve,* MWE's client Seagate placed at issue the advice of its opinion counsel (Mr. Sekimura). The Magistrate held that "Seagate has therefore waived the privilege with respect to all communications not only with Mr. Sekimura, but also with its other attorneys, ***including trial counsel***, concerning the subject matter of Mr. Sekimura's advice." 224 F.R.D. at 104 (emphasis added). The Magistrate held that "trial counsel's advice that undermines the reasonableness of the client's reliance on advice of opinion counsel must be disclosed even if it is communicated in the context of trial preparation." *Id.* The Magistrate held that "to the extent that Seagate wishes to withhold or redact documents that would reveal trial strategy or planning, it shall submit those documents for my in camera review." *Id.*

With respect the waiver of attorney-client communications, the Magistrate held:

For the foregoing reasons, the plaintiffs' motion with respect to Seagate's waiver of the attorney-client privilege is granted. Seagate shall produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, ***including trial***

11

*counsel*, with respect to the subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '*635*, '*267*, and '*473* patents. The time period of the waiver runs from the time Seagate became aware of the patents at issue and continues until such time as Seagate's alleged infringement ends. Any communications between Seagate and its trial counsel concerning the subject matter of Mr. Sekimura's opinions that also relate to trial strategy or planning shall be submitted for my review. 224 F.R.D. at 105. (emphasis added) (footnote omitted).

With respect to waiver of work product, the Magistrate held:

[T]he communicated work product of any of Seagate's attorneys is discoverable under Seagate's waiver of the attorney-client privilege. Such communicated work product shall include materials disclosing the fact or substance of Seagate's (or in-house counsel's) communications with any outside counsel; accordingly, this order encompasses the plaintiffs' request for "documents reflecting oral communications . . . between [Seagate] and outside counsel" that relate to the subject matter of the Sekimura opinions. 224 F.R.D. at 107. [6]

Similarly, other district courts have applied the holdings of *Echostar*. *See Computer Associates International, Inc. v. Simple.com, Inc.,* 2006 U.S. Dist. LEXIS 77077 (E.D.N.Y., October 23, 2006). In *Computer Associates*, ongoing infringement was at issue, and the accused infringer (Computer Associates, "CA") chose to rely on advice of counsel from one firm (Cooper & Dunham), but refused to produce any communications between it and its litigation counsel (Heller Ehrman or its prior trial counsel) claiming attorney-client privilege. The district court adopted a Report and Recommendation of a Special Master, and granted the patent owner's motion to compel. In its ruling, the district court relied on the Federal Circuit's holdings in *Echostar*. The district court held that the "Special Master's holding that the waiver extends to trial counsel is consistent with *Echostar*." Slip op. at 12-13. The district court held that "excluding trial counsel from the scope of the waiver would permit a party to use the attorney-

---

[6] The District Court denied Seagate's motion to overrule the Magistrate Judge's decision. The District Court also denied Seagate's motion to certify the issue for interlocutory appeal. Seagate has now filed a Petition with the Federal Circuit for a Writ of Mandamus. Static Control's counsel are well aware of the District Court's application in *Convolve* of the holdings in *Echostar*, including the waiver extending to litigation counsel.

client privilege as both a sword and shield by allowing a party to choose which opinions are disclosed and which are not." *Id.* The district court held that "[l]itigation strategy and advice of counsel are not the same and the Special Master's Recommendation recognized the difference by providing CA an opportunity to submit materials for his *in camera* review. Slip op. at 14.

In sum, district courts, post-*Echostar*,[7] have held that waiver extends to litigation counsel. Pendl elected to inject the Becker opinion as part of its defense in this case – Pendl should not be allowed to produce only the privileged information which it deems helpful, and to withhold the rest. Equity compels a finding that Pendl waived its attorney-privilege and work product protections without any temporal limitations or limitations as to counsel.

## III. LEXMARK'S SUBPOENAS TO COUNSEL SEEKS DISCOVERY OF THE VERY SUBJECT MATTER THAT PENDL WAIVED

Lexmark's subpoenas to counsel seek discovery of Pendl's communications with counsel regarding the same subject matter as the opinion of counsel that was expressly waived by Pendl. Pendl's expressly waived opinion of counsel includes attorney Robert Becker's statement to Randy Pendl:

**REDACTED**

---

[7] Pendl argues that in the *Echostar* case, the district court denied discovery into opinions by litigation counsel. Pendl is wrong. In *Tivo v. Echostar,* Civ. No. 2:04-CV-1, 2005 U.S. Dist. LEXIS 42481, at **16-19 (E.D. Tex. Sept. 26, 2005) the district court discussed the extent of waiver with respect to post-filing communications and stated "Where documents or communications may contain both information related to the advice of counsel defense as well as information related solely to trial strategy, in camera review may be necessary." As noted in *Computer Associates*, "*EchoStar* did not involve trial counsel. However, the *EchoStar* Court, in describing the scope of the waiver of the attorney-client privilege, cited favorably to *Akeva,* wherein the Court held that 'all opinions received by the client relating to infringement must be revealed, even if they come from defendants' trial attorney.' 243 F. Supp. 2d at 423." *Computer Associates International, Inc. v. Simple.com, Inc.,* 2006 U.S. Dist. LEXIS 77077 at *13 (E.D.N.Y., October 23, 2006).

Pendl does not dispute that each of the requests in Lexmark's subpoenas to each of its counsel is directed to the same subject matter as Pendl's expressly waived opinion from attorney Becker.  Instead, Pendl points to merely *three topics* in Lexmark's subpoena that Pendl alleges do not address or relate to Pendl's state of mind concerning the patent infringement claims. Pendl is wrong.  All of the requests relate to Pendl's alleged state of mind concerning the patent infringement claims.  Indeed, Pendl stated that the reason it was waiving the Becker opinion was in defense against the willful infringement charge.

As to the three topics Pendl contends do not relate to its alleged state of mind (*i.e.*, Requests 4, 6, and 7), those topics were expressly discussed and opined upon by attorney Becker in the waived opinion.  Attorney Becker states toward the end of his letter to Randy Pendl:

**REDACTED**

Document Request No. 4 to Stites seeks "All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program."  It is undisputed that attorney Becker discusses and opines on the scope, validity and/or enforceability of Lexmark's Prebate Program throughout his opinion letter to Randy Pendl.

Document Request No. 6 to Stites seeks "All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program."  It is undisputed that attorney Becker

discusses and opines on antitrust implications of Lexmark's Prebate Program in his opinion letter to Randy Pendl.

Document Request No. 7 to Stites seeks "All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program." It is undisputed that attorney Becker discusses contract law concerns of Lexmark's Prebate Program in his opinion letter to Randy Pendl.

In short, Lexmark's subpoena is directed to the discovery that it is entitled to by virtue of Pendl's decision to rely on the advice of counsel defense. If the scope of the discovery that Lexmark seeks is broad, it's because the Becker opinion broadly covers many issues relating to patent, contract and antitrust laws.

## IV. THE SUBPOENAS TO COUNSEL ARE PROPER IN ALL OTHER RESPECTS

In addition to incorrectly arguing for a narrow scope of waiver, Pendl also raises a number of other miscellaneous arguments, none of which have any merit.

### A. Counsel is Subject to Deposition Testimony Resulting from Pendl's Decision to Waive Privilege

Pendl argues that Lexmark should not be allowed to depose trial counsel. This argument has been rejected by at least one post-*Echostar* court. *See Convolve*, *supra*, wherein Seagate was ordered to "produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel," related to the subject matter of the Sekimura Opinions. 224 F.R.D. at 105. Not allowing Lexmark to depose trial counsel who communicated with Pendl regarding the subject matter of the Becker opinion and/or who otherwise communicated with Pendl regarding

15

the validity, enforceability and/or infringement by Pendl of Lexmark patents would be contrary to the holdings by the Federal Circuit in *Echostar.*

The Declaration by Stites' attorney Joel T. Beres states that Stites "has never provided Pendl advice as to the validity of any Lexmark patent" and that it "has never provided advice on the validity of Mr. Becker's advice in 1999." It strains credibility that Stites never communicated with Pendl regarding the validity of the Becker opinion. Indeed, when Mr. Beres advised Lexmark that Pendl was waiving the Becker opinion, he stated: "***We*** carefully considered your request regarding Pendl's assertion of the advice of counsel defense." (Exhibit E). Moreover, Mr. Beres' Declaration is silent as to whether Stites ever provided advice to Pendl regarding the subject matter of the Becker opinion, i.e., the validity of Lexmark's Prebate Program, the enforceability of Lexmark's patents against Pendl, and the infringement by Pendl of Lexmark's patents. Stites' Motion itself suggests that Stites has at least communicated with Pendl regarding subject matter falling within the scope of the waiver.

**B.     Lexmark's Subpoenas are Directed to the Subject Matter of Pendl's Waiver**

Contrary to Pendl's argument, the subpoenas are not overly broad/duplicative/burdensome. The *Echostar* case makes clear that Lexmark is entitled to all documents and testimony relating to the subject matter "discussed in Robert Becker's letter to Randy Pendl of August 26, 1999." *Echostar* recognizes that this "waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client." 448 F.3d at 1304. Such internal notes kept by Pendl's counsel, for example Stites, about

communications with Pendl would be in the possession of Stites, and not in the possession of its client, Pendl.[8]

### C.    Stites Has Had More Than Adequate Time to Respond to the Subpoena

Contrary to Stites argument, the subpoena provides sufficient response time by Stites. Nine days is more than enough time for Stites to gather the requested documents and prepare for a deposition, particularly when its client, Pendl, delayed more than a year before deciding to waive its advice-of-counsel, and decided to only reveal its intention just one month prior to the November 15, 2006 close of discovery in this case.

Indeed, shortly after Pendl stated its intention to rely on the advice of counsel defense, counsel for Lexmark promptly requested that Pendl provide the discovery subject to waiver under *Echostar* and *Union Rich* (*i.e., Outside The Box Innovations, LLC, d/b/a Union Rich USA v. Travel Caddy, Inc. et al.,* 2006 U.S. Dist. LEXIS 74060 (N.D. Ga., October 5, 2006)). Moreover, to facilitate resolution of the subpoena to Stites, Lexmark offered to have the subpoena in the Western District of Kentucky held in abeyance until this Court ruled on the present motion for protective order filed by Pendl on the scope of its waiver. Pendl and Stites did not agree to this offer, and therefore, it is Pendl and Stites that is forcing the Stites subpoena to be litigated in the Western District of Kentucky. Pendl should not be heard to argue that Lexmark's actions are wrongly burdening the Western District of Kentucky.

### D.    Pendl is Not Entitled to Attorneys Fees

In the event that the court grants Pendl's Motion for Protective Order, which it should not do for the above reasons, the Court should not award attorney fees to Pendl. *Echostar*, and the

---

[8] To simplify the discovery sought from counsel, Lexmark offered in a telephone call with Judge Todd of the Eastern District of Kentucky in the underlying litigation to withdraw document request no. 1 in the subpoena to Stites. Lexmark's offer to do so obviates Stites' arguments as to that request.

subsequent district court cases following *Echostar*, clearly provide a basis for the discovery that Lexmark is seeking under its subpoena to Stites.

## V.    CONCLUSION

Pendl should not be allowed to use the advice it received as both a sword, by waiving privilege to allegedly favorable advice (the Becker opinion), and a shield, by asserting privilege as to all other advice on the same subject matter as the Becker opinion.  Because Pendl has asserted an advice-of-counsel defense regarding willful infringement of Lexmark's asserted patents, Pendl waived immunity for any document or opinion that embodies or discusses any communication to or from it concerning whether Lexmark's asserted patents are valid, enforceable, or infringed by Pendl.  This Court should deny Pendl's Motion for Protective Order and order Pendl's counsel Stites to immediately provide the discovery requested in Lexmark's subpoena.  A proposed Order is attached hereto as Exhibit I.

Respectfully submitted,

Dated: November 10, 2006

By: /s/ Binal J. Patel
Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507
Telephone: (859) 231-3000
Facsimile: (859) 253 1093

Joseph M. Potenza
Frederic M. Meeker
Christopher B. Roth
BANNER & WITCOFF, LTD.
1001 G Street, N.W., Suite 1100
Washington, DC  20001
Telephone: (202) 824-3000

Facsimile: (202) 824-3001

Mark T. Banner
Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Matthew P. Becker
Jason S. Shull
Robert H. Resis
Allen E. Hoover
Bradley Rademaker
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL  60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Mark N. Poovey
John F. Morrow, Jr.
WOMBLE CARLYLE SANDRIDGE
AND RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101
Telephone:  (336) 721-3629
Facsimile: (336) 721-3660

**Attorneys for
Defendant/Counterclaim Plaintiff,
Lexmark International, Inc.**

## CERTIFICATION

This is to certify that a true and accurate copy of the foregoing has been served  on November 10, 2006 via electronic filing as follows:

### COUNSEL FOR STATIC CONTROL COMPONENTS, INC.

| | |
|---|---|
| Mickey T. Webster<br>W. Craig Robertson, III<br>WYATT, TARRANT & COMBS, LLP<br>250 West Main Street, Suite 1600<br>Lexington, KY 40507 | Seth D. Greenstein<br>CONSTANTINE CANNON, PC<br>1627 Eye Street, N.W.<br>Tenth Floor<br>Washington, DC 20006 |
| Paul E. Poirot<br>William H. Barrett<br>Melise R. Blakeslee<br>John R. Fuisz<br>Stefan M. Meisner<br>MCDERMOTT, WILL & EMERY<br>600 13th Street, N.W.<br>Washington, D.C.  20005-3096 | Kevin M. Bolan<br>MCDERMOTT, WILL & EMERY<br>28 State Street<br>Boston, MA 02109-1775 |
| William L. London<br>STATIC CONTROL COMPONENTS, INC.<br>3010 Lee Avenue, P.O. Box 152<br>Sanford, North Carolina  27331 | Allison W. Freedman<br>James B. Heaton, III<br>BARTLIT BECK HERMAN PALENCHAR &<br>SCOTT, LLP<br>54 W. Hubbard Street<br>Chicago, IL 60610 |
| Joseph C. Smith, Jr.<br>Alison G. Wheeler<br>BARTLIT BECK HERMAN PALENCHAR &<br>SCOTT, LLP<br>1899 Wynkoop Street, 8th Floor<br>Denver, CO 80202 | |

**COUNSEL FOR WAZANA BROTHERS INTERNATIONAL, INC. d/b/a MICRO SOLUTIONS ENTERPRISES**

| | |
|---|---|
| Andrew D. DeSimone<br>Douglas L. McSwain<br>STURGILL, TURNER, BARKER<br>& MOLONEY, PLLC<br>155 E. Main St., Suite 400<br>Lexington, KY 40507-1317 | A. Steven Dotan<br>Darren S. Enenstein<br>Geronimo Perez<br>Ned Gelhaar<br>O. Andrew Wheaton<br>Stephen J. Rafferty<br>MOLDO, DAVIDSON, FRAIOLI, SEROR &<br>SESTANOVICH, LLP<br>2029 Century Park East, 21st Floor<br>Los Angeles, CA 90067 |
| Elizabeth L. Swanson<br>SWANSON AND ASSOCIATES<br>9454 Wilshire Boulevard<br>Suite 500<br>Beverly Hills, CA 90212 | Steven P. Bogart<br>REINHART BOERNER VAN DEUREN S.C.<br>1000 N. Water Street<br>Suite 2100<br>Milwaukee, WI 53202 |

**COUNSEL FOR NER DATA PRODUCTS, INC.**

| | |
|---|---|
| Andrew C. Oatway<br>MORISI & OATWAY<br>1400 Hancock St., 3rd Floor<br>Quincy, MA 02169 | Thomas C. O'Konski<br>Michael R. Reinemann<br>CESARI & MCKENNA, LLP<br>88 Black Falcon Avenue<br>Boston, Massachusetts 02210 |
| Jay E. Ingle<br>JACKSON & KELLY<br>175 E. Main Street<br>P.O. Box 2150<br>Lexington, KY 40588 | Daniel E. Danford<br>Elizabeth L. Thompson<br>STITES & HARBISON, PLLC<br>250 W. Main Street<br>2300 Lexington Financial Officer<br>Lexington, KY 40507 |

**COUNSEL FOR PENDL COMPANIES, INC.**

| | |
|---|---|
| Joel T. Beres<br>Jack A. Wheat<br>Jennifer L. Kovalcik<br>William Charles Ferrell, Jr.<br>STITES & HARBISON, PLLC<br>400 West Market Street<br>Suite 1800<br>Louisville, KY 40202-3352 | James R. Michels<br>STITES & HARBISON, PLLC<br>424 Church Street<br>Suite 1800<br>Nashville, TN 37219 |
| David H. Weber<br>LIEBMANN, CONWAY, OLEJNICZAK &<br>JERRY, S.C.<br>231 South Adams Street<br>Green Bay, WI 54301 | Michael P. Foley<br>RENDIGS, FRY, KIELY & DENNIS, L.L.P.<br>900 Fourth & Vine Tower<br>One West Fourth Street<br>Cincinnati, OH 45202-3688 |

BY: /s/ Binal J. Patel
ATTORNEYS FOR LEXMARK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 04-456-KSF

STATIC CONTROL COMPONENTS, INC.                    PLAINTIFF

v.            **LEXMARK'S FIRST SET OF REQUESTS**
        **FOR DOCUMENTS AND THINGS TO PENDL (1-94)**

LEXMARK INTERNATIONAL, INC.                        DEFENDANT

v.

WAZANA BROTHERS INTERNATIONAL, INC.
d/b/a MICRO SOLUTIONS ENTERPRISES          COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.                      COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.                    COUNTERCLAIM DEFENDANT

*** *** *** *** *** *** *** *** ***

Defendant and Counterclaim Plaintiff Lexmark International, Inc. ("Lexmark") by counsel, hereby submits to Counterclaim Defendant Pendl Companies, Inc. ("Pendl") the following First Set of Requests for Production of Documents and Things, to be responded to in accordance with Federal Rules of Civil Procedure 26 and 34. Pendl shall produce for inspection and copying the documents and things responsive to these requests at the office of Banner & Witcoff. Ltd., 10 South Wacker Drive, Suite 3000, Chicago, Illinois 60606.

**Request No. 46:**  Please produce all documents and things relating to oral or written opinions, investigations or analyses regarding the validity, enforceability or infringement of the Lexmark Patents.

**Request No. 47:**  Please produce all documents and things that were made available to, referred to or used by persons in generating oral or written opinions, or performing any investigations or analyses, regarding the validity, enforceability or infringement of the Lexmark Patents.

**Request No. 48:**  Please produce all documents and things relating to Pendl's reliance, if any, on the advice or opinion of counsel as a defense to the charge of willful infringement.

**Request No. 49:**  Please produce all documents and things, including but not limited to patents, printed publications, toner cartridges and components, that Pendl contends may be relevant prior art with respect to the subject matter of the claims of the Lexmark Patents.

**Request No. 50:**  Please produce all documents and things that relate to, refute or support Pendl's contention that a document or thing produced in response to the preceding request is prior art, including but not limited to evidence of publication, public use or sale of the document or thing contended to be relevant prior art.

**Request No. 51:**  Please produce all documents and things that Pendl contends has an effect on the validity or enforceability of the claims of the Lexmark Patents.

**Request No. 93:** Please produce all documents and things referring or relating to contracts or agreements with SCC, Pendl, NER, IPW or other entities for the sale of microchips for use with Lexmark's Printers.

**Request No. 94:** Please produce all pleadings and deposition transcripts from all civil actions in which Pendl has been a party concerning laser printers, toner cartridges for laser printers, or microchips for use with toner cartridges.

Respectfully submitted,

Dated: August 25, 2005

By: _____
Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL, KEENON & PARK LLP
300 West Vine Street, Suite 2100
Lexington, KY 40507
Telephone: (859) 231-3000
Facsimile: (859) 253 1093

Joseph M. Potenza
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC 20001
Telephone: (202) 508-9100
Facsimile: (202) 508-9299

Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Jason S. Shull
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 715-1000
Facsimile: (312) 715-1234

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 04-456-KSF

STATIC CONTROL COMPONENTS, INC.                          PLAINTIFF

v.          **RESPONSE TO LEXMARK'S FIRST SET OF REQUESTS**
            **FOR DOCUMENTS AND THINGS TO PENDL (1-94)**

LEXMARK INTERNATIONAL, INC.                              DEFENDANT

v.

WAZANA BROTHERS INTERNATIONAL, INC.        COUNTERCLAIM DEFENDANT
d/b/a MICRO SOLUTIONS ENTERPRISES

v.

PENDL COMPANIES, INC.                      COUNTERCLAIM DEFENDANT
v.

NER DATA PRODUCTS, INC.                    COUNTERCLAIM DEFENDANT

*** *** *** *** *** *** *** *** ***

Counterclaim Defendant Pendl Companies, Inc. ("Pendl") by counsel, hereby submits its objections and responses to the first set of requests for production propounded by Defendant and Counterclaimant Lexmark International, Inc. ("Lexmark").

## GENERAL OBJECTIONS

1.      Pendl provides these objections and responses according to the Federal Rules of Civil Procedure. Pendl does not hereby waive any rights or objections or admit the authenticity, relevance, materiality, or admissibility into evidence of the subject mater or facts in any discovery request or Pendl response, including any documents which may be provided as part of such response. Pendl specifically reserves: (a) the right to object to the uses of such responses, or the subject matter thereof, on any ground in any further proceeding in this action; and (b) its

**RESPONSE:** OBJECTION. In addition to the incorporated General Objections and Objections to Definitions and Instructions, Pendl specifically objects to this request because it is overbroad and unduly burdensome, seeks information that is protected by attorney-client privilege or the work product doctrine, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, namely information about technology that is not at issue in this dispute between Lexmark and Pendl. Pendl further objects to the extent this request seeks information duplicative of Request Nos. 40, 42, 43, 44, 45, and 46, and Pendl incorporates its objections thereto as if stated here in full. Pendl further objects to the extent Lexmark has not identified which of the 23 patents that comprise "Lexmark Patents" as currently defined or which, if any, of the claims of those patents are claimed by Lexmark to be infringed by Pendl, thus making this request overly broad and burdensome. Pendl states that to the extent that there are relevant, non-privileged, responsive documents and things that have not already been produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

**REQUEST NO. 48:** Please produce all documents and things relating to Pendl's reliance, if any, on the advice or opinion of counsel as a defense to the charge of willful infringement.

**RESPONSE:** OBJECTION. In addition to the incorporated General Objections and Objections to Definitions and Instructions, Pendl specifically objects to this request because it is overbroad and unduly burdensome, seeks information that is protected by attorney-client privilege or the work product doctrine, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, namely information about technology that is not at issue in this dispute between Lexmark and Pendl. Pendl further objects to the extent Lexmark

has not identified which of the 23 patents that comprise "Lexmark Patents" as currently defined or which, if any, of the claims of those patents are claimed by Lexmark to be infringed by Pendl, thus making this request overly broad and burdensome. Pendl states that to the extent that there are relevant, non-privileged, responsive documents and things that have not already been produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

**REQUEST NO. 49:**  Please produce all documents and things, including but not limited to patents, printed publications, toner cartridges and components, that Pendl contends may be relevant prior art with respect to the subject matter of the claims of the Lexmark Patents.

**RESPONSE:** OBJECTION.  In addition to the incorporated General Objections and Objections to Definitions and Instructions, Pendl specifically objects to this request because it is overbroad and unduly burdensome, seeks information that is protected by attorney-client privilege or the work product doctrine, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, namely information about technology that is not at issue in this dispute between Lexmark and Pendl.  Pendl further objects to the extent Lexmark has not identified which of the 23 patents that comprise "Lexmark Patents" as currently defined or which, if any, of the claims of those patents are claimed by Lexmark to be infringed by Pendl, thus making this request overly broad and burdensome.  Pendl states that to the extent that there are relevant, non-privileged, responsive documents and things that have not already been produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

**REQUEST NO. 50:**  Please produce all documents and things that relate to, refute or support Pendl's contention that a document or thing produced in response to the preceding

produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

**REQUEST NO. 94:** Please produce all pleadings and deposition transcripts from all civil actions in which Pendl has been a party concerning laser printers, toner cartridges for laser printers, or microchips for use with toner cartridges.

**RESPONSE:** OBJECTION. In addition to the incorporated General Objections and Objections to Definitions and Instructions, Pendl specifically objects to this request because it is overbroad and unduly burdensome, seeks information that may be protected by confidentiality, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, namely information about technology that is not at issue in this dispute between Lexmark and Pendl. Pendl reiterates its concerns set forth in its Motion for More Definite Statement and asks Lexmark to state which specific patents and patent claims Lexmark alleges are infringed by Pendl. Pendl states that to the extent that there are relevant, non-privileged, responsive documents and things that have not already been produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

Joel T. Beres
Jack A. Wheat
Jennifer L. Kovalcik
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
COUNSEL FOR PENDL COMPANIES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by United States First Class Mail, postage prepaid, on this 31st day of October, 2005 upon:

Charles F. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL, KEENON & PARK LLP
300 West Vine Street, Suite 2100
Lexington, KY 40507

W. Craig Robertson III
Mickey T. Webster
Wyatt, Tarrant & Combs, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507

Joseph M. Potenza
BANNER & WITCOFF, LTD.
1001 G Stret, N. W. 11th Floor
Washington, DC 20001

William L. London
Static Control Components, Inc.
3010 Lee Avenue, P.O. Box 152
Sanford, North Carolina 27331

Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Jason S. Shull
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL  60606

Patrick W. Michael
Woodward Hobson &
Fulton, LLP
2500 National City Tower
Louisville, KY 40202

David A. Shirlen
Mark N. Poovey
John F. Morrow, Jr.
WOMBLE CARLYLE SANDRIDGE AND
RICE PLLC
One West Fourth Street
Winston-Salem, NC  27101

Seth D. Greenstein
William H. Barrett
Melise R. Blakeslee
John R. Fuisz
Stefan M. Meisner
Ann M. Brose
McDermott, Will & Emery
600 13th Street, N.W.
Washington, D.C. 20005-3096

Darren S. Enenstein
Steven Dotan
Moldo Davidson Fraioli
Seror & Sestanovich, LLP
1925 Century Park East
16th Floor
Los Angeles, CA 90067

Thomas C. O'Konski
Michael R. Reinemann
Cesari & McKenna, LLP
88 Black Falcon Avenue
Boston, Massachusetts 02210

One of Counsel for Pendl Companies, Inc.



**BANNER & WITCOFF, LTD.**
INTELLECTUAL PROPERTY LAW

TEN SOUTH WACKER DRIVE
SUITE 3000
CHICAGO, ILLINOIS 60606-7407

TEL: 312.463.5000
FAX: 312.463.5001
www.bannerwitcoff.com

MATTHEW P. BECKER
mbecker@bannerwitcoff.com

October 6, 2006

**VIA FASCIMILE: 502.587.6391**

Joel T. Beres
James R. ("Randy") Michels
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352

Re:  *Lexmark International, Inc. v. Static Control Components, Inc.*
     Case No. 04-84-KSF (consolidated with No. 02-571)

Dear Joel:

Lexmark's Request for Production No. 48 to Pendl requested: "all documents and things relating to Pendl's reliance, if any, on the advice of counsel as a defense to the charge of willful infringement." In its October 31, 2005, Responses to Lexmark's First Set of Requests for Production, Pendl objected to this Request No. 48 stating, *inter alia,* that this request sought documents that are protected from discovery by the attorney-client privilege and/or work product doctrine.

With only approximately 40 days left in discovery, it is time for Pendl to decide whether or not it will assert the advice of counsel defense so that Lexmark may take whatever follow-up discovery is necessary related to this defense, if asserted. Accordingly, please state by Tuesday, October 10, 2006, whether Pendl is relying on the advice of counsel to defend against Lexmark's charge of willful infringement.

As you know, should Pendl assert or rely on the advice of counsel defense that results in a waiver of attorney-client privilege and work-product protection. *See In re Echostar Communications Corp.,* 448 F.3d 1294 (Fed. Cir. 2006). Accordingly, if Pendl is asserting an advice of counsel defense, Pendl please produce all responsive documents withheld from Request No. 48 by Friday, October 13.

Joel T. Beres
James R. ("Randy") Michels
October 6, 2006
Page 2


     Should Pendl fail to inform Lexmark by Tuesday regarding whether it is or is not asserting the advice of counsel defense, we will assume Pendl that refuses to inform Lexmark of its decision and we will need to schedule a conference with Magistrate Judge Todd.


                          Very truly yours,


                          Matthew P. Becker

MPB/cmf

**From:** Binal Patel
**Sent:** Friday, October 13, 2006 2:43 PM
**To:** jberes@stites.com; JKovalcik@stites.com
**Cc:** Matt Becker
**Subject:** Static Control v. Lexmark -- Advice of Counsel Defense

Joel,

Thank you for your response. In addition to the opinion of counsel itself, we expect that you will immediately produce all previously withheld documents that would be deemed waived under In re Echostar, 448 F.3d 1294 (Fed. Cir. 2006) as well as the attached recent Order in Outside Box Innovations v. Travel Caddy, Inc. (Oct. 6, 2006 N.D. Ga). Moreover, please let us know when we can depose the author(s) and recipient(s) of the opinion. Finally, please provide a revised privilege log and identify those documents that are now being produced that were once logged as being privileged.

Regards,
Binal

Binal J. Patel
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel: (312) 463-5000
Fax: (312) 463-5001
E-mail: bpatel@bannerwitcoff.com
www.bannerwitcoff.com

IMPORTANT/CONFIDENTIAL: This message is intended only for the use of the individual or entity to whom it is addressed. This message contains information from the law firm of Banner & Witcoff, LTD. which may be privileged, confidential, or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, retention, archiving, or copying of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply E-mail.

-----Original Message-----
From: Beres, Joel [mailto:JBeres@stites.com]
Sent: Thu Oct 12 21:41:23 2006
To: Matt Becker
Subject: Static Control v. Lexmark -- Advice of Counsel Defense

Matt,

Sorry for the delay in getting back with you; but I am on the road (again). We carefully considered your request regarding Pendl's assertion of the advice of counsel defense. Please be advised that Pendl will be relying at trial on advice of counsel as one of its defenses to Lexmark's claim of willful patent infringement. In addition to all other documents previously produced in this matter, we will also produce to you a copy of the opinion of counsel tomorrow as requested in your recent letter.

Joel T. Beres

Direct Dial: 502-681-0324

Direct Fax: 502-779-8335

Mobile: 502-500-2029

jberes@stites.com

Stites & Harbison

Suite 1800

400 West Market Street

Louisville, Kentucky  40202-3352

Main:  502-587-3400

Main Fax:  502-587-6391

NOTICE: This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or disseminate this message or any attachment. If you have received this message in error, please call the sender immediately at (502) 587-3400 and delete all copies of the message and any attachment. Neither the transmission of this message or any attachment, nor any error in transmission or misdelivery shall constitute waiver of any applicable legal privilege.

| | |
|---|---|
| **From:** | Beres, Joel [JBeres@stites.com] |
| **Sent:** | Friday, October 13, 2006 2:48 PM |
| **To:** | Binal Patel |
| **Subject:** | RE: Static Control v. Lexmark -- Advice of Counsel Defense |

Binal,

We are already working on supplementing the production and checking dates for Randy Pendl's deposition.  As mentioned when I saw you in Chicago, we will also make  Gary Pend available for additional questioning (on this area only, of course).

I will be contacting you next week.

Joel


Joel T. Beres
Stites & Harbison, PLLC
Aegon Center, Suite 1800
400 West Market Street
Louisville, Kentucky 40202-3352
Direct:  (502) 681-0324
Direct Fax:  (502) 779-8335

    -----Original Message-----
From:      Binal Patel [mailto:BPatel@bannerwitcoff.com]
Sent: Friday, October 13, 2006 03:43 PM Eastern Standard Time
To:  Beres, Joel; Kovalcik, Jennifer
Cc:  Matt Becker
Subject:   Static Control v. Lexmark -- Advice of Counsel Defense

Joel,

Thank you for your response.  In addition to the opinion of counsel itself, we expect that you will immediately produce all previously withheld documents that would be deemed waived under In re Echostar, 448 F.3d 1294 (Fed. Cir. 2006) as well as the attached recent Order in Outside Box Innovations v. Travel Caddy, Inc. (Oct. 6, 2006 N.D. Ga).
Moreover, please let us know when we can depose the author(s) and
recipient(s) of the opinion.  Finally, please provide a revised privilege log and identify those documents that are now being produced that were once logged as being privileged.

Regards,
Binal
_____
Binal J. Patel
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel: (312) 463-5000
Fax: (312) 463-5001
E-mail: bpatel@bannerwitcoff.com
www.bannerwitcoff.com <http://www.bannerwitcoff.com/>

IMPORTANT/CONFIDENTIAL:  This message is intended only for the use of the individual or entity to whom it is addressed.  This message contains information from the law firm of Banner & Witcoff, LTD. which may be privileged, confidential, or exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, retention, archiving, or copying of the communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by reply E-mail.

-----Original Message-----
From:    Beres, Joel [mailto:JBeres@stites.com <mailto:JBeres@stites.com>
]
Sent:    Thu Oct 12 21:41:23 2006
To:      Matt Becker
Subject:         Static Control v. Lexmark -- Advice of Counsel Defense

Matt,

Sorry for the delay in getting back with you; but I am on the road (again).  We carefully
considered your request regarding Pendl's assertion of the advice of counsel defense.
Please be advised that Pendl will be relying at trial on advice of counsel as one of its
defenses to Lexmark's claim of willful patent infringement.  In addition to all other
documents previously produced in this matter, we will also produce to you a copy of the
opinion of counsel tomorrow as requested in your recent letter.

Joel T. Beres

Direct Dial:  502-681-0324

Direct Fax:  502-779-8335

Mobile:  502-500-2029

jberes@stites.com


Stites & Harbison

Suite 1800

400 West Market Street

Louisville, Kentucky  40202-3352

Main:  502-587-3400

Main Fax:  502-587-6391

NOTICE: This message is intended only for the addressee and may contain information that
is privileged, confidential and/or attorney work product. If you are not the intended
recipient, do not read, copy, retain or disseminate this message or any attachment. If you
have received this message in error, please call the sender immediately at
(502) 587-3400 and delete all copies of the message and any attachment.
Neither the transmission of this message or any attachment, nor any error in transmission
or misdelivery shall constitute waiver of any applicable legal privilege.

LEXSEE 2006 U.S. DIST. LEXIS 74060

**OUTSIDE THE BOX INNOVATIONS, LLC, d/b/a UNION RICH USA, Plaintiff Counter-Defendant, v. TRAVEL CADDY, INC., and ROOSTER PRODUCTS, d/b/a THE ROOSTER GROUP, Defendants. TRAVEL CADDY, INC., Counter-Plaintiff Counter-Defendant, v. OUTSIDE THE BOX INNOVATIONS, LLC, d/b/a UNION RICH USA; UNION RICH PLASTIC FACTORY, LTD.; BONAKA LIMITED, Counter-Defendants.**

CIVIL ACTION No. 1:05-cv-2482-ODE

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

*2006 U.S. Dist. LEXIS 74060*

**October 5, 2006, Decided**
**October 6, 2006, Filed**

**COUNSEL:** [*1] For Outside The Box Innovations, LLC doing business as Union Rich USA, Plaintiff: Joel D. Myers, LEAD ATTORNEY, Myers & Kaplan, Atlanta, GA; Ashish D. Patel, Myers & Kaplan, Atlanta, GA; Barry E. Kaplan, Myers & Kaplan Intellectual Property Law, LLC, Atlanta, GA.

For Travel Caddy, Inc., Rooster Products doing business as The Rooster Group, Defendants: Aimee B. Kolz, LEAD ATTORNEY, Jason S. Shull, LEAD ATTORNEY, Jon O. Nelson, LEAD ATTORNEY, Marc S. Cooperman, LEAD ATTORNEY, Scott A. Burow, LEAD ATTORNEY, Banner & Witcoff, Chicago, IL; George Melton Mobley, Jr., LEAD ATTORNEY, Lokey, Mobley & Doyle, LLP, Atlanta, GA; Kimberly Blackwell Sheridan, Lokey & Smith, Atlanta, GA.

For Rooster Products doing business as The Rooster Group, Rooster Products, Travel Caddy, Inc., Counter Claimants: Aimee B. Kolz, LEAD ATTORNEY, Jason S. Shull, LEAD ATTORNEY, Jon O. Nelson, LEAD ATTORNEY, Marc S. Cooperman, LEAD ATTORNEY, Scott A. Burow, LEAD ATTORNEY, Banner & Witcoff, Chicago, IL; George Melton Mobley, Jr., LEAD ATTORNEY, Lokey, Mobley & Doyle, LLP, Atlanta, GA.

For Mandy Wilson Decker, Movant: Ronald Scott Griffin, LEAD ATTORNEY, Stites & Harbison, Atlanta, GA.

For Outside The [*2] Box Innovations, LLC, Counter Defendant: Joel D. Myers, LEAD ATTORNEY, Myers & Kaplan, Atlanta, GA; Ashish D. Patel, Myers & Kaplan, Atlanta, GA.

For Travel Caddy, Inc., Counter Claimant: Aimee B. Kolz, Marc S. Cooperman, LEAD ATTORNEY, Banner & Witcoff, Chicago, IL.

For Bonaka Limited, Bonaka Plastic Manufacturing Co., Ltd., Union Rich Plastic Factory, Ltd., Counter Defendants: Joel D. Myers, LEAD ATTORNEY, Myers & Kaplan, Atlanta, GA; Ashish D. Patel, Myers & Kaplan, Atlanta, GA; Barry E. Kaplan, Myers & Kaplan Intellectual Property Law, LLC, Atlanta, GA.

For Travel Caddy, Inc., Rooster Products, Counter Defendants: Aimee B. Kolz, LEAD ATTORNEY, Banner & Witcoff, Chicago, IL.

**JUDGES:** ORINDA D. EVANS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ORINDA D. EVANS

**OPINION:**

ORDER

This case is before the Court pursuant to its oral direction made during the hearing held August 24, 2006 concerning Travel Caddy's subpoena issued to Mandy Wilson Decker.

On August 7, 2006, Travel Caddy issued a subpoena for deposition and for production of documents in the Western District of Kentucky to a non-party in this case,

Mandy Wilson Decker [# 185]. On August 9, 2006, Union Rich filed an Emergency [*3] Motion for Protective Order Regarding the Deposition of Mandy Wilson Decker [# 187]. At the August 24 hearing, the motion for protective order was granted and the Court directed the parties to file briefs on the subject of whether, and to what extent, Union Rich had waived attorney-client privilege and work-product immunity by relying on the advice-of-counsel defense to Travel Caddy's patent infringement claims. By order dated August 25, 2006, the Court ordered that the subpoena for deposition and for production of documents and related motions filed in the Western District of Kentucky which were presented at the hearing be made a part of the record in this case by Order dated [# 232].

The Court notes that Union Rich, Travel Caddy, and Ms. Decker have filed briefs with the Court on this issue [# s 243, 244, 245, 254, 255].

Ms. Decker, an associate at the law firm of Stites & Harbison, served as the initial opinion counsel to Union Rich in connection with what ultimately became the present lawsuit. In this role, Ms. Decker provided opinion letters to Union Rich on potential infringement issues related to the two patents-in-suit, the '992 patent and the '104 patent. Stites & [*4] Harbison also served as Union Rich's original litigation counsel, and filed this lawsuit on behalf of Union Rich. As a defense to the charges of willful patent infringement subsequently brought by Travel Caddy, Union Rich has adopted the advice-of-counsel defense. Travel Caddy is seeking to depose Ms. Decker in connection with her role as opinion counsel.

In addition to deposing Ms. Decker, Travel Caddy has demanded the production of certain documents, through a subpoena served on Ms. Decker as an individual. Specifically, and central to the present dispute over the scope of waiver of privilege, is Travel Caddy's request for:

> All documents that reflect communications (including all electronic communications) between Union Rich and any attorney at the law firm of Stites & Harbison that relate to the scope, validity, infringement, and/or enforceability of the '992 and '104 patents, including any and all attorney notes, summaries, documents and drafts of documents related to the same subject matters and that embody or discuss a communication between an attorney at Stites & Harbison and Union Rich.

(Notice of Deposition of Mandy Wilson Decker, Exhibit A [# 185]). Both [*5] Union Rich and Ms. Decker independently object to this request.

All interested parties agree that this Court should be guided by the holding of In re Echostar, a recent Federal Circuit decision that has addressed the scope of waiver of privilege in the context of an advice-of-counsel defense to willful patent infringement. *448 F.3d 1294, 1298 (Fed. Cir. 2006).* In adopting the advice-of-counsel defense, the alleged infringer waives aspects of both the attorney-client privilege and work-product immunity, but these waivers are not the same in scope, and neither is absolute. *Id. at 1300-01.* Because the advice-of-counsel defense "requires the court to decide, inter alia, whether counsel's opinion was thorough enough to 'instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable,'" the focus in determining the scope of waiver is on the act of communicating an opinion from counsel to client. *Id. at 1305* quoting, *Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992).*

With respect to the attorney-client privilege, the Federal Circuit held that, [*6] "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id. at 1301.* This broad waiver explicitly covers opinions that were communicated by Ms. Decker to Union Rich, and is the reason that Union Rich made no issue with, and produced to Travel Caddy, the opinions requested in the original subpoena. (Notice of Deposition of Mandy Wilson Decker, Exhibit A [# 185]). With respect to work product immunity, the Federal Circuit held that such immunity is waived "for any document or opinion that embodies or discusses a communication to or from [an accused infringer] concerning whether that patent is valid, enforceable, and infringed by the accused." *Echostar, 448 F.3d at 1304.* In general terms, the application of Echostar to this case dictates that, "[attorney] work product that was not communicated to [Union Rich] or does not reflect a communication is not within the scope of [Union Rich's] waiver because it obviously played no part in [Union Rich's] belief as to infringement of the ['992 and '104 patent[s]." *Id. at 1305.* [*7] This general statement does not address all of the parties' arguments, however.

Union Rich argued at the Markman hearing on August 24, 2006, that Ms. Decker provided no opinion as to the validity of the '104 patent, and Ms. Decker argued in the Response of Non-Party Mandy Wilson Decker, Esg. to Travel Caddy Inc.'s Subpoena for Deposition and Production of Documents [# 243] that she must only testify as to the validity of the '992 patent. Union Rich appears to have abandoned this argument in its filings on the

scope of waiver, and has acknowledged that it "makes no issue in producing all 'opinions of counsel' provided to and relied upon by the client [], and has done so." (Union Rich's Memorandum Regarding Scope of Waiver of Privilege, at 3 [# 245]). If Union Rich has indeed produced all such documents, then the dispute over whether Ms. Decker provided an opinion as to the scope, validity, infringement and/or enforceability of the '104 Patent is moot.

However, Ms. Decker argued in her filings that she did not provide an opinion on the '104 Patent, only the '992 Patent and the application for what would become the '104 Patent. Ms. Decker also argued that any advice on the [*8] '104 Patent application is outside the scope of waiver, as defined by Travel Caddy. According to Ms. Decker, because there can be no infringement until a patent is issued, and because Travel Caddy has stated that the scope of waiver is limited to "advice received during the entire course of infringement," Ms. Decker's advice on the '104 application is protected by the waiver.

The Court agrees with Travel Caddy that by giving her opinion on the '104 Patent application, Ms. Decker gave her opinion on the '104 Patent, and Union Rich has therefore waived its privilege with respect to the requested communications. First, the claims of the '104 Patent are identical to the claims that appeared in the '104 Patent application reviewed by Ms. Decker. Second, the alleged infringement in this case began with the '992 Patent, and the '104 Patent is a continuation of the '992 Patent. Therefore, while there can be no infringement until a patent is issued, advice about a pending continuation patent is highly relevant to the central issue in willful infringement, the state of mind of the alleged infringer.

Ms. Decker has also raised the argument that much of what Travel Caddy has demanded she produce, [*9] through a subpoena of her as an individual, is beyond her legal ability to produce. (Response of Non-Party Mandy Wilson Decker, at 7 [# 243]). Travel Caddy interprets the Echostar decision as requiring Union Rich to "produce all communications that embody or reflect communications between Union Rich and any counsel -- not merely Ms. Decker. This includes communications with other attorneys at Ms. Decker's firm, as well as communications with litigation counsel." (Defendants' Submission Concerning the Scope of Union Rich's Waiver of Privilege, at 10 [# 244]). Travel Caddy is correct that the Echostar decision held that if a defendant relies on the advice-of-counsel defense with respect to advice received from in-house counsel, then the waiver of attorney-client privilege applies to advice "relating to the same subject matter" received from other counsel. Echostar, 448 F.3d at 1299. However, a subpoena served

on Ms. Decker is not the appropriate method for procuring the requested documents.

Ms. Decker, as an associate at Stites & Harbison, cannot produce documents under the control of Myers & Kaplan, Union Rich's current litigation counsel, nor can she [*10] produce documents that are controlled by her own law firm. Rule 45(a)(1)(C) limits the production of documents available through a subpoena to "documents or tangible things in the possession, custody or control of that person." Fed. R. Civ. P. 45(a)(1)(C).

Travel Caddy has argued that it is entitled to communications that occurred after the commencement of this lawsuit. The Federal Circuit stated in a footnote that privilege is waived, "when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation." Id. at 1302 n.4. However, the requirement that the advice be communicated to the alleged infringer remains, even when applied to advice that occurs after the commencement of litigation. Id. at 1302.

While Echostar instructs courts to be mindful of a litigant attempting to "use[] the attorney-client privilege as both a sword and a shield," 448 F.3d at 1301, the Court will not grant Travel Caddy "unfettered discretion to rummage through all of [Union Rich's] files and pillage all of [Union Rich's] litigation strategies." [*11] Echostar, 448 F.3d at 1303. In other words, litigation strategy is not the same as advice-of-counsel, and the waiver that has been clarified in Echostar should not be used to allow unfettered access to documents related to strategy from all attorneys who have been involved in an infringement case.

The Federal Circuit imposed important limits on the scope of the waiver as follows, "[w]hile an accused infringer may waive the immunity for work product that embodies an opinion in letters and memorandum communicated to the client, he does not waive the attorney's own analysis and debate over what advice will be given." Id. Furthermore, while the district court in Echostar, reached the same conclusion that privilege is waived for communications made after the start of a lawsuit, it also found that the alleged infringer was entitled to redact information "that it considers solely related to trial strategy." TIVO Inc. v. EchoStar Comm. Corp., 2005 U.S. Dist. LEXIS 42481, No. CIVA 2:04CV1 (DF), 2005 WL 4131649, at *8 (Sept. 26, 2005). This conclusion is consistent with the Federal Circuit's holding that the scope of waiver of privilege does include post-filing communications, [*12] but prevents the unfettered access to litigation strategy that concerned the Court. Echostar, 448 F.3d at 1302-03; see also Tivo, 2005 U.S. Dist. LEXIS 42481, 2005 WL 4131649, at *8 ("This, in the Court's opinion, reconciles the fear that such discovery could

compromise trial preparation and give Plaintiff an unfair advantage with Plaintiff's inquiry into state of mind.").

Finally, Echostar makes clear, and all parties agree, that Ms. Decker is permitted to redact or withhold documents or information that were never communicated to Union Rich. *Id. at 1303*. This right to redact is especially important in the context of documents "that reference and/or describe a communication between the attorney and client, but were not themselves actually communicated to the client." *Id. at 1304*.

Therefore, it is ordered that, with respect to Ms. Decker's subpoena, she be required to produce:

> All documents that reflect communications (including all electronic communications) between Ms. Decker and Union Rich that relate to the scope, validity, infringement, and/or enforceability of the '992 and '104 patents, including any and all attorney notes, summaries, documents [*13] and drafts of documents related to the same subject matters and that embody or discuss a communication between Ms. Decker and Union Rich. Any such document that includes Ms. Decker's opinions or mental impressions never communicated to Union Rich may be redacted to exclude those uncommunicated portions. Ms. Decker may redact any information that she considers solely related to trial

strategy. Furthermore, consistent with the Echostar holding, the overall

scope of Union Rich's waiver in relying on the advice-of-counsel defense includes:

> Any document or opinion that embodies or discusses a communication to or from Union Rich concerning whether the '992 and '104 patents are valid, enforceable, and infringed by Union Rich, regardless of the counsel involved, and regardless of the date. Any document or opinion that falls within the scope of the waiver, but which includes opinions or mental impressions never communicated to Union Rich, may be redacted to exclude those uncommunicated portions. Union Rich may redact any information that it considers solely related to trial strategy.

Accordingly, non-party Mandy Wilson Decker is directed to comply with Travel Caddy's [*14] subpoena for deposition and production of documents [# 185] as stated herein.

SO ORDERED, this 5 day of October, 2006.

ORINDA D. EVANS

UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# AT LEXINGTON
# CASE NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.                               PLAINTIFF/
                                                   COUNTERCLAIM DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.                                  DEFENDANT/
                                                    COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.          COUNTERCLAIM DEFENDANT
d/b/a MICRO  SOLUTIONS ENTERPRISES

v.

PENDL COMPANIES, INC.                        COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.                      COUNTERCLAIM DEFENDANT

****************************

## APPENDIX OF DOCUMENTS FILED UNDER SEAL TO LEXMARK INTERNATIONAL, INC.'S OPPOSITION TO PENDL'S MOTION FOR PROTECTIVE ORDER REGARDING PENDL'S ADVICE OF COUNSEL DEFENSE

1.  Unredacted copy of Lexmark International, Inc.'S Opposition To Pendl's Motion For Protective Order Regarding Pendl's Advice Of Counsel Defense

2.  Exhibit C – Gary Pendl deposition transcript excerpt (p. 70, line 19 – p. 71, line 5).

3.  Exhibit G – Opinion of Counsel by Robert D. Becker

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 04-CV-84-KSF

STATIC CONTROL COMPONENTS, INC.          PLAINTIFF/COUNTERCLAIM DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.              DEFENDANT/COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.
D/B/A MICRO SOLUTIONS ENTERPRISES               COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.                            COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.                          COUNTERCLAIM DEFENDANT

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

## ORDER DENYING PENDL'S MOTION FOR PROTECTIVE ORDER

Upon Counterclaim Defendant Pendl Companies, Inc.'s Motion for Protective Order, and after considering the papers filed relating thereto,

**IT IS HEREBY ORDERED** that Pendl's motion is DENIED.

**IT IS HEREBY FURTHER ORDERED** that

1.      Pendl shall provide the following discovery to Lexmark within ten business days:

(a)     the supplementation of any previously-served discovery on Pendl relating to the subject matter of Pendl's advice of counsel defense;

(b)     the continued deposition of Gary Pendl relating to Pendl's advice of counsel defense;

1

(c)    the deposition of Randy Pendl relating to Pendl's advice of counsel defense; and

(d)    document and deposition discovery of Pendl's counsel of record relating to Pendl's advice of counsel defense.

2.    Lexmark may proceed with document and deposition discovery of Robert D. Becker and the law firm of Manat Phelps & Phillips relating to Pendl's advice of counsel defense.


Dated: _____        _____
                                  United States District Judge

# EXHIBIT N

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

STATIC CONTROL COMPONENTS, INC.,

      PLAINTIFF/COUNTERCLAIM
      DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.,

      DEFENDANT/COUNTERCLAIM
      PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

      COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.

      COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

      COUNTERCLAIM DEFENDANT

Civil Action No. 04-CV-84-GFVT
Honorable Gregory F. Van Tatenhove

**************************

**REPLY IN SUPPORT OF PENDL'S MOTION FOR PROTECTIVE ORDER
FROM LEXMARK'S SUBPOENA ON ITS TRIAL COUNSEL**

Pendl, by counsel, offers this reply in support of its motion for a protective order ("Mt.")

from Lexmark's overreaching subpoena on Pendl's <u>trial counsel</u>.  This subpoena was one of

seventeen separate subpoenas served in ten different jurisdictions on each and every trial counsel

opposing Lexmark in this action.  Lexmark claims that it seeks deposition testimony and

documents under these subpoenas based on Pendl's assertion of the "advice of counsel defense" to Lexmark's claim of willful intentional patent infringement. However, Lexmark's demands far exceed issues of willful patent infringement, and instead seek privileged communications and work product regarding every other topic in this litigation including contract issues and issues related to a "prebate program," as well as Pendl's antitrust counterclaims **against Lexmark**. Lexmark seeks these communications despite the fact the "advice of counsel" defense is unrelated to, and offers Pendl no defense to or advantage on, those claims.

Lexmark's manipulation of the "advice of counsel" defense in seeking such information is a blatant attempt to secure as much of Pendl's privileged communications and work product as possible. Further – despite Lexmark's Opposition's ("Opp.") statements to the contrary – Lexmark is actually seeking to "pillage" Pendl's trial and litigation files. Pendl's trial counsel (who Lexmark subpoenaed) has testified via an affidavit from Joel Beres ("Aff.") that all of its communications with Pendl responsive to Lexmark's subpoena have been focused on trial and litigation strategy. Still, Lexmark persists, necessitating an order from this Court enjoining Lexmark's subpoenas on trial counsel.

### A.   THERE ARE NO "WAIVED" DOCUMENTS OR TESTIMONY TO COMPEL.

Lexmark's subpoena – as served – demanded all communications between trial counsel and Pendl regarding every issue of this case, including communications on strategic litigation decisions.  (*See* Mt., Exh. A (requesting strategic reasons for asserting advice of counsel defense and all communications on each topic of litigation.))  Lexmark now takes the position it, in fact, "<u>does not</u> seek discovery of litigation or trial strategy."  (Opp. at 3 n.1, 7 n.3 ("To be clear, Lexmark is not seeking litigation or trial strategy from Pendl's counsel."))  Lexmark further cites authority that finds communications and documents relating to litigation and trial strategy are

never waived by an "advice of counsel" defense and <u>cannot</u> be discovered by Lexmark. (*See id.* at 10 (citing *Outside the Box Innovations,* 2006 U.S. Dist. LEXIS at 74060.)) Lexmark admits that if Pendl and its trial counsel have communicated only on litigation or trial strategy issues, its subpoena is ***obviated***. (Opp. at 3, n.1.) Based on this admission, there is simply nothing to compel from Pendl's trial counsel and – as noted by Lexmark – this Court must obviate the subpoena.

By uncontested affidavit, Pendl's trial counsel – Stites & Harbison – testified that each and every communication with Pendl and all documents it has provided to Pendl have dealt solely with litigation and trial strategy. (*See* Aff. at Mt., Exh. 1 ¶¶ 8, 9.) Stites & Harbison further testified it was retained solely as trial counsel and had never performed legal work of any kind for Pendl before this retention. (*Id.* at ¶¶ 3, 4.) Stites & Harbison finally testified it has never provided Pendl an opinion or advice as to either the validity of any Lexmark patent or the validity of the Becker opinion which forms the basis for Pendl's advice of counsel defense. (*Id.* at ¶ 6, 7.)

Lexmark's opposition – without authority or proof – argues that it does not believe Pendl's trial counsel. (Opp. at 3 n.1, 16.) As support for its disbelief, Lexmark offers only its feeling that if Stites & Harbison and Pendl have communicated solely on trial or litigation strategy, then Pendl would not have moved for this protective order. (*Id.* at 3n.1, 16.) Lexmark's argument is not merely speculative, but represents "backwards" logic. Pendl moved for a protective order for the express reason of protecting its litigation and trial strategy. Regardless, Lexmark's unsupported skepticism is insufficient to contest Pendl's proof offered in the form of its trial counsel's affidavit.

Pendl's trial counsel was hired solely for this litigation and has communicated with Pendl solely regarding litigation and trial strategy.  Based on Lexmark's own concessions, this Court should enter a protective order enjoining the enforcement of Lexmark's subpoena on Pendl's trial counsel.

**B.    THE ADVICE OF COUNSEL DEFENSE DOES NOT WAIVE PRIVILEGED COMMUNICATIONS WITH TRIAL COUNSEL.**

Lexmark ignores Pendl's legal discussion on waiver, and instead argues that *In re Echostar* ("*Echostar*") explicitly found that the "advice of counsel" defense waives privilege and work product over communications and documents from <u>trial counsel</u>.  (Opp. at 7.)  It does not. As noted by the United States District Court of Delaware, "*Echostar* did not even address the issue of communications with trial counsel."  Applying it to such communications is a "stretch." *Ampex Corp. v. Eastman Kodak Co.*, Civ. No. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *11 (D.Del. July 17, 2006) (attached as Exh. 1).  In fact, Lexmark's legal argument is structured exactly like the argument rejected in *Ampex*.  There, the subpoenaing party – like Lexmark – tried to "stretch" *Echostar* to include waiver as to trial counsel by citing and/or combining it with *Akeva LLC*, 243 F.Supp. 2d 418 (M.D.N.C. 2003).  *Akeva*, however, does not stand for Lexmark's proposition.  Instead, *Akeva* "dealt with circumstances in which the defendant <u>expressly relied</u> on its trial counsel's non-infringement opinion to continue operating." *Ampex*, 2006 U.S. Dist. LEXIS 487021 at *11.  That is not the situation here, nor was it in *Ampex*.  *Id.* Pendl has never received an opinion, much less one it is relying on, from its trial counsel.  (Aff. ¶¶ 6-7.)  Faced with identical circumstances, the *Ampex* court denied discovery into trial counsel's communications and documents, and this Court should do the same.  *Ampex*, 2006 U.S. Dist. LEXIS 487021 at *11-12.

Lexmark's other cited authority is equally over-exaggerated and inapplicable.  Lexmark cites *Outside the Box* to suggest that Pendl's trial counsel – Stites & Harbison – was ordered to produce documents in a similar case.  (Opp. at 10.)  Lexmark is again wrong that such authority supports its cause.  *Outside the Box* compelled an <u>opinion counsel</u> at Stites & Harbison who had drafted the opinion expressly being relied upon for the "advice of counsel" defense to produce.  This opinion counsel never served as trial counsel.  *See Outside the Box*, 2006 U.S. Dist. LEXIS 74060 at *3.  Lexmark's use of *Outside the Box* as "authority" for its expansive argument is again a "stretch."

Free from Lexmark's invalid argument that *Echostar* determined whether the "advice of counsel" defense waives communications with trial counsel, this Court must determine what – if any – waiver does apply to trial counsel.  Under *Ampex*, Pendl believes this Court should find no waiver because Pendl never received or relied upon any opinion or advice from its trial counsel.  (Aff. at ¶¶ 6-9.)  The purpose of the attorney-client privilege to encourage full and frank communication between attorneys and their clients.  *Upjohn Co. v. United States*, 449 U.S. 383, 389, 66 L.Ed.2d 584, 101 S. Ct. 677 (1981).  If every communication between Pendl and its trial counsel on the topic of patent infringement is discoverable – despite the fact that Pendl never received, much less relied upon, any advice as to the validity of any patent from trial counsel – the purposes of privilege and work product cannot be realized and Pendl will be denied the type of representation to which it is entitled.  This Court should not extend waiver from the advice of counsel defense to trial counsel, but should instead preserve a party's right to fully and effectively communicate with the counsel who will represent them in trial.

Alternatively, if this Court believes that trial counsel – despite providing no advice in the instant dispute – somehow contributes to a "sword and shield" problem, Pendl directs it to

another post-*Echostar* decision: *Intex Recreation Corp. v. Team Worldwide Corp*, 439 F.Supp. 2d 46, 52 (D.D.C. 2006).  There, the United States District Court for the District of Columbia agreed with *Ampex* in that *Echostar* does not dictate whether the "advice of counsel" defense automatically waives privileged communications with trial counsel.  Instead, *Intex* noted the split in various jurisdictions post-*Echostar* and selected a "middle ground," specifically siding with the United States District Court for the Southern District of Indiana.  *Id.*  That court found – and the District of Columbia agreed – that trial counsel was obligated to produce only such communications and work product concerning patent infringement that were provided to its client and that <u>contradicted</u> the opinion being relied upon for the advice of counsel defense.  *Id.* at 52-53 (citing *BASF Aktiengesellschaft v. Reill Indus.*, 283 F. Supp. 2d 1000, 1005-6 (S.D.Ind. 2003)).  This way, the party asserting the advice of counsel defense could not "shield" negative information provided by trial counsel that impacted its state of mind or "willfulness," while at the same time the subpoenaing counsel could not pillage its opposing trial counsel's litigation files or adversely affect its representation.

Based on these post-*Echostar* decisions, this Court should find no waiver as to trial counsel because here, as in *Ampex*, Pendl is not relying on any opinion or advice from trial counsel.  In fact, trial counsel has never provided such an opinion or advice.  (Aff. at ¶ 6.)  To the extent this Court disagrees, it should adopt the District of Columbia and Southern District of Indiana's "middle ground" approach that requires production only of contradictory opinions provided by trial counsel.  No such opinion exists here.

## C.    <u>LEXMARK'S SUBPOENA DEMANDS REGARDING ANTITRUST, CONTRACT, AND OTHER CLAIMS FAR EXCEED ANY WAIVER CREATED BY THE ADVICE OF COUNSEL DEFENSE.</u>

Regardless of this Court's decision on the scope of the waiver – if any – created by the "advice of counsel" defense, any potential waiver applies only to willful patent infringement

claims.  Lexmark admits that Pendl's "advice of counsel" defense was asserted as a defense to Lexmark's claim of willful patent infringement.  (Opp. at 4.)  In fact, the advice of counsel defense is a defense specific to willful patent infringement claims.  *See Echostar,* 448 F.3d at 1298; *Outside the Box*, 2006 U.S. Dist. LEXIS 74060, at *5.  Pendl did not assert "advice of counsel" as a defense – and it is not a recognized defense – to antitrust, contract, or the other claims in this litigation.

In spite of these facts, Lexmark is attempting to expand any waiver created by the "advice of counsel" defense beyond willful patent infringement claims so that it can discover privileged information on counterclaims made by Pendl ***against Lexmark*** on antitrust and other grounds.  Lexmark's attempts to support this position with language from *Echostar* stating the "advice of counsel" defense waives privilege related "to the subject matter" of the opinion being relied upon.  (Opp. at 2)  Lexmark states that since antitrust and other issues are mentioned in the Pendl's opinion, they must be the "subject" of that opinion and are therefore waived.

Lexmark's argument fails for two reasons.  First, *Echostar's* "subject matter" language has been defined solely to cover patent infringement issues.  Second, as a matter of law, *Echostar* can only apply to and find waiver over patent infringement issues because – as federal circuit authority – it is not precedent for the other issues of substantive law over which Lexmark seeks discovery.

1.      **Post-*Echostar* Decisions Have Defined "Subject Matter" To Include Only Patent Infringement Issues.**

While Lexmark is more than willing to provide its own interpretation of *Echostar's* use of the "subject matter" language, it fails to advise this Court that other District Courts have already addressed this issue.  In *Intex Recreation Corp.*, the parties argued over the meaning of

*Echostar* and *Fort James'* (also cited by Lexmark) use of the "subject matter" language.[1] *Intex Rec. Corp.*, 439 F. Supp. 2d at 50. One party – like Lexmark – argued that the exact literal content of the opinion and the issues it discussed dictated the opinion's "subject matter," and therefore defined the exact scope of the waiver. *Id.* at 49-50. The United States District Court for the District of Columbia disagreed. It held that *Echostar* and *Fort James'* clear holding, supported by other language repeated in those opinions, was that the "advice of counsel" defense waived privilege over the "subject" of willful patent infringement, which it specifically defined as "whether [a patent] is valid, enforceable, and infringed." *Id.* Lexmark's authority agrees. *See In re Echostar Communication Corp.*, 448 F.3d at 1304 (waiver resulting from the advice of counsel defense applies to "whether [a] patent is valid, enforceable, and infringed by the accused"); *Akeva LLC*, 243 F. Supp. 2d at 423 ("subject matter waiver does not mean all opinions as to all possible defenses" but rather whether a patent is valid, enforceable, and infringed by the accused).

None of Lexmark's authorities on "advice of counsel" defense find otherwise or apply waiver to any issue or claim outside of patent infringement, much less to issues of antitrust, contract, or other claims. That is because (1) the "advice of counsel" offers no defense to such actions, and (2) such actions do not have an "intent" or state of mind component similar to willful patent infringement. Further, none of Lexmark's authorities ever find the advice of counsel defense waives privilege over counterclaims brought by the party invoking the defense against the party seeking discovery. Allowing Lexmark to use a <u>defense</u> asserted by Pendl against one of Lexmark's claims to gain an advantage by discovering privileged information on

---

[1] It is important to note neither of these cases addressed trial counsel. Pendl's position, supported by *Ampex*, is that no waiver as to trial counsel has occurred whatsoever.

an <u>offensive</u> claim brought by Pendl against Lexmark would be both counter-intuitive and prejudicial to Pendl.

        2.     ***Echostar* Cannot Waive Privilege Concerning Other Claims Because It Does Not Control Waiver Of Such Actions.**

Lexmark's attempt to extend the holding of *Echostar* to claims outside of its patent infringement claim is further flawed because both *Echostar* and the federal circuit are authority solely on issues of substantive patent law.  *See In re Echostar*, 448 F.3d at 1298.  Antitrust law, contract law, and the law governing the other claims in this litigation are their own areas of substantive law separate from patent law.  They are controlled by federal and state statutes, as well as precedent from the jurisdiction where the such actions are brought.  *Echostar* and the federal circuit are therefore inapplicable as to questions of waiver for such claims.  Lexmark is again "stretching," and its contention that Pendl has waived privilege as to antitrust, contract, and other claims under *Echostar* is baseless.

        D.     **LEXMARK CONCEDES NO WAIVER OF COMMON INTEREST PRIVILEGE BETWEEN CO-COUNTERCLAIM DEFENDANTS.**

In its Motion for Protective Order, Pendl argued that regardless of any waiver this Court might find between Pendl and its trial counsel, that waiver does not extend to the co-counterclaim defendants' common interest privilege.  (Mt. at 9.)  Pendl supported this argument with authority holding that waiver of one party's privilege cannot and does not waive  common interest communications with the other counterclaim defendants because "the joint defense privilege cannot be waived without consent of all parties to the defense."  (Mt. at 10 (citing *John Morrell & Co.,* 913 F.2d at 555-56.))  In fact, Pendl specifically cited Sixth Circuit authority holding that a co-defendant's "advice of counsel" defense does not waive privilege as to other co-defendants.  (*Id.* (citing *Ross*, 423 F.3d at 603).)

Lexmark failed entirely to respond to Pendl's argument or authority.  It has therefore

conceded that any waiver does not extend to common interest communications or Pendl's co-

defendants, and this Court must enter a protective order enjoining discovery of communications

or documents subject to such privilege.

### E.    LEXMARK CONCEDES IT HAS FAILED TO MEET MANDATORY PREREQUISITES FOR DEPOSING OPPOSING TRIAL COUNSEL.

While Lexmark goes to great lengths to claim that the attorney-client privilege has been

waived under *Echostar*, it entirely ignores – and therefore concedes – Pendl's argument that

Lexmark has not met the Sixth Circuit's mandatory prerequisites for deposing opposing trial

counsel.  As such, this Court must enter a protective order enjoining Lexmark's attempts to

depose trial counsel.

Lexmark's opposition fails to contest authority offered by Pendl holding that depositions

of trial counsel not only lower the "standards of the profession" but also detract "from the quality

of client representation."  (Mt. at 11 (citing *Shelton*, 805 F.2d at 1327.)  It further fails to dispute

that even "a deposition of counsel limited to relevant and non-privileged information risks

disrupting the attorney-client relationship and impeding the litigation."  *RESQNET.com,* 2004

U.S. Dist. LEXIS 13579, at *5.  It finally fails to address or challenge that the Sixth Circuit's

strict test dictating when opposing trial counsel may be deposed controls this Court's decision.

(Mt. at 11 (citing *Nationwide Mut. Ins. Co.*, 278 F.3d at 628-29.)  That is because even where

privilege between client and trial counsel is deemed waived, a party subpoenaing trial counsel

must still prove:  (1) "no other means exists to obtain the information" and (2) "the information

is crucial to the preparation of the case."  *Id*. (citing *Shelton*, 805 F.2d at 1327).

In its motion for protective order, Pendl argued that Lexmark could not prove that "no

other means existed," because Lexmark could simply depose Pendl about communications

between Pendl and Pendl's counsel. (Mt. at 12.)[2] Pendl further argued Lexmark could not

demonstrate that the information Lexmark seeks from trial counsel was "crucial to the

preparation of [Lexmark's] case." (*Id.*) As such, Pendl argued Lexmark had not and cannot

satisfy the Sixth Circuit's prerequisites for deposing trial counsel. *Id.* Lexmark failed to respond

to Pendl's arguments or offer any proof relevant to the Sixth Circuit's prerequisites. As such, it

has conceded Pendl's argument and failed to meet its burden of proof.

Instead, Lexmark merely cited *Echostar* and *Convolve*, and stated trial counsel have, in

fact, been deposed pursuant to the advice of counsel defense. (Opp. at 15.) First, *Echostar* does

not deal with trial counsel or depositions, much less deposing trial counsel. *In re Echostar

Communs. Corp.*, 448 F.3d 1294, 1296-05 (Fed. Cir. 2006); *Ampex,* 2006 U.S. Dist. LEXIS

48702, at *10. Second, Lexmark's *Convolve* case is from the United States District Court for the

Southern District of New York, and is not subject to the Sixth Circuit's *Shelton* test or

prerequisites.[3] Thus, neither case alleviates Lexmark from its burden to satisfy the Sixth

Circuit's prerequisites, which it has not even attempted to meet. Accordingly, Pendl is entitled to

a protective order preventing Lexmark from deposing trial counsel.

## F. A PROTECTIVE ORDER IS NECESSARY FOR THE SUBPOENAS OTHER DEFICIENCIES.

Finally, despite Lexmark's assertions to the contrary, a protective order is appropriate

because of the subpoena's deficiencies as to the time allowed for compliance, as well as its

breadth. First, Lexmark's statement that nine days is sufficient for compliance is disingenuous.

(Opp. at 17.) Lexmark admits that even if its overreaching waiver arguments were accepted,

Pendl's trial counsel must review documents in order to withhold trial strategy, and redact

---

[2]  In fact, Pendl has already offered to be deposed on topics relating to the limited advice of counsel defense.

[3]  In fact, *Convolve*, 224 F.R.D. at 104, itself states that even where privilege is found, deposition of trial counsel <u>may</u> be allowed only in "limited circumstances". In the Sixth Circuit, those circumstances are defined by the *Shelton* test which has not been met.

information not passed on to Pendl.[4]  Second, as discussed above, Lexmark's subpoena is overly broad and unduly burdensome based on the fact it seeks privileged information on topics far exceeding that which its authority can justify.  For each of these deficiencies protected under Rule 26(c), the Court should issue an order protecting Pendl and its trial counsel from Lexmark's subpoenas.

## G.    PENDL SHOULD BE AWARDED ATTORNEY FEES.

Rule 37 provides the Court with broad discretion to award reasonable attorney's fees associated with filing a motion under Federal Rule 26(c).  *See* Fed. R. Civ. P. 37.  Lexmark has served seventeen subpoenas on counsel in ten different jurisdictions.  The subpoenas seek privileged information on topics far exceeding those that Lexmark's authority can justify.  Serious consideration of the attorney-client privilege and review of its own authority should have put Lexmark on notice that its document requests and deposition topics were impermissible.  Furthermore, Lexmark had a duty to review the Sixth Circuit's prerequisites for deposing litigation counsel, which it not only failed to do prior to serving the subpoena, but wholly failed to respond to in its opposition.  Given these considerations, Pendl should be awarded its attorney's fees in connection with its motion and reply.

## CONCLUSION

For all of the foregoing reasons, this Court should issue a protective order regarding Pendl's advice of counsel defense enjoining the enforcement of Lexmark's subpoenas issued regarding this defense and the deposition of Pendl representatives.

---

[4] Given that Pendl's trial counsel has only passed only strategic and litigation advice, it will be required to withhold or redact all documents.

Respectfully submitted,

Dated:  November 15, 2006

/Joel T. Beres/
Joel T. Beres
Jack A Wheat
Jennifer L. Kovalcik
William Charles Ferrell, Jr.
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202-3352

James R. Michels
STITES & HARBISON, PLLC
424 Church Street
Suite 1800
Nashville, TN 37219

Daniel E. Danford
Elizabeth L. Thompson
STITES & HARBISON, PLLC
250 W. Main Street
2300 Lexington Financial Center
Lexington, KY  40507

**Attorneys for Pendl Companies, Inc.**

# CERTIFICATION

I hereby certify that a copy of the foregoing was filed electronically this 15th day of November 2006, and will be served electronically to designated counsel through the Court's electronic filing system and via U.S. Mail, postage prepaid to:

Stanley L. Amberg
11 Carolyn Lane
Chappaqua, NY 10514

Nanci Marian House
White, McCann & Stewart
125 South Main Street
P.O. Box 578
Winchester, KY 40392-578

Christopher Lee
7475 Wisconsin Avenue
Suite 300
Bethesda, MD 20814

Robert F. Altherr
Banner & Witcoff, LTD - DC
1001 G Street, N.W.
Suite 1100
Washington, DC 20001

BY:     /Joel T. Beres/
        One of Counsel for Pendl Companies, Inc.

# EXHIBIT 1

LEXSEE 2006 US DIST LEXIS 48702

**AMPEX CORPORATION, Plaintiff, v. EASTMAN KODAK COMPANY, ALTEK CORPORATION, and CHINON INDUSTRIES, INC., Defendants.**

**Civil Action No. 04-1373-KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2006 U.S. Dist. LEXIS 48702**

**July 17, 2006, Decided**

**SUBSEQUENT HISTORY:** Patent interpreted by Ampex Corp. v. Eastman Kodak Co., 2006 U.S. Dist. LEXIS 78139 (D. Del., Oct. 26, 2006)

**COUNSEL:** [*1] For Ampex Corporation a Delaware corporation, Plaintiff: Jack B. Blumenfeld, Julia Heaney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; David R. Brightman, Gabrielle E. Higgins, James E. Hopenfeld, Karen A. Christiansen, Kelly L. Baxter, Norman H. Beamer, Ray R. Zado, Pro Hac Vice.

For Eastman Kodak Company a New Jersey corporation, Defendant: Collins J. Seitz, Jr., Jaclyn Michele Mason, Connolly, Bove, Lodge & Hutz, Wilmington, DE; Michael J. Summersgill, Pro Hac Vice.

For Chinon Industries Inc. a Japanese corporation, Altek Corporation a Taiwanese corporation, Defendants: Collins J. Seitz, Jr., Jaclyn Michele Mason, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For Altek Corporation a Taiwanese corporation, Eastman Kodak Company a New Jersey corporation, Chinon Industries Inc. a Japanese corporation, Counter Claimants: Jaclyn Michele Mason, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM ORDER**

**Introduction**

This is a patent case, presently set for trial on December 4, 2006. (Docket Item ["D.I."] 53 at P17.) The plaintiff, Ampex Corporation ("Ampex"), has filed [*2] a letter motion (D.I. 268; the "Motion") seeking to compel the defendants, Eastman Kodak Company, Altek Corporation, and Chinon Industries, Inc. (collectively "Kodak"), to disclose "all information communicated to ... [Kodak], or reflecting communications to ... [Kodak], on the same subject matter as their September 2, 2005 opinion of counsel;" and it further seeks an order requiring Kodak to "provide a log of all materials withheld on privilege or work-product grounds dated on or before April 11, 2006, the expiration date of the '121 patent in suit." (Id. at 1; D.I. 275 at 1.) In short, Ampex wants all of the attorney-client communications between Kodak and its trial counsel bearing on the subject of infringement, and it wants a log of all withheld materials relating to that subject. At the outset of the claim construction and summary judgment argument on July 13, 2006, I denied the Motion in a bench ruling. This memorandum order further memorializes the bases for that ruling.

**Background** n1

n1 The parties appear to be essentially in agreement on the background facts provided here, which are drawn primarily from the statements of fact provided in their letter submissions and briefing.

[*3]

 

On April 11, 1989, U.S. Patent No. 4,821,121 (the "'121 patent") issued and was assigned to Ampex. (D.I. 38 at Ex. 1.) It is entitled "Electronic Still Store with High Speed Sorting and Method of Operation." (*Id.*) The claimed invention "relates to a digital electronic still store for broadcast television signals and more particularly to a still store providing a high speed multiimage [sic] scan or sort capability." (*Id.* at col. 1, ll. 11-14.) In 2001, twelve years after the patent issued, and five years after Kodak began selling digital cameras in the consumer electronics market, Ampex wrote to Kodak and invited Kodak to discuss (or, according to one's perspective, demanded that Kodak discuss) licensing the '121 patent. n2 (D.I. 275 at 3; D.I. 312 at 3.)

> N2 Kodak notes that, while it entered the consumer market for digital cameras in 1996, it had been selling digital cameras to photography professionals since 1991. (D.I. 312 at 3.) Ampex contends that Kodak was aware of the patent since at least 1992, when an in-house counsel at Kodak came across the patent and flagged it for further study. (*See* D.I. 275 at 3.)

[*4]

Kodak exchanged letters with Ampex about the '121 patent in 2001 and again in 2004. (DI. 275 at 3; D.I. 312 at 3-4.) After the first exchange, Kodak's in-house counsel undertook an analysis and, according to Kodak, concluded that Kodak did not infringe the '121 patent. (D.I. 312 at 3.) Neither the 2001 nor the 2004 exchange of letters led to licensing discussions. (*Id.*)

In August 2004, Kodak retained the law firm of Roylance, Abrams, Berdo and Goodman LLP ("Roylance") to provide an opinion on whether Kodak's products infringed the '121 patent. (D.I. 275 at 3; D.I. 312 at 4.) On October 21, 2004, Ampex filed an action against Kodak in the International Trade Commission ("ITC"), asserting infringement of the '121 patent. (D.I. 312 at 4.) On that same day, Ampex filed its complaint in this court (D.I. 1), but its suit here was stayed pending resolution of the ITC action. (D.I. 29.) A few weeks later, in November, Roylance provided to Kodak an oral opinion of non-infringement, which was later confirmed in a final written opinion to the same effect in September of 2005. (D.I. 312 at 4; *see also* D.I. 275 at 3-4.) In the meanwhile, on July 29, 2005, Ampex moved to withdraw

its ITC [*5] complaint, which was then dismissed on August 23, 2005. (D.I. 312 at 4-5.) Consequently, the stay in this case was lifted. (*See* D.I. 33.)

**Standard of Review**

A district court's determination as to the scope of the waiver of the attorney-client privilege is reviewed under an abuse-of-discretion standard. *In re EchoStar Communications Corp.,* 448 F.3d 1294, 1300 (Fed. Cir. 2006) (citing *In re Pioneer,* 238 F.3d at 1373 n. 2 ("[I]t appears that virtually all the circuits review the decision of a district court [regarding waiver of privilege] underlying a petition for writ of mandamus for abuse of discretion.")).

**Discussion**

Relying on the Federal Circuit's recent opinion in *In re EchoStar, supra,* 448 F.3d 1294, Ampex argues that an advice-of-counsel defense in a patent case effects a wholesale waiver of privilege as to any communication that any attorney has with a client, so long as the communication touches on the same topic as the opinion on which the client relies to defend against a charge of willfulness. (*See* D.I. 268 at 2-3.) According to Ampex, it matters not when or in what context the subsequent [*6] communication occurs. Citing *Akeva L.L.C. v. Mizuno Corp.,* 243 F. Supp.2d 418 (M.D. N.C. 2003), a case also cited by the Federal Circuit in its *Echostar* opinion, Ampex contends that there is no temporal limitation on the waiver of privilege, if infringing activity continues, nor is there any distinction between advice received from trial counsel and that received from opinion counsel. Ampex asserts that the *Echostar* opinion, in conjunction with *Akeva,* makes everything fair game for discovery, including communications between trial counsel and client during trial. (*See id.;* 5/11/06 Tr. at 9-12.) n3

> n3 Citations to "5/11/06 Tr. at ___" are to pages of the transcript of the May 11, 2006 teleconference in this matter. In subsequent briefing, Ampex backed off its we-get-every-communication argument to a degree, saying that *Echostar's* "core holding" is that discovery should not be permitted as a sword and a shield and that that principle is sufficient to require disclosure of trial counsel's communication in this case. (*See* D.I. 275

  

LexisNexis™     LexisNexis™     LexisNexis™

2006 U.S. Dist. LEXIS 48702, *6

at 2.) Nevertheless, the logic of Ampex's position remains the same, whether or not Ampex chooses to go all the way to the logical limit, as the following exchange demonstrates:

> The Court: -- is the short answer to my question, yes, that ... your reading of *Echostar* is that the Federal Circuit has now stated that the patentee is entitled to go after discovery all the way through trial. Any time trial counsel is talking to their client about infringement, they're entitled to know about it.
> [Counsel for Ampex]: That is what the Federal Circuit has stated, but we don't have to address that issue in this case.

(*See* 5/11/06 Tr. at 11-12.)

[*7]

I am compelled to reject Ampex's reading of *Echostar* as far too broad and its motion as an extravagant demand at odds with the generally understood contours of the attorney-client privilege.

To begin with, *Echostar* is, as I read it, an opinion aimed primarily at clarifying the scope of waiver of work product protection in the context of patent infringement cases involving an advice-of-counsel defense. The opinion gives clear and helpful direction on that difficult subject. It has less to say about the attorney-client privilege because that apparently was not the primary issue before the court. Perhaps that is why the court addressed the attorney-client privilege issue in relatively broad language, reasserting general principles. *Cf. Ind. Mills & Mfg., Inc. v. Dorel Indus., Inc.*, 2006 U.S. Dist. LEXIS 34023, No. 04CV001102-LJM-WTL, 2006 WL 1749413, *7, n.2 (S.D. Ind. May 26, 2006) (noting that "the *Echostar* court paints with a broad brush" when discussing the attorney-client privilege). For example, *Echostar* states that the attorney-client privilege cannot be used as a sword and a shield. 448 F.3d at 1301. That is a fundamental and well-understood rule, since, [*8] "selective waiver of the privilege may lead to the

inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice." *Id.* It is in the context of that general observation that the *Echostar* court made the comment so heavily relied on by Ampex here: "To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id.*

Ampex seems to ignore both the context of that remark and its exact language. As to the language chosen, the *Echostar* court's use of the word "such" to modify the phrase "communications regarding the same subject matter" indicates that the court intended a far more limited meaning for its statement than Ampex wishes to give it. The use of "such" leads one back to earlier language in that portion of the opinion, in which the court is emphasizing the unfairness of allowing a party to hold back an attorney's opinion that is inconsistent with a different opinion it chooses to show the world. *See id.* The modifier "such" [*9] thus strongly implies that the type of communications being discussed are opinions expressed in a manner comparable to the opinion that is disclosed, as was apparently the case in *Echostar* itself.

The context includes not only the sentences surrounding the one Ampex fixes on, but also includes the factual background in *Echostar*. The defendant in that case wanted to rely on its inside counsel's opinion on infringement, while cloaking with privilege an outside opinion it had obtained on the same subject. It is hardly surprising that the court, given those facts, would call that maneuver a foul. The court was knocking down the defendant's artificial and unpersuasive distinction between inside and outside counsel. Nothing in that context, however, indicates a desire by the Court of Appeals to have every communication a client has with its trial counsel on the very subject of an infringement trial open to review by opposing counsel.

This is not elevating form over substance, as Ampex implies. (D.I. 275 at 8-9.) It is not the form of the communication that matters, it is the content. If one received advice of non-infringement and also received an opinion on that same topic from [*10] another attorney, it would not matter on the question of waiver how the communication was labeled. But, if all attorney-client discussions touching on the same subject were to be

 LexisNexis™     LexisNexis™     LexisNexis™

viewed as "advice" or "opinions" on a par with the legal opinions that were at issue in *Echostar,* the court's comments would have to be understood as demolishing the practical significance of the attorney-client privilege, a result obviously at odds with other comments in *Echostar, see* 448 F.3d at 1300-01 ("We recognize the privilege in order to promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law."), and with other emphatic pronouncements of the Federal Circuit regarding the privilege, *see Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1344 (Fed. Cir. 2004) ("There should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney."). It will take more than [*11] the inference Ampex wants to draw from *Echostar* to persuade me that the Federal Circuit intends a wholesale revision of the historical understanding of the attorney-client privilege.

*Echostar* did not even address the issue of communications with trial counsel. To try to stretch the opinion to cover its position here, Ampex notes that *Echostar* cites the *Akeva* case, which did deal with trial counsel communications. (D.I. 275 at 5.) What Ampex ignores is that *Akeva* dealt with circumstances in which the defendant expressly relied on its trial counsel's non-infringement opinion to continue operating, while awaiting a separate opinion from another source. *Akeva,* 243 F. Supp.2d at 419-20. That is not akin to the facts in this case. n4

> n4 I emphasize that the present case does not involve a party choosing to use an attorney as both opinion counsel and trial counsel. That choice involves an unfortunate blending of roles that is, thankfully, rare and beyond the discussion provided here.

[*12]

Finally, Ampex tries to justify its extraordinary waiver argument by saying that Kodak waited to obtain an opinion until after litigation had begun. That argument appears to rest on an erroneous factual assertion and, in any event, it assumes that trial counsel was providing non-infringement opinions in the interim. In the particular history of this case, Kodak asserts that it had a non-infringement opinion from its in-house counsel three years before any litigation commenced. (D.I. 312 at 3.) Before litigation began, Kodak sought from outside counsel an opinion regarding infringement. (*Id.* at 4; D.I. 275 at 3-4.) That opinion was provided orally shortly after suit was filed. (D.I. 312 at 4.) Ampex chose to proceed first in the ITC, where neither damages nor willfulness were at issue, so Kodak chose not to press for a written opinion (*see id.*) -- a logical choice, since the purpose of the advice-of-counsel defense in infringement litigation is typically to avoid enhanced damages. I thus fail to see anything nefarious in Kodak getting its written opinion from outside counsel only after Ampex abandoned its ITC case and reinitiated its claims, including damages claims, in this [*13] court. Under these facts, Ampex has failed to demonstrate that Kodak's obtaining a further written opinion from its opinion counsel is somehow a cover for non-infringement advice it was actually getting from its trial counsel.

## Conclusion

For the foregoing reasons, it is hereby ORDERED that the bench ruling of July 13, 2006 is confirmed and the Motion (D.I. 268) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

July 17, 2006
Wilmington, Delaware

 

# EXHIBIT O

FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CIVIL ACTION NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.,

     PLAINTIFF/COUNTERCLAIM
     DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.,

     DEFENDANT/COUNTERCLAIM
     PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

     COUNTERCLAIM DEFENDANT

v.

STATIC CONTROL COMPANIES, INC.

     COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

     COUNTERCLAIM DEFENDANT

## MOTION TO QUASH SUBPOENA
## SERVED ON WYATT, TARRANT & COMBS, LLP

Pursuant to Fed. R. Civ. P. 45(c), the law firm of Wyatt, Tarrant & Combs LLP moves this Court

to quash an October 19, 2006 subpoena that was served on it by Lexmark International, Inc.  A

supporting memorandum in attached.

Respectfully submitted,


/s W. Craig Robertson, III

_____
W. Craig Robertson III
Mickey T. Webster
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, KY  40507-1746
(859) 288-7667

Counsel for Counsel for Static Control
Components, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2006, the undersigned counsel electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

- **Mark T. Banner**
  mbanner@bannerwitcoff.com
- **William H. Barrett**
  wbarrett@mwe.com
- **Matthew P. Becker**
  mbecker@bannerwitcoff.com
- **Joel T. Beres**
  jberes@stites.com dobrien@stites.com
- **Melise R. Blakeslee**
  mblakeslee@mwe.com
- **Steven P. Bogart**
  sbogart@reinhartlaw.com
- **Kevin M. Bolan**
  kbolan@mwe.com
  kshowman@mwe.com;fnussbaum@mwe.com;washington_ip_docket@mwe.com
- **Terry J. Booth**
  tjb@piperschmidt.com
- **W. Andrew Copenhaver**
  acopenhaver@wcsr.com
- **Daniel E. Danford**
  ddanford@stites.com bcampbell@stites.com
- **Andrew D. DeSimone**
  adesimone@sturgillturner.com
- **A. Steven Dotan**
  sdotan@mdfslaw.com mharding@mdfslaw.com;ecook@mdfslaw.com
- **Darren S. Enenstein**
  denenstein@mdfslaw.com
- **Donald R. Esposito, Jr**
  desposito@wcsr.com
- **William Charles Ferrell, Jr**
  wferrell@stites.com
- **Michael Peter Foley**
  mfoley@rendigs.com
- **Allison W. Freedman**
  allison.freedman@bartlit-beck.com
- **Ned Gelhaar**
  ngelhaar@mdfslaw.com ecook@mdfslaw.com
- **Seth D. Greenstein**
  sgreenstein@constantinecannon.com
- **Hada V. Haulsee**
  hhaulsee@wcsr.com rrubenstein@wcsr.com

- **James B. Heaton, III**
  jb.heaton@bartlit-beck.com
- **Jay Edward Ingle**
  jingle@jacksonkelly.com
- **Hanly A. Ingram**
  hanly.ingram@skofirm.com
- **Jennifer L. Kovalcik**
  jkovalcik@stites.com
- **William L. London, III**
  skipl@scc-inc.com vandyh@scc-inc.com;LegalAdmin@scc-inc.com;steveq@scc-inc.com;elizabethm@scc-inc.com
- **Steven Brian Loy**
  steven.loy@skofirm.com
- **Douglas L. McSwain**
  dmcswain@sturgillturner.com vhoward@sturgillturner.com
- **Timothy C. Meece**
  tmeece@bannerwitcoff.com
- **Frederic M. Meeker**
  fmeeker@bannerwitcoff.com
- **Stefan M. Meisner**
  smeisner@mwe.com
- **James R. Michels**
  randy.michels@stites.com
- **Thomas C. O'Konski**
  tok@c-m.com
- **Andrew C. Oatway**
  aco@morisi.com
- **Binal J. Patel**
  bpatel@bannerwitcoff.com
- **Geronimo Perez, Jr**
  gperez@mdfslaw.com clee@mdfslaw.com
- **Paul E. Poirot**
  ppoirot@mwe.com
- **Mark N. Poovey**
  mpoovey@wcsr.com
- **Joseph M. Potenza**
  jpotenza@bannerwitcoff.com
- **Stephen J. Rafferty**
  srafferty@mdfslaw.com
- **Michael R. Reinemann**
  mreinemann@c-m.com
- **Christopher J. Renk**
  crenk@bannerwitcoff.com
- **W. Craig Robertson, III**
  wrobertson@wyattfirm.com

- **Christopher B. Roth**
  croth@bannerwitcoff.com
- **Charles E. Shivel, Jr**
  charles.shivel@skofirm.com
- **Jason S. Shull**
  jshull@bannerwitcoff.com
- **Joseph C. Smith, Jr**
  joseph.smith@bartlit-beck.com anita.seggelink@bartlit-
  beck.com;alison.wheeler@bartlit-beck.com;anna.fischer@bartlit-beck.com
- **Elizabeth L. Swanson**
  els@elswansonlaw.com
- **Elizabeth L. Thompson**
  ethompsonbk@stites.com
- **David H. Weber**
  dhw@lcojlaw.com
- **Mickey T. Webster**
  mwebster@wyattfirm.com
- **Jack A. Wheat**
  jwheat@stites.com
- **O. Andrew Wheaton**
  awheaton@mdfslaw.com
- **Alison G. Wheeler**
  alison.wheeler@bartlit-beck.com
- **Amy E. Wochos**
  aew@piperschmidt.com

s/ W. Craig Robertson III

_____
_Counsel for Static Control Components, Inc._

30429516.2

FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CIVIL ACTION NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.,

      PLAINTIFF/COUNTERCLAIM
      DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.,

      DEFENDANT/COUNTERCLAIM
      PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

      COUNTERCLAIM DEFENDANT

v.

STATIC CONTROL COMPANIES, INC.

      COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

      COUNTERCLAIM DEFENDANT

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA
SERVED ON WYATT, TARRANT & COMBS, LLP**

Pursuant to Fed. R. Civ. P. 45(c), the law firm of Wyatt, Tarrant & Combs LLP

("Wyatt") states as follows for its memorandum in support of its motion to this Court to quash an

October 19, 2006 subpoena that was served on it by Lexmark International, Inc. ("Lexmark").

The subpoena seeks deposition testimony and documents from Wyatt related to its work as *trial counsel* for Static Control Components, Inc. ("Static Control"). The subpoena is Lexmark's unabashed attempt to discover trial strategy and attorney work product from *all* of its opposing parties' trial counsel, apparently based on the unfounded belief that all of those parties have waived their privileges because one of them *(not Wyatt's client)* has asserted an "advice of counsel" defense based on an opinion letter that it procured before litigation commenced from a law firm that has never participated in the litigation. Under Rule 45(c), the subpoena shall be quashed and Static Control should be awarded its legal fees.

## BACKGROUND

### A. Nature Of The Underlying Litigation

As this Court is aware, this case concerns certain laser printer toner cartridges manufactured by Lexmark. Lexmark makes and sells laser printers and then attempts to "license" toner cartridges for those printers by means that include affixing fine-print labels to the cartridges in an effort to declare unilaterally that anyone who opens the cartridge box or uses the cartridge is a patent licensee of Lexmark, bound by the label "license" to use the cartridge only once and then return it to Lexmark. The object of this scheme is to prevent used cartridges from falling into the hands of companies known as "remanufacturers," which repair used cartridges and refill them with toner so that they can be used again – at a price far below that of buying a new Lexmark cartridge. There are thousands of such remanufacturers in the United States.

Lexmark's adversaries in this case are three specific remanufacturers – NER Data Products, Inc.; Pendl Companies, Inc. ("Pendl"); and Wazana Brothers International, Inc. (collectively, the "Remanufacturers") – along with the industry's largest supplier of parts to such remanufacturers, Static Control.

In broad terms, Static Control and the Remanufacturers contend that Lexmark's

"licensing" scheme entails false advertising, constitutes patent misuse and is otherwise improperly anti-competitive, while Lexmark contends that Static Control and the Remanufacturers are willfully infringing Lexmark's patents, and/or willfully inducing the infringement of Lexmark's patents, by enabling the re-use of toner cartridges that Lexmark alleges were licensed to consumers for only one use.

**B.    Wyatt's Role As Trial Counsel To Static Control**

At the outset of this litigation, Static Control retained Wyatt to serve as local counsel. (*See* affidavit of W. Craig Robertson III., attached as Exh. 1, at ¶ 2.)  Wyatt was retained solely as trial counsel and not to offer any opinions as to the validity or infringement of any patent.  (*Id.* at ¶ 3.)  Wyatt was not retained by any other party to the litigation.  (*Id.* at ¶ 4.)

As trial counsel for Static Control, Wyatt has not provided any party to this litigation, including Static Control, with any opinion as to the validity or infringement of any patent.  (Id. at ¶5.)  Nor has Wyatt provided any legal services whatsoever to any party other than Static Control.  (*Id.* at ¶ 6.)

Wyatt may have participated with counsel for all of the Remanufacturers in privileged communications concerning matters of common interest to their preparation for trial, pursuant to a common interest agreement.  Regardless, the common interest agreement does not contemplate the provision of, nor has it been used to provide, any party with any opinions as to the validity or infringement of any patent.  (*Id.* at ¶ 8.)

**C.    Lexmark's Subpoena To Wyatt**

Despite knowing Wyatt's role as trial counsel for Static Control, Lexmark subpoenaed Wyatt – *as well as each and every other opposing litigant's litigation counsel* – on October 19, 2006.  (*See* Subpoena, attached as Exh. 2.)  The subpoena broadly demands "[a]ll documents and things relating to the subject matter discussed in" the opinion of counsel letter that Pendl

produced to Lexmark when asserting its opinion of counsel defense. (*Id.* at Request 1; *see also* Deposition Topic 1.)  Given the breadth with which Lexmark is likely to interpret the "subject matter" of the letter at issue, this request and deposition topic alone seem intended to demand all privileged communication between Wyatt and Static Control, and all work product produced by Wyatt during the litigation.

The subpoena goes on to demand various communications "between Wyatt and Pendl" (*see id.*, Requests 2-9 and Deposition Topics 2-9), the catch being that Pendl is defined to include Pendl's attorneys (*see id.*, Definition 3), and as mentioned above, there may have been common-interest-privileged communications between Wyatt at all the attorneys for all the Remanufacturers, including Pendl.  Given the breadth of topics specified by the subpoena, it thus seems designed to call for most if not all common-interest-privileged communications that have taken place among counsel for Static Control and counsel for the Remanufacturers over the course of the entire litigation.

## ARGUMENT

### I.    The Subpoena Must Be Quashed Because It Seeks Information Protected By The Attorney-Client Privilege And Work-Product Doctrine.

Rule 45 provides that a Court *must* quash or modify a subpoena that requires disclosure of privileged or other protected material.  *See* Fed. R. Civ. P. 45(c)(3)(A)(iii).  This protection applies to subpoenas for production of documents as well as the testimony of witnesses.  *Id.*  A client has the right to seek this protection when its attorney is subpoenaed, and the attorney independently has the right to seek it in favor of his client.  *See Estate of Yaron Ungar v. Palestinian Authority*, 400 F. Supp.2d 541, 554 (S.D.N.Y. 2005) (finding subpoena on counsel's documents required a court to "quash, rather than modify, the subpoena under Rule 45(c)").  Wyatt is seeking that protection as to each request and deposition topic in Lexmark's subpoena.

As noted above, Lexmark's document requests and deposition topics effectively demand that Wyatt – in its role as trial counsel – divulge privileged communications and work product. The requests are not tailored for discovery of non-privileged information; indeed they specifically seek privileged information related to each and every claim asserted in the litigation.

Lexmark is wrong in the first instance to believe that Pendl's assertion of its advice of counsel defense waived even its own privilege over communications with its own trial counsel or work product produced by its own trial counsel. Waiver created by the advice of counsel defense does not extend to litigation documents created in anticipation of, or for use at, trial. *See Intex Recreation Corp. v. Metalast*, Civ. No. 01-1213 (JDB), 2005 U.S. Dist. LEXIS 10149, at *10 (D.D.C. March 2, 2005). In fact, many courts hold that the waiver applies only to communications and documents created before the filing of a lawsuit; communications and documents created thereafter retain their privilege. *See Dunhall Pharms. v. Discus Dental*, 994 F.Supp. 1202, 1206 (C.D. Cal. 1998) ("Once the lawsuit is filed, the waiver of work product protection ends."); *Motorola v. Vosi Techs.*, 2002 U.S. Dist. LEXIS 15655 at *2 (N.D. Ill. 2002). Such a limitation "follows the enhanced interest" in protecting a party against wholesale "disclosure of trial strategy and planning." *Dunhill*, 994 F.Supp. at 1206.

Some courts find that the waiver extends beyond the filing of the lawsuit. These courts nevertheless limit post-filing discovery to *non-litigation counsel*. They continue to protect litigation counsel and apply the privilege to their advice. *See Tivo v. Echostar*, Civ. No. 2:04-CV-1, 2005 U.S. Dist. LEXIS 42481, at **18-19 (E.D. Tex. Sept. 26, 2005) (denying discovery into opinions by litigation counsel). Even courts applying the most liberal and expansive form of waiver still protect litigation files, limiting any production to litigation counsel opinions that contradict the client's previous patent opinions. *See Intex*, 2005 U.S. Dist. LEXIS at *15. All of

these interpretations stand for the general premise that regardless of court's interpretation of waiver, a party cannot – under the guise of discovery pursuant to an advice of counsel defense – "pillage" its opponent's litigation files. *In re Echostar*, 448 F.3d 1294, 78 USPQ2d 1676, at 1682 (Fed. Cir. 1996). That is precisely and transparently what Lexmark is trying to do.

Lexmark is also wrong to believe that the alleged waiver by Pendl would extend to the other Remanufacturers or Static Control because of the common interest agreement those parties entered into exclusively for trial preparation purposes, years after Pendl received the legal opinion that it now relies upon to refute willful infringement. This is not only wrong but completely backwards: the existence of the common interest agreement *prohibits* one party's disclosure from waiving any other party's privilege. *See, e.g., In re Blinder, Robinson & Co., Inc.*, 140 B.R. 790, 795 (D. Colo. 1992) (joint defense privilege cannot be waived without consent of all parties who share privilege); *Metro Wastewater Reclamation Dist. v. Continental Cas. Co.*, 142 F.R.D. 471, 478 (D. Colo. 1992) (same). *See also generally, e.g., John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers*, *AFL-CIO*, 913 F.2d 544, 555-56 (8th Cir. 1990) (it is fundamental that joint defense privilege cannot be waived without consent of all parties to the defense) (citing cases); *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244 (4th Cir. 1990) (one participant in common interest privilege cannot unilaterally waive privilege without consent of other participants in the privilege); *In re Benun*, 339 B.R. 115, 128-29 (Bkrtcy. D. N.J. 2006) (when one of two or more clients with common interests waives his attorney-client privilege in dispute with third party, that one client's waiver of privilege does not effect a waiver as to other clients' attorney-client privilege) (citing, *inter alia, Interfaith Housing Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1402 (D. Del. 1994)).

Static Control has not consented to any waiver of the common interest privilege that exists among itself and the Remanufacturers. Thus, even if Pendl waived its own privileges with respect to certain materials of its own, related to advice it received from non-litigation counsel before litigation commenced, that limited waiver cannot be construed to waive any privilege that belongs to Static Control, including the common interest privilege that Static Control shares with the Remanufacturers.

The Court should therefore quash Lexmark's subpoena to Wyatt.

## II. The Subpoena Should Be Quashed Because It Fails To Meet Mandatory Prerequisites For Deposing Opposing Counsel.

Depositions of opposing counsel are disfavored. *RESQNET.com v. Lansa, Inc.*, 59 Fed. R. Serv. 3d (Callaghan) 122, 2004 U.S. Dist. LEXIS 13579, at * 5 (S.D.N.Y. July 23, 2004) (quoting *United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)). Even "a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." *Id.* (citing *Alcorn Labs v. Pharmacia Corp.*, 225 F.Supp. 2d 340 (S.D.N.Y. 2002)). Taking the deposition of opposing counsel not only "lowers the standards of the profession," but also "detracts from the quality of client representation." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987). Counsel should instead be free to devote his or her time and efforts to preparing the client's case "without fear of being interrogated by his or her opponent." *Id.*

The *Shelton* test first states that opposing counsel cannot be deposed if the information being sought is privileged. *Id.* Where the information sought is non-privileged, opposing counsel may still not be deposed unless (1) "no other means exists to obtain the information" and (2) "the information is crucial to the preparation of the case." *Id.* (citing *Shelton*, 805 F.2d at 1327).

Lexmark cannot meet any of these prerequisites. First, the information sought is privileged, as Static Control has not waived any privilege. *See* I, *supra*. Second, Lexmark cannot prove that no other means exist to discover the information. The subpoena seeks testimony as to communications between Wyatt and Pendl. To the extent the topics encompass any non-privileged information, Lexmark can simply depose Pendl. Discovering the information from an alternate source is therefore not only possible, but convenient. Third, Lexmark has not and cannot show that deposing Wyatt is "crucial" to its case. Discovering opposing counsel's trial strategy is not appropriate, much less "crucial."

### III. The Subpoena Should Be Quashed Because It Does Not Provide A Sufficient Response Time, Is Overly Broad And Unduly Burdensome, And Seeks Duplicative Documents.

The subpoena should further be quashed because of numerous other deficiencies. First, it allowed only nine days for what would be tremendously burdensome document production. (Exh. 4 at 2.) Under Rule 45(c), this does not constitute a reasonable time for compliance. *See* Fed. R. Civ. P. 45(c)(3)(i) (requiring reasonable time for compliance).

Second, the subpoena is overly broad and unduly burdensome. For instance, it requests all documents and testimony "relating to" the "subject matter" of a letter from August 1999. Not only is this request vague, but it could be read to include all statutes and case law, as well as every document ever written on patent infringement. As such the subpoena is overly burdensome and should be quashed. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv) (quashing subpoena for undue burden).

Finally, the subpoena seeks duplicative documents already sought from the appropriate party – Pendl. Allowing an opposing litigant to serve discovery on a party and then subpoena its opposing counsel for the same documents is wasteful. For all these reasons enumerated under Rule 45(c), the subpoena should be quashed.

**IV.    Static Control Should Be Awarded Attorney Fees.**

Rule 45(c) provides that a party and its attorney issuing and serving a subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena."  Moreover, the "court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee."  *Id.*

Even a cursory review of the attorney-client privilege would have put Lexmark on notice that its document requests and deposition topics were impermissible.  *See* I, *infra.*  Furthermore, any serious consideration of the prerequisites for deposing litigation counsel would have put Lexmark on notice of the impropriety of its subpoena.  *See* II, *infra.*  Finally, regardless of whether Lexmark argues it has appropriate grounds based on the advice of counsel defense, it is undeniable that it has sought documents and testimony far exceeding that topic.  Based on these actions, Static Control should be awarded its attorney's fees in response to this motion.

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should quash Lexmark's subpoena to Wyatt.

Seeking all privileged material on all claims related to a litigation is not only contrary to law, but

also detrimental to the litigation process. Static Control should be awarded its reasonable

attorney's fees for Wyatt's response to the subpoena.

Respectfully submitted,

/s W. Craig Robertson, III

_____
W. Craig Robertson III
Mickey T. Webster
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, KY  40507-1746
(859) 288-7667

Counsel for Counsel for Static Control
Components, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October, 2006, the undersigned counsel electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

- **Mark T. Banner**
  mbanner@bannerwitcoff.com
- **William H. Barrett**
  wbarrett@mwe.com
- **Matthew P. Becker**
  mbecker@bannerwitcoff.com
- **Joel T. Beres**
  jberes@stites.com dobrien@stites.com
- **Melise R. Blakeslee**
  mblakeslee@mwe.com
- **Steven P. Bogart**
  sbogart@reinhartlaw.com
- **Kevin M. Bolan**
  kbolan@mwe.com
  kshowman@mwe.com;fnussbaum@mwe.com;washington_ip_docket@mwe.com
- **Terry J. Booth**
  tjb@piperschmidt.com
- **W. Andrew Copenhaver**
  acopenhaver@wcsr.com
- **Daniel E. Danford**
  ddanford@stites.com bcampbell@stites.com
- **Andrew D. DeSimone**
  adesimone@sturgillturner.com
- **A. Steven Dotan**
  sdotan@mdfslaw.com mharding@mdfslaw.com;ecook@mdfslaw.com
- **Darren S. Enenstein**
  denenstein@mdfslaw.com
- **Donald R. Esposito, Jr**
  desposito@wcsr.com
- **William Charles Ferrell, Jr**
  wferrell@stites.com
- **Michael Peter Foley**
  mfoley@rendigs.com
- **Allison W. Freedman**
  allison.freedman@bartlit-beck.com
- **Ned Gelhaar**
  ngelhaar@mdfslaw.com ecook@mdfslaw.com
- **Seth D. Greenstein**
  sgreenstein@constantinecannon.com
- **Hada V. Haulsee**
  hhaulsee@wcsr.com rrubenstein@wcsr.com

- **James B. Heaton, III**
  jb.heaton@bartlit-beck.com
- **Jay Edward Ingle**
  jingle@jacksonkelly.com
- **Hanly A. Ingram**
  hanly.ingram@skofirm.com
- **Jennifer L. Kovalcik**
  jkovalcik@stites.com
- **William L. London, III**
  skipl@scc-inc.com vandyh@scc-inc.com;LegalAdmin@scc-inc.com;steveq@scc-inc.com;elizabethm@scc-inc.com
- **Steven Brian Loy**
  steven.loy@skofirm.com
- **Douglas L. McSwain**
  dmcswain@sturgillturner.com vhoward@sturgillturner.com
- **Timothy C. Meece**
  tmeece@bannerwitcoff.com
- **Frederic M. Meeker**
  fmeeker@bannerwitcoff.com
- **Stefan M. Meisner**
  smeisner@mwe.com
- **James R. Michels**
  randy.michels@stites.com
- **Thomas C. O'Konski**
  tok@c-m.com
- **Andrew C. Oatway**
  aco@morisi.com
- **Binal J. Patel**
  bpatel@bannerwitcoff.com
- **Geronimo Perez, Jr**
  gperez@mdfslaw.com clee@mdfslaw.com
- **Paul E. Poirot**
  ppoirot@mwe.com
- **Mark N. Poovey**
  mpoovey@wcsr.com
- **Joseph M. Potenza**
  jpotenza@bannerwitcoff.com
- **Stephen J. Rafferty**
  srafferty@mdfslaw.com
- **Michael R. Reinemann**
  mreinemann@c-m.com
- **Christopher J. Renk**
  crenk@bannerwitcoff.com
- **W. Craig Robertson, III**
  wrobertson@wyattfirm.com

- **Christopher B. Roth**
  croth@bannerwitcoff.com
- **Charles E. Shivel, Jr**
  charles.shivel@skofirm.com
- **Jason S. Shull**
  jshull@bannerwitcoff.com
- **Joseph C. Smith, Jr**
  joseph.smith@bartlit-beck.com anita.seggelink@bartlit-beck.com;alison.wheeler@bartlit-beck.com;anna.fischer@bartlit-beck.com
- **Elizabeth L. Swanson**
  els@elswansonlaw.com
- **Elizabeth L. Thompson**
  ethompsonbk@stites.com
- **David H. Weber**
  dhw@lcojlaw.com
- **Mickey T. Webster**
  mwebster@wyattfirm.com
- **Jack A. Wheat**
  jwheat@stites.com
- **O. Andrew Wheaton**
  awheaton@mdfslaw.com
- **Alison G. Wheeler**
  alison.wheeler@bartlit-beck.com
- **Amy E. Wochos**
  aew@piperschmidt.com

s/ W. Craig Robertson III

_____
*Counsel for Static Control Components, Inc.*

30429516.1

FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CASE NO. 04-CV-84-KSF

STATIC CONTROL COMPONENTS,                           PLAINTIFF
INC

v.

LEXMARK INTERNATIONAL, INC.                          DEFENDANT

v.

WAZANA BROTHERS                    COUNTERCLAIM DEFENDANT
INTERNATIONAL, INC. d/b/a MICRO
SOLUTIONS ENTERPRISES

v.

PENDL COMPANIES, INC.             COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.           COUNTERCLAIM DEFENDANT

## AFFIDAVIT OF W. CRAIG ROBERTSON III

Comes the Affiant, W. Craig Robertson III, after having been duly sworn, and

hereby states as follows:

1.      I, W. Craig Robertson III, am a partner with the law firm of Wyatt, Tarrant

& Combs, LLP.

2.      On or about January 1, 2003, this firm was retained to serve as local trial

counsel for Static Control Components, Inc.



3.      Since that time I have been the partner in charge of this litigation.  Wyatt was retained solely as trial counsel and not to offer any opinions as to the validity or infringement of any patent.

4.      Wyatt was not retained by any other party to the litigation.

5.      As trial counsel for Static Control, Wyatt has not provided any party to this litigation, including Static Control, with any opinion as to the validity or infringement of any patent.

6.      Wyatt has not provided any legal services whatsoever in this matter to any party other than Static Control.

7.      Static Control and the remanufacturing defendants in this case are parties to a common interest agreement.

8.      A common interest agreement does not contemplate the provision of, nor has it been used to provide, any party with any opinions as to the validity or infringement of any patent.

Further the affiant sayeth not.

_____
W. Craig Robertson III

STATE OF KENTUCKY   )
                                            )   :SS
COUNTY OF FAYETTE   )

The foregoing instrument was subscribed, sworn to and acknowledged before me this 30th day of October, 2006, by W. Craig Robertson III.

My commission expires:   _____/-30-10_____.

2

_Geneva B. Dinter_
NOTARY PUBLIC

30429527.1

3

Issued by the

# United States District Court
### EASTERN DISTRICT OF KENTUCKY

SUBPOENA IN A CIVIL CASE

Static Control Components, Inc.
    Plaintiff/Counterclaim Defendant

v.

Lexmark International, Inc.
    Defendant/Counterclaim Plaintiff

v.

Wazana Brothers International, Inc.
d/b/a Micro Solutions Enterprises
    Counterclaim Defendant

v.

Pendl Companies, Inc.
    Counterclaim Defendant

v.

NER Data Products, Inc.
    Counterclaim Defendant

Civil Action No. 04-CV-84-GFVT
Pending in United States District Court,
Eastern District of Kentucky
Honorable Gregory F. Van Tatenhove

To: **Wyatt, Tarrant, & Combs, LLP**
    Attn: Mickey T. Webster
    250 West Main Street, Suite 1600
    Lexington, KY 40507

_____ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

**EXHIBIT**

**2**

__X__   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case pursuant Fed. R. Civ. P. 45.  See Exhibit B for the deposition topics.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Wyatt, Tarrant, & Combs, LLP<br>250 West Main Street, Suite 1600<br>Lexington, KY 40507<br>(or other mutually agreeable location) | November 9, 2006 at 9:00 a.m. |

__X__   YOU ARE COMMANDED to produce and permit inspection and copying of documents or things at the place, date, and time specified below. See Exhibit A for the requests for documents and things.

| PLACE | DATE AND TIME |
|---|---|
| Banner & Witcoff, Ltd.<br>10 South Wacker Drive<br>Suite 3000<br>Chicago, Illinois 60606<br>(or other mutually agreeable location) | October 27, 2006 at 9:00 a.m. |

_____   YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)<br>Attorney for Defendant/Counterclaim Plaintiff, Lexmark International, Inc. | Date<br>October 19, 2006 |
|---|---|

Issuing Officer's Name, Address, and Phone Number
Jason S. Shull, Banner & Witcoff, Ltd., 10 South Wacker Drive, Suite 3000, Chicago, Illinois, 60606, (312) 463-5000

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| | |

| SERVED | | |
|---|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | TITLE | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on:_____
       DATE

Signature of server:

Address of server:

# Rule 45, Federal Rule of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUB-POENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(I) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(I) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

Pursuant to Federal Rule of Civil Procedure 45 and directed by the subpoena attached hereto, which has been issued by the Eastern District of Kentucky, you are requested to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control. With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

## DEFINITIONS

1.    The term "Wyatt" means Wyatt, Tarrant & Combs, LLP its past and current employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Wyatt is or was doing business, its predecessors, directors, officers, employees, agents, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Mickey T. Webster and W. Craig Robertson, III.

2.    The term "Lexmark" means Lexmark International, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Lexmark is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

3.    The term "Pendl" means Pendl Companies, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Pendl is or was doing business, its predecessors, parents, sisters, subsidiaries,

divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Robert D. Becker (the author of the letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1)).

4.     The term "Lexmark's Patents" means U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231, 5,758,233, 5,768,661, 5,802,432, 5,804,114, 5,874,172, 5,875,378, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,009,291, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,459,876, 6,487,383, 6,492,083, D399,249, and D458,300.

5.     The term "Prebate Program" means and refers to Lexmark's Prebate program for the sale of certain Lexmark toner cartridges that are sold at a special price subject to a restriction that the cartridge be used only once and returned only to Lexmark.  Lexmark's Prebate program was renamed the "Lexmark Return Program" on April 22, 2003.

6.     The terms "document" or "documents" mean anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, electronic or electrical means whatsoever, including without limitation, memoranda, correspondence, electronic mail, electronic data compilations, notes, books, records, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints, maps, plats, surveys, drawings, sketches, graphs, charts, plans, laboratory or engineering reports, notebooks, worksheets, reports, lists, analyses, summaries, ledger accounts,

audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registration, solicitations, minutes, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agenda, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, instrument assignments, applications, offers, acceptances, proposals, financing statements, documents of title, appraisals, purchase orders, invoices, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, x-rays, video or audio tapes and recordings.

7.     The terms "thing" or "things" mean any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

8.     The term "relating to" means alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

9.     "And," "or," as well as "and/or," shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

10.     The terms "any" and "all" shall be read to mean each and every.

11.     The term "person" means a natural or judicial person, including any corporation, proprietorship, partnership, agency, or business association of any type.

## INSTRUCTIONS

1.     In producing documents and things responsive to these requests, Wyatt shall furnish all documents and things within its possession, custody or control, as they are kept in the ordinary course of business or they shall be organized and labeled to correspond with the

document requests to which they are responsive, regardless of whether these documents and things are possessed directly by Wyatt or by its present or past agents, employees, companies, licensees, representatives, investigators, or attorneys.

2.   If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

(a)   the specific ground(s) for not producing the document or thing in full;

(b)   the basis for such a claim of privilege or immunity and the facts supporting that basis; and

(c)   fully identify the information or material contained within the document or thing for which such privilege or immunity is asserted, including as applicable, the name of any document or thing; its date; the name, address and job title of each author or other person involved in its preparation, each addressee and each person to whom a copy of the document or thing has been sent or received; and the general nature of the document or thing (e.g., memoranda, letter).

3.   Where an objection is made to a request, state all grounds upon which Wyatt's objection is based.

4.   If, after exercising due diligence, Wyatt is unable to determine the existence of any documents or things falling within a specific request, Wyatt shall so state in its written response.

5.   With respect to each of the following requests, Wyatt shall identify and/or produce all documents which are known to it or which can be located or discovered by Wyatt

through diligent effort on Wyatt's part, including, but not limited to, all documents which are in the business or personnel files of Wyatt employees or contained or stored within a computer in the possession of Wyatt or its representatives, attorneys, or accountants, or accessible to Wyatt, its employees, or its representatives, attorneys, or accountants.

6.    Whenever used herein, the singular shall be deemed to include the plural and the plural shall be deemed to include the singular and the disjunctive shall be deemed to include the conjunctive and the conjunctive shall be deemed to include the disjunctive so as to elicit all information potentially responsive to the request for production and all of its context.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:**    All documents and things relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1).

**Request No. 2:**    All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999.

**Request No. 3:**    All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Request No. 4:**    All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Request No. 5:**    All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to communications with Pendl regarding the infringement of Lexmark's Patents.

**Request No. 6:**   All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Request No. 7:**   All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Request No. 8:**   All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Request No. 9:**   All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

**EXHIBIT B**

The definitions set forth in Exhibit A are incorporated herein by reference.

## DEPOSITION TOPICS

**Deposition Topic No. 1:** Communications between Wyatt and Pendl relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999.

**Deposition Topic No. 2:** Communications between Wyatt and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Deposition Topic No. 3:** Communications between Wyatt and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Deposition Topic No. 4:** Communications between Wyatt and Pendl relating to the infringement of Lexmark's Patents.

**Deposition Topic No. 5:** Communications between Wyatt and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 6:** Communications between Wyatt and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 7:** Communications between Wyatt and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Deposition Topic No. 8:** Communications between Wyatt and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

# COUDERT BROTHERS

ATTORNEYS AT LAW

4 EMBARCADERO CENTER, SUITE 3300
SAN FRANCISCO, CA 94111
TEL: 415-986-1300 FAX: 415-986-0320

| | |
|---|---|
| NEW YORK | JAKARTA |
| PARIS | HO CHI MINH CITY |
| WASHINGTON | HANOI |
| LONDON | BERLIN |
| BRUSSELS | DENVER |
| HONG KONG | ST. PETERSBURG |
| SINGAPORE | MONTREAL |
| SAN FRANCISCO | ALMATY |
| BEIJING | PALO ALTO |
| SYDNEY | MEXICO CITY |
| LOS ANGELES | ASSOCIATED OFFICE |
| SAN JOSE | RIOS PERMER Y |
| | GUILLÉN-LLARENA, S.C. |
| TOKYO | BUDAPEST |
| MOSCOW | ASSOCIATED OFFICE |
| BANGKOK | NAGY ÉS TRÓCSÁNYI |
| | ÜGYVÉDI IRODA |

August 26, 1999

Via Facsimile

Mr. Randy Pendl
Pendl Companies, Inc.
170 N. Ketch Dr.
Oconto, WI 53153

Re:     Lexmark Probate Program

Dear Mr. Pendl:

At the request of Bruce McCubbrey, I am writing to you in response to your request for
an opinion on whether Pendl is authorized under the patent and contract laws of the United States
to purchase used Lexmark Optra Se 3455 cartridges from cartridge brokers, recondition them,
refill them with toner, and sell them as replacement cartridges for Lexmark Optra Se printers.

For purposes of our analysis we have assumed that the Lexmark cartridges are covered by
one or more patents issued to Lexmark, and that one or more claims of those patents would read
on the replacement cartridges sold by Pendl. We also have assumed that Pendl repairs the
Lexmark cartridges, but does not reconstruct them. A "reconstruction" is the creation of a new
product after the original product, viewed as a whole, has become spent.

Although no court has decided the particular issue presented by the specific facts in your
case, we are of the opinion that Pendl is authorized to sell the above-mentioned replacement
cartridges for Lexmark Optra Se printers. Lexmark sells the Probate cartridges to consumers. As
a general matter, the sale of a patented product exhausts the patent owner's right to control the
purchaser's use of the device thereafter. The theory behind the general rule is that in such a
transaction, the patentee has bargained for, and received, an amount equal to the full value of the
goods, and title to the goods has vested in the purchaser by virtue of the sale and purchase. *See
Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg.*, 43 USPQ.2d 1650, 1656 (Fed. Cir. 1997).
We believe the general rule applies here. The evidence demonstrates that Lexmark receives full

3267881.2

Confidential -- Attorney's Eyes Only

PE00991

COUDERT BROTHERS

Mr. Randy Pandl
August 26, 1999
Page 2

value for the Prebate cartridges, and that title has passed to the purchaser. The evidence also demonstrates that the Prebate conditions are void as against publicly policy, for they are not designed to secure to Lexmark the return of licensed products, but instead are designed to improperly expand the physical scope of the Lexmark patents to restrain competition in the aftermarket. Our preliminary analysis of Lexmark's position is set forth below.

Lexmark sells new Optra Se 3455 cartridges in two different ways: Prebate and non-Prebate. According to Lexmark's web site:

> Prebate resembles a rebate except the discount is immediate when you purchase. This allows you to buy a 100% brand-new Lexmark cartridge for your Optra Se at a discount, if you agree to use it only once, then return it to Lexmark free of charge. These cartridges are exactly the same cartridges you'd get if you paid full price, but if for some reason you prefer not to take advantage of Prebate, you can buy these cartridges at regular prices and terms using the non-Prebate part numbers listed above.

Lexmark sells the Prebate cartridge for $233.95 and the non-Prebate cartridge for $263.95. Lexmark claims that customers benefit through lower prices and higher quality.[1]

The Prebate cartridge outsells the non-Prebate cartridge by at least seven to one, and that number may grow due to the fact that many dealers appear to be unwilling to stock non-Prebate cartridges. Lexmark admits that it does not intend to enforce the Prebate conditions against its customers, and we understand that 30% or less of the cartridges are actually returned to Lexmark. We also understand that the value of the used cartridge is about $10.00. The cartridges that are returned to Lexmark are remanufactured by Lexmark and sold to select dealers for resale. *See* "The Lexmark Prebate Program — Lexmark Hearing: New York takes on Prebate" (May 1998).[2]

Lexmark claims that the Prebate program is sanctioned by the Federal Circuit's opinion in *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992). Lexmark is wrong. No Court has sanctioned a Prebate program. *Mallinckrodt* involved the sale of a patented device (the "UltraVent" device) for delivery of radioactive or therapeutic material in aerosol mist form to the lungs of a patient, for diagnosis and treatment of pulmonary disease. The UltraVent device fits into a lead shielded container that is provided by Mallinckrodt to minimize exposure to radiation

---

[1] According to Lexmark, remanufactured cartridges have lower quality and yield and they're "hoping that the Prebate program helps address this." See "In Defense of Lexmark's Prebate Program."

[2] www.rechargermag.com/rechargermag/lexhearing.htm

3953393.2

Confidential — Attorney's Eyes Only

COUDERT BROTHERS

Mr. Randy Pendl
August 26, 1999
Page 3

and for safe disposal after use. The device is manufactured by Mallinckrodt and bears the inscription "Single Use Only". The package insert provided with each UltraVent unit states "For Single Patient Use Only" and instructs that the entire contaminated apparatus be disposed of in accordance with procedures for the disposal of biohazardous waste. Certain hospitals did not dispose of the UltraVent device, or limit it to a single use. Instead, the hospitals shipped used manifold/nebulizer assemblies to Medipart for reconditioning. The reconditioned units were shipped back to the hospitals for another use.

Mallinckrodt filed suit against Medipart, asserting infringement and inducement to infringe Mallinckrodt patents. Both parties moved for summary judgment on all counts. The district court granted Medipart's motion on the patent infringement counts, holding that the "Single Use Only" restriction could not be enforced by suit for patent infringement. *Mallinckrodt, Inc. v. Medipart, Inc.*, 15 USPQ.2d 1113 (N.D. Ill. 1990). The district court reasoned, after reviewing numerous Supreme Court decisions, that in cases where the purchaser buys directly from the patent owner, no restrictions on future use were enforceable. Because the court found that no restrictions were enforceable under the patent laws when the purchaser buys directly from the patent owner, the court did not decide whether the particular "Single Use Only" condition was otherwise enforceable.

The Federal Circuit understood the district court to hold that "no restriction whatsoever could be imposed under the patent law, whether or not the restriction was enforceable under some other law, and whether or not this was a first sale to a purchaser with notice." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d at 701. The Federal Circuit disagreed with this reading of the case and reversed and remanded the case to the district court for a determination on *whether* "the use of the UltraVent was validly conditioned under the applicable law such as the law governing sales and licenses, and if the restriction on reuse was within the scope of the patent grant or otherwise justified." *Id.* at 709. Thus, contrary to Lexmark's statements, the Federal Circuit did not hold that a single use restriction was "indeed legal."

Turning to the question of whether the Prebate conditions are within the patent grant, or otherwise justified, the simple answer is no. Although "Prebate" is a new word, there is nothing new about it conceptually. Companies have been trying to control aftermarkets for years. It is an old story: give away the razor (printer) and sell the blades (cartridges). IBM did something similar up until 1956, when the U.S. Department of Justice required IBM to sign a consent decree or face a lawsuit for violating the antitrust laws. IBM used to have a policy of only leasing computers, not selling them. As the lessor, IBM could control aftermarkets such as the lucrative aftermarket for the maintenance of its computers. IBM, for example, could require its licensees to use IBM for service, and IBM could make sure that there was no market for used machines or new or used parts.

535135.2

Confidential -- Attorney's Eyes Only

Mr. Randy Pendl
August 26, 1999
Page 4

COUDERT BROTHERS

There is no question over whether authority is required to make, use or sell a patented invention. The patent statute provides that "whoever without authority makes, uses, . . . or sells any patented invention, in the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (1994). Authority is obtained by a purchaser, however, through the sale of a patented product, because the sale, as a general matter, exhausts the patent owner's rights with respect to the product. The theory behind this rule (the "exhaustion doctrine") is that in such a transaction, the patentee has bargained for, and received, an amount equal to the full value of the goods. *See Adams v. Burke*, 84 U.S. (17 Wall.) 453, 456-57 (1874); *United States v. Univis Lens Co.*, 316 U.S. 241, 250-251 (1942).

Numerous Supreme Court decisions address the issue of whether a patent owner may limit exhaustion by imposing express conditions on the sale of a patented device. A long line of cases, including *Dr. Miles Medical Co. v. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502, *Bauer & Cie v. O'Donnell*, 229 U.S. 1, 33 S.Ct 616, 57 L.Ed. 1041 (1913), *Strauss v. Victor Talking Machine Co.*, 243 U.S. 490, 37 S.Ct 412, 61 L.Ed. 866 (1917), *Motion Picture Patents Co. v. Universal Film Manufacturing Co.*, 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871 (1917), and *Boston Store of Chicago v. American Graphophone*, 246 U.S. 8, 23, 38 S.Ct 257, 260, 62 L.Ed. 551 (1918), hold that a patent owner may not limit exhaustion by imposing express conditions on the *sale* of a patented device. Commenting on *Straus* and *Motion Picture Patents*, the Supreme Court summarized the state of the law:

Reiterating the ruling in the last two cases it was again decided that as by virtue of the patent law one who sold a patented machine and received the price and had thus placed the machine so beyond the confines of the patent law, could not by qualifying restrictions as to use keep under the patent monopoly a subject to which the monopoly no longer applied. *Boston Store of Chicago v. American Graphophone*, 246 U.S. 25, 38 S.Ct 261.

The Court further explained that it was not depriving inventors of

. . . any right coming within the patent monopoly, since the cases alone concerned whether the monopoly of the patent law can be extended beyond the scope of that law or, in other words, applied to articles after they have gone beyond its reach. The proposition so earnestly insisted upon that while this may be true, it does not fairly consider the reflex detriment to come to the rights of property of the inventor within the patent law as a result of not recognizing the right to continue to apply the patent law as to objects which have passed beyond its scope, is obviously not one of judicial cognizance 246 U.S. 26, 38 S.Ct 261.

The point to be taken from the language quoted above is that one cannot sell a patented machine, receive the price, and expect the device to remain under the patent monopoly.

83035153.2

Confidential – Attorney's Eyes Only

Mr. Randy Pendl
August 26, 1999
Page 5

Other Supreme Court cases address the related issue of whether a patentee may grant a license to manufacture a patented device for a particular use, while reserving the right to manufacture a patented device for a different use.  In *General Talking Pictures Corp. v. Western Electric Co.*, the patentee granted licenses to manufacture amplifiers for home use, but reserved the right to manufacture amplifiers for the commercial/industrial market for themselves.  305 U.S. 124, 59 S.Ct. 116 (1938).  The Supreme Court held that a patentee may grant a license that is reasonably within the rights conferred by the patent grant, and observed that a license to manufacture within a particular field of use appeared to be within the exclusive right to make a patented device:

The question of law requiring decision is whether the restriction in the license is to be given effect.  That a restrictive license is legal seems clear.  As was said in *United States v. General Electric Co.*, the patentee may grant a license 'upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent secured.'  The restriction here is of that character.  The practice of granting licenses for a restricted use is an old one .  So far as appears, its legality has never been questioned.  The parties stipulated that 'it is common practice where a patented invention is applicable to different uses to grant written licenses to manufacture under United States Letters patents restricted to one or more of the several fields of use permitting the exclusive or non-exclusive use of the invention by the licensee in one field and excluding it in another field.'

As the restriction was legal and the amplifiers were made and sold outside the scope of the license, the effect is precisely as if no license whatsoever had been granted Transformer Company.  And as Pictures Corporation knew the facts, it is in no better position than if it had manufactured the amplifiers itself without license to do so.  305 U.S. at 127, 59 S.Ct. at 117 (internal citations omitted).

One important distinction between the Supreme Court cases is that the patentees in the former set of cases sold patented articles and received the price of the articles, and thus placed the articles sold beyond the confines of the patent law, while the patentees in *General Talking Pictures* merely licensed the right to make patented articles for a particular field of use under their right to exclude all or part of the patent grant.  A further important distinction is that the patentees in the former set of cases attempted to fix resale prices or otherwise violate the antitrust laws, while the patentees in *General Talking Pictures* apparently did not.  A close examination of the cases reveals that the Lexmark Prebate program falls squarely within the former set of cases.

In *Bauer & Cie v. O'Donnell*, 229 U.S. 1, 33 S.Ct 616, 57 L.Ed. 1041 (1913), the patentee had sold a product with a notice stating that the product "is licensed by us for sale and use at a price not less than one dollar.  Any sale in violation of this condition, or use when so sold,

Confidential — Attorney's Eyes Only

PE00995

COUDERT BROTHERS

Mr. Randy Pendl
August 26, 1999
Page 7

The Prebate cartridges are offered for sale at $233.95 on the Lexmark web-site with the following notice: "Sold at a special price with the understanding that you return your empty cartridge only to Lexmark." If we look through the words and forms with which Lexmark has elaborately enveloped its purpose, as the Supreme Court did in the *Strauss* case, to the substance and the realities of the transaction contemplated, we discover several noticeable features. First, while some of the notice terms concern "use" of the cartridges, the cartridges are "sold" to consumers. Second, Lexmark eliminates any future risks by requiring full payment up front before it parts with a cartridge. Third, while in terms the "use" of the cartridge is restricted, and the purchaser is required to "return" the cartridge to Lexmark after just one use, the Prebate program fails to provide any mechanism for Lexmark to enforce the terms of the program against its customers. Fourth, Lexmark does not seek to enforce the return of the cartridges against its customers, and admits that the return requirement is nothing more than strong encouragement (*see discussion below*). Fifth, the re-sale price fixed by Lexmark is far above the $10.00 street re-sale price of the cartridge. And finally, only 30% or so of the Prebate cartridges are returned. Collectively this is persuasive evidence that the Prebate transaction is not designed to secure to Lexmark a reasonable use and return of the patented cartridges within the grant provided by the patent laws, but is in substance an anti-competitive scheme which is not justifiable under the rule of reason.[3]

Lexmark claims that the Prebate program is legal under the antitrust laws because of the availability of non-Prebate cartridges. There is no merit to this argument because Lexmark controls the market for cartridges for Lexmark Optra printers, and markets and prices the non-Prebate cartridge to ensure control of the aftermarket for the cartridges. A similar scheme to control the aftermarket was held to be illegal in the *Kodak* case, where key service parts were made unavailable to independent servicers. *Eastman Kodak v. Image Technical Services*, 504 U.S. 481, 112 S.Ct 2072 (1992).

In view of the above, it is our opinion that Lexmark cannot enforce the Prebate conditions by action for patent infringement because they are outside of the patent rights granted to Lexmark, and cannot enforce them by action for breach of contract because they violate the antitrust laws. Our conclusion is consistent with the holding in *Mallinckrodt*, which calls for a determination of whether the conditions are reasonably within the patent grant, and, if not, whether the patentee has ventured beyond the patent grant and into behavior having an anticompetitive effect not justifiable under the rule of reason. 976 F.2d at 708.

---

[3] The justification with the most appeal, the protection of the public health, asserted in *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992), *Tripoli Co. v. Wella Corp.*, 425 F.2d 932, 936-38 (3d Cir.)(en banc), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970), and *Marks, Inc. v. Polaroid Corp.*, 237 F.2d 428, 435 (1st Cir. 1956), *cert. denied*, 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 550 (1957), is not present here.

3303313.2

Confidential -- Attorney's Eyes Only

PE00997

COUDERT BROTHERS

Mr. Randy Pendl
August 26, 1999
Page 8

The analysis set forth above assumes that the Prebate conditions otherwise bind the purchaser, but there is significant evidence to suggest that the Prebate conditions would not be binding on the purchaser. For example, in response to the argument that the Prebate program was designed to be anti-competitive, Lexmark wrote:

--    We considered mandatory return of the empty discounted versions, but we expected our customers would be concerned about complying with a "mandatory return" requirement

--    We did the next best thing -- on the discounted versions we strongly encouraged the returns, and allowed returns only to Lexmark (with our Prebate license terms). "Let's Set The Record Straight On Prebate."

These statements are in direct conflict with the only condition which accompanies the sale of the Prebate cartridge on the Lexmark web site, "Sold at a special price with the understanding that you return your empty cartridge only to Lexmark", and indicate that the purchaser is not bound by it.

Please contact us if you wish to discuss the particulars of the Prebate program and its specific effect on you and the aftermarket.

Best regards.

Very truly yours,

Robert D. Becker

RDB:sl

X343783.2

Confidential -- Attorney's Eyes Only

PE00998

LEXSEE

**RESQNET.COM, INC., Plaintiff, - against - LANSA, INC., Defendant.**

**01 Civ. 3578 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2004 U.S. Dist. LEXIS 13579; 59 Fed. R. Serv. 3d (Callaghan) 122**

**July 21, 2004, Decided
July 23, 2004; Filed**

**SUBSEQUENT HISTORY:** Partial summary judgment denied by, Motion to strike denied by, Motion granted by, Sanctions allowed by, in part, Motion denied by ResQNet.com, Inc. v. Lansa, Inc., 2005 U.S. Dist. LEXIS 594 (S.D.N.Y., Jan. 13, 2005)

**PRIOR HISTORY:** Resqnet.com, Inc. v. Lansa, Inc., 346 F.3d 1374, 2003 U.S. App. LEXIS 20962 (Fed. Cir., 2003)

**DISPOSITION:** On remand, plaintiff's counsel's motion to quash subpoena granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In patent case, a third-party witness, who was also counsel to plaintiff, moved under Fed. R. Civ. P. 26 and 45 to quash the subpoena served upon him by defendant, or in the alternative, for a protective order. Defendant sought to depose plaintiff's counsel concerning the prosecution of the patents-in-suit because he was the only person who was listed as having prosecuted those patents for plaintiff.

**OVERVIEW:** Defendant sought to determine when and under what circumstances relevant prior art become known to counsel, arguing that the factual information sought from counsel and the role he played during the prosecution history of the patents-in-suit was directly at issue. Even if the depositions of attorneys who had prosecuted patents were, as defendant suggested, routine, defendant failed to establish that plaintiff's counsel's deposition was either appropriate or necessary. The defense of inequitable conduct, giving rise to an inquiry as to the mental impressions of counsel prosecuting the patent, was not explicitly asserted. Defendant was not entitled to depose counsel on issues that were not pled. Defendant failed to establish a sufficient need to depose

counsel on other grounds. The prosecution histories spoke for themselves, and the relevant inquiry in terms of prior art and claim construction was how one of ordinary skill in the art would interpret and understand those prosecution histories, not what litigation counsel thought about them. Taken together, the various factors identified by the Second Circuit in Friedman counseled against permitting the deposition of counsel.

**OUTCOME:** The court granted counsel's motion to quash the subpoena.

**CORE TERMS:** patent, deposition, discovery, inequitable conduct, depose, pled, subpoena, deposed, patent law, affirmative defense, misuse, opposing counsel, work-product, regional, prosecuted, own law, unenforceable, prosecuting, impressions, weigh, pending litigation, protective order, right to assert, motion to quash, automatically, particularity, encountering, prosecute, inventors, guided

**LexisNexis(R) Headnotes**

Civil Procedure > Pretrial Matters > Subpoenas
*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > Process Service*
*Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals*
[HN1] On procedural issues not unique to patent law, such as whether litigation counsel has information such that he should be deposed, the United States Court of Appeals for the Federal Circuit defers to the law of the regional circuit. Although the Federal Circuit has applied its own law to discovery disputes in certain contexts, it has also recognized that, in general, an order quashing a subpoena is not unique to patent law and should be evaluated under the law of the regional circuit.

2004 U.S. Dist. LEXIS 13579, *; 59 Fed. R. Serv. 3d (Callaghan) 122

*Civil Procedure > Discovery > Methods > Oral Depositions*
*Civil Procedure > Discovery > Protective Orders*
*Civil Procedure > Discovery > Undue Burdens*

[HN2] The Federal Rules of Civil Procedure provide that parties may obtain discovery, including by oral depositions, regarding any matter, not privileged, that is relevant to the claim or defense of any party and that relevant information need not be admissible. Fed. R. Civ. P. 26(b)(1). However, a district court may limit the frequency or extent of the use of discovery methods otherwise permitted under the federal rules if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2). The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant.

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Discovery > Methods > Oral Depositions*
*Civil Procedure > Discovery > Relevance*

[HN3] In the Second Circuit, depositions of opposing counsel are disfavored. The rationale behind the presumption against such discovery is that even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation. Depositions of opposing counsel are not, however, categorically prohibited. Rather, the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself.

*Civil Procedure > Discovery > Methods > Oral Depositions*
*Civil Procedure > Discovery > Protective Orders*
*Civil Procedure > Discovery > Relevance*

[HN4] The standards set forth in Fed. R. Civ. P. 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Discovery > Methods > Oral Depositions*
*Criminal Law & Procedure > Discovery & Inspection > Depositions*

[HN5] It is not anomalous for a party to seek to depose the attorney who prosecuted the patent at issue in a litigation.

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Discovery > Methods > Oral Depositions*
*Criminal Law & Procedure > Discovery & Inspection > Depositions*

[HN6] The fact that the attorney who prosecuted the patent has been selected to serve as litigation counsel does not, in and of itself, protect that attorney from being deposed.

*Antitrust & Trade Law > Intellectual Property > Misuse of Rights > Patent Misuse Defense*
*Antitrust & Trade Law > Price Fixing & Restraints of Trade > Tying Arrangements > Defenses*
*Patent Law > Inequitable Conduct > Anticompetitive Conduct*

[HN7] Patent misuse and inequitable conduct are different defenses. Misuse is a defense based upon the idea that a patent properly procured has been broadened in scope impermissibly so as to be used to impose an unreasonable restraint in competition through, for example, an improper licensing or tying arrangement. Misuse renders the patent unenforceable during the period of misuse only, and may be cured so that the patent is again enforceable. Inequitable conduct, on the other hand, renders the patent unenforceable permanently, and involves concealing facts or being dishonest in the procurement of the patent.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Patent Law > Inequitable Conduct > Burdens of Proof*
[HN8] Inequitable conduct, like fraud but unlike patent misuse, must be pled with particularity and is subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Discovery > Methods > Oral Depositions*
*Criminal Law & Procedure > Discovery & Inspection > Depositions*
[HN9] Courts considering the issue of whether a patent attorney prosecuting the application and also serving as litigation counsel may be deposed have strictly limited such depositions to cases where the prosecuting attorney's mental impressions are crucial such as situations where an inequitable conduct or fraud claim on the Patent Office has been made. In such cases, the defense of inequitable conduct makes the attorney's mental impressions during the patent prosecution proceedings directly at issue in the litigation.

**COUNSEL:** [*1] KAPLAN & GILMAN, Attorneys for Third Party, Jeffrey Kaplan, Woodbridge, NJ, By: JEFFREY I. KAPLAN, ESQ., Of Counsel.

ARENT FOX, Attorney for Defendant, New York, NY, By: STEVEN KIMELMAN, ESQ., Of Counsel, ARENT FOX, Attorney for Defendant, Washington, DC, By: JAMES H. HULME, ESQ., Of Counsel.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION:**

The third party witness Jeffrey I. Kaplan ("Kaplan"), who is also counsel to plaintiff ResQNet.com, Inc. ("ResQNet"), has moved under Rules 26and 45, Fed. R. Civ. P., to quash the subpoena served upon him by defendant Lansa, Inc. ("Lansa"), or in the alternative, for a protective order. For the reasons set forth below, the motion is granted, and the subpoena quashed.

**Prior Proceedings**

This action was commenced on April 27, 2001. Discovery with respect to claim construction issues proceeded and a Markman hearing was held on June 12, 2002. The opinion of the court construing the claims was rendered in September of 2002, see ResQNet.com v.

LANSA, Inc., 2002 U.S. Dist. LEXIS 16667, No. 01 Civ. 3578 (RWS), 2002 WL 31002811 (S.D.N.Y. Sept. 5, 2002) (the "September Opinion") and the Court of Appeals [*2] for the Federal Circuit affirmed the September Opinion in part and reversed in part on October 16, 2003. See ResQNet.com v. Lansa, Inc., 346 F.3d 1374 (Fed. Cir. 2003). Discovery resumed and was scheduled to close on June 30, 2004.

On or about June 10, 2004, Lansa served a deposition subpoena on Kaplan, trial counsel for ResQNet. Lansa subsequently identified four topics as subjects for the deposition: (1) the prosecution of five patents alleged to be related, two of which are the subject of this action, (2) communications with the U.S. Patent & Trademark Office, (3) prior art, and (4) draft patent applications. Thereafter, on June 22, 2004, Kaplan filed the instant motion. After further briefing, the motion was marked fully submitted on July 7, 2004.

**The Standard to Be Applied**

Lansa has asserted that Federal Circuit law, rather than the law of this Circuit, applies with respect to the quashing of a subpoena in a patent case. However, [HN1] on procedural issues not unique to patent law, such as whether litigation counsel has information such that he should be deposed, the Federal Circuit defers to the law of the regional circuit. SeeUtah Med. [*3] Prods., Inc. v. Graphic Controls Corp., 350 F.3d 1376, 1381 (Fed. Cir. 2003) ("The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of the regional circuits on non-patent issues."); Amana Refrigeration, Inc. v. Quadlux, Inc.[[, ]]172 F.3d 852, 856 (Fed. Cir. 1999) ("Although under our courtesy rule we are generally guided by the law of the regional circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law, we have applied our own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right.") (internal quotation marks and citations omitted). Although the Federal Circuit has applied its own law to discovery disputes in certain contexts, see, e.g., In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803 (Fed. Cir. 2000), it has also recognized that, in general, "an order quashing a subpoena is not unique to patent law" and should be evaluated under the law of the regional circuit. Truswal Sys. Corp. [*4] v. Hydro-Air Eng'g, Inc.[[, 813 F.2d 1207, 1209 ]](Fed. Cir. 1987). Lansa has not demonstrated that the instant motion presents issues unique to patent law and, indeed, has relied heavily on a case from this Circuit, Alcon Labs., Inc. v. Pharmacia Corp., 225 F. Supp. 2d 340 (S.D.N.Y. 2002). Accordingly, the law of this Circuit will apply here.

2004 U.S. Dist. LEXIS 13579, *; 59 Fed. R. Serv. 3d (Callaghan) 122

[HN2] The Federal Rules of Civil Procedure provide that parties may obtain discovery, including by oral depositions, "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "relevant information need not be admissible." Fed. R. Civ. P. 26(b)(1). However, a district court may limit

The frequency or extent of the use of discovery methods otherwise permitted under [the federal] rules ... if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense [*5] of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). "The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) (citing Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)).

[HN3] In this Circuit, "depositions of opposing counsel are disfavored." United States v. Yonkers Bd. of Educ.[[, 946 F.2d 180, ]]185 (2d Cir. 1991). The rationale behind the presumption against such discovery is that "even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation.'" Alcon Labs., 225 F. Supp. 2d at 344 (quoting Madanes v. Madanes, 199 F.R.D. 135, 151 (S.D.N.Y. 2001)). Depositions of opposing counsel are not, however, [*6] categorically prohibited. "Rather, the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself.'" Madanes, 199 F.R.D. at 151 (quoting Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348, 352 (D.N.J. 1990)).

In determining whether a deposition of opposing counsel is appropriate this Court is guided by dicta con-

tained in a recent opinion of the Second Circuit Court of Appeals, Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Friedman)[[, 350 F.3d 65 (2d Cir. 2003).]] n1 In Friedman, the Court of Appeals observed that it has never adopted the doctrine set out in Shelton v. Am. Motors Corp., 805 F.2d 1323 (8th Cir. 1986), which requires that a party "seeking to depose 'opposing trial counsel' must show that 'no other means exist to obtain the information [sought] than to depose opposing counsel.'" Friedman, 350 F.3d at 68 (quoting Shelton, 805 F.2d at 1327). Describing the [*7] Shelton rule as "rigid," id. at 67, the Second Circuit instead directed that

[HN4]

The standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted... . Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.

Friedman, 350 F.3d at 72. The considerations identified by the Second Circuit in Friedman are the factors that will be applied in deciding the instant motion.

n1 As the attorney who was the subject of the subpoena consented to be deposed by the plaintiffs while the plaintiffs' appeal was still pending, the appeal was rendered moot. Friedman, 350 F.3d at 67.

[*8]

## Discussion

Lansa seeks to depose Kaplan concerning the prosecution of the patents-in-suit because he is the only person who is listed as having prosecuted those patents for ResQNet. Specifically, Lansa seeks to determine when and under what circumstances relevant prior art become known to Kaplan, and argues that the factual information sought from Kaplan and "the role he played during the prosecution history of the patents-in-suit are directly at issue [in] this case." (Lansa Opp. Mem. at 7.)

[HN5] It is not anomalous for a party to seek to depose the attorney who prosecuted the patent at issue in a litigation. See United Phosphorus, Ltd.. v. Midland Fumigant, Inc., 164 F.R.D. 245, 249 (D. Kan. 1995) ("When a party employs counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested."). According to Lansa, attorneys that prosecute patents are routinely deposed when the patent is litigated, especially when questions of inequitable conduct arise. See, e.g., Alcon Labs., 225 F. Supp. 2d at 344-45; [*9] Environ Prods. Inc. v. Total Containment, Inc., 1996 U.S. Dist. LEXIS 12336, 41 U.S.P.Q. 2d 1302, 1306 (E.D. Pa. 1996); see also Amicus Communis. L.P. v. Hewlett-Packard Co., 1999 U.S. Dist. LEXIS 20901, No. 99 Civ. 284 (HHK) (DAR), 1999 WL 33117227, at *2 (D.D.C. Dec. 3, 1999) (noting "that several courts have allowed the depositions of patent prosecution counsel"). [HN6] The fact that the attorney who prosecuted the patent has been selected to serve as litigation counsel does not, in and of itself, protect that attorney from being deposed. See, [[e.g.]][[, ]][[Alcon Labs.]][[, 225 F. ]]Supp. 2d at 344 ("Moreover, [the patent holder's] choice of White as trial counsel, with the knowledge that he was the lead prosecuting attorney for the patent, cannot shield his deposition."). Nonetheless, even if the depositions of attorneys who have prosecuted patents may be, as Lansa suggests, routine, Lansa has not established that Kaplan's deposition in this action is either appropriate or necessary.

**No Defense of Inequitable Conduct Has Been Asserted**

Lansa argues that Kaplan's deposition is necessary in light of Lansa's affirmative defense [*10] of inequitable conduct. The defense of inequitable conduct, giving rise to an inquiry as to the mental impressions of counsel prosecuting the patent, see [[Alcon ]]Labs., 225 F. Supp. 2d at 344, has not been explicitly asserted in this action. However, Lansa argues that it has pled inequitable conduct because it has indicated that the patents are unenforceable due to patent misuse. Lansa further argues that it pled, as a separate affirmative defense, that it reserves the right to assert and rely upon any other affirmative

defenses as they appear during discovery or as they otherwise become known.

[HN7] Patent misuse and inequitable conduct are different defenses. Misuse is a defense based upon the idea that a patent properly procured has been broadened in scope impermissibly so as to be used to impose an unreasonable restraint in competition through, for example, an improper licensing or tying arrangement. See Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868 (Fed. Cir. 1997). Misuse renders the patent unenforceable during the period of misuse only, and may be cured so that the patent is again enforceable. See Senza-Gel Corporation v. Seiffhart, 803 F.2d 661, 668 n.10 (Fed. Cir. 1986). [*11] Inequitable conduct, on the other hand, renders the patent unenforceable permanently, and involves concealing facts or being dishonest in the procurement of the patent. See Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc., 45 F.3d 1550, 1556 (Fed. Cir. 1995).

Further, [HN8] inequitable conduct, like fraud but unlike misuse, must be pled with particularity and is subject to the heightened pleading requirements of Fed. R. Civ. Proc. 9(b). See Ferguson Beauregard/Logic Controls v. Mega Systems, LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (noting, in dicta, that "inequitable conduct, while a broader concept than fraud, must be pled with particularity"); Agere Sys. Guardian Corp. v. Proxim, Inc., 190 F. Supp. 2d 726, 733-34 (D. Del. 2000) ("Although the Federal Circuit has not ruled on whether Rule 8(a) or Rule 9(b) applies to allegations of inequitable conduct, a majority of federal courts have found that allegations of inequitable conduct (i.e. fraud before the Patent Office) in patent cases, like other allegations of fraud, are subject to the requirements of Rule 9(b)."); cf. [*12] Rentrop v. Spectranetics Corp., 2004 U.S. Dist. LEXIS 10312, No. 04 Civ. 101 (PKC), 2004 WL 1243608, at *1-2 (collecting cases requiring that inequitable conduct claims be pled with specificity but observing that Rule 9(b), Fed. R. Civ. P., may not apply to all allegations of inequitable conduct). Lansa has not made any allegations concerning specific prior art concealed adequate to establish an affirmative defense of inequitable conduct, nor may will an affirmative defense of inequitable conduct be inferred here from the fact that Lansa has reserved the right to assert additional, unspecified affirmative defenses.

Lansa, therefore, is not entitled to depose Kaplan on issues that have not been pled. n2

n2 Lansa has asserted that, even if it is deemed not to have pled inequitable conduct as an affirmative defense, it would seek to amend its answer pursuant to Fed. R. Civ. P. 15(a) to in-

2004 U.S. Dist. LEXIS 13579, *; 59 Fed. R. Serv. 3d (Callaghan) 122

clude such a defense. As Lansa has yet to seek leave for such an amendment, however, the possibility that it may do so at some later date has no bearing on the instant motion.

[*13]

### Lansa Has Not Established a Sufficient Need to Depose Kaplan on Other Grounds

Lansa has indicated that it wishes to depose Kaplan concerning the prosecution of five U.S. patents. However, Lansa has already deposed the inventors of the patents alleged to be relevant, and those depositions included detailed questions about the patent prosecution histories, the cited prior art, the patents in suit, and numerous related issues. The prosecution histories speak for themselves, and the relevant inquiry in terms of prior art and claim construction is how one of ordinary skill in the art would interpret and understand those prosecution histories, not what ResQNet's litigation counsel thinks about them. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1585 (Fed. Cir. 1996). As Lansa has not specified particular subjects not already covered by the prior discovery and has not indicated why the information has not been or cannot be obtained through means other than Kaplan's testimony, it has not established the need for Kaplan's deposition with regard to the prosecution history of the various patents.

Lansa has also asserted that the purpose [*14] of Kaplan's deposition would be to elicit facts concerning the communications between Kaplan, as counsel for the patent applicants, and the U.S. Patent and Trademark Office "or other third parties." (Lansa Opp. Mem. at 4 n.2.) Lansa has had access to the file wrapper since the beginning of this matter in April of 2001, however, and has identified no specific topic or new information as to which Kaplan's testimony would be necessary.

With respect to the issue of prior art, Lansa will have the opportunity to depose an expert witness on prior art as well as ResQNet's witnesses. Any request to depose Kaplan about dates upon which prior art become known could only be directed to an inequitable conduct defense, a defense which has not been pled in this case. To the extent that Lansa is seeking information concerning prior art that is not related to inequitable conduct, it has not shown that such information could not be obtained from a variety of expert and fact witnesses, without resorting to the deposition of Kaplan. Further, any of Kaplan's conclusions regarding the effect of a particular prior art reference on the validity of ResQNet's patents would appear to be protected as attorney [*15] work-product.

Finally, it has been suggested that Lansa wishes to depose Kaplan concerning draft patent applications and amendments, petitions, and other such papers that are in the patent file. Lansa has not indicated why Kaplan's deposition as to these topics would be useful or how it would address the privilege issues possibly associated with such draft applications. In any event, to whatever extent draft patent applications were reviewed and revised, they are properly the subject to the testimony of the inventors, all of whom have agreed to be deposed.

### Lansa Has Not Met the Friedman Standard

As set forth above, the first factor identified by the Second Circuit in Friedman weighs in favor of Kaplan, as Lansa has established no specific need to depose Kaplan.

The second factor under the standard set forth in Friedman is the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation. See Friedman, 350 F.3d at 72. Kaplan's role was to prosecute the patents in the U.S. Patent and Trademark Office, and thus, Kaplan was admittedly connected to the subject matter in issue here. However, [HN9] courts [*16] considering the issue of whether a patent attorney prosecuting the application and also serving as litigation counsel may be deposed have strictly limited such depositions to cases where "the prosecuting attorney's mental impressions are crucial" such as situations where an inequitable conduct or fraud claim on the Patent Office has been made. Alcon Labs., 225 F. Supp. 2d at 344; see also Environ Prods., 41 U.S.P.Q.2d at 1306. In such cases, the defense of inequitable conduct makes the attorney's mental impressions during the patent prosecution proceedings directly at issue in the litigation. See, e.g., Environ Products, 41 U.S.P.Q. at 1306. In the present case, as indicated above, no inequitable conduct defense was pled, rendering Kaplan's importance as a fact witness relatively minimal.

The third factor identified in Friedman [[is the risk of ]]encountering privilege and attorney work-product issues. See Friedman, 350 F.3d at 72. Lansa has specifically indicated that it is not seeking privileged information from Kaplan. Nonetheless, given the topical areas Lansa has identified for the deposition, the [*17] risk that privilege and attorney work-product issues might

arise were Kaplan's deposition to go forward is not negligible. Accordingly, this factor does not weigh in favor of either Kaplan or Lansa.

The extent to which discovery has already been conducted, the fourth Friedman factor, weighs against Lansa because virtually all of the discovery has been conducted and completed, and the claim construction issues have already been decided.

2004 U.S. Dist. LEXIS 13579, *; 59 Fed. R. Serv. 3d (Callaghan) 122

Taken together, the various factors identified by the Second Circuit in Friedman counsel against permitting the deposition of Kaplan to proceed.

**Conclusion**

The motion to quash the subpoena is granted.

It is so ordered.

**New York, NY**

**July 21, 2004**

**ROBERT W. SWEET**

**U.S.D.J.**

LEXSEE

**TIVO INC., Plaintiff, v. ECHOSTAR COMM. CORP., et al., Defendants.**

**CIVIL ACTION NO. 2:04-CV-1 (DF)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION**

**2005 U.S. Dist. LEXIS 42481**

**September 26, 2005, Decided**
**September 26, 2005, Filed**

**SUBSEQUENT HISTORY:** Writ of mandamus granted In re Echostar Communs. Corp., 448 F.3d 1294, 2006 U.S. App. LEXIS 11162 (Fed. Cir., 2006)
Related proceeding at Echostar Techs. Corp. v. TiVo, Inc., 2006 U.S. Dist. LEXIS 48431 (E.D. Tex., July 14, 2006)
Findings of fact/conclusions of law at TiVo Inc. v. Echostar Communs. Corp., 2006 U.S. Dist. LEXIS 64292 (E.D. Tex., Aug. 17, 2006)

**CORE TERMS:** infringement, advice of counsel, infringer, advice, discovery, patent, work product, waived, post-filing, lawsuit, subject matter, willfulness, state of mind, attorney-client, documentation, deposition, communicated, in-house, willful, reconsideration, trial strategy, non-infringement, disclosure, infringe, internal investigation, engineers, in camera, work-product, arrived, substantial part

**COUNSEL:** [*1] For TIVO Inc, a Delaware corporation, Plaintiff: Alexander C D Giza, Adam S Hoffman, Christine W S Byrd, Morgan Chu, Perry M Goldberg, Richard E Lyon, Irell & Manella LLP, Los Angeles, CA; Andrei Iancu, Irell & Manella -- Los Angeles, Los Angeles, CA; Samuel Franklin Baxter, Attorney at Law, Marshall, TX; Ben Yorks, Brian Jones, Michelle Armond, Irell & Manella -- Newport Beach, Newport Beach, CA; R Scott Feldmann, Randall I Erickson, Steven P Rice, Van V Nguyen, Crowell & Moring -- Irvine, Irvine, CA; Garret Wesley Chambers, McKool Smith -- Dallas, Dallas, TX.

For EchoStar Communications Corporation, a Nevada corporation, EchoStar DBS Corporation, a Colorado corporation, EchoStar Technologies Corporation, Echosphere Limited Liability Company, Defendants: Alison M Tucher, Jason A Crotty, Rachel Krevans, Robert M Harkins, Jr, Harold J. McElhinny, Morrison & Foerster LLP San Francisco, San Francisco, CA; Karl J

Kramer, Morrison & Foerster -- Palo Alto, Palo Alto, CA; Damon Michael Young, Young Pickett & Lee, Texarkana, TX.

For "EchoStar defendants", Defendant: Scott F Llewellyn, Morrison & Foerster, Denver, CO; Emily A Evans, Karl J Kramer, Morrison & Foerster -- Palo Alto, [*2] Palo Alto, CA; Kristina Paszek, Robert M Harkins, Jr, Alison M Tucher, Harold J. McElhinny, Morrison & Foerster LLP San Francisco, San Francisco, CA; John Michael Pickett, Young Pickett & Lee, Texarkana, TX.

For Merchant & Gould, Subpoena recipient, Movant: Charles Conrow Murphy, Jr, Vaughan & Murphy, Atlanta, Ga.

For EchoStar Technologies Corporation, Echosphere Limited Liability Company, Counter Claimants: Alison M Tucher, Jason A Crotty, Robert M Harkins, Jr, Morrison & Foerster LLP San Francisco, San Francisco, CA; Karl J Kramer, Morrison & Foerster -- Palo Alto, Palo Alto, CA; Damon Michael Young, Young Pickett & Lee, Texarkana, TX.

For TIVO Inc, a Delaware corporation, Counter Defendant: Adam S Hoffman, Irell & Manella LLP, Los Angeles, CA.

For Echostar Communications Corporation, a Nevada corporation, Echostar DBS Corporation, a Colorado corporation, Counter Claimants: Alison M Tucher, Jason A Crotty, Robert M Harkins, Jr, Morrison & Foerster LLP San Francisco, San Francisco, CA; Karl J Kramer, Morrison & Foerster -- Palo Alto, Palo Alto, CA.

For Echostar Satellite LLC, Counter Claimant: Karl J Kramer, Morrison & Foerster -- Palo Alto, Palo Alto, CA. [*3]

Page 1

**JUDGES:** DAVID FOLSOM, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** DAVID FOLSOM

**OPINION:**

### INTRODUCTION

Before the Court are Plaintiff TiVo's Objections Regarding the Temporal Scope of the August 17, 2005 Order which Defendant EchoStar opposes. Also before the Court is EchoStar's Motion for Reconsideration of the Court's Order of September 12, 2005, attaching Defendant's Protective Motion for Reconsideration of the Court's Order of August 17, 2005 which was previously decided by Magistrate Judge McKee. The Court considers these pleadings, however styled, competing motions for reconsideration of Magistrate Judge McKee's August 17, 2005 Order and the related September 12, 2005 Order.

### I.

### BACKGROUND

#### A. Factual Background

TiVo alleges that EchoStar willfully infringes U.S. Patent No. 6,233,389 ("'389 patent"). EchoStar has asserted an "advice of counsel" defense to this charge, having disclosed that it will rely on the non-infringement conclusions reached prior to the filing of this lawsuit by its in-house counsel, Kerry Miller. On June 16, 2005, shortly before the July 7, 2005 close of discovery, EchoStar for the first time disclosed that it planned to [*4] have Mr. Miller testify regarding his infringement investigation and the opinions he derived therefrom. TiVo argues this was an "eleventh hour" disclosure designed to inhibit TiVo's ability to seek discovery while EchoStar responds that the disclosure was timely per the parties' agreement. Dkt. Nos. 246 at 2 and 299 at 3.

EchoStar maintains that, shortly after the '389 patent issued, Mr. Miller worked with several EchoStar software and engineering employees to analyze EchoStar's potential infringement of the '389 patent. Dkt. No. 299 at 1-2. These EchoStar employees concluded that EchoStar did not infringe the patent. *Id.* EchoStar plans to call Mr. Miller to testify regarding this opinion at trial.

In addition to the infringement analysis conducted by Mr. Miller, EchoStar sought opinions of counsel from Bozicevic, Field & Frances, LLP, in 2001 and from the Merchant & Gould law firm after this lawsuit was filed. EchoStar maintains that it has not waived privilege regarding these opinions and/or communications because by relying on "an internal investigation [] conducted by a

group of engineers and a single in-house lawyer . . . [its] defense rests on the premise that it [*5] looked at the patent's claims and at the features of its own products and itself identified a number of differences that meant it was not infringing." Dkt. No. 337 at 2. Planning to rely upon "its internal investigation conducted in substantial part by engineers," EchoStar argues it is not asserting a "traditional 'advice of counsel' defense." Dkt. No. 162 at 5. Thus, it has not waived any privilege or work product protection. EchoStar further argues that, if the Court is to conclude that privilege has been waived, the waiver applies only to pre-litigation materials.

EchoStar admits it commissioned an opinion of counsel from the Bozicevic firm but maintains that it did not pursue a final opinion in light of Mr. Miller's analysis. *Id.* The Bozicevic firm apprised Mr. Miller orally that it would prepare an opinion letter that concluded EchoStar did not infringe the '389 patent, but the opinion was never finished. *See* Miller Depo. Tr. at 23:14-24:3. Soon after the lawsuit was filed, however, the Bozicevic firm turned over a draft opinion and a number of notes created in the course of its infringement analysis. EchoStar argues that because it did not receive this documentation [*6] from the firm until after the lawsuit was filed, the documentation should be considered "post-filing" material outside the scope of any waiver.

EchoStar further maintains that Merchant & Gould was hired to provide legal advice only after the lawsuit was filed, and that EchoStar has not waived privilege as to the two opinion letters that firm prepared. Mr. Miller admitted in deposition, however, that he has read both of the opinions drafted by the firm. Miller Depo. Tr. at 18:1-9.

TiVo argues that, having decided to assert the "advice of counsel" defense in response to the willfulness charge, EchoStar has waived privilege to all subject matter related to this defense. Therefore, TiVo seeks discovery of both post-filing and pre-filing opinions and communications.

TiVo has also requested leave from the Court to take depositions of all witnesses, including counsel, that TiVo identifies as potentially having testimony regarding the advice of counsel defense. EchoStar objects to this request, in part, on the basis that the parties previously agreed to limit the amount of deposition time each would be allotted, and TiVo has already used its time.

#### B. Procedural History

Pursuant [*7] to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges dated January 15, 1994, TiVo's motion to compel discovery on the advice of counsel

defense was referred to the Honorable Harry McKee for the purposes of hearing and determining said motion. Dkt. No. 160; *see also* Dkt. No. 150. On August 15, 2005, Judge McKee held a telephone conference to consider TiVo's motion and EchoStar's opposition. In his Order of August 17, 2005 ("August 17 Order"), Judge McKee found that EchoStar "waived the attorney client privilege as to all communications related to the patent in suit that occurred before TiVo initiated this action, but not as to any subsequent communications or opinions." Dkt. No. 177. Based on this finding, Judge McKee ordered EchoStar to produce "all such documents created before suit was filed, and make available any witnesses with knowledge of relevant pre-suit communications." *Id.*

EchoStar moved for clarification and then for reconsideration of the August 17 Order arguing that the scope of its waiver, if any, regarding the advice of counsel [*8] defense was not so broad as to allow for the discovery ordered. Dkt. Nos. 216 and 245. TiVo responded to the motion to clarify and EchoStar replied. Dkt. Nos. 233 and 234, respectively.

Judge McKee again heard from the parties and then issued an order on September 12, 2005. ("September 12 Order"). He found that EchoStar's reliance on Mr. Miller's non-infringement testimony waived privilege/work product protection but the scope of the waiver extended only to the subject matter of the advice. "[T]herefore, EchoStar has waived privilege as to advice received concerning infringement, but TiVo may not discover any privileged information relating to the issue of validity." September 12 Order at 1-2.

Judge McKee also found that EchoStar's waiver extended to documentation concerning EchoStar's infringement of TiVo's '389 patent created by the Bozicevic firm. Although EchoStar received no formal written opinion from the firm, it received an oral opinion prior to filing and received the documentation developed to arrive at that opinion shortly after TiVo filed this lawsuit. Thus, Judge McKee found it was "reasonable to believe that the contents of the notes were communicated, to some degree, [*9] to EchoStar before suit was filed." September 12 Order at 2.

EchoStar was ordered to produce the Bozicevic firm's draft opinion as well as notes created in developing its opinion concerning infringement of the '389 patent. EchoStar was also ordered to produce any remaining documents pertaining to advice it received from counsel before suit was filed concerning infringement of the '389 patent. *Id.* at 2. Further, TiVo was allowed to depose each of the two attorneys that created the draft opinion and notes. *Id.* at 2-3.

EchoStar now moves for reconsideration of both the August 17 Order and the September 12 Order. EchoStar first argues that its reliance on Mr. Miller's opinion does not result in any privilege or work product protection waiver. Second, EchoStar argues that, if there has been waiver, the notes and communications with the Bozicevic firm not in EchoStar's possession at the time the lawsuit was filed are outside the scope of this waiver. Further, EchoStar takes issue with the order to make additional witnesses available for deposition. To the contrary, TiVo requests that the Court broaden Judge McKee's orders to permit TiVo to engage in discovery concerning the advice [*10] of counsel EchoStar received both preand post-filing. Dkt. Nos. 246, 299, and 302.

## II.

### DISCUSSION

This Court may set aside or modify the Magistrate Judge's order only if the order was based on a clearly erroneous finding of fact or if it was contrary to law. *See* 28 U.S.C. 636(b)(1)(A). As explained below, the Court concludes that findings in the Magistrate Judge's August 17 Order and the related September 12 Order were clearly erroneous.

"For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1)(2002). While the scope of discovery under this rule is broad, it is far from unlimited. The rule requires a district court, when considering a motion to compel, to determine whether the material sought is relevant to the subject matter of the litigation. The court must prevent discovery from being used as a fishing expedition. In addition to limiting discovery to material relevant to the subject matter of the litigation, Rule 26 provides for further limitations. A court may limit discovery when it is "obtainable from some other source [*11] that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2)(2002). In addition, discovery should not be allowed when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2)(2002).

The issues presented by the present motions are (1) the waiver of attorney-client privilege and work-product protection and (2) the scope of any such waiver. As an initial matter, the advice of counsel defense and the disclosure of an infringement opinion appears to fall within the realm of subjects "unique to patent cases," for which Federal Circuit law is controlling. *See In re Spalding Sports Worldwide Inc.*, 203 F.3d 800, 803-04 (Fed. Cir. 2000); *Sharper Image Corp. v. Honeywell Intern., Inc.* 222 F.R.D. 621, 625 n. 3 (N.D. Cal. 2004). However, the Federal Circuit has found, in context other than the advice of counsel defense, that privilege/work product protection waiver is a procedural matter for which the law of

the regional circuit is applied. *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001). [*12] There is a split of authority among the district courts as to whether the scope of waiver resulting from the advice of counsel defense is a matter unique to patent law or a matter to be determined by precedent from the regional circuit courts. *Intex Rec. Corp. v. Metalast, S.A.*, 2005 U.S. Dist. LEXIS 10149, *7-9 (D.D.C. March 2, 2005)(internal citations omitted). Finding that the scope of privilege/work product protection waiver as it relates to the advice of counsel defense to a willful infringement charge is an issue "unique to patent cases," this Court will look to Federal Circuit decisions regarding the defense. *See Intex Rec. Corp.*, 2005 U.S. Dist. LEXIS 10149, *8-9.

Willfulness is a factual determination made based on the totality of the circumstances. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed. Cir. 2004) (en banc), *see also Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed. Cir. 1993). The Federal Circuit has identified a non-exclusive list of factors to assist the trier of fact in determining whether a putative infringer has engaged in willful infringement; [*13] on the list is whether an accused infringer, with knowledge of a patent, investigated the scope of the patent and formed a good-faith belief it was invalid or not infringed. *Read Corp v. Portec, Inc.*, 970 F.2d 816, 826-28 (Fed. Cir. 1987). These factors, along with any other relevant factors or circumstances, weigh in a fact-finder's determination of whether the accused infringer had a good-faith belief of non-infringement. Because willfulness is a question of the infringer's state of mind, the primary focus of the inquiry is on the reasonableness of the infringer's beliefs and actions. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Am. Med.*, 6 F.3d at 1523, 1531 (Fed. Cir. 1993).

In a recent Federal Circuit decision, *Knorr-Bremse Systeme Fur Nutzfahrzeuge GmbH v. Dana Corp.*, the court reversed its established precedent by holding that "an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel" no longer creates an adverse inference that an opinion was, or would have been, unfavorable. 383 F.3d 1337, 1341 (Fed. Cir. 2004) (en banc). Prior to this opinion, an accused infringer [*14] all but had to produce an opinion of counsel, which in turn waived privilege. *Id. at 1345.* In *Knorr-Bremse*, the Federal Circuit effectively created a choice for defendants: "A defendant may of course choose to waive the privilege and produce the advice of counsel. However, the assertion of attorney-client and/or work-product privilege and the withholding of the advice of counsel shall no longer entail an adverse inference as to the nature of the advice." *Id.*

The scope of the privilege waived when a defendant chooses to rely on the advice of counsel, however, remains unresolved and has produced varying opinions. As Judge Brazil recently explained:

> While the courts generally agree that a defendant who invokes the "advice of counsel" defense to a claim of willfulness waives the protections of the attorney-client privilege for communications that occurred before the suit was filed and that relate to the subjects addressed in the invoked advice, there is considerable division of opinion about how far (if at all) the waiver extends to work product that counsel generated before the suit was filed but did not share with the defendant. . . . There also are [*15] sharp divisions of opinion about whether any waiver reaches into the period after the defendant was served with the complaint.

*Sharper Image Corp. v. Honeywell Intern., Inc.* 222 F.R.D. 621, 625 n. 4 (N.D. Cal. 2004) (internal citation omitted). Not surprisingly, these are precisely the issues involved here.

The scope of privilege/work product waiver, once an advice of counsel defense is asserted, should be guided by fairness. *See Intex Rec. Corp.*, 2005 U.S. Dist. LEXIS 10149, *10-13; *Saint- Gobain/Norton Indus. Ceramics Corp., v. Gen. Elec. Co.*, 884 F. Supp. 31, 33 (D. Mass. 1995). An accused infringer "is not required to rely upon advice of counsel as a defense against [a] claim of willful infringement; however, if an alleged infringer [] elects to defend against a charge of willful infringement by producing an opinion of counsel to the patentee, [] any privilege over that advice and related subjects is waived." *Texas Instruments, Inc. v. Hyundai Elec. Indus., Co. Ltd.*, 1999 U.S. Dist. LEXIS 21523, at *5-6 (E.D. Tex. Mar. 5, 1999) (Heartfield J.) (citing *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109-10 (Fed. Cir. 1986). [*16] "Considerations of fairness require that a litigant should not be able to claim reliance on advice of counsel as a defense, and hence a sword in litigation, while at the same time asserting attorney-client privilege or work product doctrine as a shield to protect against the opposing party testing the legitimacy of that claim." *Intex Rec. Corp.*, 2005 U.S. Dist. LEXIS 10149, *10-11 (citations omitted).

## A. The Extent of Waiver to Post-Filing Communications

In *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98 (S.D. N.Y. 2004), the court found that waiver of the privilege "should extend from the time [the defendant] became aware of the plaintiffs' patents until such time in the future that [the defendant] ceases its alleged infringement." *Id.* at 104. The rationale underpinning such broad privilege waiver is that as long as the alleged infringement continues so does an alleged infringer's duty to exercise due care and to seek the advice of counsel. As one court has stated:

> The waiver of attorney-client privilege or work product protection does not . . . exist solely at a particular point of time, such as when [*17] the client receives the opinion from counsel. As recognized by the Federal Circuit in [*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001)] because infringement is a continuing activity, the requirement to exercise due care and seek and receive advice is a continuing duty. Therefore, once a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement. Consequently, the waiver of attorney-client privilege or work product protection covers all points of time, including up through trial. The waiver also is not limited to the advice given by opinion counsel. Since the waiver encompassed the subject matter of advice, that means that all opinions received by the client must be revealed, even those opinions the client receives from attorneys other than opinion counsel. Practical reasons exist for this rule. The exercise of due care requires a potential infringer to act reasonably. The infringer may not pick and choose between what opinions will be relied upon and which will be discarded. The totality of the circumstances test requires that [*18] all knowledge gained by the infringer relating to the advice subject matter must be revealed so that the factfinder can make its own determination as to whether the reliance was reasonable.

*AKEVA LLC v. Mizuno Corp.*, 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003) (citations omitted).

On the other side of the spectrum, some courts have found that waiver extends only to materials before litigation ensued. *See, e.g., Motorola, Inc. v. Vosi Techs., Inc.*, 2002 U.S. Dist. LEXIS 15655, 2002 WL 1917256, *2 (N.D.Ill.2002) (limiting waiver to communications that preceded the filing of the suit); *Carl Zeiss Jena GmbH v. Bio-Rad Lab. Inc.*, 2000 U.S. Dist. LEXIS 10044, 2000 WL 1006371, *2 (S.D.N.Y.2000) (same); and *Dunhall Pharms., Inc. v. Discus Dental, Inc.*, 994 F.Supp. 1202, 1206 (C.D.Cal. 1998) (same). In *Dunhall*, the court stated: "Once the lawsuit is filed, the waiver of work product protection ends. This temporal limitation follows from the enhanced interest in protecting against disclosure of trial strategy and planning." *Dunhall Pharms. Inc.*, 994 F. Supp. at 1206.

Following this logic, discovery of infringement opinions arrived at by trial counsel may [*19] be denied while discovery of infringement positions arrived at by opinion counsel may be allowed, regardless of whether arrived at pre-or post-filing. *Sharper Image Corp.*, 222 F.R.D. at 640-46. Where documents or communications may contain both information related to the advice of counsel defense as well as information related solely to trial strategy, in camera review may be necessary. *See e.g. Saint-Gobain*, 884 F. Supp. at 34 (considering but denying as unnecessary in camera review).

**B. The Extent of a Defendant's Knowledge**

Likewise, courts differ regarding whether to extend waiver to attorney work product that is not communicated to the client but is developed while analyzing potential infringement. As explained in *Simmons, Inc. v. Bombardier, Inc.*, "[a]n important factor in determining whether a defendant willfully infringed upon another's patent is the defendant's reasonable reliance upon a competent opinion of counsel. However, the alleged infringer's intent -- not that of counsel -- remains the relevant issue." 221 F.R.D. 4, 9 (D.D.C. 2004) (citation omitted). Based on this reasoning, several courts have refused [*20] discovery of work-product materials, such as counsel's notes or even draft opinions, that were never sent to the client. *Id.; see also Nitinol Med. Techs. Inc. v. AGA Med. Corp.*, 135 F. Supp. 2d 212, 218-19 (D. Mass. 2000).

Still, other courts have mandated production of all material regardless of whether they were disclosed, maintaining that the discovery of such information is necessary to uncover what the client was actually told by opinion counsel. *See Aspex Eyewear Inc. v. E'Lite Optik Inc.*, 276 F. Supp. 2d 1084, 1092-93 (D. Nev. 2003); *Novartis Pharms. Corp. v. EON Labs Mfg. Inc.*, 206 F.R.D. 396 (D. Del. 2002). In *Novartis*, the court stated, "it is critical for the patentee to have a full opportunity to probe, not only the state of mind of the infringer, but also

the mind of the infringer's lawyer upon which the infringer so firmly relied." *Id.* at 399. The rationale behind this approach is that, by imposing broad waiver, the advice of counsel defense will only be invoked by "infringers who prudently and sincerely sought competent advice from competent counsel . . ." and "[m]oreover, focusing on the infringer's [*21] waiver rather than state of mind may reduce the chances of legal gamesmanship creeping into the practice of rendering infringement and validity opinions." *Id.* "[I]f negative information was important enough to reduce to a memorandum, there is a reasonable possibility that the information was conveyed in some form or fashion to the client." *Beneficial Franchise Co. Inc. v. Bank One N.A.*, 205 F.R.D. 212, 218 (N.D. Ill. 2001).

Refusing to presume deceit, however, other courts have rejected this approach and have limited waiver to those materials actually communicated to the client. *See Chimie v. PPG Indus. Inc.*, 218 F.R.D. 416, 420 (D. Del. 2003).

**C. Application**

It is clear that, by offering Mr. Miller's testimony, EchoStar has asserted an advice of counsel defense to willfulness. Mr. Miller, EchoStar's in-house counsel, met with EchoStar technical staff on no fewer than two occasions specifically to determine whether EchoStar products fell within the scope of the '389 patent claims. 9/22/05 Hr. Tr. at    (representations by EchoStar counsel). Based on his analysis of the patent and input from other EchoStar employees, Mr. Miller [*22] formed an opinion as to why EchoStar products did not infringe any claims in the '389 patent. *Id.* He communicated this opinion to other EchoStar executives who in turn relied upon Mr. Miller's opinion. *Id.* EchoStar maintains this was "an internal investigation conducted in substantial part by engineers." Dkt. No. 162 at 5. Though EchoStar argues Mr. Miller's opinion does not amount to a "traditional" opinion of counsel, EchoStar admits that Mr. Miller's is a legal opinion. *Id.* and 9/22/05 Hr. Tr. at    (representations by EchoStar counsel).

In-house counsel, in conjunction with other in-house staff, are often called upon to investigate and render legal advice regarding the infringement or invalidity of a patent. *See Minn. Mining and Mfr. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559 (Fed. Cir. 1992); *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117 (E.D. Cal. 2002). Whether the resulting advice is relayed orally or in writing and whether the counsel rendering the advice is sufficiently independent to be considered objective goes to the competency of the opinion and the reasonableness of an accused infringer's [*23] reliance thereon -- not to whether or not the advice amounts to "advice of counsel." *See Minn. Mining and Mfr.*, 976

F.2d at 1580-81; *Chiron Corp.*, 268 F. Supp. 2d at 1121-1122. Mr. Miller's oral opinion amounts to advice of counsel -- and EchoStar's reliance on this advice in defense of the willfulness charge results in waiver. This conclusion cannot be circumvented by calling the opinion merely an "internal investigation conducted in substantial part by engineers." Dkt. No. 162 at 5. The scope of the resulting waiver is then determined by the subject matter that a party relies upon. Because Mr. Miller offers only a non-infringement opinion, as found in the September 12 Order, this is the scope of the subject matter waiver.

EchoStar had the benefit of choice, as explained by the Federal Circuit in *Knorr-Bremse Systeme Fur Nutzfahrzeuge GmbH v. Dana Corp*, of whether to introduce Mr. Miller's opinion. But once EchoStar chose to introduce the opinion, it opened to inspection all related advice sought and developed regarding EchoStar's potential infringement of the '389 patent. Regardless of when the opinions or materials were transcribed or communicated [*24] to EchoStar, such information necessarily relates to the opinion being offered by Mr. Miller and goes to show EchoStar's state of mind with respect to willful infringement. This is particularly true where, as is the case here, EchoStar's willfulness witness was privy to the substance of the willfulness opinions developed by outside counsel both pre-and post-filing. Miller Depo. Tr. at 23:14-24:3 and 18:1-9.

The Court notes that EchoStar is under a continuing duty to act in good faith, and this duty extends to actions after the filing of the lawsuit. TiVo is thus entitled to determine EchoStar's state of mind with regard to its post-filing actions as well as its pre-filing actions, and the latter opinions of counsel may go directly to this issue. To here deny TiVo the opportunity to question Mr. Miller regarding post-filing opinions and how they affect or might have affected the conclusions he reached pre-filing would be unfair. Thus, this Court finds that the scope of Defendant's waiver extends to all pre-and post-filing communications pertaining to advice of counsel on the issue of EchoStar's potential infringement of the '389 patent.

To uphold EchoStar's right to protect its trial [*25] strategy, however, EchoStar will be allowed to redact information that it views as solely related to such strategy. This, in the Court's opinion, reconciles the fear that such discovery could compromise trial preparation and give Plaintiff an unfair advantage with Plaintiff's inquiry into state of mind.

**III.**

**ORDER**

The Court, having considered the motions, responses, and all other relevant pleadings and papers, **ORDERS**:

EchoStar to produce all notes, communications, or other documentation relating to the infringement analysis of the '389 patent undertaken by Bozicevic, Field & Frances, LLP, at any time; and

EchoStar to produce the two Merchant & Gould opinions and all notes, communications, or other documentation related to any infringement analysis of the '389 patent undertaken by Merchant & Gould. EchoStar may redact any information that it considers unrelated to infringement or that it considers primarily related to trial strategy. EchoStar will produce copies of the redacted materials to TiVo and will submit both redacted and unredacted copies of the material to the Court for in camera review. EchoStar is to produce these materials within seven (7) days of [*26] this order.

The Court further **ORDERS**:

EchoStar to produce Frank Becking, Alan Cannon, Kerry Miller, Homer Knearl, and Timothy Scull for deposition concerning their analysis of the '389 patent and any potential infringement by EchoStar. TiVo is granted an additional five (5) hours of deposition time; the allotment of this time per witness is left to TiVo's discretion. These witnesses are to be made available no later than October 14, 2005.

**SIGNED this 26th day of September, 2005.**

DAVID FOLSOM

UNITED STATES DISTRICT JUDGE

LEXSEE

**INTEX RECREATION CORPORATION, Plaintiff, v. METALAST, S.A., Sociedad Unipersonal, Defendant.**

**Civil Action No. 01-1213 (JDB)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**2005 U.S. Dist. LEXIS 10149**

**March 2, 2005, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by, Motion denied by Intex Rec. Corp. v. Metalast, S.A., 2005 U.S. Dist. LEXIS 10147 (D.D.C., May 20, 2005)

**PRIOR HISTORY:** Intex Rec. Corp. v. Metalast, S.A., 2003 U.S. Dist. LEXIS 1986 (D.D.C., Feb. 12, 2003)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff marketer of swimming pool ladders sued defendant owner of a patent for such ladders, seeking a declaration of noninfringement. The owner sought increased damages on its counterclaim for willful infringement and the marketer asserted the defense of advice of counsel. The owner moved to compel discovery, and the marketer moved for a protective order, concerning the scope of the marketer's waiver of attorney-client privilege.

**OVERVIEW:** The parties agreed that, by asserting reliance upon counsel as a defense to willful infringement, the marketer waived attorney-client privilege. However, the marketer asserted that the waiver only extended to the opinion letters of counsel and documents referring to those letters, but the owner contended that the waiver included all communications between the marketer and its counsel regarding the subject matter of the opinion letters. The court held that the marketer was required to produce all documents and communications that concerned the subject matter of the opinion letters, including any information in the marketer's files, any information provided to counsel as a basis for the opinions, and any attorney work product that counsel provided to the marketer. Nonetheless, since the focus of the defense of advice of counsel was whether the marketer had a reasonable belief that its ladders were not infringing, the privilege was waived only to the extent the documents were generated by or communicated to the marketer. Further,

the broad waiver of the privilege extended to materials which questioned or contradicted in any way the competence or validity of the opinion letters.

**OUTCOME:** The owner's motion to compel discovery and the marketer's motion for a protective order were granted in part and denied in part.

**CORE TERMS:** infringement, discovery, work product, attorney-client, advice of counsel, subject matter, ladder, invalidity, deposition, willful, patent, protective order, uncommunicated, communicated, infringer, enhanced, redacted, patent infringement, opinion letter, settlement, log, post-suit, contradict, disclosure, asserting, narrowly, waived, notice, e-mail, advice

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Evidence > Privileges > Attorney-Client Privilege > Waiver*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN1] The scope of the waiver of attorney-client privilege when advice of counsel is raised as a defense in a patent infringement action is very broad.

*Evidence > Privileges > Attorney-Client Privilege > Waiver*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN2] There is no question that the attorney-client privilege is waived when a client asserts reliance on the advice of counsel as an affirmative defense to willful patent

2005 U.S. Dist. LEXIS 10149, *

infringement, because the client has then made a conscious decision to inject as an issue in the litigation the advice of counsel.

*Patent Law > Jurisdiction & Review > Standards of Review > General Overview*
*Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals*
[HN3] Resolution of discovery disputes and other procedural issues unique to patent litigation is guided by decisions of the U.S. Court of Appeals for the Federal Circuit.

*Patent Law > Remedies > Collateral Assessments > Increased Damages*
*Patent Law > U.S. Patent & Trademark Office Proceedings > General Overview*
[HN4] The question of willful patent infringement is one of fact turning on whether the alleged infringer had a reasonable belief that the challenged activity did not violate the law. The Federal Circuit makes it clear that the infringer's intent, not that of counsel, is the relevant issue. When an alleged infringer claims reliance upon advice of counsel, a court must examine objective evidence to assess whether the reliance was justified. Hence, the infringer's intent and reasonable beliefs are the primary focus of a willful infringement inquiry. The inquiry with respect to reliance on an opinion of counsel, of course, is not the legal correctness of the opinion, but whether the opinion was competent. That assessment requires examination of objective evidence concerning the adequacy of any legal opinion.

*Civil Procedure > Discovery > Privileged Matters > Work Product > Scope*
*Civil Procedure > Discovery > Privileged Matters > Work Product > Waivers*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN5] On the issue of the scope of waiver of attorney-client privilege and work product immunity where the advice of counsel has been raised as a defense to willfulness in a patent dispute, a broad waiver is appropriate, although the waiver does not extend to include attorney work product materials created for trial even if never disclosed to the client.

*Civil Procedure > Discovery > Privileged Matters > Work Product > Waivers*
*Evidence > Privileges > Attorney-Client Privilege > Waiver*

*Patent Law > Inequitable Conduct > General Overview*
[HN6] Considerations of fairness require that a litigant should not be able to claim reliance on advice of counsel as a defense to willful patent infringement, and hence a sword in litigation, while at the same time asserting attorney-client privilege or work product doctrine as a shield to protect against the opposing party testing the legitimacy of that claim. Fairness requires that the litigant asserting the defense waives the attorney-client privilege and work product immunity to the broadest extent consonant with the direct relevance to the advice of counsel itself. Hence, not just opinion letters themselves and communications with the client about them must be produced, but also those materials that counsel actually relied upon in rendering an opinion, to the extent those documents were provided to the client. The waiver also includes all documents that refer or relate to the subject matter addressed in counsel's opinion letters, to the extent those documents were provided to the client. The subject matter waived is not limited to the specific opinion letter proffered, but rather extends to the specific issues of advice asserted as a defense to willfulness, including infringement and validity.

*Civil Procedure > Discovery > Privileged Matters > Work Product > Opinion Work Product*
*Civil Procedure > Discovery > Privileged Matters > Work Product > Waivers*
*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN7] A middle ground is the most appropriate approach to the scope of waiver of the attorney-client privilege when advice of counsel is raised as a defense to willful infringement, under which waiver extends only to those trial counsel work product materials that have been communicated to the client and contained conclusions or advice that contradict or cast doubt on the earlier opinions. This approach accommodates both the concern for fairness that drives the broad waiver doctrine and the well-recognized high level of protection generally accorded trial counsel opinion work product. Hence, any otherwise privileged documents or other information generated by the alleged infringer or its counsel subsequent to opinion letters (including post-suit materials), and relating to the subject matter of those opinion letters, must be produced if the documents were communicated to the infringer and if they question or contradict in any way the competence or validity of the opinions rendered. Only in this way can fairness be ensured by requiring the infringer to disclose not only the opinions relied upon through invocation of the advice of counsel defense but also any damaging or contradictory information regarding those opinions.

Page 2

2005 U.S. Dist. LEXIS 10149, *

*Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge*
*Patent Law > Remedies > Collateral Assessments > Increased Damages*
[HN8] A key factor in deciding whether an enhanced damages award for willful infringement is warranted is whether the infringer deliberately or knowingly copied the patentee's design.

COUNSEL: [*1] For Plaintiff/Counter-defendant: William Charles Casano, Greenstein, Delorme & Luchs, P.C., Washington, D. C.; David N. Makous, Thomas S. Kidde, Daniel C. Decarlo, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California.

For Defendant/Counter-claimant: John E. Curtin, Fairfax, Virginia; Martin G. Raskin, Joshua L. Raskin, Steinberg & Raskin, PC, New York, New York.

JUDGES: JOHN D. BATES, United States District Judge.

OPINION BY: JOHN D. BATES

OPINION:

## MEMORANDUM OPINION

In this patent infringement case, defendant Metalast, S.A. ("Metalast") asserts that plaintiff Intex Recreation Corp. ("Intex") has willfully infringed its patent on a swimming pool ladder, U.S. Patent No. 5,547,041 ("the 041 patent"). Metalast seeks enhanced damages pursuant to 35 U.S.C. § 284 based on the alleged willful infringement. The case has been through a claim construction proceeding and discovery, and is now in the summary judgment phase. However, in response to Metalast's claim for enhanced damages, Intex has raised a defense of alleged good-faith reliance on the advice of counsel.

The parties agree that by asserting the advice of counsel defense, Intex has waived the attorney-client [*2] privilege for the two written opinion letters prepared by its trial counsel relating to issues of infringement and validity of the 041 patent. As is often the case in such circumstances, however, there is a substantial disagreement with respect to the scope of the waiver, with the parties taking positions at opposite polar extremes. Metalast argues for a broad waiver that would include all communications between Intex and its counsel regarding the subject matter of the opinion letters (i.e., the issues of infringement and validity of the 041 patent), while Intex urges a narrow waiver limited to the specific opinion letters themselves and documents referring to those opinion letters which it has previously pro-

duced. In particular, Intex takes issue with Metalast's assertion that the waiver encompasses documents relating to settlement discussions and trial strategy (the majority of documents at issue) which Intex considers unrelated to the subject matter of the opinion letters.

Metalast has filed a motion to compel production of all documents and communications within the broad scope of the waiver it advocates. Intex has filed a motion for a protective order that would limit the [*3] scope of depositions relating to the subject matter of the opinion letters, and also curtail the breadth of a proposed Fed. R. Civ. P. 30(b)(6) deposition noticed by Metalast. The Court agrees that the scope of the waiver of attorney-client privilege under these circumstances is broad, although not quite so broad as Metalast contends. The Court will therefore grant in part and deny in part both motions.

## BACKGROUND

Intex seeks a declaration that the 041 patent is invalid and not infringed while Metalast claims that Intex has willfully infringed the 041 patent. Metalast served a broad set of requests for production of documents, to several of which Intex objected on grounds that the documents are subject to the attorney-client privilege and are attorney work product. Metalast insisted that Intex must identify any responsive documents as to which a privilege is claimed on a privilege log in accordance with Fed. R. Civ. P. 26(b)(5). Intex responded that it would provide a privilege log as needed, and that it would waive the attorney-client privilege for the limited purpose of producing opinions of counsel regarding the 041 patent. [*4] Intex then produced to Metalast a complete copy of a July 28, 2000 opinion letter prepared by its lead trial counsel and sent to Intex, as well as a redacted copy of a October 3, 2000 opinion e-mail from its counsel to Intex (together the "opinion letters"). The opinion letters contain attorney-client communications regarding the issues of infringement and validity of the 041 patent.

The parties then exchanged correspondence with respect to the scope of any waiver of attorney-client privilege. Metalast insisted that the waiver included all communications between Intex and its counsel regarding the issues of infringement and validity of the 041 patent, as well as all documents in Intex's possession that refer or relate to counsel's opinion or represent information provided to counsel as a basis for the opinions. Intex disagreed, insisting that waiver should be limited to the specific opinion letters. Intex did, however, eventually provide Metalast with a privilege log.

Following fact and expert discovery relating to claim construction and the Court's decision on claim construction, the parties also conducted discovery related to damages. Intex filed a motion for leave to file a [*5]

Second Amended Complaint to add a count asserting that the 041 patent was invalid pursuant to 35 U.S.C. § 102(b) and to file an amended answer to Metalast's counterclaim to add that defense as well. Metalast opposed the motion. In a September 23, 2003 Order, the Court granted Intex's motion stating that "only narrowly limited additional discovery will be required on that [new] claim." Both parties thereafter asserted that the remaining discovery was narrowly focused on damages and the new invalidity claim. Deposition notices served by Metalast for Intex pursuant to Rule 30(b)(6) and for Intex's trial counsel have generated a dispute between the parties as to the proper scope of remaining discovery as well as the appropriate scope of the waiver of attorney-client and work product privileges.

## ANALYSIS

The parties' competing motions focus on four issues. First, what is the proper scope of the waiver of attorney-client privilege in patent cases where willful infringement is an issue and advice of counsel has been raised as a defense? Second, how should the general principle with respect to the scope of waiver be applied here as to such items as post-suit [*6] trial counsel materials, settlement communications, and documents and communications prepared after the disputed design was changed? Third, must Intex produce the entire October 3, 2000 opinion e-mail without redactions? And fourth, should Metalast be constrained in its proposed depositions with respect to either the scope of the waiver of attorney-client privilege or inquiries going beyond damages and invalidity?

## I. Scope of Waiver

Consistent with most cases to address the issue, this Court concludes that [HN1] the scope of the waiver of attorney-client privilege when advice of counsel is raised as a defense in a patent infringement action is very broad. Hence, Intex must produce all documents and communications that concern the subject matter of the opinion letters (i.e., infringement and validity of the 041 patent under 35 U.S.C. § 112) to the extent the documents were generated by or communicated to Intex, including any information in Intex's files, any information provided to counsel as a basis for the opinions, and any attorney work product that counsel provided to Intex.

[HN2] There is no question that the attorney-client privilege is waived when [*7] a client asserts reliance on the advice of counsel as an affirmative defense, because the client has then made a conscious decision to inject as an issue in the litigation the advice of counsel. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 486 (3d Cir. 1995); Simmons, Inc. v. Bombardier, Inc., 221 F.R.D. 4, 8 n.4 (D.D.C. 2004); Aspex Eyewear, Inc. v. E'Lite Optik, Inc., 276 F. Supp. 2d 1084, 1088 (D. Nev.

2003); Steelcase, Inc. v. Haworth, Inc., 954 F. Supp. 1195, 1197-98 (W.D. Mich. 1997). The parties agree with that proposition, but disagree concerning the scope of the resulting waiver.

As a threshold matter, the Court addresses the applicable law. [HN3] Resolution of discovery disputes and other procedural issues unique to patent litigation is guided by decisions of the Federal Circuit. See Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1574-75 (Fed. Cir. 1984), overruled on other grounds by Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 432, 86 L. Ed. 2d 340, 105 S. Ct. 2757 (1985). However, there is a split of authority among the district courts on whether the scope of the waiver resulting from [*8] the advice of counsel defense is a matter unique to patent law or a matter to be determined by precedent from the regional circuit courts. Simmons, 221 F.R.D. at 9 n. 5 (citing discussion in Chimie v. PPG Indus., Inc., 218 F.R.D. 416, 419 (D. Del. 2003). As the Simmons court noted, "the better reasoned approach recognizes that reliance on an advice-of-counsel defense in patent litigation is a unique brand of the defense rendering general advice-of-counsel discovery holdings inapposite" because the defense "is used only to provide insight into the alleged infringer's state of mind" and determine whether the requisite level of willfulness under 35 U.S.C. § 284 is present. Id.; accord Steelcase, 954 F. Supp. at 1198; but see Chimie, 218 F.R.D. at 419 n.4. The scope of waiver issue, however, has not been resolved by the Federal Circuit. In this situation, the Court believes that it is appropriate to resolve the scope of waiver issue by reference to Federal Circuit decisions on the nature of the advice of counsel defense and other district court decisions addressing the scope of waiver issue [*9] in patent infringement cases, rather than by reference to regional circuit decisions on attorney-client privilege and work product immunity generally. See Simmons, 221 F.R.D. at 9 n. 5.

[HN4] The question of willful patent infringement is one of fact turning on whether the alleged infringer had a reasonable belief that the challenged activity did not violate the law. See Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1192-93 (Fed. Cir. 1996). "The Federal Circuit has made it clear that the infringer's intent, not that of counsel, is the relevant issue." Steelcase, 954 F. Supp. at 1198 (citing Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992)); see Solomon v. Kimberly-Clark Corp., 1999 U.S. Dist. LEXIS 1594, 1999 WL 89570, *3 (N.D. Ill.), rev'd on other grounds, 216 F.3d 1372 (Fed. Cir. 2000). When an alleged infringer claims reliance upon advice of counsel, a court must examine "objective evidence" to assess whether the reliance was justified. See Read Corp. v. Portec, Inc., 970 F.2d 816, 829 (Fed. Cir. 1992). Hence, the infringer's "intent and reasonable beliefs are [*10]

the primary focus of a willful infringement inquiry." Ortho Pharmeceutical, 959 F.2d at 944; Steelcase, 954 F. Supp. at 1198. The inquiry with respect to reliance on an opinion of counsel, of course, "is not the legal correctness of the opinion, but whether the opinion was competent." Aspex Eyewear, 276 F. Supp. 2d at 1090. That assessment requires examination of objective evidence concerning the adequacy of any legal opinion. See Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983); Aspex Eyewear, 276 F. Supp. 2d at 1091.

There is a split of authority among the district courts [HN5] on the issue of the scope of waiver of attorney-client privilege and work product immunity where the advice of counsel has been raised as a defense to willfulness in a patent dispute. This Court concludes that a broad waiver is appropriate, although (as explained below) the waiver should not extend to include attorney work product materials created for trial even if never disclosed to the client.

[HN6] Considerations of fairness require that a litigant should not be able to claim reliance on advice [*11] of counsel as a defense, and hence a sword in litigation, while at the same time asserting attorney-client privilege or work product doctrine as a shield to protect against the opposing party testing the legitimacy of that claim. See Aspex Eyewear, 276 F. Supp. 2d at 1092-93. Fairness requires that the litigant asserting the defense waives the attorney-client privilege and work product immunity "to the broadest extent consonant with the direct relevance to the advice of counsel itself." BASF Aktiengesellschaft v. Reilly Indus., Inc., 283 F. Supp. 2d 1000, 1005 (S.D. Ind. 2003) (quoting Chiron Corp. v. Genentech, Inc., 179 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2001)). Hence, not just the opinion letters themselves and communications with the client about them must be produced, but also those materials that counsel actually relied upon in rendering an opinion, to the extent those documents were provided to the client. Id. The waiver also includes all documents that refer or relate to the subject matter addressed in counsel's opinion letter, to the extent those documents were provided to the client. See Steelcase, 954 F. Supp. at 1198-99. [*12] The subject matter waived is not limited to the specific opinion letter proffered, but rather extends to the specific issues of advice asserted as a defense to willfulness, including infringement and validity. See Akeva, L.L.C. v. Mizuno Corp., 243 F. Supp. 2d 418, 422 (M.D.N.C. 2003). Thus, here, the subject matter waived by Intex is properly defined as infringement and validity of the 041 patent under 35 U.S.C. § 112. This Court concludes that such a broad scope of the waiver is necessary to ensure fairness in the litigation by permitting litigants to test through discovery the positions taken in the litigation. See Aspex Eyewear, 276 F. Supp. 2d at 1093 (relying on broad reach of discovery rather than admissibility standard).

## II. Application of a Broad Waiver

Simply stating that the scope of the waiver must be broad does not fully resolve the discovery issues presented here. In applying a broad waiver with respect to the subject matter of the opinion letters, the Court must decide whether the waiver extends to post-suit trial counsel materials (attorney work product), whether it includes materials prepared after [*13] the design of the ladder at issue was changed, and whether settlement materials of Intex and its counsel must be produced.

Many courts have applied a broad subject matter waiver to require disclosure of all pre-and post-complaint materials, even uncommunicated attorney work product. See, e.g., Chiron, 179 F. Supp. 2d at 1188. That would encompass opinions (and related materials) provided to the client by litigation counsel as well as opinion counsel, both before and after the advice letter, and uncommunicated work product of opinion counsel. See id.; see also Akeva, 243 F. Supp. at 423-24 (disclosure of uncommunicated work product required only when opinion counsel is also trial counsel). n1

n1 Metalast makes this argument regarding waiver of uncommunicated attorney work product for the first time in its reply brief. Metalast's Reply to Intex' Opp. to Metalast's Mot. to Compel at 3-5 ("Metalast's Reply Br."). However, Metalast's motion refers only to production of "communications between counsel and client concerning the subject matter of the opinions" and other information in Intex's possession, and does not make the broader waiver argument regarding uncommunicated attorney work product. See Metalast's Motion to Compel at 1-2 and Proposed Order. Additionally, another section of Metalast's reply brief states that it seeks attorney work product only to the extent that Metalast can demonstrate that documents were communicated to Intex and contained conclusions or advice that cast doubt on the earlier opinion letters. Metalast's Reply Br. at 7-8. Therefore, the issue of whether the waiver encompasses uncommunicated attorney work product is of questionable relevance to Metalast's motion to compel. However, the Court's delineation of the scope of the waiver necessarily touches on the issue, and should guide the course of the remaining deposition discovery as well.

[*14]

However, courts have recognized the need to afford some protection to work product generated by litigation counsel in order to shield the effectiveness of trial preparation from undue discovery by an adversary. See Aspex Eyewear, 276 F. Supp. 2d at 1095. The issue of any temporal limitation on an otherwise broad waiver of attorney-client privilege has divided the federal courts, with many courts insisting on the broadest waiver and hence disclosure of all communications and documents regarding the subject matter of the opinion through trial (and whether or not communicated to the client), see, e.g., Akeva, 243 F. Supp. 2d at 423; Chiron, 179 F. Supp. 2d at 1188-90, while other courts construe the subject matter narrowly and limit waiver to communications and documents created prior to litigation, in order to maximize protection of litigation work product, see, e.g., Dunhall Pharms., Inc. v. Discus Dental, Inc., 994 F. Supp. 1202, 1206 (C.D. Cal. 1998). See generally BASF, 283 F. Supp. 2d at 1005-06 (collecting and discussing cases).

This Court agrees with the BASF court that [HN7] a "middle [*15] ground" is the most appropriate approach to this issue, under which waiver extends only to those trial counsel work product materials that have been communicated to the client and "contained conclusions or advice that contradict or cast doubt on the earlier opinions." BASF, 283 F. Supp. 2d at 1006. This approach accommodates both the concern for fairness that drives the broad waiver doctrine and the well-recognized high level of protection generally accorded trial counsel opinion work product. Id. Hence, any otherwise privileged documents or other information generated by Intex or its counsel subsequent to the two opinion letters issued in 2000 (including post-suit materials), and relating to the subject matter of those opinion letters, must be produced if the documents were communicated to Intex and if they question or contradict in any way the competence or validity of the opinions rendered. See id. at 1007. Only in this way can fairness be ensured by requiring Intex to disclose not only the opinions relied upon through invocation of the advice of counsel defense but also any damaging or contradictory information regarding those opinions. n2 [*16]

n2 If Intex represents that there are no documents on the privilege log in this category, but Metalast believes in good faith that there are, then the Court may review any disputed items in camera.

Application of this principle here should be straightforward even though opinion counsel is also trial counsel. Post-suit trial counsel materials for which attorney work product or attorney-client protection is asserted

must be disclosed if they question or contradict in any way the competence or validity of the 2000 opinion letters to the extent such materials were communicated to Intex. That disclosure obligation includes materials prepared after the design of the ladder at issue was changed and any settlement materials, because the operative guiding principle is whether otherwise privileged post-suit trial counsel work product contradicts or casts doubt on the earlier opinion letters, in which case it must be produced even if "settlement material" or created post-design change. n3

n3 However, it is worth repeating that the subject matter of the opinion letters that are the basis for the advice of counsel defense -- infringement and validity under 35 U.S.C. § 112 -- also defines the scope of the waiver. Hence, there is no obligation to disclose privileged material relating to possible invalidity of the 041 patent under 35 U.S.C. § 102(b), a different subject matter.

[*17]

### III. Redaction of October 3, 2000 Opinion E-mail

Intex has produced a redacted copy of the October 3, 2000 e-mail that is one of the opinion letters at issue. The redacted material does not relate to the 041 patent according to Intex. Metalast asserts that the entire opinion, without any redaction, must be disclosed based on application of the "selective" or "partial" disclosure doctrine when advice of counsel is asserted as a defense to willful patent infringement. See Steelcase, 954 F. Supp. at 1200 ("opinion cannot be redacted in any fashion"); id. at 1198-99 (production of irrelevant information is a consequence of waiver of the privilege). Although the Court agrees with this general statement of the law, there is one refinement that may be relevant here. Some courts have recognized that waiver is limited to the portion of an opinion letter constituting legal advice on the patent at issue, and hence portions relating to other patents need not be produced. See Solomon, 1999 WL 89570 at *5. The guiding principle, again, is fairness, and the fortuity of combining opinions or subjects in one letter should not result in [*18] a waiver of privilege as to unrelated subject matters. Id. Hence, to the extent the redacted portion of the October 3, 2000 e-mail does not concern the 041 patent at all, it need not be produced. But to the extent the redacted portion nonetheless relates in any way to the 041 patent, then it must be produced as a necessary consequence of the broad subject matter waiver of privilege applicable here.

## IV. Scope of Depositions

The final two questions arise from Intex's motion for a protective order and relate to the proper scope of two noticed depositions: one of Intex's trial counsel, David N. Makous, who also is the author of the July 28, 2000 opinion letter, and a Rule 30(b)(6) notice to Intex. With respect to the scope of permissible inquiry relating to Intex's invocation of an advice of counsel defense, the parties should be guided by the preceding discussion concerning the appropriate scope of the waiver of attorney-client privilege and work product doctrine, and the resulting production of documents and communications under the Court's ruling. This discovery must focus, however, on the competency, not the correctness, of the opinions provided, and on the intent [*19] and reasonable beliefs of Intex in relying on the opinions. Metalast may not use this opportunity to reopen discovery broadly on claim construction, infringement, invalidity or other liability issues. At the same time, the Court recognizes that there is inevitably some overlap between the information relevant to infringement and the reasonableness of Intex's reliance on counsel's opinion regarding non-infringement. Thus, the Court will not limit the depositions solely to invalidity of the 041 patent under 35 U.S.C. § 112 and analysis of the term "uninterrupted inner surface." The areas of inquiry listed by Metalast, while somewhat broad, could potentially result in information relevant to the reasonableness of Intex's reliance on counsel's opinion, and thus are permissible areas of inquiry, subject to the restrictions outlined in the preceding discussion. The areas of inquiry, thus restricted, may include: (a) information provided by Intex to its attorneys regarding infringement and validity; (b) communications between Intex and its attorneys concerning infringement and invalidity; (c) other opinions conveyed to Intex by its attorneys regarding infringement [*20] and validity; (d) documents in Intex's possession that refer or relate to counsel's opinion; and (e) communications with other attorneys regarding infringement and invalidity.

The remaining question, then, relates to the proper scope of additional discovery concerning damages and Intex's new invalidity claim. This is an independent issue not turning on the advice of counsel defense and the resulting waiver of privilege. The parties agree, moreover, that "discovery has closed as to all issues except damages (and Intex' new claim of invalidity)." Metalast Opp. to Intex's Motion for Protective Order at 1.

The disagreement over scope now focuses on nine topics of Metalast's Rule 30(b)(6) deposition notice to Intex. The Court does not believe there are actually that many topics in issue, given the considerable overlap of subjects. Most of the requested discovery, properly (and thus narrowly) construed, is appropriate under the guiding principle that [HN8] a key factor in deciding

whether an enhanced damages award for willful infringement is warranted is whether the infringer deliberately or knowingly copied the patentee's design. Aero Products Int'l, Inc. v. Intex Recreation Corp., 2004 U.S. Dist. LEXIS 13453, 2004 WL 1696749, [*21] at *1 (N.D. Ill.) (citing Read Corp., 970 F.2d at 826-27).

The remaining disputed topics from the Rule 30(b)(6) notice can be grouped for analysis into four subjects. Category 1 covers questioning on all ladders marketed by Intex since 1990. Although designed to acquire admissible evidence on damages, that is too broad a subject of inquiry. Metalast may inquire only into the description (including construction) and quantity of ladders sold by Intex from 1996 (the year the 041 patent was issued) through 2003. Categories 10 and 13 deal with the conception of the design of the accused ladder and the decision to redesign earlier ladders. The Court is somewhat persuaded by Intex's argument that this information is much more relevant to infringement (and hence liability) than to damages, and therefore the discovery should be denied based on the Court's prior bifurcation of discovery and the agreement that discovery is closed except for damages and the new invalidity claim. However, the Court will permit discovery in these categories strictly limited to the issue of willful infringement (and hence giving rise to possible enhanced damages).

Categories 11, 12, 15 and 16 [*22] seek information relating to the initial decision to have the accused ladders manufactured, the initial decision to purchase the accused ladders from Mingda Plastics, and the first contact by Intex with Mingda. This is a narrow area of inquiry relevant to willful infringement and enhanced damages when limited to whether Intex had (or should have had) knowledge that the purchased ladders were copies of patented ladders. Likewise, Categories 14 and 17, dealing with knowledge of the design of the accused ladders and of the construction of Metalast's ladders, involve a narrow inquiry that may lead to the discovery of admissible evidence relating to Intex's knowledge of infringement, and therefore willful infringement and possible enhanced damages.

The Rule 30(b)(6) deposition of a designated Intex employee should proceed consistent with these rulings. It bears repeating, however, that this discovery is narrow, consistent with the agreed limitation of discovery to damages and the new invalidity claim, and should not be taken as an opportunity to reopen discovery on infringement or other issues as to which discovery is closed.

## CONCLUSION

For the foregoing reasons, Metalast's [*23] motion to compel production and Intex's motion for a protective order are each granted in part and denied in part. A separate order has been issued.

JOHN D. BATES

United States District Judge

Dated: March 2, 2005

**ORDER**

Upon consideration of [52] the motion of defendant Metalast, S.A. ("Metalast") to compel plaintiff Intex Recreation Corp. ("Intex") to produce all information, including all attorney-client communications, concerning the subject matter of the opinions of counsel produced by Intex in support of its advice of counsel defense to Metalast's willful infringement claim, [51] Intex's motion for protective order, and the responses, replies, and supplemental memoranda, it is hereby

ORDERED, that, for the reasons stated in the Memorandum Opinion issued on this date, Metalast's

motion to compel and Intex's motion for protective order are each granted in part and denied in part; it is further

ORDERED, that Intex shall review the documents identified in its privilege log and produce documents responsive to Metalast's request for production of documents in accordance with the standards set forth in the Memorandum Opinion by not later than March 31, 2005; and [*24] it is further

ORDERED, that the deposition of David N. Makous and the deposition of a person designated by Intex pursuant to Fed. R. Civ. P. 30(b)(6) shall proceed in accordance with the standards set forth in the Memorandum Opinion issued on this date.

JOHN D. BATES

United States District Judge

Dated: March 2, 2005

FILED ELECTRONICALLY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CIVIL ACTION NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.,

      PLAINTIFF/COUNTERCLAIM
      DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.,

      DEFENDANT/COUNTERCLAIM
      PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

      COUNTERCLAIM DEFENDANT

v.

STATIC CONTROL COMPANIES, INC.

      COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

      COUNTERCLAIM DEFENDANT

## **ORDER**

The law firm of Wyatt, Tarrant & Combs, LLP having moved the Court to quash

an October 19, 2006 subpoena served on it by Lexmark International, Inc., and the Court

having considered the motion and the parties' arguments and otherwise being sufficiently

advised IT IS HEREBY ORDERED that the Motion is GRANTED and the subpoena is quashed.

Entered this _____ day of _____, 2006.

_____
Judge, United States District Court

# EXHIBIT P

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## AT LEXINGTON
## CASE NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.                    PLAINTIFF/
                                              COUNTERCLAIM DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.                          DEFENDANT/
                                              COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.      COUNTERCLAIM DEFENDANT
d/b/a MICRO  SOLUTIONS ENTERPRISES

v.

PENDL COMPANIES, INC.                    COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.                  COUNTERCLAIM DEFENDANT

***************************

## LEXMARK INTERNATIONAL, INC.'S OPPOSITION
## TO MOTION TO QUASH SUBPOENA ON
## WYATT, TARRANT & COMBS (REDACTED)

Defendant and Counterclaim Plaintiff Lexmark International, Inc. ("Lexmark") opposes

the motion to quash of the law firm Wyatt, Tarrant & Combs, LLP ("Wyatt").  Wyatt represents

Static Control Components, Inc. ("Static Control").  Lexmark asserts that Static Control willfully

infringed and continues to willfully infringe Lexmark's patents.  Lexmark also asserts that Pendl

Companies, Inc. ("Pendl"), a customer of Static Control, willfully infringed and continues to

willfully infringe Lexmark's patents.  Static Control, Pendl, and two other defendants in the

litigation have claimed a common interest privilege as a basis to withhold any communications

between the defendants.[1]  As discussed herein, Pendl has waived its advice of counsel in defense

to the charge of its ongoing willful infringement.  Wyatt should be ordered to produce all

documents that reflect, embody or discuss communications between Wyatt and Pendl pertaining

to the Becker Opinion (discussed herein) because such communications are relevant to Pendl's

state of mind, and thus the willfulness of Pendl's infringement.[2]

Pendl recently decided to rely on a legal opinion from one of its attorneys ("the Becker

Opinion") in an attempt to argue that any infringement by Pendl of Lexmark's patents, including

Pendl's ongoing infringement, was and is somehow not willful.  This opinion broadly covers a

wide range of topics, including the validity and enforceability of Lexmark's Prebate program in

view of patent, contract, and antitrust laws.  Federal Circuit precedent makes clear that because

Pendl has asserted its advice-of-counsel defense, Pendl automatically waived its claim for

privilege and/or work product for *all* such communications (including those with trial counsel)

regarding the subject matter of the Becker Opinion.  ***Significantly, Pendl's waiver applies not
only to communications from its litigation counsel, but also to communications with Static
Control (and its counsel Wyatt) relating to the subject matter of the Becker Opinion***.

It is abundantly clear that defendants cannot use their advice of counsel as both a sword

(by waiving privilege to allegedly favorable opinion) and a shield (by asserting privilege to any

unfavorable communications between defendants).  The Federal Circuit has recently affirmed its

---

[1] Despite repeated requests by Lexmark, the counterclaim defendants have refused to produce any such common interest agreement.  Moreover, counterclaim defendants' common interest claim is curious given that one of the counterclaim defendants, NER Data Products, Inc. ("NER"), has asserted a cross-claim against Static Control in the underlying Kentucky litigation.

[2] This Court has already held that Wyatt's client Static Control has "waived the attorney/client and work product privileges for all documents pertaining to Lexmark's Prebate program." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2006 U.S. Dist. LEXIS 40612 (E.D. Ky., June 15, 2006) (Static Control's objections pending).  Static Control widely disseminated to its customers a legal opinion that it obtained from an outside attorney, Mr. Walker Blakey, discussing the enforceability, validity, and general legality of Lexmark's Prebate program ("the Blakey Opinion").  This Court properly determined that Static Control thereby waived any claim to privilege.  ***Significantly for purposes of Wyatt's motion, this waiver is not limited in time or to specific counsel for Static Control***.

holding that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to *all* such communications regarding the same subject matter.  *In re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006).  Post-*Echostar*, district courts have also confirmed that **the scope of the waiver extends to pre-suit and post-suit communications and to communications on the same subject matter between the client and its counsel, including litigation counsel**.  The inquiry is focused therefore on the **subject matter** of the communications, not the timing or authors of them.

Accordingly, given Pendl's voluntary waiver by virtue of its decision to assert the advice of counsel defense to rebut the charge that its ongoing infringement is willful, Lexmark is entitled to full discovery of Pendl's state of mind, including its communications with others relating to its state of mind.  This includes Pendl's communications with Wyatt relating to the subject matter of the waived Becker Opinion.  Wyatt's Motion to Quash should therefore be denied and Wyatt should be ordered to immediately provide the discovery requested in Lexmark's subpoena.[3]

## I.    FACTUAL BACKGROUND

### A.    Static Control's Customer – Pendl – Recently Asserted an Advice-of-Counsel Defense To Argue That Any Patent Infringement by Pendl that was  Induced by Static Control was Somehow Not Willful

On August 25, 2005, Lexmark requested Pendl to produce "all documents and things relating to Pendl's reliance, if any, on the advice of counsel as a defense to the charge of willful

---

[3] The basis for Wyatt's motion is curious because Wyatt claims that its lawyers have never given any advice to any party to this patent infringement litigation, including Wyatt's client (Static Control), regarding the validity or infringement of Lexmark's patents.  Wyatt further contends that each and every communication it has had with Pendl's counsel has been limited to "preparation for trial and pursuant to a common interest agreement."  If Wyatt's claims were somehow true, it would have entirely obviated the instant motion.  As counsel for Lexmark has already conveyed to counsel for Static Control, Lexmark does not seek discovery of litigation or trial strategy.  Instead, Lexmark seeks that to which it is entitled to under *In re Echostar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006), namely communications with Pendl relating to the subject matter of the Becker opinion.  The fact that Wyatt nonetheless filed its motion suggests that Wyatt has in fact communicated with Pendl in some manner regarding subject matter falling within the scope of Pendl's waiver.

infringement." (Exhibit A, Request for Production No. 48). In it's October 31, 2005 Response, Pendl objected to this request stating, *inter alia*, that this request sought documents that are protected from discovery by the attorney-client privilege and/or work product doctrine. (Exhibit B, pp. 39-40). For nearly a year, Pendl hid behind its privilege shield and avoided production of any responsive documents. On October 6, 2006, Lexmark requested that Pendl promptly make a decision as to whether or not Pendl would rely on the advice of counsel defense. (Exhibit C). On October 12, 2006, counsel for Pendl, the Stites & Harbison firm ("Stites"), stated:

> We carefully considered your request regarding Pendl's assertion of the advice of counsel defense. Please be advised that Pendl will be relying at trial on advice of counsel as one of its defenses to Lexmark's claim of willful patent infringement. In addition to all other documents previously produced in this matter, we will also produce to you a copy of the opinion of counsel tomorrow as requested in your recent letter.

See attached Exhibit D.

Although Pendl eventually produced the Becker Opinion (attached as Exhibit E), thereby waiving any claim to privilege and/or work product, it has to date failed to produce any other documents – or provide any other discovery – relating to the subject matter of the Becker Opinion. Rather, with the close of discovery in the case rapidly approaching (it has now, in fact expired), Pendl and its counsel – including Stites – continued to obstruct discovery by seeking a protective order from such further discovery. Wyatt and its client Static Control have taken the same position as Pendl, and refuse to produce communications between Static Control and Pendl relating to the same subject matter each has waived.

### B.   Wyatt Does Not Deny Having Communications With Pendl's Counsel That Are Responsive To The Subpoena, Including Advice Relating to Lexmark's Prebate Program

Wyatt's motion does not deny it had communications with Pendl that are responsive to the subpoena to Wyatt. Indeed, Wyatt admits that its client "Static Control and the

remanufacturing defendants in this case are parties to a common interest agreement." *See* Declaration of W. Craig Robertson III, Exhibit 1 accompanying Wyatt's motion, at paragraph 7. Lexmark has requested opposing counsel, including Wyatt to provide a copy of the common interest agreement, but the opposing parties have refused to do so.  Moreover, counterclaim defendants' common interest claim is curious given that one of the counterclaim defendants, NER, has asserted a cross-claim against Static Control in this litigation.

As the supplier of products to the remanufacturer defendants (including Pendl), it is Wyatt's client (Static Control) who the remanufacturers have likely looked to as a source of documents, information, and advice relating to Lexmark's Prebate program including the invalidity, unenforceability, and non-infringement positions against Lexmark's patents.  This is not surprising since it was Static Control that has long waged a public campaign against Lexmark's Prebate Program including (1) widely disseminating to its customers the Blakey opinion, a legal opinion that SCC's General Counsel, Mr. London, obtained from an outside attorney discussing the enforceability, validity, and general legality of Lexmark's Prebate program; and (2) making the Blakey opinion the focal point of SCC's Declaratory Judgment action filed against Lexmark in response to Lexmark's patent infringement claims.

Most significantly, Mr. Robertson's Declaration does not deny that Wyatt communicated with Pendl or Pendl's counsel about the validity of Lexmark's Prebate Program, and the related enforceability of Lexmark's patents under that program.  If such communications occurred and were conveyed to Pendl, Lexmark is entitled to discover them – which is different and distinct from litigation or trial strategy.

## II.    PENDL WAIVED COMMUNICATIONS RELATING TO THE BECKER OPINION

Is it well settled that when a party voluntarily discloses privileged communications to a third party, that disclosing party waives its attorney-client privilege and work product immunity protections for all documents on the same subject matter. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302-07 (6th Cir. 2002).  It is also well established that when a party puts its counsel's advice at issue in a case, that party waives attorney-client privilege and work product protections with respect to the subject matter of that advice.  *In re Powerhouse Licensing*, 441 F.3d 467 473 (6th Cir. 2006) ("[C]ertain statements contained in the affidavit represented opinions . . . that go to the heart of the legal claims at issue.  By including these communications in the affidavit, counsel for petitioners effectively waived the attorney-client privilege.").

Similarly, the Federal Circuit has long held that "[o]nce a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived."  *In re Echostar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006).[4]  "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the

---

[4] *See, e.g., In re EchoStar, 448 F.3d at 1299 ("[W]hen EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel"); Fort James Corp v. Solo Cup Co.*, 412 F.3d 1340, 1350-51 (Fed. Cir. 2005) (finding that the disclosure of counsel's legal advice in a development engineering report waived the attorney-client privilege for other documents on the same subject matter); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (finding attorney-client privilege waived when party "retained the attorneys primarily for the commercial purpose of obtaining written tax opinions to include in their coal lease promotion brochures rather for their own guidance"); *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98, 104 (S.D.N.Y. 2004) (attorney-client privilege waived "with respect to all communications not only with [opinion counsel], but also with its other attorneys, including trial counsel, concerning the subject matter of [the legal opinion]"); *Union Pac. Res. Co. v. Natural Gas Pipeline Co.*, Case No. 90 C 5378, 1991 WL 105505, at *4 (N.D. Ill. June 10, 1991)("The circumstances of UPR's 1985 disclosure dictate that it has waived the attorney-client privilege as to not only the documents it produced in 1985, but as to all others on the same subject matter.") (attached as Exhibit F).

same subject matter." *Id.*, citing *James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). This rule of law is necessary to prevent the "inequitable result that the waiving party could use the attorney-client privilege as both a sword and a shield by selectively waiving only favorable advice, and asserting privilege on unfavorable advice regarding the same subject matter." *Id. at 1301*.

Thus, "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to ***all*** such communications [whether written or oral] regarding the same subject matter." *Id.* at 1301 (emphasis added). The alleged infringer "waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused." *Id.* at 1304. "This waiver … includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client." *Id.*

Here, it is undisputed that Pendl asserts an advice-of-counsel defense. Under *Echostar*, Pendl automatically waived immunity for any document or opinion that embodies or discusses a communication to or from it concerning the subject matter of the Becker Opinion. *Id.* at 1304. Pendl's waiver includes not only any letters, memorandum, conversation, or the like between Pendl's counsel and Pendl, but also includes, when appropriate, any documents referencing a communication between Pendl's counsel and Pendl. *Id.*

Pendl's waiver logically, then, also includes all documents and communications with others (such as Wyatt) relating to the subject matter of waived Becker Opinion. Such information goes directly to Pendl's state of mind and willfulness. Under *Echostar*, Pendl cannot

hide such documents and communications from discovery. Under *Echostar*, Wyatt should not be permitted to assist Pendl in hiding this information.

### A. Pendl's Waiver Applies To Communications Relating to the Becker Opinion

As previously noted, the infringement defendants have **refused to produce the alleged common interest agreement** despite repeated requests by Lexmark. Having failed to produce the alleged common interest agreement, Wyatt has not carried its burden in proving that information it provided to Pendl on the alleged enforceability of Lexmark patents is privileged under the alleged common interest agreement.[5]

Even if it is somehow deemed that a common interest agreement exists, Lexmark is entitled to discovery of Pendl's communications with others. *Autobytel, Inc. v. Dealix Corp.*, 2006 U.S. Dist. LEXIS 72032 (E.D. Tex., October 3, 2006), attached as Exhibit H ("When Dealix asserted the advice-of-counsel defense, it waived the [common legal interest] privilege as to communications or communicated work product related to potential infringement of the [asserted] patent or related to the non-infringement opinion." *Id.* at 18-19).[6] Pendl cannot affirmatively assert the advice of counsel defense, rely on the Becker Opinion and then refuse to provide information it received regarding the subject matter of the Becker Opinion, relying on a common interest agreement that nobody has even seen. And Wyatt cannot refuse to provide information relating to the subject matter of the Becker Opinion that was transmitted to Pendl.

---

[5] Moreover, the alleged common interest agreement should not be given any weight by this Court because the parties' legal interests do not coincide as evidenced by the fact that NER has asserted a claim against and has served discovery on Static Control. *See, e.g., North River Ins. Co. v. Columbia Casualty Co.*, No. 90-2518, 1995 WL 5792, at *5 (S.D.N.Y. Jan. 5, 1995) (holding that the common interest doctrine does not apply between two parties with divergent legal interests and explaining that "[w]hile [the parties'] commercial interests coincided to some extent, their legal interests sometimes diverged, as demonstrated by the instant litigation"). A copy of this case is attached as Exhibit G.

[6] Other than *Echostar*, none of the cases cited by Wyatt at p. 6 of its motion to quash involved a party charged with willful patent infringement who had waived the advice of counsel to rebut the charge of willfulness. As held by the Federal Circuit in *Echostar*, by asserting the advice of counsel defense to a charge of willful infringement, the accused infringer's waiver extends "so far as to inform the court of the infringer's state of mind." 448 F.3d at 1303.

Common interest agreements do not have such an elevated place in the law and they do not empower or entitle the parties thereto to deprive an adverse party of otherwise discoverable information.

Pendl and Static Control **chose** to enter into a common interest agreement. Pendl then **chose** to rely on the Becker Opinion in defending against Lexmark's willfulness allegations – an opinion that is incredibly broad, touching on patent, contract and antitrust laws. Neither of these choices were made by Lexmark. They are choices made by Pendl and/or Static Control and were made with the active assistance of their able attorneys. Those choices may have advantages, and they may have disadvantages, but they certainly have consequences and one of those consequences is that Lexmark is entitled to discover communications to Pendl relating to the subject matter of the Becker Opinion regardless of the source of those communications.

### B. Wyatt Cannot Support Its Position That Pendl's Waiver Does Not Affect Its Communications

Lexmark expects that Wyatt will point to certain cases in an attempt to argue that Pendl's waiver somehow does not affect Wyatt's communications with Pendl. In particular, it is anticipated that Wyatt will point to *Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005); *Interfaith Hos. Delaware, Inc. v. Town of Georgetown*, 841 F. Supp 1393, 1402 (D. Del. 1994); *AT&T Corp. v. Microsoft Corp.*, No. 02-1064 MHP (JL), 2003 U.S. Dis. LEXIS 8710 *20 (N.D. Cal. April 18 , 2003).[7] All of these cases pre-date the Federal Circuit's decision in *Echostar*, and none of these cases involved a party charged with willful patent infringement who had waived the advice of counsel to rebut the charge of willfulness. As held by the Federal Circuit in *Echostar*, by asserting the advice of counsel defense to a charge of willful infringement, the

---

[7] Wyatt's co-counsel, Constantine Cannon P.C. ("Constantine") cited to these cases in a Reply in connection with a similar Motion to Quash pending in the District of Columbia.

accused infringer's waiver extends "so far as to inform the court of the infringer's state of mind." 448 F.3d at 1303.

These cases are also distinguishable for the following additional reasons. In *Ross*, the Court held that the importance of privileged communications between a City employee and City attorneys (which the City employee sought to rely upon personally) was outweighed by the City's interest in maintaining the privilege, particularly where the advice of counsel is not usually a component of the qualified immunity defense. 423 F.3d at 603.

In *Interfaith*, the Court held that one defendant's statement with respect to advice of counsel had waived his attorney-client privilege. Significantly, and contrary to Wyatt's position, the Court ordered ***all*** defendants to produce any and all documents relating to the waived subject matter (namely, the Town Council's authority to impose a certain Stipulation). The Court also ruled that this evidence would be admissible only as to the waiving defendant and not as to any other defendant.

In *AT&T*, the Court held that non-party DSP did not waive its attorney-client and work product claims because it had ***not*** asserted the advice of counsel defense, and that there was no waiver by the accused infringer (Microsoft) because it did not know about a third party's investigations or opinions by that third party's counsel. Accordingly, *AT&T* is inapposite, both factually and legally, to the current situation.

In short, these cases cannot support Wyatt's position that Pendl's waiver does not somehow affect Wyatt's communications with Pendl.

### C.    Waiver of Privilege and Work Product Applies to Litigation Counsel

To be clear, Lexmark is not seeking litigation or trial strategy from Wyatt. But Pendl's waiver applies to many other documents and/or information that Wyatt may have that would not constitute litigation or trial strategy. For example, any communications from Wyatt to Pendl's

counsel that was then provided to Pendl regarding the enforceability Lexmark's patents is waived by Pendl and is discoverable. Wyatt's communications with Pendl's counsel regarding which witnesses to use to present Static Control's and/or Pendl's case of patent unenforceability is litigation or trial strategy that Lexmark does not seek.

Wyatt's argument that there has been no waiver of any privilege as to communications with trial counsel by asserting the advice of counsel defense has no merit. Wyatt's motion entirely ignores that the Federal Circuit's recent decisions *In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) and *James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005), *supra*, govern here.[8] The Federal Circuit held in *Echostar* that waiver of opinions ***does extend*** to advice and work product given after litigation began "when the advice is relevant to relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation." *In re Echostar Communications Corp.*, 448 F.3d at 1303, citing with approval *Akeva LLC,* 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003) ("Once a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement."), and *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1351-1353 (Fed. Cir. 2001) (noting that an infringer may continue its infringement after notification of the patent by filing suit and that the infringer has a duty of due care to avoid

---

[8] District court cases cited by Wyatt, *i.e., Intex Recreation Corp. v. Metalast*, Civ. No. 01-1213 (JDB), 2005 U.S. Dist. LEXIS 10149 (D.D.C. March 2, 2005), and *Dunhall Pharms v. Discus Dental*, 994 F. Supp. 2d 1202 (C.D. Cal. 1998), and *Motorola v. Vosi Techs.*, 2002 U.S. Dist. LEXIS 15655 (N.D. Ill. 2002), all pre-date the Federal Circuit's decisions in *Echostar* and *James Corp.* and therefore are not controlling. In *Intex Rec. Corp. v. Team Worldwide Corp.*, 439 F. Supp. 2d 46 (D.D.C. 2006), the District of Columbia held that *Echostar* "does not provide authority for the narrow subject matter waiver of the attorney-client and work product protections which [the accused infringer] urges." *Id.* at 51. Thus, the Court held that the accused infringer "waived the attorney-client and work product privileges 'for any document or opinion that embodies or discusses a communication to or from it concerning whether the [asserted patent] is valid, enforceable and infringed.'" *Id.* Moreover, the Court held that the accused infringer "must provide 'all testimony and produce all documents' generated by its counsel subsequent to [the waived opinion] which either 'question or contradict in any way the competence or validity of the opinions rendered.'" *Id.* at 53. Even under this standard, however, opposing counsel should not be permitted to unilaterally decide what opinions it gave "question or contradict in any way the competence or validity of the opinions rendered," and that all such opinions at a minimum should be submitted to the Court for in camera review.

infringement after such notification).   Here, Lexmark asserts ongoing willful infringement by Pendl.

The *Echostar* Court's favorable citing to *Akeva* is particularly important here.  In *Akeva*, the court held that "all opinions received by the client relating to infringement must be revealed, **even if they come from defendants' trial attorney**."  243 F. Supp. 2d at 423 (emphasis added). While *Echostar* did not involve trial counsel, the supporting citation to *Akeva* in describing the scope of the waiver, together with the reasoning of the *Echostar* Court shows Pendl's waiver extends to **all** attorneys who provided advice to Pendl on whether each of Lexmark's patents is valid, enforceable, or infringed by Pendl.  Such advice includes the scope, validity and/or enforceability of Lexmark's Prebate Program.  In short, **the scope of the waiver extends to pre-suit and post-suit communications and to communications on the same subject matter between Pendl and all other counsel, including both Pendl's litigation counsel and Wyatt.**

Wyatt's arguments to the contrary are fundamentally at odds with the principal purpose of the waiver doctrine, which is to protect against the unfairness that would result from a party selectively disclosing legal advice for its own benefit, revealing only the advice that supports its cause while claiming the shelter of privilege to avoid disclosing other advice on the same subject matter that is less favorable.  *See, e.g., In re EchoStar*, 448 F.3d at 1301 ("However, selective waiver of the privilege may lead to the inequitable result that the waiving party could waive privilege for favorable advice while asserting its privilege on unfavorable advice.  In such a case the party uses the attorney-client privilege as both a sword and a shield.  To prevent such abuses we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding

the same subject matter.") (citing *XYZ Corp v. United States*, 348 F.3d 16, 24 (1st Cir. 2003) and *Fort James Corp.*, 412 F.3d at 1349).

As noted above, Pendl has waived the attorney/client and work product privileges for all documents pertaining to the validity and enforceability of Lexmark's patents under Lexmark's Prebate program by disclosing the Becker Opinion. Lexmark is entitled to discovery of Pendl's communications with others relating to this same subject matter because such communications are relevant to Pendl's state of mind. Such communications include those, either directly or indirectly via Pendl's counsel, with Static Control's counsel, Wyatt. Fairness dictates that Lexmark be allowed to access all documents and communications, from any counsel at any time period, discussing, casting doubt, or contradicting all subject matter contained in the Becker Opinion that was provided to Pendl. It would be fundamentally unfair to permit Pendl to disclose favorable legal opinions, but yet allow Pendl to protect unfavorable communications that go to the heart of Lexmark's patent infringement allegations under the guise of the attorney-client privilege and/or work product immunity.

Significantly, Wyatt fails to cite a single Federal Circuit case that holds waiver does not extend to advice of litigation counsel when that advice is relevant to ongoing willful infringement at issue in the litigation. Wyatt ignores that district courts applying the Federal Circuit holdings in *Echostar* have held that waiver extends to advice of litigation counsel when the advice is relevant to ongoing willful infringement at issue in the case.

### 1.     This Court in this Litigation has Already Found Waiver to Extend to Litigation Counsel

This Court has already ruled consistently with Lexmark's position in a similar manner against Wyatt's client Static Control. *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 2006 U.S. Dist. LEXIS 40612 (E.D. Ky., June 15, 2006). This Court ruled that Static Control

waived the attorney/client and work product privileges for all documents pertaining to Lexmark's Prebate program.  *Id.* at Slip Op. 20-23.  This Court ordered Static Control "to produce **all documents**, both privileged and non-privileged, relating to Static Control's efforts to defeat Lexmark's Prebate program."  *Id.* at Slip Op. 23.  This Court's Order includes waiver with respect to litigation counsel.

### 2. In at Least One Other Litigation Involving Wyatt's Co-Counsel (McDermott), a Court has Found Waiver to Extend to Litigation Counsel

In one recent district court case wherein Wyatt's co-counsel, McDermott Will & Emery ("McDermott") was litigation counsel for an accused infringer (Seagate) who asserted the advice-of-counsel defense, it was held that waiver applied to McDermott.  *Convolve, Inc. v. Compaq Computer Corp. and Seagate Technology, Inc.*, 2006 U.S. Dist. LEXIS 69425 (S.D.N.Y., September 27, 2006) attached as Exhibit H, denying interlocutory appeal of Magistrate's Memorandum and Order reported at 224 F.R.D. 98 (S.D.N.Y., May 28, 2004).

In *Convolve,* McDermott's client Seagate placed at issue the advice of its opinion counsel (Mr. Sekimura).  The Magistrate held that "Seagate has therefore waived the privilege with respect to all communications not only with Mr. Sekimura, but also with its other attorneys, including trial counsel, concerning the subject matter of Mr. Sekimura's advice."  224 F.R.D. at 104.  The Magistrate held that "trial counsel's advice that undermines the reasonableness of the client's reliance on advice of opinion counsel must be disclosed even if it is communicated in the context of trial preparation."  *Id.*  The Magistrate held that "to the extent that Seagate wishes to withhold or redact documents that would reveal trial strategy or planning, it shall submit those documents for my in camera review."  *Id.*

With respect the waiver of attorney-client communications, the Magistrate held:

For the foregoing reasons, the plaintiffs' motion with respect to Seagate's waiver of the attorney-client privilege is granted. Seagate shall produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, ***including trial counsel***, with respect to the subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '635, '267, and '473 patents. The time period of the waiver runs from the time Seagate became aware of the patents at issue and continues until such time as Seagate's alleged infringement ends. Any communications between Seagate and its trial counsel concerning the subject matter of Mr. Sekimura's opinions that also relate to trial strategy or planning shall be submitted for my review. 224 F.R.D. at 105. (emphasis added) (footnote omitted).

With respect to waiver of work product, the Magistrate held:

[T]he communicated work product of any of Seagate's attorneys is discoverable under Seagate's waiver of the attorney-client privilege. Such communicated work product shall include materials disclosing the fact or substance of Seagate's (or in-house counsel's) communications with any outside counsel; accordingly, this order encompasses the plaintiffs' request for "documents reflecting oral communications . . . between [Seagate] and outside counsel" that relate to the subject matter of the Sekimura opinions. 224 F.R.D. at 107. [9]

Similarly, other district courts have applied the holdings of *Echostar.  See Computer Associates International, Inc. v. Simple.com, Inc.,* 2006 U.S. Dist. LEXIS 77077 (E.D.N.Y., October 23, 2006), attached as Exhibit I.  In *Computer Associates*, ongoing infringement was at issue, and the accused infringer (Computer Associates, "CA") chose to rely on advice of counsel from one firm (Cooper & Dunham), but refused to produce any communications between it and its litigation counsel (Heller Ehrman or its prior trial counsel) claiming attorney-client privilege. The district court adopted a Report and Recommendation of a Special Master, and granted the patent owner's motion to compel.  In its ruling, the district court relied on the Federal Circuit's

---

[9] The district court denied Seagate's motion to overrule the Magistrate Judge's decision.  The district court also denied Seagate's motion to certify the issue for interlocutory appeal.  Seagate has now filed a Petition with the Federal Circuit for a Writ of Mandamus.  McDermott is well aware of the district court's application in *Convolve* of the holdings in *Echostar*, including the waiver extending to litigation counsel.

holdings in *Echostar*. The district court held that the "Special Master's holding that the waiver extends to trial counsel is consistent with *Echostar*." Slip op. at 12-13. The district court held that "excluding trial counsel from the scope of the waiver would permit a party to use the attorney-client privilege as both a sword and shield by allowing a party to choose which opinions are disclosed and which are not." *Id.* The district court held that "[l]itigation strategy and advice of counsel are not the same and the Special Master's Recommendation recognized the difference by providing CA an opportunity to submit materials for his *in camera* review. Slip op. at 14.

As shown above, in post-*Echostar*[10] cases *Convolve* and *Computer Associates* cases, district courts have held that waiver extends to litigation counsel. Indeed, in *Convolve*, the waiver was held to extend to litigation counsel McDermott – who is Wyatt's co-counsel in the present case.[11]

### 3. In at Least One Other Litigation Involving Pendl's Counsel Stites, a Court has Found Waiver to Extend to Litigation Counsel

In one recent district court case wherein Wyatt's co-counsel Stites was initial litigation counsel for an accused infringer (Union Rich) who asserted the advice-of-counsel defense, a

---

[10] Wyatt argues that in the *Echostar* case, the district court denied discovery into opinions by litigation counsel. Wyatt is wrong. In *Tivo v. Echostar,* Civ. No. 2:04-CV-1, 2005 U.S. Dist. LEXIS 42481, at **16-19 (E.D. Tex. Sept. 26, 2005) the district court discussed the extent of waiver with respect to post-filing communications and stated "Where documents or communications may contain both information related to the advice of counsel defense as well as information related solely to trial strategy, in camera review may be necessary." As noted in *Computer Associates*, "*EchoStar* did not involve trial counsel. However, the *EchoStar* Court, in describing the scope of the waiver of the attorney-client privilege, cited favorably to *Akeva,* wherein the Court held that 'all opinions received by the client relating to infringement must be revealed, even if they come from defendants' trial attorney.' 243 F. Supp. 2d at 423." *Computer Associates International, Inc. v. Simple.com, Inc.,* 2006 U.S. Dist. LEXIS 77077 at *13 (E.D.N.Y., October 23, 2006), attached as Exhibit I.

[11] While another court has held post-*Echostar* that waiver does not extend to trial counsel, *see Ampex Corp. v. Eastman Kodak Co.*, Civ. No. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702 (D. Del. July 17, 2006), the majority of the cases have held that the waiver does so extend to trial counsel under *Echostar*. *See Convolve* (waiver applied to litigation counsel McDermott (Wyatt's co-counsel here); *Computer Associates*, and *Intex Rec. Corp. v. Team Worldwide Corp.,* 439 F. Supp. 2d 46 (D.D.C. 2006), *supra*; and *Outside The Box Innovations, LLC, d/b/a Union Rich USA v. Travel Caddy, Inc. et al.,* 2006 U.S. Dist. LEXIS 74060 (N.D. Ga., October 5, 2006) (Exhibit K) (waiver applied "regardless of the counsel involved and regardless of the date," and including Wyatt's co-counsel here – Stites), *infra*.

subpoenaed Stites attorney (Ms. Mandy Decker) was ordered to produce: "All documents that reflect communications (including all electronic communications) between Ms. Decker and Union Rich that relate to the scope, validity, infringement, and/or enforceability of the patents, including any and all attorney notes, summaries, documents and drafts of documents related to the same subject matters and that embody or discuss a communication between Ms. Decker and Union Rich." *Outside The Box Innovations, LLC, d/b/a Union Rich USA v. Travel Caddy, Inc. et al.,* 2006 U.S. Dist. LEXIS 74060 (N.D. Ga., October 5, 2006). A copy of this case is attached as Exhibit K.

The *Union Rich* court also ordered "Any such document that includes Ms. Decker's opinions or mental impressions never communicated to Union Rich may be redacted to exclude those uncommunicated portions." *Id.* The district court also ordered "Ms. Decker may redact any information that she considers solely related to trial strategy." *Id.*

The district court also ordered "Furthermore, consistent with the *Echostar* holding, the overall scope of Union Rich's waiver in relying on the advice-of-counsel defense includes:

> Any document or opinion that embodies or discusses a communication to or from Union Rich concerning whether the patents are valid, enforceable, and infringed by Union Rich, ***regardless of the counsel involved***, and ***regardless of the date***. Any such document or opinion that falls within the scope of the waiver, but which includes opinions or mental impressions never communicated to Union Rich, may be redacted to exclude those uncommunicated portions. Union Rich may redact any information that it considers solely related to trial strategy." *Id* (emphasis added).

Lexmark requests a similar Order issue in the present case. *See* Lexmark's Proposed Order concurrently filed herewith.

In sum, consistent with this Court's determination regarding Static Control's waiver (by disclosing the Blakey Opinion), Pendl should not be allowed to produce only the privileged information which they deem helpful, and to withhold the rest. Equity compels a finding that

Pendl waived its attorney-privilege and work product protections without any temporal limitations or limitations as to counsel.

## III.    LEXMARK'S SUBPOENA SEEKS DISCOVERY FROM WYATT OF THE VERY SUBJECT MATTER THAT BOTH WYATT'S CLIENT STATIC CONTROL AND PENDL WAIVED

Lexmark's subpoena to Wyatt seeks discovery of Pendl's communications with Wyatt regarding the subject matter of the Becker Opinion .  Pendl's expressly waived opinion of counsel includes attorney Robert Becker's statement to Randy Pendl: "[REDACTED]

[REDACTED]

."  (Exhibit E, p. 1) (emphasis added).

Wyatt does not dispute that each of the requests in Lexmark's subpoena to Wyatt is directed to the same subject matter as the Becker Opinion.  In short, Lexmark's subpoena is directed to Pendl's decision to rely on the advice of counsel defense.  If the scope of the discovery that Lexmark seeks is broad, it's because the Becker Opinion broadly covers many issues relating to patent, contract and antitrust laws.

## IV.    THE SUBPOENA TO WYATT IS PROPER IN ALL OTHER RESPECTS

In addition to incorrectly arguing for a narrow scope of waiver, Wyatt also raises a number of other miscellaneous arguments, none of which have any merit.

### A.    Wyatt is Subject to Deposition Testimony Resulting from Static Control's and Pendl's Respective Decisions to Waive Privilege

Wyatt argues that Lexmark should not be allowed to depose trial counsel.  This argument has been rejected by at least one post-*Echostar* court.  *See Convolve*, *supra*, wherein Seagate was

ordered to "produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel [McDermott]," related to the subject matter of the Sekimura Opinions. 224 F.R.D. at 105.  As noted above, Pendl waived by disclosure of the Becker Opinion.  As further noted above, the subject matter of the waived Becker Opinion is directed at the validity and enforceability of Lexmark's patents under Lexmark's Prebate program.  Not allowing Lexmark to depose trial counsel for Static Control who communicated with Pendl, either directly or via Pendl's counsel, regarding the regarding the validity, enforceability and/or infringement of Lexmark patents would be contrary to the holdings by the Federal Circuit in *Echostar* and this Court's holding on Static Control's waiver in the present litigation.

The Declaration by Wyatt's attorney W. Craig Robertson III. states that Wyatt "has not provided any party to this litigation, including Static Control, with an opinion as to the validity or infringement of any patent."  Mr. Robertson's Declaration, however, is silent as to whether Wyatt ever communicated to Pendl via Pendl's counsel regarding the subject matter of the Becker Opinion (*i.e.*, the validity of Lexmark's Prebate Program, the enforceability of Lexmark's patents against Pendl, and the infringement of Lexmark's patents).

### B.    Lexmark's Subpoena is Directed to the Subject Matter of Static Control's and Pendl's Waivers

Contrary to Wyatt's argument, the subpoena is not overly broad/duplicative/burdensome. The *Echostar* case makes clear that Lexmark is entitled to all documents and testimony relating to the subject matter "discussed in Robert Becker's letter to Randy Pendl of August 26, 1999." *Echostar* recognizes that this "waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a

19

communication between attorney and client."  448 F.3d at 1304.  Such internal notes kept by Wyatt about communications with Pendl would be in the possession of Wyatt, and not in the possession of anyone else.

### C.     Wyatt Has Had More Than Adequate Time to Respond to the Subpoena

Contrary to Wyatt's argument, the subpoena provides sufficient response time by Wyatt. Nine days was more than enough time for Wyatt to gather the requested documents and prepare for a deposition, particularly when its client's customer, Pendl, delayed more than a year before deciding to waive its advice-of-counsel, and decided to only reveal its intention just one month prior to the November 15, 2006 close of discovery in this case.

Indeed, shortly after Pendl stated its intention to rely on the advice of counsel defense, counsel for Lexmark promptly requested that Pendl provide the discovery subject to waiver under *Echostar* and *Union Rich* (*i.e., Outside The Box Innovations, LLC, d/b/a Union Rich USA v. Travel Caddy, Inc. et al.,* 2006 U.S. Dist. LEXIS 74060 (N.D. Ga., October 5, 2006)).  *See* attached Exhibit J.

### D.     Wyatt is not Entitled to Attorneys Fees

In the event that the court grants Wyatt's Motion to Quash, which it should not do for the above reasons, the Court should not award attorney fees to Wyatt or to Static Control.  *Echostar*, this Court's holding of Static Control's waiver in the present litigation, and the subsequent district court cases following *Echostar*, clearly provide a basis for the discovery that Lexmark is seeking under its subpoena to Wyatt.

## V.     CONCLUSION

It is undisputed that Pendl has waived its advice of counsel in defense to the charge of its ongoing willful infringement.   Wyatt should be ordered to produce all documents and

communications from Pendl, either directly from Pendl or via Pendl's counsel, pertaining to the subject matter of the Becker Opinion (which includes the validity and enforceability of Lexmark's patents under Lexmark's Prebate program) because such communications are relevant to Pendl's state of mind, and thus the willfulness of Pendl's infringement. Pendl should not be allowed to use the advice they received as both a sword, by waiving privilege to allegedly favorable advice (the Becker Opinion), and a shield, by asserting privilege as to all other communications on the same subject matter. Because Pendl has asserted an advice-of-counsel defense regarding willful infringement of Lexmark's patents by waiving the Becker Opinion, Federal Circuit precedent makes clear that it has waived immunity for any document or opinion that embodies or discusses any communication to or from each of them concerning whether Lexmark's patents are valid, enforceable, or infringed. This Court should deny Wyatt's Motion to Quash and order Wyatt to immediately provide the discovery requested in Lexmark's subpoena.

Respectfully submitted,

Dated: November 17, 2006

By:  /s/ Michael L. Krashin
Joseph M. Potenza
Robert S. Katz
Frederic M. Meeker
Christopher B. Roth
BANNER & WITCOFF, LTD.
1001 G Street, N.W., Suite 1100
Washington, DC  20001
Telephone: (202) 824-3000
Facsimile: (202) 824-3001

Mark T. Banner
Christopher J. Renk
Timothy C. Meece

Binal J. Patel
Matthew P. Becker
Jason S. Shull
Robert H. Resis
Allen E. Hoover
Bradley Rademaker
Michael L. Krashin
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Andrew CopenHaver
Hada Haulsee
WOMBLE CARLYLE SANDRIDGE
AND RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3629
Facsimile: (336) 721-3660

Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507
Telephone: (859) 231-3000
Facsimile: (859) 253 1093

**Attorneys for
Defendant/Counterclaim Plaintiff,
Lexmark International, Inc.**

## CERTIFICATION

I hereby certify that a copy of the foregoing was filed electronically this 17th day of November 2006, and will be served electronically to designated counsel through the Court's electronic filing system. A copy of the foregoing is being served via U.S. mail only on the following counsel:

Jeffrey A. Haeberlin
Stites & Harbison, PLLC
400 W. Market Street
Suite 1800
Louisville, KY 40202

John M. Hughes
Bartlit Beck Herman
Palenchar & Scott, LLP
1899 Wynkoop Street
Suite 800
Denver, CO 80202

William E. Jackson
Stites & Harbison, PLLC
1119 N. Fairfax Street
Suite 900
Alexandria, VA 22314

Christopher D. Landgraff
Bartlit Beck Herman
Palenchar & Scott, LLP
54 W. Hubbard Street
Courthouse Place - Suite 300
Chicago, IL 60610

Alexandra MacKay
Stites & Harbison, PLLC
424 Church Street
Suite 1800
Nashville, TN 37219

Jason L. Peltz
Bartlit Beck Herman
Palenchar & Scott, LLP
54 W. Hubbard Street
Courthouse Place - Suite 300
Chicago, IL 60610

BY: /s/ Michael L. Krashin
ATTORNEYS FOR LEXMARK

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 04-456-KSF

STATIC CONTROL COMPONENTS, INC.                                    PLAINTIFF

v.                      **LEXMARK'S FIRST SET OF REQUESTS**
                 **FOR DOCUMENTS AND THINGS TO PENDL (1-94)**

LEXMARK INTERNATIONAL, INC.                                        DEFENDANT

v.

WAZANA BROTHERS INTERNATIONAL, INC.
d/b/a MICRO SOLUTIONS ENTERPRISES               COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.                           COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.                          COUNTERCLAIM DEFENDANT

*** *** *** *** *** *** *** *** ***

Defendant and Counterclaim Plaintiff Lexmark International, Inc. ("Lexmark") by counsel, hereby submits to Counterclaim Defendant Pendl Companies, Inc. ("Pendl") the following First Set of Requests for Production of Documents and Things, to be responded to in accordance with Federal Rules of Civil Procedure 26 and 34. Pendl shall produce for inspection and copying the documents and things responsive to these requests at the office of Banner & Witcoff, Ltd., 10 South Wacker Drive, Suite 3000, Chicago, Illinois 60606.

**Request No. 46:**  Please produce all documents and things relating to oral or written opinions, investigations or analyses regarding the validity, enforceability or infringement of the Lexmark Patents.

**Request No. 47:**  Please produce all documents and things that were made available to, referred to or used by persons in generating oral or written opinions, or performing any investigations or analyses, regarding the validity, enforceability or infringement of the Lexmark Patents.

**Request No. 48:**  Please produce all documents and things relating to Pendl's reliance, if any, on the advice or opinion of counsel as a defense to the charge of willful infringement.

**Request No. 49:**  Please produce all documents and things, including but not limited to patents, printed publications, toner cartridges and components, that Pendl contends may be relevant prior art with respect to the subject matter of the claims of the Lexmark Patents.

**Request No. 50:**  Please produce all documents and things that relate to, refute or support Pendl's contention that a document or thing produced in response to the preceding request is prior art, including but not limited to evidence of publication, public use or sale of the document or thing contended to be relevant prior art.

**Request No. 51:**  Please produce all documents and things that Pendl contends has an effect on the validity or enforceability of the claims of the Lexmark Patents.

**Request No. 93:** Please produce all documents and things referring or relating to contracts or agreements with SCC, Pendl, NER, IPW or other entities for the sale of microchips for use with Lexmark's Printers.

**Request No. 94:** Please produce all pleadings and deposition transcripts from all civil actions in which Pendl has been a party concerning laser printers, toner cartridges for laser printers, or microchips for use with toner cartridges.

Respectfully submitted,

Dated: August 25, 2005

By: _____

Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL, KEENON & PARK LLP
300 West Vine Street, Suite 2100
Lexington, KY 40507
Telephone: (859) 231-3000
Facsimile: (859) 253 1093

Joseph M. Potenza
BANNER & WITCOFF, LTD.
1001 G Street, N.W., 11th Floor
Washington, DC 20001
Telephone: (202) 508-9100
Facsimile: (202) 508-9299

Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Jason S. Shull
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 715-1000
Facsimile: (312) 715-1234

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 04-456-KSF

STATIC CONTROL COMPONENTS, INC.                                    PLAINTIFF

v.                    **RESPONSE TO LEXMARK'S FIRST SET OF REQUESTS**
                      **FOR DOCUMENTS AND THINGS TO PENDL (1-94)**

LEXMARK INTERNATIONAL, INC.                                        DEFENDANT

v.

WAZANA BROTHERS INTERNATIONAL, INC.            COUNTERCLAIM DEFENDANT
d/b/a MICRO SOLUTIONS ENTERPRISES

v.

PENDL COMPANIES, INC.                          COUNTERCLAIM DEFENDANT
v.

NER DATA PRODUCTS, INC.                        COUNTERCLAIM DEFENDANT

*** *** *** *** *** *** *** *** ***

Counterclaim Defendant Pendl Companies, Inc. ("Pendl") by counsel, hereby submits its

objections and responses to the first set of requests for production propounded by Defendant and

Counterclaimant Lexmark International, Inc. ("Lexmark").

## GENERAL OBJECTIONS

1.       Pendl provides these objections and responses according to the Federal Rules of

Civil Procedure. Pendl does not hereby waive any rights or objections or admit the authenticity,

relevance, materiality, or admissibility into evidence of the subject mater or facts in any

discovery request or Pendl response, including any documents which may be provided as part of

such response. Pendl specifically reserves: (a) the right to object to the uses of such responses,

or the subject matter thereof, on any ground in any further proceeding in this action; and (b) its

**RESPONSE:** OBJECTION. In addition to the incorporated General Objections and Objections to Definitions and Instructions, Pendl specifically objects to this request because it is overbroad and unduly burdensome, seeks information that is protected by attorney-client privilege or the work product doctrine, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, namely information about technology that is not at issue in this dispute between Lexmark and Pendl. Pendl further objects to the extent this request seeks information duplicative of Request Nos. 40, 42, 43, 44, 45, and 46, and Pendl incorporates its objections thereto as if stated here in full. Pendl further objects to the extent Lexmark has not identified which of the 23 patents that comprise "Lexmark Patents" as currently defined or which, if any, of the claims of those patents are claimed by Lexmark to be infringed by Pendl, thus making this request overly broad and burdensome. Pendl states that to the extent that there are relevant, non-privileged, responsive documents and things that have not already been produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

**REQUEST NO. 48:** Please produce all documents and things relating to Pendl's reliance, if any, on the advice or opinion of counsel as a defense to the charge of willful infringement.

**RESPONSE:** OBJECTION. In addition to the incorporated General Objections and Objections to Definitions and Instructions, Pendl specifically objects to this request because it is overbroad and unduly burdensome, seeks information that is protected by attorney-client privilege or the work product doctrine, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, namely information about technology that is not at issue in this dispute between Lexmark and Pendl. Pendl further objects to the extent Lexmark

has not identified which of the 23 patents that comprise "Lexmark Patents" as currently defined or which, if any, of the claims of those patents are claimed by Lexmark to be infringed by Pendl, thus making this request overly broad and burdensome. Pendl states that to the extent that there are relevant, non-privileged, responsive documents and things that have not already been produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

**REQUEST NO. 49:** Please produce all documents and things, including but not limited to patents, printed publications, toner cartridges and components, that Pendl contends may be relevant prior art with respect to the subject matter of the claims of the Lexmark Patents.

**RESPONSE:** OBJECTION. In addition to the incorporated General Objections and Objections to Definitions and Instructions, Pendl specifically objects to this request because it is overbroad and unduly burdensome, seeks information that is protected by attorney-client privilege or the work product doctrine, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, namely information about technology that is not at issue in this dispute between Lexmark and Pendl. Pendl further objects to the extent Lexmark has not identified which of the 23 patents that comprise "Lexmark Patents" as currently defined or which, if any, of the claims of those patents are claimed by Lexmark to be infringed by Pendl, thus making this request overly broad and burdensome. Pendl states that to the extent that there are relevant, non-privileged, responsive documents and things that have not already been produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

**REQUEST NO. 50:** Please produce all documents and things that relate to, refute or support Pendl's contention that a document or thing produced in response to the preceding

produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

**REQUEST NO. 94:** Please produce all pleadings and deposition transcripts from all civil actions in which Pendl has been a party concerning laser printers, toner cartridges for laser printers, or microchips for use with toner cartridges.

**RESPONSE:** OBJECTION. In addition to the incorporated General Objections and Objections to Definitions and Instructions, Pendl specifically objects to this request because it is overbroad and unduly burdensome, seeks information that may be protected by confidentiality, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence, namely information about technology that is not at issue in this dispute between Lexmark and Pendl. Pendl reiterates its concerns set forth in its Motion for More Definite Statement and asks Lexmark to state which specific patents and patent claims Lexmark alleges are infringed by Pendl. Pendl states that to the extent that there are relevant, non-privileged, responsive documents and things that have not already been produced to Lexmark, Pendl will permit inspection and copying of those documents subject to Pendl's objections.

Joel T. Beres
Jack A. Wheat
Jennifer L. Kovalcik
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
COUNSEL FOR PENDL COMPANIES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by United States First Class Mail, postage prepaid, on this 31st day of October, 2005 upon:

Charles F. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL, KEENON & PARK LLP
300 West Vine Street, Suite 2100
Lexington, KY 40507

W. Craig Robertson III
Mickey T. Webster
Wyatt, Tarrant & Combs, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507

Joseph M. Potenza
BANNER & WITCOFF, LTD.
1001 G Stret, N. W. 11th Floor
Washington, DC 20001

William L. London
Static Control Components, Inc.
3010 Lee Avenue, P.O. Box 152
Sanford, North Carolina 27331

Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Jason S. Shull
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606

Patrick W. Michael
Woodward Hobson &
Fulton, LLP
2500 National City Tower
Louisville, KY 40202

David A. Shirlen
Mark N. Poovey
John F. Morrow, Jr.
WOMBLE CARLYLE SANDRIDGE AND
RICE PLLC
One West Fourth Street
Winston-Salem, NC 27101

Seth D. Greenstein
William H. Barrett
Melise R. Blakeslee
John R. Fuisz
Stefan M. Meisner
Ann M. Brose
McDermott, Will & Emery
600 13th Street, N.W.
Washington, D.C. 20005-3096

Darren S. Enenstein
Steven Dotan
Moldo Davidson Fraioli
Seror & Sestanovich, LLP
1925 Century Park East
16th Floor
Los Angeles, CA 90067

Thomas C. O'Konski
Michael R. Reinemann
Cesari & McKenna, LLP
88 Black Falcon Avenue
Boston, Massachusetts 02210

One of Counsel for Pendl Companies, Inc.

# EXHIBIT C



BANNER & WITCOFF, LTD.
INTELLECTUAL PROPERTY LAW

TEN SOUTH WACKER DRIVE
SUITE 3000
CHICAGO, ILLINOIS 60606-7407

TEL: 312.463.5000
FAX: 312.463.5001
www.bannerwitcoff.com

MATTHEW P. BECKER
mbecker@bannerwitcoff.com

October 6, 2006

**VIA FASCIMILE: 502.587.6391**

Joel T. Beres
James R. ("Randy") Michels
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352

Re:  ***Lexmark International, Inc. v. Static Control Components, Inc.***
     <u>**Case No. 04-84-KSF (consolidated with No. 02-571)**</u>

Dear Joel:

    Lexmark's Request for Production No. 48 to Pendl requested: "all documents and things relating to Pendl's reliance, if any, on the advice of counsel as a defense to the charge of willful infringement." In its October 31, 2005, Responses to Lexmark's First Set of Requests for Production, Pendl objected to this Request No. 48 stating, *inter alia*, that this request sought documents that are protected from discovery by the attorney-client privilege and/or work product doctrine.

    With only approximately 40 days left in discovery, it is time for Pendl to decide whether or not it will assert the advice of counsel defense so that Lexmark may take whatever follow-up discovery is necessary related to this defense, if asserted. Accordingly, please state by Tuesday, October 10, 2006, whether Pendl is relying on the advice of counsel to defend against Lexmark's charge of willful infringement.

    As you know, should Pendl assert or rely on the advice of counsel defense that results in a waiver of attorney-client privilege and work-product protection. *See In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). Accordingly, if Pendl is asserting an advice of counsel defense, Pendl please produce all responsive documents withheld from Request No. 48 by Friday, October 13.

CHICAGO, IL
WASHINGTON, DC
BOSTON, MA
PORTLAND, OR

Joel T. Beres
James R. ("Randy") Michels
October 6, 2006
Page 2


Should Pendl fail to inform Lexmark by Tuesday regarding whether it is or is not asserting the advice of counsel defense, we will assume Pendl that refuses to inform Lexmark of its decision and we will need to schedule a conference with Magistrate Judge Todd.


Very truly yours,

Matthew P. Becker


MPB/cmf

# EXHIBIT D

**From:** Binal Patel
**Sent:** Friday, October 13, 2006 2:43 PM
**To:** jberes@stites.com; JKovalcik@stites.com
**Cc:** Matt Becker
**Subject:** Static Control v. Lexmark -- Advice of Counsel Defense

Joel,

Thank you for your response. In addition to the opinion of counsel itself, we expect that you will immediately produce all previously withheld documents that would be deemed waived under In re Echostar, 448 F.3d 1294 (Fed. Cir. 2006) as well as the attached recent Order in Outside Box Innovations v. Travel Caddy, Inc. (Oct. 6, 2006 N.D. Ga). Moreover, please let us know when we can depose the author(s) and recipient(s) of the opinion. Finally, please provide a revised privilege log and identify those documents that are now being produced that were once logged as being privileged.

Regards,
Binal

Binal J. Patel
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel: (312) 463-5000
Fax: (312) 463-5001
E-mail: bpatel@bannerwitcoff.com
www.bannerwitcoff.com

IMPORTANT/CONFIDENTIAL: This message is intended only for the use of the individual or entity to whom it is addressed. This message contains information from the law firm of Banner & Witcoff, LTD. which may be privileged, confidential, or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, retention, archiving, or copying of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply E-mail.

-----Original Message-----
From:   Beres, Joel [mailto:JBeres@stites.com]
Sent:   Thu Oct 12 21:41:23 2006
To:   Matt Becker
Subject:   Static Control v. Lexmark -- Advice of Counsel Defense

Matt,

Sorry for the delay in getting back with you; but I am on the road (again). We carefully considered your request regarding Pendl's assertion of the advice of counsel defense. Please be advised that Pendl will be relying at trial on advice of counsel as one of its defenses to Lexmark's claim of willful patent infringement. In addition to all other documents previously produced in this matter, we will also produce to you a copy of the opinion of counsel tomorrow as requested in your recent letter.

Joel T. Beres

Direct Dial:  502-681-0324

Direct Fax:  502-779-8335

Mobile:  502-500-2029

jberes@stites.com

Stites & Harbison

Suite 1800

400 West Market Street

Louisville, Kentucky  40202-3352

Main:  502-587-3400

Main Fax:  502-587-6391

NOTICE: This message is intended only for the addressee and may contain information that is privileged, confidential and/or attorney work product. If you are not the intended recipient, do not read, copy, retain or disseminate this message or any attachment. If you have received this message in error, please call the sender immediately at (502) 587-3400 and delete all copies of the message and any attachment. Neither the transmission of this message or any attachment, nor any error in transmission or misdelivery shall constitute waiver of any applicable legal privilege.

# EXHIBIT F

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1991 WL 105505 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Union Pacific Resources Co. v. Natural Gas Pipeline Co. of AmericaN.D.Ill.,1991.Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
UNION PACIFIC RESOURCES COMPANY, Plaintiff,
v.
NATURAL GAS PIPELINE COMPANY OF AMERICA, Defendant.
No. 90 C 5378.

June 10, 1991.

*MEMORANDUM ORDER*
EDWARD A. BOBRICK, United States Magistrate Judge.
**\*1** Before the court are two motions of defendant-counterplaintiff Natural Gas Pipeline Company of America ("Natural") to compel plaintiff-counterdefendant Union Pacific Resources Company ("UPR") to comply with certain discovery requests. Each motion is directed toward a different category of discovery request. UPR maintains the attorney-client privilege precludes discovery as to both categories of requests. Natural argues that for reasons involving both UPR's actions in this case and in another case six years ago, UPR has waived the privilege as to both categories of discovery requests. In assessing the parties' positions, we begin with an overview of the events leading up to the present litigation.

## I. *BACKGROUND*

The dispute presently before the court is ten years in the making, and merits a bit more discussion of its history than the parties have provided. *See, Colo. Interstate Gas v. Natural Gas Pipeline Co.,* 661 F.Supp. 1448 (D.Wyo.1987). It stems back to

certain contracts amongst Natural, UPR, and Colorado Interstate Gas ("CIG"), involving the sales and transportation of Natural Gas in the early 1980's. Natural is, and was during the period at issue, involved in the business of transporting natural gas. UPR is the corporate successor of the Champlin Petroleum Company ("Champlin"), which was involved in the production and sale of natural gas during the period at issue; UPR remains in that industry to this day. The third participant in this natural gas triangle, CIG, was Natural's competitor in the gas transportation business during the period at issue.

### A. *The Wyoming Natural Gas Contracts*

In 1982, Natural and CIG were parties to a contract obligating CIG to deliver, and requiring Natural to purchase, specified quantities of natural gas. The contract required CIG to maintain adequate reserves and transportation capacity to ensure delivery of the natural gas to which Natural was entitled. For its part, Natural was required to purchase a minimum daily volume of natural gas or pay the costs of volumes not taken. During this time, Champlin was one of CIG's suppliers, producing natural gas out of the Whitney Canyon and Overthrust regions of Wyoming.

At about the same time, a new natural gas pipeline, the Trailblazer System, was constructed to transport natural gas out of the Overthrust region. Natural had major financial and capacity interests in the Trailblazer System, which it owned with two other companies, and apparently operated its interest through a company called NGPL-Trailblazer. The Trailblazer System competed with CIG's pipeline for the transportation of natural gas from the Overthrust region, but as a new pipeline, it had to charge a somewhat higher transportation rate.

In July of 1983, Natural refused to accept natural gas from CIG.[FN1] Nevertheless, CIG was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1991 WL 105505 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

obligated under the Natural Gas Act to remain ready to deliver any volume of natural gas Natural requested. Thus, CIG could not use its pipeline capacity reserved for Natural to transport natural gas to other customers. As a further consequence, CIG was unable to purchase natural gas from its own suppliers, and it "shut-in" natural gas that Champlin owned in the Whitney Canyon region. Champlin responded by suing CIG for breach of contract. Champlin's lawsuit was settled after extensive negotiations in 1983, part of which resulted in CIG releasing its rights to purchase Champlin's Whitney Canyon natural gas. Thereafter, Champlin agreed to sell that natural gas to Natural, and it was shipped through the Trailblazer System.

### B. *The CIG Case*

*2 CIG then brought its action against Natural, alleging that Natural had attempted to monopolize the market for transportation of Wyoming natural gas, that it had breached the agreement it had with CIG, and that it had tortiously interfered with CIG's contract relationship with Champlin. Natural filed a counterclaim against CIG, alleging that it was CIG's parent corporation that had attempted to monopolize the market. Prior to trial, CIG won directed verdicts on portions of Natural's counterclaims and abandoned the conspiracy portion of its own monopoly claim. The jury then rejected the remainder of Natural's counterclaims and found for CIG on its breach, monopoly, and tortious interference claims in the total amount of nearly $725,000,000.00. Finding some of the damages duplicative, the court reduced the award to nearly $550,000,000.00 and later granted Natural a remittitur in the amount of $197,181,678.00. On appeal, the Tenth Circuit reversed the only anti-trust portion of the judgment against Natural, finding that CIG could not establish that, as a matter of law, there was a dangerous probability that the Trailblazer System would ever achieve a monopoly interest in the relevant market.

### C. *The Instant Case*

In the present case, UPR, Champlin's successor, brings two claims against Natural, essentially based on the foregoing circumstances. First, UPR alleges that Natural attempted to acquire a monopoly over the long-distance transportation of natural gas from the Overthrust area of Wyoming. (Amended Complaint, ¶ 38). Second, UPR claims that Natural tortiously interfered with UPR's contract with CIG. (Amended Complaint, ¶¶ 45-46). Currently pending before Judge Nordberg [FN2] is UPR's motion for partial summary on certain issues relating to the tortious interference portion of its claims. In that motion, UPR essentially argues that Natural should be precluded from relitigated issues relating to its tortious interference with UPR/CIG contract relationship as that question as decided against Natural in the CIG case. Obviously, the instant discovery dispute arises out of both of UPR's claims, but it is intimately related, at least in part, to UPR's motion for partial summary judgment.

### II. *THE INSTANT DISCOVERY DISPUTE*

Natural has filed two motions to compel discovery in this case, each relating to a separate category of discovery requests. As to both categories, UPR maintains the requested documents or information are protected by the attorney-client privilege. In one motion, Natural seeks documents which were authorized by or directed to attorneys of UPR relating to the negotiations UPR conducted with CIG and Natural in 1983. Natural argues that UPR waived any privilege that might apply to these documents by its release of documents regarding the subject matter pursuant to subpoena in 1985 as part of the CIG case. UPR counters by arguing that the documents produced in 1985 were not privileged in the first place and that it has not waived but consistently maintained the privilege as to the documents it now withholds.

*3 In its other motion, Natural seeks to compel refused discovery-which includes the production of documents, answers to interrogatories and answers to depositions-on the reason why UPR chose not to intervene in the CIG case. Natural argues that UPR can only avail itself of the collateral estoppel theory raised in its motion for partial summary judgment if

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                     Page 3

Not Reported in F.Supp., 1991 WL 105505 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

it can show that it could not have easily joined in the CIG case. According to Natural, UPR has indicated during discovery that it did not intervene in the CIG- case on the advice of counsel. Natural contends that by injecting the advice of counsel into the issue, UPR has waived the privilege as to the substance of such advice. UPR counters that it has not injected the issue of advice of counsel into these proceedings and that discovery into the substance of any such advice is unnecessary to determine whether it could have easily joined in the CIG case. In addition, UPR seeks to distinguish its refusal to answer questions on the grounds of attorney-client privilege from reliance on the defense of advice of counsel, which is the characterization which Natural attributes to UPR's refusals. We address each of the waiver issues Natural's motions raise in turn.

### A. *The 1985 Production Wavier*

The parties' dispute over the first category of discovery requests-documents relating to the early 1980's negotiations UPR conducted with CIG and Natural-centers around UPR's production of certain documents pursuant to subpoena in the CIG case in 1985. UPR apparently produced sixty-nine documents on January 30, 1985, pursuant to subpoena at that time. These documents were either authored by or directed to attorneys for UPR at that time. According to UPR, those documents were produced with the following proviso: "As you will note during the course of your review, we have produced many documents which were prepared by or for attorneys and [we] believe we have been very careful not to extend our claim beyond those documents which we feel are clearly privileged." (UPR's Memorandum in Opposition/1985 Document Production, at 1). Based on this proviso, UPR argues that the documents produced in 1985 were not privileged, and that UPR's production of those documents, therefore, does not waive the attorney-client privilege it now asserts as to the documents Natural seeks. UPR makes this argument despite the fact that it labeled those sixty-nine documents as privileged in the index it produced pursuant to court order on April 1, 1991. UPR indicates that its assertion of the attorney-client privilege with respect to those

sixty-nine documents was inadvertent due to the pressure it was under to produce the index. Essentially then, UPR's argument is that because it does not now, and did not in 1985, assert the attorney-client privilege as to the sixty-nine documents, its production of those documents in 1985 does not amount to a waiver of the attorney-client privilege as to any documents it presently withholds from discovery that cover the same subject matter. Although this is a clever tactic, we must reject UPR's argument and find that it has waived the attorney-client privilege as to all documents on the same subject matter as those produced in 1985.

*4 UPR's argument confuses the existence or availability of the attorney-client privilege with the assertion of that privilege. As a general matter, the attorney-client privilege exists to encourage clients to make the fullest disclosure to their attorneys, and accomplishes this end by protecting confidential communications between client and attorney. *Matter of Grand Jury Proceeding, Cherney,* 898 F.2d 565, 567 (7th Cir.1990). Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the confidential nature of the attorney-client relationship and thus waives the privilege. *Powers v. Chicago Transit Authority,* 890 F.2d 1355, 1359 (7th Cir.1989). The existence of the attorney-client privilege, then, stems from the nature of the attorney-client relationship and the communication within that relationship. It does not arise, as UPR would have, merely by a party's decision to apply it to particular communications. A party's invocation of the privilege as to some communications and not others does not have the talismanic affect of rendering those communications privileged or not. It is the party's choice whether to assert the privilege. In 1985, UPR clearly chose to assert the privilege as to some documents and waive it as to others. It cannot now argue that the documents it produced in 1985 were not privileged because it chose not to assert the privilege at that time.[FN3]

As a general rule, the voluntary disclosure of attorney-client communication constitutes a waiver of the privilege as to all other such communications on the same subject. *In Re Sealed Case,* 676 F.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

793, 809 (D.C.Cir.1982); *In Re Intern. Harvester's Disp. of Wis. Steel Lit.,* 666 F.Supp. 1148, 1153 (N.D.Ill.1987). Even though UPR made the 1985 production pursuant to subpoena, because UPR sought no claim of confidentiality for the documents produced, its production of those documents is considered voluntary. *Maryville Academy v. Loeb Rhoades & Co., Inc.,* 559 F.Supp. 7, 8 (N.D.Ill.1982). Further, given the relatedness of the instant case to the CIG case, this situation is not unlike a case where a party makes selective disclosure to gain an advantage in litigation, despite the fact that UPR's disclosure was not to an opposing litigant. *See Intern. Harvester,* 666 F.Supp. at 1153, 1157. The circumstances of UPR's 1985 disclosure dictate that it has waived the attorney-client privilege as to not only the documents it produced in 1985, but as to all others on the same subject matter, namely negotiations with CIG and Natural in the early 1980's. Accordingly, the motion of Natural to compel production of those documents is granted.FN4

### B. *The Collateral Estoppel Motion Waiver*

The parties' dispute over the second category of discovery requests stems from UPR's motion for partial summary judgment in this case, which it brings under an offensive collateral estoppel theory. Under that theory, of which the Supreme Court approved in *Parklane Hosiery Co., Inc. v. Shore,* a plaintiff may "estop a defendant from relitigating issues which the defendant previously litigated and lost in another proceeding." 439 U.S. 322, 329, 99 S.Ct. 645, 650 (1979). In this case, UPR seeks to prevent Natural from relitigating certain issues relating to Natural's tortious interference with the contract between UPR and CIG, on which Natural lost in the CIG case. In order to prevail on this motion, UPR must establish: (1) that Natural was a party, or in privity with a party, in the CIG case, (2) the issues in question were actually litigated and decided on the merits in the CIG case, (3) the resolution of those issues was necessary to the court's judgment, and (4) those issues are identical to the ones UPR raises in this case. *General Dynamics Corp. v. American Tel. & Tel. Co.,* 650 F.Supp. 1274, 1281 (N.D.Ill.1986); *citing*

*Falconer v. Meehan,* 884 F.2d 72 (7th Cir.1986). In addition to determining whether these familiar collateral estoppel requirements are present, the court will have to consider two additional questions: (1) whether the application of offensive collateral estoppel will be unfair to Natural, and (2) whether the application of offensive collateral estoppel will promote judicial economy. *Parkland Hosiery,* 439 U.S. at 329-331, 99 S.Ct. at 650-651. The Supreme Court granted trial courts broad discretion to apply offensive collateral estoppel, but indicated that it should not be applied when it would result in unfairness to the defendant or thwart judicial economy. *Id.* at 331, 99 S.Ct. at 651-682. In the instant case, it is the judicial economy factor that gives rise to the dispute over the second category of discovery requests.

**\*5** In *Parklane Hosiery,* the Supreme Court noted that, while *defensive* collateral estoppel often promotes judicial economy, *offensive* collateral estoppel may not. 439 U.S. at 329, 99 S.Ct. at 650-651. Specifically, the court observed that:

defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries." Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

*Id.* at 329-330, 99 S.Ct. at 650-651 (*citations omitted* ). Given these concerns, the Court found that, "in cases where a plaintiff could easily have joined in the earlier action .. a trial judge should not allow the use of offensive collateral estoppel." *Id.* at 331, 99 S.Ct. at 652. Accordingly, the court will

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1991 WL 105505 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

have to determine whether UPR could "easily have joined" in the CIG case in order to rule on its motion for partial summary judgment. It is this question which fuels the instant discovery dispute.

As is often the case, the parties here have apparently become far more embroiled in peripheral discovery battles than in the case itself. Natural insists that, when it asks why UPR sat out the CIG case, UPR answers that it did so on advice of counsel. As such Natural contends that, because UPR has injected the subject of advice of counsel into these proceedings, it has waived any privilege it might assert to shield the substance of that advice from discovery. UPR maintains that it has not injected advice of counsel into these proceedings and has never indicated that it intends to rely on the "advice of counsel" argument on the question of why it sat out the CIG case. Given that this is the third case to be filed based on the early 1980's Natural-UPR-CIG natural gas triangle, that it has been ten years in the making, and has already involved the production of thousands of documents in discovery, we will impose the following " compromise" on the parties, rather than conduct a trial on this issue and make an even bigger mountain out of the sizeable mountain which already exists.

When the holder of a privilege relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications, the holder is said to have waived that privilege. *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1098 (7th Cir.1987). To waive the privilege in this manner, the holder must inject a new factual or legal issue into the case. *Id.* Because UPR's motion for partial summary judgment is an embryonic stage at this point, it is difficult to determine whether UPR has waived the privilege. Clearly, by filing the motion, UPR has injected the issue of whether it could have easily joined in the CIG case into these proceedings. It is unclear, however, that UPR will rely on "advice of counsel" as its reason for sitting out that previous litigation; thus, this court is reluctant to find a waiver at this time. It may well be that UPR will be able to make its case without resort to use of reliance on the advice of counsel. *See Intern.*

*Harvester,* 666 F.Supp. at 1951. Consequently, we find that UPR has not waived the privilege as to this second category of discovery requests. In so doing, we accept UPR's rather strenuous protestations that it has no intention of using " advice of counsel" as its reason for sitting out the CIG case. In fact, as assurance to Natural, we find that UPR has waived this argument in the context of its motion for partial summary judgment and will have to resort to other explanations of its choice to not join in the CIG case. Given this proviso, then, Natural's motion to compel discovery based on the collateral estoppel waiver theory is denied.

### III. *CONCLUSION*

**\*6** For the foregoing reasons, the motion of defendant-counterplaintiff to compel discovery based on plaintiff-counterdefendant's 1985 document production is granted; plaintiff-counterdefendant to comply within 5 days. The motion of defendant-counterplaintiff to compel discovery based on the motion for partial summary judgment of plaintiff-counterdefendant is denied, subject to and conditioned upon plaintiff-counterdefendant's stated waiver of the use of "advice of counsel" as an explanation for its choice not to participate in the CIG case. We arrive at this decision with the understanding that, should plaintiff-counterdefendants position change as this matter develops, defendant-counterdefendant will be allowed discovery into "advice of counsel" with plaintiff-counterdefendant responsible for the cost of that discovery.

> FN1. According to UPR, Natural's refusal was fueled by a combination of factors. As the demand for natural gas slackened in the early 1980's, less product flowed through the Trailblazer System, due in part to competition from CIG's lower-priced pipeline. UPR attributes Natural's conduct to predatory motives designed to exclude CIG from the Wyoming natural gas transportation market. CIG employed this same characterization of Natural's actions in its 1984 lawsuit against Natural.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1991 WL 105505 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

(Appendix to Natural's Reply, Ex. B, at 3-4).

FN2. This matter was recently referred to this court for review and issuance of a Report and Recommendation.

FN3. We find it telling that UPR designated the documents produced in 1985 as privileged in its April 1, 1991 index, despite the fact that it maintains those documents are not now nor ever were privileged. UPR's argument that the designation in the April 1, 1991 index was inadvertent is tenuous for at least two reasons. First, any pressure UPR might have been under to produce the index was of its own manufacture. UPR balked at Natural's requests until a court order was necessary, and even then, UPR was tardy in its preparation. Second, even under such pressure, it is doubtful that UPR would be mistaken as to the nature of such a substantial number of documents, which were coincidentally produced without claims of privilege in the CIG case. The more believable explanation is that these documents were designated privileged because they are the type to which the privilege could be asserted-or waived, as it was in this case.

FN4. The documents Natural seeks are circled on the proposed order Natural has submitted with its motion to compel. We note that UPR has rather conclusorily argued that many of those documents are protected from discovery by work product. This argument, however, is an empty one as UPR has failed to provide any information regarding those documents to establish that the work product immunity applies, as it is UPR's burden to do. *In Re Air Crash Disaster at Sioux City, Iowa,* 153 F.R.D. 518, 531 (N.D.Ill.1990). The blanket assertion UPR offers is insufficient to meet its burden of establishing immunity. *H.L. Hayden Co. v. Siemens Medical Systems,* 108 F.R.D. 686, 688

(S.D.N.Y.1985).
N.D.Ill.,1991.
Union Pacific Resources Co. v. Natural Gas Pipeline Co. of America
Not Reported in F.Supp., 1991 WL 105505 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1:90CV05378 (Docket) (Sep. 14, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 5792 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

▷

Briefs and Other Related Documents
North River Ins. Co. v. Columbia Cas. Co.S.D.N.Y.,1995.Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
The NORTH RIVER INSURANCE COMPANY, Plaintiff,
v.
COLUMBIA CASUALTY COMPANY, Defendant.
No. 90 Civ. 2518 (MJL).

Jan. 5, 1995.

MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

*1 The North River Insurance Company ("North River") brings this action against Columbia Casualty Company ("Columbia Casualty") to recover defense costs allegedly due under a reinsurance contract. The plaintiff has moved for a protective order pursuant to Rule 26(c) of the Federal Rule of Civil Procedure on the ground that certain documents requested by the defendant are immune from disclosure under the attorney-client privilege and work product doctrine.

Background

The Underlying Action

North River's reinsurance claim in this action arises out of losses for asbestos-related defense costs which it incurred under an excess liability insurance policy (bearing number XS-3672) issued to Owens-Corning Fiberglass ("Owens-Corning") during 1974-75. North River initially denied that it owed any obligation to provide coverage to Owens-Corning for defense costs, but it agreed to submit the dispute for a binding resolution through an alternate dispute resolution proceeding ("ADR"). In July 1989, the arbitrator determined that North River was required to pay defense costs. The plaintiff commenced an appeal of the ADR decision, but subsequently abandoned that effort. North River thereafter filed suit against eight reinsurance companies alleging that each was responsible for reinsuring a share of the costs of defense. Columbia Casualty, the sole

defendant remaining in this action, contends that costs of defense were not covered under the excess policy between North River and Owens-Corning, and thus are not covered under its reinsurance agreement with North River. The defendant maintains that any obligation incurred by North River to pay such costs was due to its failure to preserve its rights under an arrangement known as the Wellington Agreement,[FN1] and may not be recovered from Columbia Casualty.

The Rule 26(c) Motion

On July 12, 1994, Columbia Casualty made the following request for production of documents to North River:
We need all documents between, among or with respect to Crum & Forster [North River's parent company] and its attorneys (including Simpson Thacher & Bartlett) regarding its dispute with Owens-Corning over North River's obligation to pay Owens-Corning's attorney's fees.

Affidavit of Andrew S. Amer dated Oct. 21, 1994, Exh. A (hereinafter "the ADR Documents"). In response, North River asserted that the ADR Documents are protected from disclosure under the attorney-client privilege and work product doctrine, and it has thus declined to produce them. Amer Aff. ¶ 12. Columbia Casualty claims that these privileges are inapplicable here because: (1) as North River's reinsurer, Columbia Casualty shares a "common interest" in the subject matter of the ADR Documents; (2) North River has breached its fiduciary duty to Columbia Casualty; (3) North River has placed its good faith conduct regarding the ADR "in issue"; and (4) the ADR Documents establish North River's fraudulent conduct in the ADR proceeding.

*2 Following a September 29, 1994 status conference, Columbia Casualty also requested that North River produce two specific memoranda: (1) an internal memorandum prepared by Crum & Forster's in-house counsel Bradford Rich, entitled "Legal Analysis Concerning Appeal of Owens-Corning ADR Decision" (the "Rich Memo"); and (2) a January 28, 1988, memorandum by George B. Luteran, a senior claims specialist for Crum & Forster, which summarized a meeting Mr. Luteran had with counsel regarding a settlement offer made

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 5792 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 2

by Owens-Corning ("the Luteran Memo"). Amer Aff. ¶ 13. Columbia Casualty asserts that North River waived the attorney-client privilege with respect to these documents by disclosing them to CIGNA Insurance Company ("CIGNA"), another reinsurer sued by North River for claims arising out of the Owens-Corning dispute. Finally, Columbia Casualty alleges that North River's privilege log is incomplete and argues that the plaintiff should therefore be precluded from asserting any privilege.

North River now seeks a protective order pursuant to Rule 26(c) to preclude discovery of the ADR Documents and the Luteran and Rich Memos.

*Discussion*

Because this is a diversity case, New York law governs privilege issues. *See* Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D.N.Y.1993); Fine v. Facet Aerospace Products Co., 133 F.R.D. 439, 443 (S.D.N.Y.1990). The attorney-client privilege has been codified in New York. CPLR § 4503(a). The burden of demonstrating that the privilege applies rests with the party invoking it. *See* Bowne, 150 F.R.D. at 470; Priest v. Hennessey, 51 N.Y.2d 62, 69, 431 N.Y.S.2d 511, 514 (1980). Here there is no dispute that the basic requirements of the privilege are met; the controversy concerns the applicability of the exceptions raised by Columbia Casualty.

*I. The ADR Documents*

*A. Common Interest Doctrine*

The first argument advanced by Columbia Casualty with respect to the ADR documents is that because Columbia Casualty shared a "common interest" with North River in the ADR proceedings, it is entitled to documents from that proceeding that would otherwise be privileged. The common interest doctrine subsumes a number of principles that are sometimes characterized as separate rules and at other times conflated into a single axiom. *Compare* Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 500, 502-03 (E.D.N.Y.1986) (distinguishing "common defense rule" from "community of interest rule") *with* United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir.1989) (joint defense privilege "more properly identified as the 'common interest rule' "). The nomenclature is less important than a determination of the outer boundaries of the doctrine.

At its core,

The "common interest" doctrine applies when multiple persons are represented by the same attorney. In that situation, communications made to the shared attorney to establish a defense strategy remain privileged as to the rest of the world. The clients may not, however, later assert the privilege against each other after their interests become adverse.

*3 North River Insurance Co. v. Philadelphia Reinsurance Corp., 797 F.Supp. 363, 366 (D.N.J.1992) ("North River I") (citations omitted). Some courts consider such dual representation situations to be the outer limit of the common interest doctrine. *See* International Insurance Co. v. Newmont Mining Corp., 800 F.Supp. 1195, 1196 (S.D.N.Y.1992) (common interest doctrine inapplicable because no joint representation); North River I, 797 F.Supp. at 367 ("the common interest doctrine is completely unleashed from its moorings in traditional privilege law when it is held broadly to apply in contexts other than when there is joint representation").

Nevertheless, the weight of authority is that the common interest doctrine does extend at least to situations "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." Schwimmer, 872 F.2d at 243. That is, the doctrine applies where parties are represented by separate counsel that engage in a common legal enterprise. Under such circumstances, it is not necessary for litigation to be in progress for the common interest doctrine to apply. *Id.* at 244. Although originally developed in the context of cooperation between codefendants in criminal cases, this extension of the doctrine is fully applicable to parties in civil cases as well. *See* In re Bairnco Corp. Securities Litigation, 148 F.R.D. 91, 102 (S.D.N.Y.1993); Weil Ceramics, 110 F.R.D. at 503.

More troublesome is the question of whether the doctrine can be stretched to apply to communications between entities that have parallel interests but are not actively pursuing a common legal strategy. In its most extreme form, this version of the common interest doctrine has been described as follows:
A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 5792 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 3

client concerning legal advice. The third parties receiving copies of the communication and claiming a community of interest may be distinct legal entities from the client receiving the legal advice and may be a non-party to any anticipated or pending litigation. The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. The fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.

*Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C.1975). Having articulated this definition, however, the *Duplan* court quickly acknowledged that "[i]t is not so clear ... that the attorney-client privilege can survive such an interchange." *Id.* Indeed, in applying the common interest doctrine to the patent case before it, the court appeared to require a very close nexus among the parties. On one hand, the court found that a community of interest existed between a party and another entity which, although a non-party, was contractually obligated to act as the party's legal patent advisor. *Id.* at 1175. On the other hand, the exclusive licensee under the patents, although it had a clear commercial interest in the litigation, was found to lack a sufficiently similar legal interest. *Id.* Thus, even the extreme form of the common interest doctrine articulated in *Duplan* included only "those situations involving either the legal duty to defend another entity or the common interest arising from a client transaction between two separate entities which are represented by the same attorney." *Weil Ceramics,* 110 F.R.D. at 503.

*4 Of particular relevance here are cases that apply the common interest doctrine in the context of relations between insurers and their insured. It is clear that when an insurer actually retains counsel to provide a defense for the insured, there is a common legal interest. As a consequence, communications between the insured and the attorney are privileged as to outside parties, but not as to the insurer. *See Pittston Co. v. Allianz Insurance Co.,* 143 F.R.D. 66, 69 (D.N.J.1992); *Emons Industries, Inc. v. Liberty Mutual Insurance Co.,* 747 F.Supp. 1079, 1082 (S.D.N.Y.1990).

However, when the insurer does not appoint counsel for the insured, the common interest theory breaks down. *See Bituminous Casualty Corp. v. Tonka Corp.,* 140 F.R.D. 381, 386-87 (D.Minn.1992). The insurer may have the same "desire" as the insured that the insured not be found liable for damages in an

underlying action, but this does not qualify as an identical legal interest. *See International Insurance,* 800 F.Supp. at 1196. Indeed, in some respects the insurer's legal interest may directly conflict with that of the insured, as on questions of coverage. *See NL Industries, Inc. v. Commercial Union Insurance Co.,* 144 F.R.D. 225, 231-32 (D.N.J.1992). One court has observed:

The insurer asserts that the parties shared an interest in lowering the amount of damage in the underlying action. Even assuming this to be true, the parties did not then and do not now share an interest in characterizing how that damage occurred, what type of damage has occurred, or how [the insured] responded to the damage.

*Remington Arms Co. v. Liberty Mutual Insurance Co.,* 142 F.R.D. 408, 418 (D.Del.1992).

The common thread of these cases is that the determination of whether the common interest doctrine applies cannot be made categorically. Just as some criminal co-defendants will have a common strategy while others have antagonistic defenses, so some insurers will mount a common defense with their insured in an underlying liability action while others will not. What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal.

This rationale applies with even greater force in the reinsurance context. While a direct insurer may have a duty to defend its insured, thus implying some level of cooperation in litigation, no such duty is imposed on a reinsurer. *Cf. North River I,* 797 F.Supp. at 367. And, as in the direct insurance context, the interests of the ceding insurer and the reinsurer may be antagonistic in some respects and compatible in others. Thus, a common interest cannot be assumed merely on the basis of the status of the parties.

Thus far, this analysis has drawn on federal caselaw. It is nevertheless consistent with the few cases in New York that address the common interest doctrine. In *People v. Osorio,* 75 N.Y.2d 80, 550 N.Y.S.2d 612 (1989), the Court of Appeals applied the doctrine to codefendants in a criminal case. "If the codefendants are mounting a common defense their statements are privileged but unless the exchange is for that purpose the presence of a codefendant or his counsel will destroy any expectation of confidentiality between a defendant and his attorney." *Id.* at 85, 550 N.Y.S.2d at 615 (citations omitted). Thus, New York courts

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 5792 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

take a functional rather than a categorical approach.

*5 New York courts have also applied the common interest doctrine in the insurance context to a limited extent:

[W]hen an attorney acts for two different parties having a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. This is especially the case where an insured and his insurer initially have a common interest in defending an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer.

_Goldberg v. American Home Assurance Co.,_ 80 A.D.2d 409, 413, 439 N.Y.S.2d 2, 5 (1st Dep't 1981). These courts utilize the common interest doctrine when the insurer selects the attorney for the insured. _See Liberty Mutual Insurance Co. v. Engels,_ 41 Misc.2d 49, 50-51, 244 N.Y.S.2d 983, 985-86 (Sup.Ct.Kings Co.1963), _aff'd,_ 21 A.D.2d 808, 250 N.Y.S.2d 851 (2d Dep't 1964). However, it does not appear that any court in New York has found the doctrine applicable merely because the parties in question are an insured and its insurer.[FN2]

When these principles are applied to the instant case, it is apparent that North River and Columbia Casualty did not have a common interest in the ADR proceedings. Clearly they were not represented by the same counsel, and Columbia Casualty did not contribute to North River's legal expenses nor exercise any control over its conduct of the proceedings. Nor is there any evidence that the two coordinated litigation strategy in any way. While their commercial interests coincided to some extent, their legal interests sometimes diverged, as demonstrated by the instant litigation. In short, Columbia Casualty's only argument for finding a common interest is that the two parties stand in the relation of reinsurer to ceding insurer, and that is insufficient.

B. _The Fiduciary Relationship_

Columbia Casualty also argues that the ADR Documents are discoverable because "it is well settled that the existence of the fiduciary relationship creates an exception to the attorney-client privilege." Columbia Casualty Memorandum of Law, at 20. Such an exception, however, is inapplicable to this case. While a reinsured owes a duty of good faith to

its reinsurer, the Second Circuit has held that:

[any] characterization of the relationship between a reinsured and reinsurer as being inevitably fiduciary in nature is one we are unable to adopt. To the contrary, because these contracts are usually negotiated at arms length by experienced insurance companies, there is no reason to label the relationship as "fiduciary."

_Christiania General Insurance Corp. of New York v. Great American Insurance Co.,_ 979 F.2d 268, 280-81 (2d Cir.1992) (citations omitted); _see also North River I,_ 797 F.Supp. at 370 (duty which governs relationship between reinsured and reinsurer does not demonstrate the "presence of sufficient influence and control over the affairs of another necessary to give rise to fiduciary responsibilities"). North River therefore did not owe any fiduciary duty to Columbia Casualty to disclose the contents of the ADR Documents.

C. _The "In Issue" Doctrine_

*6 Columbia Casualty further argues that "[b]y suing and putting in issue its utmost good faith in connection with all its actions respecting the ADR, North River has waived any associated attorney client privilege." Columbia Casualty Memorandum of Law, at 21. The "in issue" doctrine is operative "when the party has asserted a claim or defense that he intends to prove by use of the privileged materials." _Pittston Co.,_ 143 F.R.D. at 71 (citing _Remington Arms,_ 142 F.R.D. at 415); _see also North River I,_ 797 F.Supp. at 370 (attorney-client privilege waived only when party places in issue _contents_ of attorney-client communication). In this case, North River has not based any of its claims or defenses on the ADR Documents. Moreover, Columbia Casualty has not identified any other manner through which North River has placed the advice of its counsel or other contents of any privileged communication in issue in this action. Instead, Columbia Casualty seeks the ADR Documents as part of its own defense to prove that North River did not act in good faith during the ADR proceeding and subsequent appeal process. The fact that North River merely placed the broad question of coverage in issue is not sufficient to constitute a waiver of its attorney-client privilege with respect to the ADR Documents.

D. _The Crime/Fraud Exception_

Columbia Casualty alleges that North River acted in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 5792 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 5

a grossly negligent manner by failing to preserve its rights under the Wellington Agreement, thereby incurring the excess defense costs which it now seeks from Columbia Casualty. The defendant further alleges that the Luteran and Rich Memos demonstrate North River's attempt to fraudulently conceal such negligence in order to "dishonestly shift the defense costs liability resulting from [such] grossly negligent conduct to its reinsurers." Columbia Casualty Memorandum of Law, at 26 (emphasis omitted). Therefore, the defendant claims that the ADR Documents, as well as the Luteran and Rich Memos themselves, are not protected by the attorney-client privilege.

Columbia Casualty's reliance on the crime/fraud exception is misplaced. The Second Circuit has held that:
the crime/fraud exception to the attorney-client privilege cannot be successfully invoked merely upon a showing that the client communicated with counsel while the client was engaged in [fraudulent] activity. The exception applies only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or conceal [such] activity.

In re Grand Jury Subpoenas Duces Tucem, 798 F.2d 32, 34 (2d Cir.1986). Probable cause exists when there is some evidence that "(1) the communications were elicited as part of an ongoing scheme to commit a fraud, and (2) the client was aware at the time of the communication that he was participating in a fraud." United States v. Rivera, 837 F.Supp. 565, 568-69 (S.D.N.Y.1993).

*7 Excerpts from the Luteran Memo and the Rich Memo were published in North River Insurance Co. v. Philadelphia Reinsurance Corp., 831 F.Supp. 1132 (D.N.J.1992) ("North River II"), a decision involving the same universe of facts as in the instant case. The Luteran Memo, written after North River rejected a compromise settlement made by Owens-Corning, states that "if [Crum & Forster] were to compromise on the allocated [defense] costs issue, we would have an extremely difficult time in recovering any money spent for such costs from our reinsurers." Id. at 1139. The Rich Memo, written during the time North River contemplated an appeal of the adverse ADR ruling, states that "[t]he issues presented are difficult, ... [and] on balance we conclude that the risks of appeal outweigh the potential benefit." Id.

Although a review of these attorney-client communications might lead to the conclusion that

North River potentially violated its duty of utmost good faith to its reinsurers, including Columbia Casualty, the communications do not demonstrate that North River and its attorneys were engaged in an ongoing scheme to fraudulently conceal North River's allegedly negligent conduct in the ADR proceeding. From the motion papers submitted to this Court, it is clear that Columbia Casualty received information from North River regarding the ADR proceeding and subsequent appeal, and more importantly, used this information as the basis for denying reinsurance coverage to North River. See, e.g., Amer Reply Aff., Exh. F & H. The excerpts of the Luteran Memo and the Rich Memo published in North River II constitute nothing more than the balancing of potential rights and liabilities that typically characterize attorney-client communications. Thus, Columbia Casualty has proffered no evidence establishing that probable cause exists to implicate North River and its attorneys in a crime or fraud.

II. The Luteran and Rich Memos

North River also seeks a protective order barring disclosure of the Luteran and Rich memos. Columbia Casualty argues that North River waived the attorney-client privilege with respect to these documents when it disclosed them to CIGNA. CIGNA in turn utilized the memos in litigation against North River where they were quoted in a published opinion. See North River II, 831 F.Supp. at 1139-40, 1147. North River, however, maintains that it shared a common interest with CIGNA in "assisting [CIGNA] in evaluating North River's reinsurance bills." North River Memorandum of Law, at 17. If that is the case, the documents could remain privileged notwithstanding their disclosure to CIGNA.

North River now seeks to rely on the common interest doctrine, while it resisted application of the same principles in the context of the ADR documents. It attempts to reconcile these positions by resorting to martial imagery. According to North River, common interest principles should be viewed differently when they are used as a "shield" to resist discovery than when they are wielded as a "sword" to compel disclosure. There is no authority for this distinction.

*8 When a party is using the common interest doctrine as a "sword" and seeking discovery of an attorney-client communication, it presumably was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 5792 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 6

not privy to that communication in the first place. That may be some indication that the party demanding disclosure did not in fact engage in any common legal enterprise with the party with whom it claims a common interest. But although this factor may be influential in a common interest analysis, it is not determinative. Whether two parties share a common interest is a question subject to the analysis discussed above, independent of whether the party asserting such an interest is seeking to discover or to protect from discovery an attorney-client communication.

Applying such an analysis, it is clear that North River and CIGNA had no common legal interest. On the contrary, their interests in this instance were antagonistic. In the process of seeking payment from CIGNA under their reinsurance contract, North River provided the Luteran and Rich Memos, apparently hoping that CIGNA would be persuaded to pay. It was not, and litigation ensued. At no point did North River and CIGNA engage in a common legal enterprise, and the common interest doctrine therefore does not apply.

Accordingly, the disclosure of the Luteran and Rich Memos to CIGNA constituted a waiver of the attorney-client privilege by North River. Having waived the privilege as to one third-party, North River cannot now resurrect it as a barrier to discovery by Columbia Casualty.[FN3]

*Conclusion*

For the reasons set forth above, North River's motion for a protective order is granted with respect to the ADR documents and denied with respect to the Luteran and Rich Memos.[FN4]

SO ORDERED.

FN1. Asbestos manufacturers and their insurers entered into the Wellington Agreement in 1985 in an attempt to simplify and reduce the costs of resolving insurance coverage claims arising from the sale of asbestos.

FN2. The only case in any jurisdiction to go so far in expanding the common interest doctrine is *Waste Management, Inc. v. International Surplus Lines Insurance Co.,* 144 Ill.2d 178, 579 N.E.2d 322 (1991).

There the Illinois Supreme court extended the common interest doctrine in the insurer/insured context to include situations where the insured's counsel, "though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer." *Id.* at 183, 579 N.E.2d at 328-29 (citations omitted). Under this analysis, an insurer may claim that because it has the same "desire" as the insured to have a successful defense of the underlying action, it thus shares a "common interest" with the insured that voids the attorney-client privilege. The *Waste Management* decision has been sharply criticized by other courts. *See, e.g., North River I,* 797 F.Supp. at 367; *Remington Arms,* 142 F.R.D. at 417-18; *Bituminous Casualty Corp.,* 140 F.R.D. at 386-87. There is no basis for believing that New York courts would adopt its reasoning.

FN3. The fact that the Luteran and Rich Memos were quoted in *North River II* has no bearing on this determination. It was their prior disclosure to CIGNA, not their publication in a judicial opinion, that waived the privilege.

FN4. Columbia Casualty's contention that the motion should be denied because of inadequacy of North River's privilege log is without merit. That log is as detailed as the log provided by Columbia Casualty itself and it proved fully sufficient for purposes of deciding the instant motion.
Likewise, Columbia Casualty's request that the documents be reviewed *in camera* is denied. The instant motion raises legal issues that can be determined without reference to the specific documents.

S.D.N.Y.,1995.
North River Ins. Co. v. Columbia Cas. Co.
Not Reported in F.Supp., 1995 WL 5792 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:90cv02518 (Docket) (Apr. 12, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

LEXSEE

**AUTOBYTEL, INC., Plaintiff vs. DEALIX CORPORATION, Defendant.**

**CASE NO. 2:04-CV-338**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION**

*2006 U.S. Dist. LEXIS 72032*

**October 3, 2006, Decided**
**October 3, 2006, Filed**

**PRIOR HISTORY:** *Autobytel, Inc. v. Dealix Corp., 2006 U.S. Dist. LEXIS 3381 (E.D. Tex., Jan. 18, 2006)*

**COUNSEL:** [*1] Michael Philip Patterson, Mediator, Pro se, Tyler, TX.

For Autobytel Inc, Plaintiff: Samuel Franklin Baxter, Attorney at Law, Marshall, TX; Amy Simpso, Christopher S Serra, Douglas E Olson, Elizabeth L Brann, Erin E Sears, John E Peterson, N Thane Bauz, Trevor Coddington, Paul Hastings Janofsky & Walker-San Diego, San Diego, CA; Howard N Wisnia, Baker & McKenzie - - San Diego, San Diego, CA; Kristi Jean Thomas, McKool Smith, Dallas, TX; Martin C. Robson, III, McKool Smith, P.C., Dallas, TX; Robert Marc Manle, McKool Smith, Dallas, TX; Robert M Masters, Paul Hastings Janofsky & Walker-Washington, Washington, DC.

For Dealix Corporation, Defendant: Neal S Manne, Susman Godfrey LLP, Houston, TX; Andrew Wesley Spangler, Brown McCarroll - Longview, Longview, TX; Brooke Ashley-May Taylor, Susman Godfrey, LLP - Seattle, Seattle, WA; Elizabeth L DeRieux, Brown McCarroll, Longview, TX; Max Lalon Tribble, Jr, Susman Godfrey LLP, Houston, TX; Michael Philip Fritz, Susman Godfrey LLP - Dallas, Dallas, TX; Rita Mankovich Irani, Susman Godfrey - Houston, Houston, TX; Sidney Calvin Capshaw, III, Brown McCarroll - Longview, Longview, TX.

For Dealix Corporation, Counter Claimant: Neal S [*2] Manne, Dealix Corporation, Dealix Corporation, Susman Godfrey LLP, Houston, TX.

**JUDGES:** LEONARD DAVIS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** LEONARD DAVIS

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Before the Court is Autobytel's Motion to Compel (Docket No. 183). After considering the parties' written submissions and oral arguments, the motion is **GRANTED in part and DENIED in part.**

### BACKGROUND

Autobytel brought suit for infringement of *U.S. Patent No. 6,282,517* ("the *'517 patent*") on September 24, 2004. Over a year after filing suit, Autobytel added a charge of willful infringement. On June 6, 2006, Dealix produced a non-infringement opinion (the "non-infringement opinion") concerning the *'517 patent* prepared by Mr. Gard of Carr & Farrell ("opinion counsel"). Autobytel also received all documents related to the non-infringement opinion that were in opinion counsel's possession, but Dealix's trial counsel first redacted all work product that had not been communicated to Dealix. Dealix did not produce a privilege log in accordance with Local Patent Rule 3-8(b).

On June 29, 2006, Dealix refused to produce any other communications or work product related to the non-infringement opinion [*3] on the basis that the scope of the privilege waiver did not extend beyond opinion counsel. Autobytel brought a motion to compel production of documents the next day.

Autobytel asserts that Dealix had waived privilege for and seeks the following documents: (1) communications and documents relating to the non-infringement opinion in Dealix's possession, including communications and work product from opinion counsel; (2) communications between Dealix and Cobalt, the entity that acquired Dealix; and (3) opinions or correspondence concerning the non-infringement opinion or concerning

the '517 patent from Wilson Sonsini, Dealix's counsel during its merger with Cobalt ("merger counsel"). Autobytel stated at oral argument that it did not seek production of Dealix's trial counsels' work product or trial counsels' e-mail communications with Dealix. Autobytel also seeks a privilege log pursuant to Local Patent Rule 3-8 of withheld documents related to Dealix's defense to willful infringement.

## APPLICABLE LAW

Federal Circuit law governs discovery disputes over "materials relat[ing] to an issue of substantive patent law." *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001). [*4] The extent to which a party waives its attorney-client privilege when it asserts the advice-of-counsel defense against a charge of willful patent infringement necessarily involves issues of substantive patent law. *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006).

Since willfulness is a question of the accused infringer's state of mind, inquiries into willfulness focus on whether the accused infringer's beliefs and actions were reasonable. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992). The reasonableness of an infringer's reliance on advice of counsel is an important factor in determining whether infringement was willful. *Simmons, Inc. v. Bombardier, Inc.*, 221 F.R.D. 4, 9 (D.D.C. 2004).

Whether the infringer believed the advice was competent is relevant to the infringer's reasonable reliance; this inquiry focuses on whether the advice was "'thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable.'" *EchoStar*, 448 F.3d at 1303 (quoting *Ortho Pharm.*, 959 F.2d at 944). [*5] Also relevant is whether the infringer received any other opinions of counsel regarding the same subject matter of the relied-upon advice. *See id. at 1299*. When a defendant asserts an advice-of-counsel defense, the defendant waives privilege as to both attorney-client communications and communicated work product n1 regarding the subject matter of the opinion because such documents are evidence of a relevant and non-privileged fact, namely what the defendant knew about infringement. *See id. at 1302-03*.

n1 The Court uses this term to include both work product that is actually communicated and work product that reflects a communication.

In *EchoStar*, the defendant had two opinions of counsel regarding infringement, an earlier opinion obtained from in-house counsel and a later opinion from outside opinion counsel. The defendant chose to rely on the in-house opinion, yet asserted that privilege was not waived for the outside opinion. The lower court in *EchoStar* held that the same defendant waived privilege [*6] as to all attorney-client communications and work product regarding infringement-the subject matter of the underlying opinion letter-once the underlying opinion letter was asserted in defense of a willful infringement charge. n2 *TiVo Inc. v. EchoStar Comm'ncs Corp.*, 2005 U.S. Dist. LEXIS 42481, No. 2:04-CV-1-DF, at *13 (E.D. Tex. 2005) (Folsom, J.). The defendant sought mandamus challenging the lower court's decision that the waiver included all work product regardless of whether it was communicated to the defendant. *EchoStar*, 448 F.3d at 1297.

n2 TiVo was not seeking attorney-client communications or work product from Echostar's trial counsel.

The Federal Circuit treated the attorney-client-communication waiver and attorney-work-product waiver separately. *Id. at 1300*. The EchoStar court defined the advice-of-counsel privilege waiver broadly, holding that the waiver extends to "'all other communications relating to the same subject matter.'" *Id. at 1299* (quoting *Fort James v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). [*7] The Federal Circuit held that the waiver for attorney-client communications extends beyond communications with the counsel which provided the advice; once a defendant relies upon advice of counsel it "waive[s] the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than [counsel which provided the advice upon advice]." *Id. at 1301*. The EchoStar court held that the defendant's reliance on an in-house opinion of non-infringement waived privilege as to its outside-counsel opinion because the outside opinion was "within the same subject matter" of the in-house advice. *See id. at 1299*.

The Federal Circuit held that work-product waiver is not as broad as the attorney-client privilege waiver. *Id. at 1302*. The EchoStar court resolved a split of authority in the lower courts by holding that work product that is not communicated to the client is not discoverable. *Id. at 1303*. The Federal Circuit reasoned that uncommunicated work product does not assist in determining whether the client knew it was infringing. *Id*. Reliance on advice of counsel waives the work-product [*8] privilege as to two categories: "documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion let-

ter," and "documents that discuss a communication be-tween attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." *Id. at 1302* (stating that these categories are not necessarily exhaustive). The *EchoStar* court held that

> when an alleged infringer asserts its ad-vice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused. This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversa-tion, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and cli-ent.

*Id. at 1304.* The Federal Circuit recognized that redac-tion might be required to protect information [*9] out-side the scope of the waiver. *Id.* (stating that parties should take special care to redact uncommunicated work product from documents which reference an attorney-client communication within the scope of the waiver).

## ANALYSIS

### To whom the waiver applies

Dealix opposes Autobytel's motion to compel on the basis that *EchoStar* does not require waiver beyond any counsel providing formal patent-infringement opinions and on the basis that the "same subject matter" of the waiver is limited to the subject matter of the underlying advice of counsel.

First, Dealix argues that the scope of the waiver ex-tends only to counsel that provide formal patent-infringement opinions. Dealix argues that *EchoStar* rightly prevents a defendant from asserting one non-infringement opinion while simultaneously asserting privilege for another opinion regarding infringement and *EchoStar* should be limited to that context. Autobytel argues that *EchoStar* requires a broad subject-matter waiver that extends beyond opinion-counsel documents.

Autobytel seeks discovery of communications from Dealix's in-house counsel, merger 5 counsel, and opinion counsel regarding the same subject [*10] matter of the

asserted non-infringement opinion. The advice-of-counsel defense makes the reasonableness of the in-fringer's reliance a question of fact. What opinion coun-sel communicated to the infringer is relevant to that reli-ance, and Dealix has acknowledged that Autobytel is entitled to unredacted copies of documents communi-cated to Dealix by Dealix's opinion counsel. However, Dealix may have also received advice from other counsel regarding potential infringement of the *'517 patent* or regarding the competency of the opinion letter. Such communications bear directly on whether Dealix's reli-ance on the non-infringement opinion was reasonable. The subject-matter approach is in line with the language of *EchoStar*, which explicitly held that assertion of one non-infringement opinion waived privilege for "any at-torney-client communications relating to the same sub-ject matter, including communications with counsel other than [opinion] counsel." *EchoStar, 448 F.3d at 1299.*

Because Autobytel does not seek trial-counsel documents, the Court does not reach the issue of whether *EchoStar* requires waiver of trial-counsel communica-tions or communicated work product. [*11] However, Dealix waived privilege for non-trial-counsel communi-cations and communicated work product relating to the same subject matter of its opinion letter.

### Scope of "same subject matter" waiver

Next, Dealix asserts that the subject-matter scope of the waiver in this case is limited to non-infringement because the "same subject matter" of the waiver is lim-ited to the underlying opinion subject matter. Autobytel argues that Dealix's reliance on a non-infringement opin-ion waives communications regarding infringement, en-forceability, and validity. At oral argument, Autobytel further argued that the waiver extends to any attorney-client communications or communicated work product that either "concern" the *'517 patent* or are "contempora-neous" with the non-infringement opinion. There is no basis for interpreting *EchoStar* to require waiving privi-lege for any document that merely references a patent or is generated at approximately the same time as an in-fringement opinion. *See EchoStar, 448 F.3d at 1303.* However, whether the waiver extends to all willful-infringement defenses, or is limited to the subject matter of the underlying opinion, is a closer question. [*12]

*EchoStar* summarized its separate holdings regard-ing attorney-client communications and work-product waiver in broad terms; assertion of an advice-of-counsel defense waives "immunity for any document or opinion that embodies or discusses whether that patent was valid, enforceable, and infringed." *Id. at 1304.* However, the *EchoStar* court did not squarely address whether the waiver extends beyond the subject matter of the underly-ing opinion to include all defenses to willful infringe-

ment. Courts confronting this issue after *EchoStar* have been split. *See Genentech, Inc. v. Insmed Incorp., 2006 U.S. Dist. LEXIS 55992, 2006 WL 2336484, \*8 (N.D. Cal. Aug. 10, 2006)* (limiting waiver to the subject matter of the relied-upon opinion); *Informatica Corp. v. Bus. Objects Data Integration, Inc., 2006 U.S. Dist. LEXIS 58976, 2006 WL 2329460, \*1 (N.D. Cal. Aug. 9, 2006)* (holding the advice-of-counsel privilege waiver extends to documents related to the opinion which the defendant relies upon); *Affinion Net Patents, Inc. v. Maritz, Inc., 440 F. Supp. 2d 354, 356 (D. Del. 2006)* (holding that the advice-of-counsel privilege waiver applied to any defense to infringement); *Beck Sys., Inc. v. Managesoft Corp., 2006 U.S. Dist. LEXIS 53963, 2006 WL 2037356, [\*13] \*1 (N.D. Ill. Jul 14, 2006)* (treating waiver as applicable to "attorney-client communications and work-product material on the same subject matter as the legal opinions on which it relies"); *Intex Recreation Corp. v. Team Worldwide Corp., 439 F. Supp. 2d 46, 49 (D.D.C. 2006)* (holding that the subject matter waiver scope includes infringement, validity, and enforceability); *Informatica Corp. v. Bus. Objects Data Integration, Inc., 2006 U.S. Dist. LEXIS 53429, 2006 WL 2038461, \*1 (N.D. Cal. Jul. 14, 2006)* (holding the advice-of-counsel privilege waiver is limited to the "subject of the opinion or advice" that defendant relies upon); *Ind. Mills & Mfg., Inc. v. Dorel Indus., Inc., 2006 U.S. Dist. LEXIS 34023, 2006 WL 1749413, \*7 (S.D. Ind. May 26, 2006)* (declining to expand the waiver beyond the subject matter of the underlying opinion because *EchoStar* did not "squarely address[] that issue"), *withdrawn on other grounds by Ind. Mills & Mfg., Inc. v. Dorel Indus., Inc., 2006 U.S. Dist. LEXIS 47852, 2006 WL 1993420 (S.D. Ind. Jul. 14, 2006).*

The Court is not persuaded that *EchoStar* mandates waiver as to unenforceability, validity, and non-infringement when an advice-of-counsel defense of non-infringement [\*14] only is asserted. First, a broad application of the *EchoStar* decision is inconsistent with the lower court's holding in that case. The underlying opinion of counsel in *EchoStar* was limited to non-infringement, and the lower court in *EchoStar* had limited the waiver to the subject matter of the underlying opinion. Notably, the Federal Circuit overturned and narrowed the lower court's holding regarding work-product waiver, but it did not disapprove or explicitly broaden the lower court's holding that scope of the waiver is defined by the subject matter of the underlying opinion. n3 Furthermore, the *EchoStar* court cited *Akeva LLC v. Mizuno Corp., 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003)*, in concluding that asserting advice-of-counsel waives privilege for any other attorney-client communications relating to the same subject matter. *Id.* The *Akeva* court also defined the "same subject matter"

as the subject matter of the underlying opinion. *Akeva, 243 F. Supp. 2d at 422.*

n3 The Federal Circuit cited the lower court's language that introducing an opinion of non-infringement opened to inspection "all related advice. . . [regarding] potential *infringement*" without criticism. *Id. at 1299* (emphasis added). However, on remand, the lower court ordered the defendant produce "all documents created by [opinion counsel] that relate to any infringement or validity analysis of the '389 patent where said documents (1) were communicated to EchoStar or (2) reflect a communication to EchoStar . . . ." *2005 U.S. Dist. LEXIS 42481, 2:04-CV-1, Docket No. 729.*

[\*15]

The purpose of the advice-of-counsel privilege waiver is to allow an inquiry into the infringer's state of mind regarding the infringer's reasonable reliance on its advice of counsel. Non-infringement, invalidity, and unenforceability are separate and independent defenses to infringement. If a defendant has reasonably relied on ultimately erroneous advice of counsel that a patent is invalid, unenforceable, or not infringed, the advice is evidence that the infringement was not willful. *See Ortho Pharm., 959 F.2d at 944.* Therefore, inquiries into the infringer's state of mind regarding infringement defenses not addressed in the underlying opinion are of limited utility in determining whether the infringer's reliance on the underlying opinion is reasonable.

Balanced against this limited utility are the policies of the attorney-client communication privilege and work-product immunity: encouraging attorney-client communications and preventing parties from "piggybacking" on each other's work product. *EchoStar, 448 F.3d at 1301.* The issue of expanding the subject matter of the advice-of-counsel waiver to include all defenses to infringement was not squarely [\*16] before the *EchoStar* court; therefore this Court declines to interpret *EchoStar* as requiring a broad and ultimately unhelpful subject-matter waiver.

Autobytel is entitled to discovery related to whether Dealix's reliance on its asserted non-infringement opinion is reasonable. Because Dealix has asserted an opinion of non-infringement in defense of Autobytel's willfulness charge, the scope of the subject matter waiver is limited to potential infringement of the '517 patent.

*Documents included in Autobytel's motion to compel*

Autobytel does not seek discovery of Dealix's trial-counsel work product or attorney-client e-mail commu-

nications. Autobytel does seek disclosure of communications and communicated work product between Dealix and its in-house counsel. Autobytel is not entitled to discovery of in-house counsel communications and communicated work product where Dealix's in-house counsel acted as a mere conduit between trial counsel and Dealix employees. To hold otherwise would effectively allow discovery of trial-counsel communications and work product merely because of how privileged trial-counsel documents were disseminated to Dealix. However, Autobytel is entitled [*17] to in-house counsel communications and communicated work product that include independent advice regarding potential infringement of the '517 patent or regarding the non-infringement opinion.

Autobytel seeks production of communications between Dealix and Cobalt that relate to infringement or analysis of the '517 patent. Autobytel stated at oral argument that production of Dealix-Cobalt communications dated within ninety days of the non-infringement opinion is satisfactory and has therefore waived production of documents outside this time frame. Dealix argues that such communications and work product are confidential under the common legal interest doctrine ("CLI") and are not within the scope of the advice-of-counsel defense privilege waiver. See In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001).

The CLI doctrine extends the attorney-client privilege to communications prompted by threatened or actual civil or criminal proceedings and intended to facilitate representation between potential co-defendants with a common legal interest and their counsel. Id. at 710-11; Aiken v. Tex. Farm Bureau Mut. Ins. Co., 151 F.R.D. 621, 623 (E.D. Tex. 1993) [*18] (Cobb, J.). Although Autobytel did not eventually sue Cobalt, Cobalt and Dealix were potential co-defendants in Autobytel's lawsuit and acted under a threat of imminent litigation by Autobytel. Cf. Santa Fe, 272 F.3d at 708-09, 713 (finding no potential co-defendant CLI privilege for documents prepared years before suit was filed and not prepared in the anticipation of litigation). Cobalt and Dealix also had a natural and common interest in consulting about a potential infringement suit because the suit might impact the merger of the companies. See In re LTV Sec. Litig., 89 F.R.D. 595, 604 (N.D. Tex. 1981). Thus, the CLI privilege extends to communications between Cobalt, Dealix, and their counsel regarding common legal issues that were intended to facilitate representation in possible subsequent infringement litigation. See Hodges, Grant & Kaufman, 768 F.2d at 721; Aiken, 151 F.R.D. at 623. However, when Dealix asserted the advice-of-counsel defense, it waived the CLI privilege as to communications or communicated work product related to

potential infringement of the '517 patent or related to the non-infringement [*19] opinion.

Autobytel also seeks production of attorney-client communications and communicated work product from Dealix's merger counsel that "concern" the '517 patent or that concern legal advice regarding Dealix's merger with Cobalt. Dealix waived privilege for merger counsel communications or communicated work product regarding either potential infringement of the '517 patent or the non-infringement opinion. All other privileged communications and communicated work product from merger counsel remain privileged.

Additionally, Autobytel has moved to compel production of all documents relating to the opinion for which privilege has been waived. Dealix produced the opinion and related documents from opinion counsel's records, with uncommunicated work product redacted. Autobytel is entitled to documents and communications between opinion counsel and Dealix in Dealix's possession. See Comark Commc'ns v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998) (stating that for reliance to be reasonable, advice of counsel must be competent and based on the best information known to the defendant). Dealix conceded that Autobytel is entitled to all documents in Dealix's possession [*20] received from opinion counsel in unredacted form.

Last, Autobytel has moved to compel Dealix to produce a privilege log pursuant to Local Patent Rule 3-8(a). Dealix argues that a separate log is not necessary because all documents were included in another produced log and because the parties agreed to forego logging post-suit privilege information. While the parties previously agreed not to log post-suit privilege information, this agreement was before willful infringement became an issue in this case. A privilege log will greatly assist in the inquiry into Dealix's state of mind regarding the non-infringement opinion. Accordingly, the Court orders Dealix to produce a privilege log of withheld non-trial-counsel documents relating to its advice-of-counsel defense.

## CONCLUSION

Accordingly, the Court **GRANTS** in part Autobytel's motion to compel production of documents. Dealix is **ORDERED** to produce: (1) all non-trial-counsel attorney-client communications regarding either potential infringement of the '517 patent or the non-infringement opinion; (2) all non-trial-counsel work product communicated to Dealix regarding either potential infringement of the '517 patent or [*21] the non-infringement opinion; and (3) all non-trial-counsel uncommunicated work product that references an attorney-client communication regarding either potential infringement of the '517 patent or the non-infringement

2006 U.S. Dist. LEXIS 72032, *

opinion. These documents may be redacted to remove information that is either unrelated to infringement of the *'517 patent*, unrelated to the non-infringement opinion, or that represents uncommunicated work product. With regard to communications and work product communicated between Dealix and Cobalt, this waiver is limited to documents within ninety days before or after the date on which Dealix received the non-infringement opinion. Dealix must also produce all documents in Dealix's possession received from opinion counsel in unredacted form. Finally, Dealix is ordered to produce a privilege log for non-trial-counsel documents pursuant to Local Patent Rule 3-8. Autobytel's motion to compel is **DENIED** in all other respects.

**So ORDERED and SIGNED this 3rd day of October, 2006.**

**LEONARD DAVIS**

**UNITED STATES DISTRICT JUDGE**

# EXHIBIT I

LEXSEE

**CONVOLVE, INC. and MASSACHUSETTS INSTITUTE OF TECHNOLOGY, Plaintiffs, -against- COMPAQ COMPUTER CORP. and SEAGATE TECHNOLOGY, Defendants.**

**00 Civ. 5141 (GBD)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 69425*

**September 27, 2006, Decided**
**September 27, 2006, Filed**

**SUBSEQUENT HISTORY:** As Amended October 18, 2006.

**PRIOR HISTORY:** *Convolve, Inc. v. Compaq Computer Corp., 2006 U.S. Dist. LEXIS 62606 (S.D.N.Y., Aug. 31, 2006)*

**COUNSEL:** [*1] For Convolve, Inc., Massachusetts Institute of Technology, Plaintiffs: Adam Benjamin Landa, Tom M. Fini, Greenberg Taurig, LLP (NYC), New York, NY; Albert L. Jacobs, Jr., Greenberg Taurig, LLP, New York, NY; Debra Brown Steinberg, Cadwalader, Wickersman & Taft LLP (NYC), New York, NY; Richard E. Kurtz, Greegberg Taurig LLP, McLean, VA; Albert L. Jacobs, Jr., Graham & James LLP, New York, NY.

For Compaq Computer Corp., Defendant: Herbert F. Schwartz, Robert W. Morris, Ropes & Gray, LLP(NYC), New York, NY; Robert F. Bahrampour, Robes & Gray LLP, New York, NY; Robert J. Goldman, Ropes & Gray, LLP (CA), Palo Alto, CA.

For Seagate Technology, Inc., Seagate Technology, L.L.C., Defendants: G. Hopkins Guy, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA; Michael S Sommer, McDermott, Will & Emery, LLP (NY), New York, NY; Stephen J. Akerley, McDermott, Will & Emery LLP, Palo Alto, CA; Terrence P. McMahon, McKermott, Will & Emery LLC, Palo Alto, CA.

For American International Underwriteres Insurance Company, National Union Fire Insurance Company of Pittsburgh, P.A., Movants: William T. Corbett, Drinker Biddle & Reath LLP, New York, NY, US.

For Seagate Technology, Inc., Counter [*2] Claimant: G. Hopkins Guy, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA; Michael S Sommer, McDermott, Will & Emery, LLP (NY), New York, NY.

For Convolve, Inc., Counter Defendant: Adam Benjamin Landa, Tom M. Fini, Greenberg Taurig, LLP (NYC), New York, NY; Debra Brown Steinberg, Cadwalader, Wickersman & Taft LLP (NYC), New York, NY; Richard E. Kurtz,Richard E. Kurtz, Greegberg Taurig LLP, McLean, VA; Albert L. Jacobs, Jr., Graham & James LLP, New York, NY.

For Massachusetts Institute of Technology, Counter Defendant: Adam Benjamin Landa, Tom M. Fini, Greenberg Taurig, LLP (NYC), New York, NY; Albert L. Jacobs, Jr., Greenberg Taurig, LLP, New York, NY; Debra Brown Steinberg, Cadwalader, Wickersman & Taft LLP (NYC), New York, NY; Richard E. Kurtz, Greegberg Taurig LLP, McLean, VA; Albert L. Jacobs, Jr., Graham & James LLP, New York, NY.

For Seagate Technology, Inc., Counter Claimant: G. Hopkins Guy, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA; Terrence P. McMahon, McKermott, Will & Emery LLC, Palo Alto, CA.

For Convolve, Inc., Counter Defendant: Adam Benjamin Landa, Tom M. Fini, Greenberg Taurig, LLP (NYC), New York, NY; Debra Brown Steinberg, Cadwalader, Wickersman & Taft [*3] LLP (NYC), New York, NY; Richard E. Kurtz, Greegberg Taurig LLP, McLean, VA; Albert L. Jacobs, Jr., Graham & James LLP, New York, NY.

For Massachusetts Institute of Technology, Counter Defendant: Adam Benjamin Landa, Tom M. Fini, Green-

berg Taurig, LLP (NYC), New York, NY; Debra Brown Steinberg, Cadwalader, Wickersman & Taft LLP (NYC), New York, NY; Richard E. Kurtz, Greegberg Taurig LLP, McLean, VA; Albert L. Jacobs, Jr., Graham & James LLP, New York, NY.

For Convolve, Inc., Counter Defendant: Adam Benjamin Landa, Tom M. Fini, Greenberg Taurig, LLP (NYC), New York, NY; Debra Brown Steinberg, Cadwalader, Wickersman & Taft LLP (NYC), New York, NY; Albert L. Jacobs, Jr., Graham & James LLP, New York, NY.

For Massachusetts Institute of Technology, Counter Defendant: Adam Benjamin Landa, Tom M. Fini, Greenberg Taurig, LLP (NYC), New York, NY; Debra Brown Steinberg, Cadwalader, Wickersman & Taft LLP (NYC), New York, NY; Albert L. Jacobs, Jr., Graham & James LLP, New York, NY.

**JUDGES:** George B. Daniels, United States District Judge.

**OPINION BY:** George B. Daniels

**OPINION:**

MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Seagate Technology LLC ("Seagate") moves for [*4] certification of an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), of two orders issued by Magistrate Judge Francis, and two motions denied by this Court, relating to defendants' obligation to produce certain communications to and from their respective trial attorneys, which are relevant to defendants' advice-of-counsel defense. The motion is denied.

Plaintiffs Convolve, Inc. and Massachusetts Institute of Technology (collectively "Plaintiffs") sued defendants Seagate and Compaq Computer Corp. ("Compaq") for, inter alia, willful patent infringement of certain patents owned by Plaintiffs. Both Seagate and Compaq asserted the advice-of-counsel defence, i.e., that they acted in good faith because they relied on the advice of counsel when engaging in the allegedly infringing conduct. Seagate and Compaq conceded that by asserting the advice-of-counsel defense, they waived attorney-client privilege as to communications between them and the attorneys they hired to provide opinions on the legality of their conduct. n1 Seagate and Compaq disputed, however, whether the waiver extended to the communications to and from their respective trial attorneys. This [*5] Court referred the case to Magistrate Judge Francis for pre-trial supervision and for resolution of these discovery disputes.

n1 In Seagate's case, that attorney was Gerald T. Sekimura. His opinions will be referred to as the "Sekimura Opinions."

Magistrate Judge Francis issued an order on May 28, 2004, published as Convolsve, Inc. V. Compaq Computer Corp., 224 F.R.D. 98 (S.D.N.Y. 2004), holding that in asserting the advice-of-counsel defense, Seagate "waived the attorney-client privilege as to all communications not only with Mr. Sekimura, but also with its other attorneys, including trial counsel, concerning the subject matter of Mr. Sekimura's advice." Id. at 104. Therefore, Magistrate Judge Francis ordered Seagate to "produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel," related to the subject matter of the Sekimura Opinions. Id. at 105. [*6] Magistrate Judge Francis issued a second order, dated September 8, 2004, granting plaintiff Convolve's application to compel Seagate and Compaq to produce all documents subject to disclosure under May 28th order.

Seagate moved, pursuant to Fed. R. Civ. P. 72(a), for an order by this Court sustaining its objections to, and overruling, the May 28th order. Seagate also sought an order by this Court, pursuant to Fed. R. Civ. P. 72(a), sustaining its objections to, and overruling, the Magistrate Judge's Sept. 8th order. Both of Seagate's Rule 72(a) motions were denied by this Court on July 11, 2006. Seagate now seeks certification of an interlocutory appeal of all four decisions.

An interlocutory appeal is "a rare exception to the final judgement rule that generally prohibits piecemeal appeals," Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865 (2d Cir. 1996), and only "exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment, In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (citations and [*7] alteration omitted). Certification of an interlocutory appeal is appropriate only if the challenged order (1) involves a controlling issue of law, (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); Taylor v. PPG Industries, Inc., 256 F.3d 1315, 1316 (Fed. Cir. 2001) (citing 28 U.S.C. § 1292(b)).

Seagate cannot satisfy the requirements of 28 U.S.C. § 1292(b). In this case, the orders at issue only address a pre-trial discovery dispute, namely, the scope of Seagate's waiver of the attorney-client and work-product privileges, a determination that lies within the sound

discretion of the district court, see, e.g., *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006) ("We review the district court's determination as to the scope of the waiver for an abuse of discretion."), and "depends heavily on the factual context in which the privilege is asserted." *In re Sealed Case*, 278 U.S. App. D.C. 188, 877 F.2d 976, 981 (D.C. Cir. 1989); [*8] *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (stating that the district court has "broad discretion to direct and manage the pretrial discovery process"). Fact-dependant matters that are within the court's discretion, such as the scope of a privilege waiver, do not involve a "controlling issue of law" under *§ 1292(b).* See, e.g., *White v. Nix*, 43 F.3d 374, 376, 377-78 (8th Cir. 1994) (holding that the district court's order requiring production of documents claimed to be protected by the attorney work product doctrine, a matter "committed to the district court's discretion," did not involve a controlling issue of law under *§ 1292(b)* warranting certification for and interlocutory appeal); *Casey v. Long Island R. Co.*, 406 F.3d 142, 146-47 (2nd Cir. 2005) (holding that the district court's decision to set aside the jury award did not present a controlling issue of law warranting certification of an interlocutory appeal under *§ 1292(b)* because the excessiveness of the jury's award "presents a question as to the proper evaluation of the evidence introduced at trial" and that evaluation "is accorded *differential* review") [*9] (emphasis added); *Schine v. Schine*, 367 F.2d 685, 688 (2d Cir. 1966) (holding that an order denying defendants' motion for a separate trial did not meet the requirements for certification of an interlocutory appeal because " *whether the district court abused his discretion* in granting or denying a separate trial . . . may rarely, if ever, involve a 'controlling question of law'" under *§ 1292(b)*) (emphasis added).

Nor has Seagate demonstrated that it is an extraordinary case warranting departure from the general rule that appeals may not be taken from final judgments. The material that Seagate is required to produce under the May 28th order is limited--only "documents, answered to interrogatories, and deposition testimony" that relate to the subject matter of the Sekimura Opinions must be pro-

duced. *Convolve, Inc.* 224 F.R.D. at 105. In addition, in an effort to minimize disclosure of trial or litigation strategy, any material that Seagate believes would reveal protected information can be submitted for *in camera* review. Even though Magistrate Judge Francis ordered the production of certain communications between Seagate and its trial counsel, he specifically [*10] provided:

> Nevertheless, care should be taken to minimize the disclosure of communications pertaining to trial or litigation strategy. To be sure, trial counsel's advice that undermines the reasonableness of the clients reliance on advice of opinion counsel must be disclosed even if it is communicated in the context of trial preparation. But, at the same time, trial counsel will surely address with the client trial strategy concerning validity, infringement, and enforcement in ways that do not implicate the advice-of-counsel defense. Therefore, to the extent that Seagate wishes to withhold or redact documents that would reveal trial strategy or planning, it shall submit those documents for my *in camera* review.

*Convolve, Inc.* 224 F.R.D. at 105. Seagate's opportunity to submit for *in camera* review any document it "wishes to withhold or redact," makes this an issue not ripe for appellate review.

Seagate's motion for certification of an interlocutory appeal pursuant to 28 U.S.C. *§ 1292(b)* is DENIED.

Dated: New York, New York

SO ORDERED:

George B. Daniels

United States District Judge

# EXHIBIT J

LEXSEE

**COMPUTER ASSOCIATES INTERNATIONAL, INC., Plaintiff, - against - SIMPLE.COM, INC., WIRED SOLUTIONS, LLC., a revoked Nevada LLC, Defendants.**

**02 Civ. 2748 (DRH) (MLO)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 77077*

**October 20, 2006, Decided**
**October 23, 2006, Filed**

**COUNSEL:** [*1] HELLER EHRMAN WHITE & MCAULIFFE LLP, Attorneys for Plaintiff, San Francisco, California, By: James R. Knox, Esq., L. J. Chris Martiniak, Esq., Michael M. Markman, Esq., Michele K. Connors, Esq., & Robert D. Fram, Esq.

FARRELL FRITZ, P.C., Attorneys for Defendants, Uniondale, New York, By: Stephen J. Smirti, Jr., Esq., John P. McEntee, Esq., & Celeste M. Butera, Esq.

FULBRIGHT & JAWORSKI LLP, Attorneys for Defendants, Minneapolis, Minnesota, By: Alan M. Anderson, Esq., Mark E. Ungerman, Esq., Sharna A. Wahlgren Esq., & Steven M. War, Esq.

RIVKIN RADLER LLP, Attorneys for Defendants, Uniondale, New York, By: Celeste M. Butera, Esq.

GALE R. PETERSON, ESQ., Special Master, San Antonio, Texas.

**JUDGES:** Denis R. Hurley, United States Senior District Judge.

**OPINION BY:** Denis R. Hurley

**OPINION:**

**MEMORANDUM & ORDER**

**HURLEY, Senior District Judge:**

*INTRODUCTION*

Plaintiff Computer Associates International, Inc. ("CA" or "Plaintiff") objects to the Report and Recommendation ("R&R") of Special Master Gale Peterson on Defendants' motion to compel documents related to

Plaintiff's advise of counsel defense to Defendants' claim of willful infringement. For the reasons set forth [*2] herein, the Court adopts the R&R and grants Defendants' motion to compel.

*BACKGROUND*

Plaintiff "is a provider of software solutions and services for the management of information technology infrastructure, business information, and application development." (3d Amended Complaint P 2.) Defendants Simple.com, Inc. and Wired Solutions, LLC (collectively "Simple") are the current owners of three patents: *U.S. Patent Nos. 6,272,493* ("493"), 6,434,563 ("563"), and 6,535,882 ("882"). CA commenced the present action in May 2002. As amended, the complaint seeks a declaratory judgment that the three patents are invalid, unenforceable, and "not infringed" by Plaintiff's products. (*See id.* P 34.) Simple has counterclaimed against CA for willful infringement. (Amended Answer and Counterclaims PP 11-25 and Prayer for Relief P 5.)

On September 1, 2004, CA notified Simple that it elected to invoke the advice of counsel defense to rebut the accusation of willful infringement. CA produced two opinions of Cooper & Dunham, LLP relating solely to the validity of the patents in suit. The first opinion is dated September 5, 2003 and relates to the *'493 patent*. The second opinion is dated March 3, 2004 and [*3] relates to the '882 and '563 patents.

CA has produced documents in response to Simple's document request for "[a]ll attorney's opinions upon which you intend to rely in asserting any defense against a claim of willful infringement in this case and all documents related to any such opinion." However, CA did not produce any communications between it and its Litigation Counsel claiming attorney-client privilege. Simple

then moved before the Special Master for an order to compel.

By Order dated November 24, 2004, the Special Master granted the motion. After a thorough discussion of the then existing, and conflicting, case law, the Special Master rejected CA's claims that it did not waive the attorney-client privilege as to Litigation Counsel:

> [I]t is known that Cooper & Dunham have given written opinions that CA has chosen to rely on in its advice of counsel defense. CA has thus chosen to place those opinions "at issue" in this litigation. Whether CA has received communications or advice from Heller Ehrman or it prior trial counsel on the subject matter of the Cooper & Dunham opinions is unknown, but given that CA has chosen to place the Cooper & Dunham opinions "at issue" [*4] in this lawsuit opens the door for Simple to examine what other advice CA received on that subject matter, whether conflicting or not.

(Special Master's Order at p. 23.) Further, the Special Master rejected CA's proposed temporal limitation limiting the waiver of privilege vis-a-vis trial counsel to the period prior to the commencement of the suit. (Id. at pp. 23-24.) Nonetheless, in order to protect litigation or trial strategy, the Special Master provided that any materials concerning the subject matter of the Cooper & Dunham opinions that also relate to trial or litigation strategy should be submitted for in camera review.

CA filed objections to the Special Master's Order arguing principally that because litigation counsel and opinion counsel serve different functions, the scope of the privilege rules must be different and that the Federal Circuit's precedent favors protecting the attorney-client privilege over the "marginal" benefit that might be derived from extending the waiver to Litigation Counsel. Simple has responded, arguing that the scope of CA's waiver of the attorney-client privilege included communications from litigation counsel relating to the subject [*5] matter of its advise of counsel defense.

### STANDARD

The parties dispute the appropriate standard to be applied to the Special Master's Report and Recommendation. The Order appointing the Special Master in this case provides in pertinent part: "Review of an appeal from all orders and recommendations, as well as the standard of review, shall be governed by Federal Rules of Civil Procedure 72 and associated case law." Federal Rule 72 of Civil Procedure provides that non-dispositive rulings will be modified by the District Court only if "clearly erroneous or contrary to law." Discovery orders are generally considered non-dispositive. See Webb v. Robert Lewis Rosen Assocs., 128 Fed. Appx. 793, 2005 U.S. App. LEXIS 5710 at p. 6 (2d Cir. 2005); Thomas E. Hoar v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990).

### DISCUSSION

At issue in this case is the extent of the waiver of the attorney client privilege n1 by an alleged infringer who asserts the defense of advice of counsel in response to a claim of willful infringement. Specifically, the question is whether the waiver extends to any and all attorney client communications [*6] on the same subject matter n2 including communications with trial counsel. Because questions of privilege and discoverability arising from a defense of advice of counsel involve substantive patent law, they are governed by the law of Federal Circuit. In re EchoStar Communications Corp., 448 F.3d 1294, 1298 (Fed. Cir. 2006)(citing In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803-03 (Fed. Cir. 2005)).

n1 Although related, the attorney-client privilege and work product immunity "are distinct concepts and waiver of one does not necessarily waive the other." In re Echostar Communications Corp., 448 F.3d 1294, 1300 (Fed. Cir. 2006). This opinion, like the Special Master's R&R, only addresses the issue of waiver of the attorney-client privilege.

n2 In this case, the subject matter of the Cooper & Dunham opinion is the validity of the patents in suit.

Under 35 U.S.C. § 284, damages awarded for patent infringement may be increased where [*7] the infringement is willful. Read Corp. v. Portec Inc., 970 F.2d 816, 826 (Fed. Cir. 1992); Beatrice Foods Co. v. New England Printing & Lithographing Co., 923 F.2d 1576, 1578 (Fed. Cir. 1991). A party in a patent infringement action may assert the advice of counsel as a defense to a claim of willful infringement. Reliance on the advice must be reasonable as the determination of willfulness centers on the infringer's state of mind. See Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992). Once a party notifies its adversary that it will rely on the advice of counsel defense, the attorney-client privilege is waived. As the Federal Circuit recently reiterated, "[t]he widely applied standard for determining the scope of a

waiver of attorney-client privilege is that the waiver applies to all other[attorney-client] communications relating to the same subject matter." *In re EchoStar, 448 F.3d at 1299* (quoting *Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005)*). "The waiver extends beyond the document initially produced out of concern for fairness, so that a party [*8] is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James Corp., 412 F.3d at 1349* (internal citations omitted).

The Federal Circuit's most recent pronouncement on the question of waiver of the attorney-client privilege and work product doctrine arising from the advice of counsel defense is *In re Echostar, 448 F.3d 1294 (Fed. Cir. 2006)*.

*EchoStar* involved questions of waiver of both attorney-client privilege and work-product immunity. With regard to the waiver of attorney-client privilege resulting from the assertion of the advice of counsel defense, the Federal Circuit concluded that when a party chooses "to rely on the advice of in-house counsel, it waive[s] the attorney client privilege with regard to *any attorney client communication relating to the same subject matter, including communications with counsel other than* [the counsel who rendered the opinion relied upon]." *Id. at 1299* (emphasis added) (citing *Akeva L.L.C. v. Mizuno Corp., 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003)*). The *Echostar* Court reiterated that the [*9] attorney-client privilege is at the discretion of the client. The client can waive the privilege when it invokes the advice of counsel defense or decline to assert the advice of counsel defense and maintain the attorney-client privilege. n3 What a client cannot do is use the privilege as both a sword and a shield by waiving its privilege for favorable advice while asserting it for unfavorable advice. Indeed, "the overrarching goal of waiver" is to prevent a party from using advice as both a sword and a shield. *448 F.3d at 1303.*

n3 As a result of *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp, 383 F.3d 1337 (Fed. Cir. 2004)*, a decision not to invoke the advice of counsel defense and to maintain the attorney-client privilege no longer results in an adverse inference that any withheld opinions are adverse to the client.

The *EchoStar* Court then turned to the scope of waiver of work product immunity. The Court explained that work-product waiver extends only to "factual" [*10] or "non-opinion" work product concerning the same subject matter as the disclosed work product. *Id at 1302.*

Acknowledging that the line between factual and opinion work product can be less than clear, the Federal Circuit directed courts to "balance the policies to prevent sword and shield litigation tactics with the policy to protect work product." *Id.* The Court then went on to discuss three categories of work product potentially relevant to the advice of counsel defense: "(1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." *Id. at 1302* (citing *Thorn EMI N. Am. v. Micron Tech., 837 F. Supp. 616, 622-623 n.3 (D. Del. 1993)*). The *EchoStar* Court found that as to the first category the work-product immunity is waived. As to the second [*11] category, it is not waived. As to the third category, the privilege is waived but only insofar as the document contains a substantive reference to what was communicated to the client.

In reaching this result, the *EchoStar* Court was guided by the maxim that waiver extends only so far as to inform the court of the infringer's state of mind. "Counsel's opinion is not important for its legal correctness. It is important to the inquiry [of] whether it is 'thorough enough as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed or unenforceable.'" *Id. at 1303* (quoting *Ortho Pharm Corp. v. Smith, 959 F.2d 936, 944 (Fed.Cir. 1992)*). "It is what the alleged infringer knew or believed . . . that informs the court of an infringer's willfulness." *Id.* Accordingly, the Court concluded that "when an alleged infringer asserts its advice-of -counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable and infringed by [*12] the accused. This waiver of both the attorney-client privilege and the work- product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his client, but also includes, when appropriate, any documents referencing a communication between attorney and client." *Id. at 1304.*

The *EchoStar* Court also addressed the question of imposing temporal limitations on the waiver of attorney-client privilege and work-product immunity resulting from the advice of counsel defense. In cases where ongoing infringement is at issue, the waiver extends to advice and work product communicated to the client after the

litigation has begun. *Id. at 1303 n.4* (citing *Akeva LLC, 243 F. Supp. 2d at 423*).

*EchoStar* leaves this Court of the firm opinion that the Special Master's Report and Recommendation is neither clearly erroneous nor contrary to law. The scope of CA's waiver of the attorney-client privilege and work-product doctrine lies within the sound discretion of the trial court and *EchoStar* provides ample support for the Special Master's recommendations.

The Special Master's holding that the waiver extends to trial counsel [*13] is consistent with *EchoStar*. n4 *EchoStar* did not involve trial counsel. However, the *EchoStar* Court, in describing the scope of the waiver of the attorney-client privilege, cited favorably to *Akeva*, wherein the Court held that "all opinions received by the client relating to infringement must be revealed, even if they come from defendants' trial attorney." *243 F. Supp. 2d at 423*. The supporting citation to *Akeva* in describing the scope of the waiver, together with the reasoning of the *Echostar* Court, indicates to this Court that the Federal Circuit would extend the waiver to all attorneys who provided advice, including, in the case of ongoing infringement, trial counsel. Excluding trial counsel from the scope of the waiver would permit a party to use the attorney-client privilege as both a sword and shield by allowing a party to choose which opinions are disclosed and which are not.

n4 Courts that have considered the issue of waiver with respect to trial counsel, both before and after *EchoStar*, have not arrived at any consistent rulings. *See, e.g., Affinion Net Patents, Inc. v. Maritz, Inc. 440 F. Supp. 2d 354, 356 (D. Del. 2006); Ampex Corp. v. Eastman Kodak Co., 2006 U.S. Dist. LEXIS 48702 at \*9 (D. Del. July 17, 2006); Convolve, Inc. v. Compaq Computer Corp., 224 F.R.D. 98, 103-104 (S.D.N.Y. 2004); Sharper Image Corp. v. Honeywell Int'l Inc., 222 F.R.D. 621, 643 (N.D. Cal. 2004).*

[*14]

The Court is cognizant of the fact that the attorney-client privilege exists in order to promote full and honest disclosure between attorney and client. *See Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); Knorr-Bremse, 383 F.3d at 1345.* However, the decision to waive the privilege is within the control of the alleged infringer and is, presumably, one of the factors that will be weighed in determining whether to assert the advice of counsel defense. Given that the decision whether or not to assert the advice of counsel defense is no longer tainted by the possibility of

an adverse inference, any intrusion into the attorney-client relationship is not undue. Moreover, applying the waiver to trial counsel does not grant Simple the unfettered right to rummage through counsel's files. *See EchoStar, 448 F.3d at 1303.* Litigation strategy and advice of counsel are not the same and the Special Master's Recommendation recognized the difference by providing CA an opportunity to submit materials for his *in camera* review.

Rejection of CA's temporal limitation was also appropriate. First, on-going infringement is at issue here and therefore [*15] CA's state of mind throughout this litigation remains relevant and advice that CA may have received from any counsel is relevant to CA's state of mind. Second, establishing the commencement of this action as a temporal limitation on the waiver of the attorney-client privilege vis-a-vis trial counsel seems incongruous given that the opinions of Cooper & Dunham were rendered after the commencement of the action and current trial counsel appeared in this action approximately two years after the commencement of this action.

In its Reply in support of its objections to the Special Master's Report and Recommendation, CA raises for the first time, bifurcation of the willfulness determination until such time as the jury finds the patent infringed as a way of meeting the attorney-client privilege problem. The propriety of bifurcation will only be addressed upon a properly presented motion.

Lastly, the Court notes CA's suggestion that the basis for Simple's motion to compel has been rendered moot in view of the Special Master's Report and Recommendation of noninfringement. Suffice it to say that given the parties voluminous objections to the Reports and Recommendations issued by the Special [*16] Master on, for example, the subjects of claim construction, infringement and validity, which objections are pending before this Court, the suggestion of mootness is not well taken.

*CONCLUSION*

The Court adopts the Special Master's Report and Recommendation, dated November 24, 2004 and grants Simple's motion to compel.

**SO ORDERED.**

Dated: Central Islip, New York

October 20, 2006

Denis R. Hurley

United States Senior District Judge

# EXHIBIT K

LEXSEE 2006 U.S. DIST. LEXIS 74060

**OUTSIDE THE BOX INNOVATIONS, LLC, d/b/a UNION RICH USA, Plaintiff Counter-Defendant, v. TRAVEL CADDY, INC., and ROOSTER PRODUCTS, d/b/a THE ROOSTER GROUP, Defendants. TRAVEL CADDY, INC., Counter-Plaintiff Counter-Defendant, v. OUTSIDE THE BOX INNOVATIONS, LLC, d/b/a UNION RICH USA; UNION RICH PLASTIC FACTORY, LTD.; BONAKA LIMITED, Counter-Defendants.**

CIVIL ACTION No. 1:05-cv-2482-ODE

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

*2006 U.S. Dist. LEXIS 74060*

**October 5, 2006, Decided**
**October 6, 2006, Filed**

**COUNSEL:** [*1] For Outside The Box Innovations, LLC doing business as Union Rich USA, Plaintiff: Joel D. Myers, LEAD ATTORNEY, Myers & Kaplan, Atlanta, GA; Ashish D. Patel, Myers & Kaplan, Atlanta, GA; Barry E. Kaplan, Myers & Kaplan Intellectual Property Law, LLC, Atlanta, GA.

For Travel Caddy, Inc., Rooster Products doing business as The Rooster Group, Defendants: Aimee B. Kolz, LEAD ATTORNEY, Jason S. Shull, LEAD ATTORNEY, Jon O. Nelson, LEAD ATTORNEY, Marc S. Cooperman, LEAD ATTORNEY, Scott A. Burow, LEAD ATTORNEY, Banner & Witcoff, Chicago, IL; George Melton Mobley, Jr., LEAD ATTORNEY, Lokey, Mobley & Doyle, LLP, Atlanta, GA; Kimberly Blackwell Sheridan, Lokey & Smith, Atlanta, GA.

For Rooster Products doing business as The Rooster Group, Rooster Products, Travel Caddy, Inc., Counter Claimants: Aimee B. Kolz, LEAD ATTORNEY, Jason S. Shull, LEAD ATTORNEY, Jon O. Nelson, LEAD ATTORNEY, Marc S. Cooperman, LEAD ATTORNEY, Scott A. Burow, LEAD ATTORNEY, Banner & Witcoff, Chicago, IL; George Melton Mobley, Jr., LEAD ATTORNEY, Lokey, Mobley & Doyle, LLP, Atlanta, GA.

For Mandy Wilson Decker, Movant: Ronald Scott Griffin, LEAD ATTORNEY, Stites & Harbison, Atlanta, GA.

For Outside The [*2] Box Innovations, LLC, Counter Defendant: Joel D. Myers, LEAD ATTORNEY, Myers & Kaplan, Atlanta, GA; Ashish D. Patel, Myers & Kaplan, Atlanta, GA.

For Travel Caddy, Inc., Counter Claimant: Aimee B. Kolz, Marc S. Cooperman, LEAD ATTORNEY, Banner & Witcoff, Chicago, IL.

For Bonaka Limited, Bonaka Plastic Manufacturing Co., Ltd., Union Rich Plastic Factory, Ltd., Counter Defendants: Joel D. Myers, LEAD ATTORNEY, Myers & Kaplan, Atlanta, GA; Ashish D. Patel, Myers & Kaplan, Atlanta, GA; Barry E. Kaplan, Myers & Kaplan Intellectual Property Law, LLC, Atlanta, GA.

For Travel Caddy, Inc., Rooster Products, Counter Defendants: Aimee B. Kolz, LEAD ATTORNEY, Banner & Witcoff, Chicago, IL.

**JUDGES:** ORINDA D. EVANS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ORINDA D. EVANS

**OPINION:**

ORDER

This case is before the Court pursuant to its oral direction made during the hearing held August 24, 2006 concerning Travel Caddy's subpoena issued to Mandy Wilson Decker.

On August 7, 2006, Travel Caddy issued a subpoena for deposition and for production of documents in the Western District of Kentucky to a non-party in this case,

Mandy Wilson Decker [# 185]. On August 9, 2006, Union Rich filed an Emergency [*3] Motion for Protective Order Regarding the Deposition of Mandy Wilson Decker [# 187]. At the August 24 hearing, the motion for protective order was granted and the Court directed the parties to file briefs on the subject of whether, and to what extent, Union Rich had waived attorney-client privilege and work-product immunity by relying on the advice-of-counsel defense to Travel Caddy's patent infringement claims. By order dated August 25, 2006, the Court ordered that the subpoena for deposition and for production of documents and related motions filed in the Western District of Kentucky which were presented at the hearing be made a part of the record in this case by Order dated [# 232].

The Court notes that Union Rich, Travel Caddy, and Ms. Decker have filed briefs with the Court on this issue [# s 243, 244, 245, 254, 255].

Ms. Decker, an associate at the law firm of Stites & Harbison, served as the initial opinion counsel to Union Rich in connection with what ultimately became the present lawsuit. In this role, Ms. Decker provided opinion letters to Union Rich on potential infringement issues related to the two patents-in-suit, the '992 patent and the '104 patent. Stites & [*4] Harbison also served as Union Rich's original litigation counsel, and filed this lawsuit on behalf of Union Rich. As a defense to the charges of willful patent infringement subsequently brought by Travel Caddy, Union Rich has adopted the advice-of-counsel defense. Travel Caddy is seeking to depose Ms. Decker in connection with her role as opinion counsel.

In addition to deposing Ms. Decker, Travel Caddy has demanded the production of certain documents, through a subpoena served on Ms. Decker as an individ-

(Notice of Deposition of Mandy Wilson Decker, Exhibit A [# 185]). Both [*5] Union Rich and Ms. Decker independently object to this request.

All interested parties agree that this Court should be guided by the holding of In re Echostar, a recent Federal Circuit decision that has addressed the scope of waiver of privilege in the context of an advice-of-counsel defense to willful patent infringement. *448 F.3d 1294, 1298 (Fed. Cir. 2006)*. In adopting the advice-of-counsel defense, the alleged infringer waives aspects of both the attorney-client privilege and work-product immunity, but these waivers are not the same in scope, and neither is absolute. *Id. at 1300-01*. Because the advice-of-counsel defense "requires the court to decide, inter alia, whether counsel's opinion was thorough enough to 'instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable,'" the focus in determining the scope of waiver is on the act of communicating an opinion from counsel to client. *Id. at 1305* quoting, *Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992)*.

With respect to the attorney-client privilege, the Federal Circuit held that, [*6] "when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id. at 1301*. This broad waiver explicitly covers opinions that were communicated by Ms. Decker to Union Rich, and is the reason that Union Rich made no issue with, and produced to Travel Caddy, the opinions requested in the original subpoena. (Notice of Deposition of Mandy Wilson Decker, Exhibit A [# 185]). With respect to work product immunity, the Federal Circuit held that such immunity is waived "for any document or opinion that embodies or discusses a communication to or from [-



scope of waiver, and has acknowledged that it "makes no issue in producing all 'opinions of counsel' provided to and relied upon by the client [], and has done so." (Union Rich's Memorandum Regarding Scope of Waiver of Privilege, at 3 [# 245]). If Union Rich has indeed produced all such documents, then the dispute over whether Ms. Decker provided an opinion as to the scope, validity, infringement and/or enforceability of the '104 Patent is moot.

However, Ms. Decker argued in her filings that she did not provide an opinion on the '104 Patent, only the '992 Patent and the application for what would become the '104 Patent. Ms. Decker also argued that any advice on the [*8] '104 Patent application is outside the scope of waiver, as defined by Travel Caddy. According to Ms. Decker, because there can be no infringement until a patent is issued, and because Travel Caddy has stated that the scope of waiver is limited to "advice received during the entire course of infringement," Ms. Decker's advice on the '104 application is protected by the waiver.

The Court agrees with Travel Caddy that by giving her opinion on the '104 Patent application, Ms. Decker gave her opinion on the '104 Patent, and Union Rich has therefore waived its privilege with respect to the requested communications. First, the claims of the '104 Patent are identical to the claims that appeared in the '104 Patent application reviewed by Ms. Decker. Second, the alleged infringement in this case began with the '992 Patent, and the '104 Patent is a continuation of the '992 Patent. Therefore, while there can be no infringement until a patent is issued, advice about a pending continuation patent is highly relevant to the central issue in willful infringement, the state of mind of the alleged infringer.

Ms. Decker has also raised the argument that much of what Travel Caddy has demanded she produce, [*9] through a subpoena of her as an individual, is beyond her legal ability to produce. (Response of Non-Party Mandy Wilson Decker, at 7 [# 243]). Travel Caddy interprets the Echostar decision as requiring Union Rich to "produce all communications that embody or reflect communications between Union Rich and any counsel -- not merely Ms. Decker. This includes communications with other attorneys at Ms. Decker's firm, as well as communications with litigation counsel." (Defendants' Submission Concerning the Scope of Union Rich's Waiver of Privilege, at 10 [# 244]). Travel Caddy is correct that the Echostar decision held that if a defendant relies on the advice-of-counsel defense with respect to advice received from in-house counsel, then the waiver of attorney-client privilege applies to advice "relating to the same subject matter" received from other counsel. Echostar, 448 F.3d at 1299. However, a subpoena served

on Ms. Decker is not the appropriate method for procuring the requested documents.

Ms. Decker, as an associate at Stites & Harbison, cannot produce documents under the control of Myers & Kaplan, Union Rich's current litigation counsel, nor can she [*10] produce documents that are controlled by her own law firm. Rule 45(a)(1)(C) limits the production of documents available through a subpoena to "documents or tangible things in the possession, custody or control of that person." Fed. R. Civ. P. 45(a)(1)(C).

Travel Caddy has argued that it is entitled to communications that occurred after the commencement of this lawsuit. The Federal Circuit stated in a footnote that privilege is waived, "when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation." Id. at 1302 n.4. However, the requirement that the advice be communicated to the alleged infringer remains, even when applied to advice that occurs after the commencement of trial litigation. Id. at 1302.

While Echostar instructs courts to be mindful of a litigant attempting to "use[] the attorney-client privilege as both a sword and a shield," 448 F.3d at 1301, the Court will not grant Travel Caddy "unfettered discretion to rummage through all of [Union Rich's] files and pillage all of [Union Rich's] litigation strategies." [*11] Echostar, 448 F.3d at 1303. In other words, litigation strategy is not the same as advice-of-counsel, and the waiver that has been clarified in Echostar should not be used to allow unfettered access to documents related to strategy from all attorneys who have been involved in an infringement case.

The Federal Circuit imposed important limits on the scope of the waiver as follows, "[w]hile an accused infringer may waive the immunity for work product that embodies an opinion in letters and memorandum communicated to the client, he does not waive the attorney's own analysis and debate over what advice will be given." Id. Furthermore, while the district court in Echostar, reached the same conclusion that privilege is waived for communications made after the start of a lawsuit, it also found that the alleged infringer was entitled to redact information "that it considers solely related to trial strategy." TIVO Inc. v. EchoStar Comm. Corp., 2005 U.S. Dist. LEXIS 42481, No. CIVA 2:04CV1 (DF), 2005 WL 4131649, at *8 (Sept. 26, 2005). This conclusion is consistent with the Federal Circuit's holding that the scope of waiver of privilege does include post-filing communications, [*12] but prevents the unfettered access to litigation strategy that concerned the Court. Echostar, 448 F.3d at 1302-03; see also Tivo, 2005 U.S. Dist. LEXIS 42481, 2005 WL 4131649, at *8 ("This, in the Court's opinion, reconciles the fear that such discovery could

compromise trial preparation and give Plaintiff an unfair advantage with Plaintiff's inquiry into state of mind.").

Finally, Echostar makes clear, and all parties agree, that Ms. Decker is permitted to redact or withhold documents or information that were never communicated to Union Rich. *Id. at 1303.* This right to redact is especially important in the context of documents "that reference and/or describe a communication between the attorney and client, but were not themselves actually communicated to the client." *Id. at 1304.*

Therefore, it is ordered that, with respect to Ms. Decker's subpoena, she be required to produce:

> All documents that reflect communications (including all electronic communications) between Ms. Decker and Union Rich that relate to the scope, validity, infringement, and/or enforceability of the '992 and '104 patents, including any and all attorney notes, summaries, documents [*13] and drafts of documents related to the same subject matters and that embody or discuss a communication between Ms. Decker and Union Rich. Any such document that includes Ms. Decker's opinions or mental impressions never communicated to Union Rich may be redacted to exclude those uncommunicated portions. Ms. Decker may redact any information that she considers solely related to trial

strategy. Furthermore, consistent with the Echostar holding, the overall

scope of Union Rich's waiver in relying on the advice-of-counsel defense includes:

> Any document or opinion that embodies or discusses a communication to or from Union Rich concerning whether the '992 and '104 patents are valid, enforceable, and infringed by Union Rich, regardless of the counsel involved, and regardless of the date. Any document or opinion that falls within the scope of the waiver, but which includes opinions or mental impressions never communicated to Union Rich, may be redacted to exclude those uncommunicated portions. Union Rich may redact any information that it considers solely related to trial strategy.

Accordingly, non-party Mandy Wilson Decker is directed to comply with Travel Caddy's [*14] subpoena for deposition and production of documents [# 185] as stated herein.

SO ORDERED, this 5 day of October, 2006.

ORINDA D. EVANS

UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON
CASE NO. 04-CV-84-GFVT**

STATIC CONTROL COMPONENTS, INC.                                      PLAINTIFF/
                                                                                            COUNTERCLAIM DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.                                            DEFENDANT/
                                                                                            COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.          COUNTERCLAIM DEFENDANT
d/b/a MICRO  SOLUTIONS ENTERPRISES

v.

PENDL COMPANIES, INC.                                      COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.                                  COUNTERCLAIM DEFENDANT

*****************************

**APPENDIX OF DOCUMENTS FILED UNDER SEAL TO LEXMARK
INTERNATIONAL, INC.'S OPPOSITION TO MOTION TO QUASH SUBPOENA ON
WYATT, TARRANT & COMBS**

1.  Exhibit E – Letter from Becker to Pendl re: Lexmark Prebate Program

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# AT LEXINGTON
# CASE NO. 04-CV-84-GFVT

STATIC CONTROL COMPONENTS, INC.                PLAINTIFF/
                                        COUNTERCLAIM DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.                    DEFENDANT/
                                        COUNTERCLAIM PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL, INC.     COUNTERCLAIM DEFENDANT
d/b/a MICRO  SOLUTIONS ENTERPRISES

v.

PENDL COMPANIES, INC.                   COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.                 COUNTERCLAIM DEFENDANT

*****************************

## PROPOSED ORDER DENYING MOTION TO QUASH SUBPOENA

Upon consideration of the motion of Wyatt, Tarrant & Combs LLP ("Wyatt"), a law firm representing counterclaim defendant Static Control Components, Inc. ("Static Control") in the above-captioned litigation to quash the subpoena served upon it by defendant/counterplaintiff Lexmark International, Inc. ("Lexmark") and for attorney's fees incurred its client, Static Control, in connection with the filing of the motion, it is hereby ORDERED as follows:

1.      Wyatt's motion to quash is denied in its entirety, including Wyatt's request for attorney's fees.

2.  Within five (5) business days of this Order, to the extent that Wyatt wishes to withhold or redact documents that would reveal trial strategy or planning, it shall submit those documents for this court's in camera review.

3.  Within ten (10) business days of this Order, Wyatt shall produce all documents and provide deposition testimony responsive to Lexmark's subpoena to Wyatt.

SIGNED and ENTERED this _____ day of _____, 2006.

_____
United States District Judge

# EXHIBIT Q

LEXSEE

**AUTOBYTEL, INC., Plaintiff vs. DEALIX CORPORATION, Defendant.**

**CASE NO. 2:04-CV-338**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION**

*2006 U.S. Dist. LEXIS 72032*

**October 3, 2006, Decided**
**October 3, 2006, Filed**

**PRIOR HISTORY:** *Autobytel, Inc. v. Dealix Corp., 2006 U.S. Dist. LEXIS 3381 (E.D. Tex., Jan. 18, 2006)*

**COUNSEL:** [*1] Michael Philip Patterson, Mediator, Pro se, Tyler, TX.

For Autobytel Inc, Plaintiff: Samuel Franklin Baxter, Attorney at Law, Marshall, TX; Amy Simpso, Christopher S Serra, Douglas E Olson, Elizabeth L Brann, Erin E Sears, John E Peterson, N Thane Bauz, Trevor Coddington, Paul Hastings Janofsky & Walker-San Diego, San Diego, CA; Howard N Wisnia, Baker & McKenzie - - San Diego, San Diego, CA; Kristi Jean Thomas, McKool Smith, Dallas, TX; Martin C. Robson, III, McKool Smith, P.C., Dallas, TX; Robert Marc Manle, McKool Smith, Dallas, TX; Robert M Masters, Paul Hastings Janofsky & Walker-Washington, Washington, DC.

For Dealix Corporation, Defendant: Neal S Manne, Susman Godfrey LLP, Houston, TX; Andrew Wesley Spangler, Brown McCarroll - Longview, Longview, TX; Brooke Ashley-May Taylor, Susman Godfrey, LLP - Seattle, Seattle, WA; Elizabeth L DeRieux, Brown McCarroll, Longview, TX; Max Lalon Tribble, Jr, Susman Godfrey LLP, Houston, TX; Michael Philip Fritz, Susman Godfrey LLP - Dallas, Dallas, TX; Rita Mankovich Irani, Susman Godfrey - Houston, Houston, TX; Sidney Calvin Capshaw, III, Brown McCarroll - Longview, Longview, TX.

For Dealix Corporation, Counter Claimant: Neal S [*2] Manne, Dealix Corporation, Dealix Corporation, Susman Godfrey LLP, Houston, TX.

**JUDGES:** LEONARD DAVIS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** LEONARD DAVIS

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Before the Court is Autobytel's Motion to Compel (Docket No. 183). After considering the parties' written submissions and oral arguments, the motion is **GRANTED in part and DENIED in part.**

### BACKGROUND

Autobytel brought suit for infringement of *U.S. Patent No. 6,282,517* ("the *'517 patent*") on September 24, 2004. Over a year after filing suit, Autobytel added a charge of willful infringement. On June 6, 2006, Dealix produced a non-infringement opinion (the "non-infringement opinion") concerning the *'517 patent* prepared by Mr. Gard of Carr & Farrell ("opinion counsel"). Autobytel also received all documents related to the non-infringement opinion that were in opinion counsel's possession, but Dealix's trial counsel first redacted all work product that had not been communicated to Dealix. Dealix did not produce a privilege log in accordance with Local Patent Rule 3-8(b).

On June 29, 2006, Dealix refused to produce any other communications or work product related to the non-infringement opinion [*3] on the basis that the scope of the privilege waiver did not extend beyond opinion counsel. Autobytel brought a motion to compel production of documents the next day.

Autobytel asserts that Dealix had waived privilege for and seeks the following documents: (1) communications and documents relating to the non-infringement opinion in Dealix's possession, including communications and work product from opinion counsel; (2) communications between Dealix and Cobalt, the entity that acquired Dealix; and (3) opinions or correspondence concerning the non-infringement opinion or concerning

the *'517 patent* from Wilson Sonsini, Dealix's counsel during its merger with Cobalt ("merger counsel"). Autobytel stated at oral argument that it did not seek production of Dealix's trial counsels' work product or trial counsels' e-mail communications with Dealix. Autobytel also seeks a privilege log pursuant to Local Patent Rule 3-8 of withheld documents related to Dealix's defense to willful infringement.

## APPLICABLE LAW

Federal Circuit law governs discovery disputes over "materials relat[ing] to an issue of substantive patent law." *Advanced Cardiovascular Sys. v. Medtronic, Inc., 265 F.3d 1294, 1307 (Fed. Cir. 2001).* [*4] The extent to which a party waives its attorney-client privilege when it asserts the advice-of-counsel defense against a charge of willful patent infringement necessarily involves issues of substantive patent law. *See In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1298 (Fed. Cir. 2006).*

Since willfulness is a question of the accused infringer's state of mind, inquiries into willfulness focus on whether the accused infringer's beliefs and actions were reasonable. *Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992).* The reasonableness of an infringer's reliance on advice of counsel is an important factor in determining whether infringement was willful. *Simmons, Inc. v. Bombardier, Inc., 221 F.R.D. 4, 9 (D.D.C. 2004).*

Whether the infringer believed the advice was competent is relevant to the infringer's reasonable reliance; this inquiry focuses on whether the advice was "'thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable.'" *EchoStar, 448 F.3d at 1303* (quoting *Ortho Pharm., 959 F.2d at 944*). [*5] Also relevant is whether the infringer received any other opinions of counsel regarding the same subject matter of the relied-upon advice. *See id. at 1299.* When a defendant asserts an advice-of-counsel defense, the defendant waives privilege as to both attorney-client communications and communicated work product n1 regarding the subject matter of the opinion because such documents are evidence of a relevant and non-privileged fact, namely what the defendant knew about infringement. *See id. at 1302-03.*

n1 The Court uses this term to include both work product that is actually communicated and work product that reflects a communication.

In *EchoStar*, the defendant had two opinions of counsel regarding infringement, an earlier opinion obtained from in-house counsel and a later opinion from

outside opinion counsel. The defendant chose to rely on the in-house opinion, yet asserted that privilege was not waived for the outside opinion. The lower court in *EchoStar* held that the defendant waived privilege [*6] as to all attorney-client communications and work product regarding infringement-the subject matter of the underlying opinion letter-once the underlying opinion letter was asserted in defense of a willful infringement charge. n2 *TiVo Inc. v. EchoStar Comm'ncs Corp., 2005 U.S. Dist. LEXIS 42481, No. 2:04-CV-1-DF, at *13 (E.D. Tex. 2005)* (Folsom, J.). The defendant sought mandamus challenging the lower court's decision that the waiver included all work product regardless of whether it was communicated to the defendant. *EchoStar, 448 F.3d at 1297.*

n2 TiVo was not seeking attorney-client communications or work product from Echostar's trial counsel.

The Federal Circuit treated the attorney-client-communication waiver and attorney-work-product waiver separately. *Id. at 1300.* The EchoStar court defined the advice-of-counsel privilege waiver broadly, holding that the waiver extends to "'all other communications relating to the same subject matter.'" *Id. at 1299* (quoting *Fort James v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir. 2005).* [*7] The Federal Circuit held that the waiver for attorney-client communications extends beyond communications with the counsel which provided the advice; once a defendant relies upon advice of counsel it "waive[s] the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than [counsel which provided the relied upon advice]." *Id. at 1301.* The *EchoStar* court held that the defendant's reliance on an in-house opinion of non-infringement waived privilege as to its outside-counsel opinion because the outside opinion was "within the same subject matter" of the in-house advice. See *id. at 1299.*

The Federal Circuit held that work-product waiver is not as broad as the attorney-client privilege waiver. *Id. at 1302.* The *EchoStar* court resolved a split of authority in the lower courts by holding that work product that is not communicated to the client is not discoverable. *Id. at 1303.* The Federal Circuit reasoned that uncommunicated work product does not assist in determining whether the client knew it was infringing. *Id.* Reliance on advice of counsel waives the work-product [*8] privilege as to two categories: "documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion let-

ter," and "documents that discuss a communication be-
tween attorney and client concerning the subject matter
of the case but are not themselves communications to or
from the client." *Id. at 1302* (stating that these categories
are not necessarily exhaustive). The *EchoStar* court held
that

> when an alleged infringer asserts its ad-
> vice-of-counsel defense regarding willful
> infringement of a particular patent, it
> waives its immunity for any document or
> opinion that embodies or discusses a
> communication to or from it concerning
> whether that patent is valid, enforceable,
> and infringed by the accused. This waiver
> of both the attorney-client privilege and
> the work-product immunity includes not
> only any letters, memorandum, conversa-
> tion, or the like between the attorney and
> his or her client, but also includes, when
> appropriate, any documents referencing a
> communication between attorney and cli-
> ent.

*Id. at 1304.* The Federal Circuit recognized that redac-
tion might be required to protect information [*9] out-
side the scope of the waiver. *Id.* (stating that parties
should take special care to redact uncommunicated work
product from documents which reference an attorney-
client communication within the scope of the waiver).

## ANALYSIS

### *To whom the waiver applies*

Dealix opposes Autobytel's motion to compel on the
basis that *EchoStar* does not require waiver beyond any
counsel providing formal patent-infringement opinions
and on the basis that the "same subject matter" of the
waiver is limited to the subject matter of the underlying
advice of counsel.

First, Dealix argues that the scope of the waiver ex-
tends only to counsel that provide formal patent-
infringement opinions. Dealix argues that *EchoStar*
rightly prevents a defendant from asserting one non-
infringement opinion while simultaneously asserting
privilege for another opinion regarding infringement and
*EchoStar* should be limited to that context. Autobytel
argues that *EchoStar* requires a broad subject-matter
waiver that extends beyond opinion-counsel documents.

Autobytel seeks discovery of communications from
Dealix's in-house counsel, merger 5 counsel, and opinion
counsel regarding the same subject [*10] matter of the

asserted non-infringement opinion. The advice-of-
counsel defense makes the reasonableness of the in-
fringer's reliance a question of fact. What opinion coun-
sel communicated to the infringer is relevant to that reli-
ance, and Dealix has acknowledged that Autobytel is
entitled to unredacted copies of documents communi-
cated to Dealix by Dealix's opinion counsel. However,
Dealix may have also received advice from other counsel
regarding potential infringement of the *'517 patent* or
regarding the competency of the opinion letter. Such
communications bear directly on whether Dealix's reli-
ance on the non-infringement opinion was reasonable.
The subject-matter approach is in line with the language
of *EchoStar*, which explicitly held that assertion of one
non-infringement opinion waived privilege for "any at-
torney-client communications relating to the same sub-
ject matter, including communications with counsel other
than [opinion] counsel." *EchoStar, 448 F.3d at 1299.*

Because Autobytel does not seek trial-counsel
documents, the Court does not reach the issue of whether
*EchoStar* requires waiver of trial-counsel communica-
tions or communicated work product. [*11] However,
Dealix waived privilege for non-trial-counsel communi-
cations and communicated work product relating to the
same subject matter of its opinion letter.

### *Scope of "same subject matter" waiver*

Next, Dealix asserts that the subject-matter scope of
the waiver in this case is limited to non-infringement
because the "same subject matter" of the waiver is lim-
ited to the underlying opinion subject matter. Autobytel
argues that Dealix's reliance on a non-infringement opin-
ion waives communications regarding infringement, en-
forceability, and validity. At oral argument, Autobytel
further argued that the waiver extends to any attorney-
client communications or communicated work product
that either "concern" the *'517 patent* or are "contempora-
neous" with the non-infringement opinion. There is no
basis for interpreting *EchoStar* to require waiving privi-
lege for any document that merely references a patent or
is generated at approximately the same time as an in-
fringement opinion. *See EchoStar, 448 F.3d at 1303.*
However, whether the waiver extends to all willful-
infringement defenses, or is limited to the subject matter
of the underlying opinion, is a closer question. [*12]

*EchoStar* summarized its separate holdings regard-
ing attorney-client communications and work-product
waiver in broad terms; assertion of an advice-of-counsel
defense waives "immunity for any document or opinion
that embodies or discusses whether that patent was valid,
enforceable, and infringed." *Id. at 1304.* However, the
*EchoStar* court did not squarely address whether the
waiver extends beyond the subject matter of the underly-
ing opinion to include all defenses to willful infringe-

ment. Courts confronting this issue after *EchoStar* have been split. *See Genentech, Inc. v. Insmed Incorp., 2006 U.S. Dist. LEXIS 55992, 2006 WL 2336484, *8 (N.D. Cal. Aug. 10, 2006)* (limiting waiver to the subject matter of the relied-upon opinion); *Informatica Corp. v. Bus. Objects Data Integration, Inc., 2006 U.S. Dist. LEXIS 58976, 2006 WL 2329460, *1 (N.D. Cal. Aug. 9, 2006)* (holding the advice-of-counsel privilege waiver extends to documents related to the opinion which the defendant relies upon); *Affinion Net Patents, Inc. v. Maritz, Inc., 440 F. Supp. 2d 354, 356 (D. Del. 2006)* (holding that the advice-of-counsel privilege waiver applied to any defense to infringement); *Beck Sys., Inc. v. Managesoft Corp., 2006 U.S. Dist. LEXIS 53963, 2006 WL 2037356, [*13] *1 (N.D. Ill. Jul 14, 2006)* (treating waiver as applicable to "attorney-client communications and work-product material on the same subject matter as the legal opinions on which it relies"); *Intex Recreation Corp. v. Team Worldwide Corp., 439 F. Supp. 2d 46, 49 (D.D.C. 2006)* (holding that the subject matter waiver scope includes infringement, validity, and enforceability); *Informatica Corp. v. Bus. Objects Data Integration, Inc., 2006 U.S. Dist. LEXIS 53429, 2006 WL 2038461, *1 (N.D. Cal. Jul. 14, 2006)* (holding the advice-of-counsel privilege waiver is limited to the "subject of the opinion or advice" that defendant relies upon); *Ind. Mills & Mfg., Inc. v. Dorel Indus., Inc., 2006 U.S. Dist. LEXIS 34023, 2006 WL 1749413, *7 (S.D. Ind. May 26, 2006)* (declining to expand the waiver beyond the subject matter of the underlying opinion because *EchoStar* did not "squarely address[] that issue"), *withdrawn on other grounds by Ind. Mills & Mfg., Inc. v. Dorel Indus., Inc., 2006 U.S. Dist. LEXIS 47852, 2006 WL 1993420 (S.D. Ind. Jul. 14, 2006)*.

The Court is not persuaded that *EchoStar* mandates waiver as to unenforceability, validity, and non-infringement when an advice-of-counsel defense of non-infringement [*14] only is asserted. First, a broad application of the *EchoStar* decision is inconsistent with the lower court's holding in that case. The underlying opinion of counsel in *EchoStar* was limited to non-infringement, and the lower court in *EchoStar* had limited the waiver to the subject matter of the underlying opinion. Notably, the Federal Circuit overturned and narrowed the lower court's holding regarding work-product waiver, but it did not disapprove or explicitly broaden the lower court's holding that scope of the waiver is defined by the subject matter of the underlying opinion. n3 Furthermore, the *EchoStar* court cited *Akeva LLC v. Mizuno Corp., 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003)*, in concluding that asserting advice-of-counsel waives privilege for any other attorney-client communications relating to the same subject matter. *Id.* The *Akeva* court also defined the "same subject matter"

as the subject matter of the underlying opinion. *Akeva, 243 F. Supp. 2d at 422.*

> n3 The Federal Circuit cited the lower court's language that introducing an inspection of non-infringement opened to inspection "all related advice.·. . [regarding] potential *infringement*" without criticism. *Id. at 1299* (emphasis added). However, on remand, the lower court ordered the defendant produce "all documents created by [opinion counsel] that relate to any infringement or validity analysis of the '389 patent where said documents (1) were communicated to EchoStar or (2) reflect a communication to EchoStar . . . ." *2005 U.S. Dist. LEXIS 42481, 2:04-CV-1, Docket No. 729.*

[*15]

The purpose of the advice-of-counsel privilege waiver is to allow an inquiry into the infringer's state of mind regarding the infringer's reasonable reliance on its advice of counsel. Non-infringement, invalidity, and unenforceability are separate and independent defenses to infringement. If a defendant has reasonably relied on ultimately erroneous advice of counsel that a patent is invalid, unenforceable, or not infringed, the advice is evidence that the infringement was not willful. *See Ortho Pharm., 959 F.2d at 944.* Therefore, inquiries into the infringer's state of mind regarding infringement defenses not addressed in the underlying opinion are of limited utility in determining whether the infringer's reliance on the underlying opinion is reasonable.

Balanced against this limited utility are the policies of the attorney-client communication privilege and work-product immunity: encouraging attorney-client communications and preventing parties from "piggybacking" on each other's work product. *EchoStar, 448 F.3d at 1301.* The issue of expanding the subject matter of the advice-of-counsel waiver to include all defenses to infringement was not squarely [*16] before the *EchoStar* court; therefore this Court declines to interpret *EchoStar* as requiring a broad and ultimately unhelpful subject-matter waiver.

Autobytel is entitled to discovery related to whether Dealix's reliance on its asserted non-infringement opinion is reasonable. Because Dealix has asserted an opinion of non-infringement in defense of Autobytel's willfulness charge, the scope of the subject matter waiver is limited to potential infringement of the '517 patent.

*Documents included in Autobytel's motion to compel*

Autobytel does not seek discovery of Dealix's trial-counsel work product or attorney-client e-mail commu-

nications. Autobytel does seek disclosure of communications and communicated work product between Dealix and its in-house counsel. Autobytel is not entitled to discovery of in-house counsel communications and communicated work product where Dealix's in-house counsel acted as a mere conduit between trial counsel and Dealix employees. To hold otherwise would effectively allow discovery of trial-counsel communications and work product merely because of how privileged trial-counsel documents were disseminated to Dealix. However, Autobytel is entitled [*17] to in-house counsel communications and communicated work product that include independent advice regarding potential infringement of the *517 patent* or regarding the non-infringement opinion.

Autobytel seeks production of communications between Dealix and Cobalt that relate to infringement or analysis of the *517 patent.* Autobytel stated at oral argument that production of Dealix-Cobalt communications dated within ninety days of the non-infringement opinion is satisfactory and has therefore waived production of documents outside this time frame. Dealix argues that such communications and work product are confidential under the common legal interest doctrine ("CLI") and are not within the scope of the advice-of-counsel defense privilege waiver. *See In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001).*

The CLI doctrine extends the attorney-client privilege to communications prompted by threatened or actual civil or criminal proceedings and intended to facilitate representation between potential co-defendants with a common legal interest and their counsel. *Id. at 710-11; Aiken v. Tex. Farm Bureau Mut. Ins. Co., 151 F.R.D. 621, 623 (E.D. Tex. 1993)* [*18] (Cobb, J.). Although Autobytel did not eventually sue Cobalt, Cobalt and Dealix were potential co-defendants in Autobytel's lawsuit and acted under a threat of imminent litigation by Autobytel. *Cf. Santa Fe, 272 F.3d at 708-09, 713* (finding no potential co-defendant CLI privilege for documents prepared years before suit was filed and not prepared in the anticipation of litigation). Cobalt and Dealix also had a natural and common interest in consulting about a potential infringement suit because the suit might impact the merger of the companies. *See In re LTV Sec. Litig., 89 F.R.D. 595, 604 (N.D. Tex. 1981).* Thus, the CLI privilege extends to communications between Cobalt, Dealix, and their counsel regarding common legal issues that were intended to facilitate representation in possible subsequent infringement litigation. *See Hodges, Grant & Kaufman, 768 F.2d at 721; Aiken, 151 F.R.D. at 623.* However, when Dealix asserted the advice-of-counsel defense, it waived the CLI privilege as to communications or communicated work product related to

potential infringement of the *517 patent* or related to the non-infringement [*19] opinion.

Autobytel also seeks production of attorney-client communications and communicated work product from Dealix's merger counsel that "concern" the *517 patent* or that concern legal advice regarding Dealix's merger with Cobalt. Dealix waived privilege for merger counsel communications or communicated work product regarding either potential infringement of the *517 patent* or the non-infringement opinion. All other privileged communications and communicated work product from merger counsel remain privileged.

Additionally, Autobytel has moved to compel production of all documents relating to the opinion for which privilege has been waived. Dealix produced the opinion and related documents from opinion counsel's records, with uncommunicated work product redacted. Autobytel is entitled to documents and communications between opinion counsel and Dealix in Dealix's possession. *See Comark Commc'ns v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998)* (stating that for reliance to be reasonable, advice of counsel must be competent and based on the best information known to the defendant). Dealix conceded that Autobytel is entitled to all documents in Dealix's possession [*20] received from opinion counsel in unredacted form.

Last, Autobytel has moved to compel Dealix to produce a privilege log pursuant to Local Patent Rule 3-8(a). Dealix argues that a separate log is not necessary because all documents were included in another produced log and because the parties agreed to forego logging post-suit privilege information. While the parties previously agreed not to log post-suit privilege information, this agreement was before willful infringement became an issue in this case. A privilege log will greatly assist in the inquiry into Dealix's state of mind regarding the non-infringement opinion. Accordingly, the Court orders Dealix to produce a privilege log of withheld non-trial-counsel documents relating to its advice-of-counsel defense.

**CONCLUSION**

Accordingly, the Court **GRANTS in part** Autobytel's motion to compel production of documents. Dealix is **ORDERED** to produce: (1) all non-trial-counsel attorney-client communications regarding either potential infringement of the *517 patent* or the non-infringement opinion; (2) all non-trial-counsel work product communicated to Dealix regarding either potential infringement of the *517 patent* or [*21] the non-infringement opinion; and (3) all non-trial-counsel uncommunicated work product that references an attorney-client communication regarding either potential infringement of the *517 patent* or the non-infringement

opinion. These documents may be redacted to remove information that is either unrelated to infringement of the *'517 patent*, unrelated to the non-infringement opinion, or that represents uncommunicated work product. With regard to communications and work product communicated between Dealix and Cobalt, this waiver is limited to documents within ninety days before or after the date on which Dealix received the non-infringement opinion. Dealix must also produce all documents in Dealix's possession received from opinion counsel in unredacted form. Finally, Dealix is ordered to produce a privilege log for non-trial-counsel documents pursuant to Local Patent Rule 3-8. Autobytel's motion to compel is **DENIED** in all other respects.

**So ORDERED and SIGNED this 3rd day of October, 2006.**

**LEONARD DAVIS**

**UNITED STATES DISTRICT JUDGE**