UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATIC CONTROL COMPONENTS, INC.,

    PLAINTIFF/COUNTERCLAIM
    DEFENDANT

v.

LEXMARK INTERNATIONAL, INC.,

    DEFENDANT/COUNTERCLAIM
    PLAINTIFF

v.

WAZANA BROTHERS INTERNATIONAL,
INC. d/b/a MICRO SOLUTIONS ENTERPRISES

    COUNTERCLAIM DEFENDANT

v.

PENDL COMPANIES, INC.

    COUNTERCLAIM DEFENDANT

v.

NER DATA PRODUCTS, INC.

    COUNTERCLAIM DEFENDANT

Civil Action No. 04-CV-84-GFVT
Pending in United States District Court
Eastern District of Kentucky
Central Division at Lexington
Honorable Gregory F. Van Tatenhove

Miscellaneous Action No. 06-00478 (JDB)

**LEXMARK INTERNATIONAL INC.'S STATUS REPORT REGARDING PENDING
MOTIONS IN THE UNDERLYING EASTERN DISTRICT OF KENTUCKY ACTION**

    Defendant and Counterclaim Plaintiff Lexmark International, Inc. ("Lexmark")

respectfully files this status report in accordance with this Court's Order of December 8, 2006

(DE #11). That Order directed the parties to describe by January 19, 2007 the status of the

RECEIVED

JAN 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

referenced Wyatt and Pendl motions pending in the underlying action in the Eastern District of Kentucky and any other related matters that may affect disposition of Constantine Cannon's motion to quash pending before this Court.[1]

To date, the Eastern District of Kentucky has not made any ruling with respect to the referenced Wyatt and Pendl motions. However, two other Orders have issued that the Court may wish to consider in adjudicating Constantine Cannon's motion to quash.

On January 17, 2007, in a related Motion to Quash filed by Pendl's counsel, Stites & Harbison, PLLC ("Stites"), the Western District of Kentucky issued an Order (a copy of which is attached as Exhibit A) granting in part and denying in part Stites' motion to quash Lexmark's subpoena.

On January 10, 2007, the Eastern District of Kentucky Court, issued an Order (a copy of which attached as Exhibit B) finding that Static Control waived privileged relating to Static Control's efforts to defeat Lexmark's Prebate program. This waiver by Static Control is on a different basis than that at issue before this Court.

Respectfully submitted,

Dated: January 19, 2007

By: _Chirz B. Rith_

Joseph M. Potenza
Robert S. Katz
Frederic M. Meeker
Christopher B. Roth
BANNER & WITCOFF, LTD.

---

[1] On January 19, 2007, Constantine Cannon advised Lexmark's counsel that they will file a separate status report in view of the Western District of Kentucky Order discussed herein (as opposed to a joint report that the parties previously discussed submitting). Lexmark does not view this Court's Order of December 8, 2006 to be an invitation for further briefing on the issue. Nevertheless, Lexmark reserves the right to respond to any arguments Constantine Cannon may present in its report.

1001 G Street, N.W., Suite 1100
Washington, DC 20001
Telephone: (202) 824-3000
Facsimile: (202) 824-3001

Mark T. Banner
Christopher J. Renk
Timothy C. Meece
Binal J. Patel
Matthew P. Becker
Jason S. Shull
Robert H. Resis
Allen E. Hoover
Bradley Rademaker
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Andrew CopenHaver
Hada Haulsee
WOMBLE CARLYLE SANDRIDGE
AND RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3629
Facsimile: (336) 721-3660

Charles E. Shivel, Jr.
Steven B. Loy
Hanly A. Ingram
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507
Telephone: (859) 231-3000
    Facsimile: (859) 253 1093

**Attorneys for**
**Defendant/Counterclaim Plaintiff,**
**Lexmark International, Inc.**

## CERTIFICATION

This is to certify that a true and accurate copy of the foregoing has been served by hand delivery or Federal Express on January 19, 2007 as follows:

**VIA FEDERAL EXPRESS**
W. Craig Robertson III
Mickey T. Webster
Wyatt Tarrant & Combs, LLP
250 W. Main Street, Suite 1600
Lexington KY  40507
Attorneys for Static Control Components, Inc.

**VIA HAND DELIVERY**
Seth D. Greenstein
Constantine Cannon, P.C.
1627 Eye Street, NW
Tenth Floor
Washington, D.C.  20006
Attorneys for Static Control Components, Inc.

**VIA HAND DELIVERY**
Stefan M. Meisner, William H. Barrett,
Melise R. Blakeslee, Paul E. Poirot, John J. Dabney
McDermott, Will & Emery
600 13TH Street, N.W.
Washington, D.C. 20005-3096
Attorneys for Static Control Components, Inc.

**VIA FEDERAL EXPRESS**
Kevin M. Bolan
McDermott Will & Emery LLP
28 State Street
Boston, MA  02109-1775
Attorneys for Static Control Components, Inc.

**VIA FEDERAL EXPRESS**
James B. Heaton, III
Allison W. Freedman
Christopher D. Landgraff
Jason L. Peltz
Barlit Beck Herman Palenchar & Scott, LLP – Chicago
54 W. Hubbard Street, Suite 300
Chicago, IL  60610
Attorneys for Static Control Components, Inc.

**VIA FEDERAL EXPRESS**
Joseph C. Smith, Jr.
Alison G. Wheeler
John M. Hughes
Barlit Beck Herman Palenchar & Scott, LLP – Denver
1899 Wynkoop Street
8th Floor
Denver, CO  80202
Attorneys for Static Control Components, Inc.

**VIA FEDERAL EXPRESS**
Stanley L. Amberg
11 Carolyn Lane
Chappaqua, New York 10514
Attorneys for Static Control Components, Inc.

**VIA FEDERAL EXPRESS**
Douglas L. McSwain
Andrew DeSimone
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1400
Lexington, KY  40507
Attorneys for Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises

**VIA FEDERAL EXPRESS**
Darren S. Enenstein; Steven Dotan
Ned Gelhaar; O. Andrew Wheaton
Geronimo Perez; Stephen J. Rafferty
Moldo Davidson Fraioli Seror &
Sestanovich, LLP
2029 Century Park East, 21st Floor
Los Angeles, CA  90067
Attorneys for Wazana Brothers International, Inc.  d/b/a Micro Solutions Enterprises

**VIA FEDERAL EXPRESS**
Elizabeth L. Swanson
Swanson and Associates
9454 Wilshire Boulevard
Suite 500
Beverly Hills, CA  90212
Attorneys for Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises

**VIA FEDERAL EXPRESS**
Steven P. Bogart
Reinhart Boerner Van Deuren S.C.
1000 N. Water Street

Suite 2100
Milwaukee, WI 53202
Attorneys for Wazana Brothers International, Inc. d/b/a Micro Solutions Enterprises

**VIA FEDERAL EXPRESS**
Andrew Oatway
Morisi & Oatway, P.C.
1400 Hancock Street, 3rd Floor
Quincy, MA 02169-5203
Attorneys for NER Data Products, Inc

**VIA FEDERAL EXPRESS**
Michael R. Reinemann
Thomas C. O'Konski
Cesari & McKenna, LLP
88 Black Falcon Avenue
Boston, Massachusetts 02210
Attorneys for NER Data Products, Inc

**VIA FEDERAL EXPRESS**
Jay E. Ingle
Jackson Kelly PLLC
P.O. Box 2150
175 E. Main Street, Suite 500
Lexington, KY 40588-9945
Attorneys for NER Data Products, Inc

**VIA FEDERAL EXPRESS**
Elizabeth Thompson
Daniel E. Danford
Stites & Harbison, PLLC
Suite 2300, 250 W. Main Street
Lexington, KY 40507
Attorneys for Pendl Companies, Inc.

**VIA FEDERAL EXPRESS**
Jack A. Wheat; Joel T. Beres
Jennifer Kovalcik; William Charles Ferrell, Jr.
John W. Scruton; Carol Dan Browning
Matthew A. Gillies; Julie McDonnell Payne
Jack A. Jeziorski; Jeffrey A. Haeberlin
Stites & Harbison, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Attorneys for Pendl Companies, Inc.

**VIA FEDERAL EXPRESS**
James R. Michels
Alexandra MacKay
Stites & Harbison, PLLC
424 Church Street, Suite 1800
Nashville, TN 37219
Attorneys for Pendl Companies, Inc.

**VIA FEDERAL EXPRESS**
David H. Weber
Liebmann, Conway, Olejniczak
& Jerry, S.C.
231 South Adams Street
Green Bay, Wisconsin 54301
Attorneys for Pendl Companies, Inc.

**VIA FEDERAL EXPRESS**
Michael P. Foley
Rendigs, Fry, Kiely & Dennis, L.L.P.
900 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202-3688
Attorneys for Pendl Companies, Inc.

**VIA FEDERAL EXPRESS**
Terry J. Booth
Amy E. Wochos
Piper & Schmidt
Fifth Floor – Van Buren Building
733 North Van Buren Street
Milwaukee, WI 53202-4709
Attorneys for American Family Mutual Insurance Company

BY: _____

Attorneys for Lexmark International, Inc.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STATIC CONTROL COMPONENTS, INC.                                    PLAINTIFF

v.                                                   CIVIL ACTION NO. 3:06MC-42-S

LEXMARK INTERNATIONAL, INC.                                        DEFENDANT

**ORDER**

This matter is before the Court on the motion of the law firm of Stites &

Harbison, PLLC (Stites), pursuant to Rule 45(c), to quash a subpoena served on it by Lexmark

International, Inc. (Lexmark). The subpoena arises from a declaratory judgment action now

pending in the District Court for the Eastern District of Kentucky in Static Control Components,

Inc. v. Lexmark International, Inc., Case No. 04-CV-84-KSF. In that action, Lexmark has filed a

counterclaim for a patent infringement against Pendl Companies, Inc., Stites' client. Pendl is

one of a number of companies that re-manufactures toner cartridges for Lexmark's laser printers

so that they may be reused. Re-manufacture of these toner cartridges is contrary to Lexmark's

Prebate Program by which Lexmark sells its patented toner cartridges at a reduced price subject

to a single-use patent license that provides that the affected cartridge may be used only once.

Lexmark claims that the re-manufacture of its single-use cartridges by Pendl and the other

Defendants infringes its toner cartridge patents.

# I. BACKGROUND

Lexmark originally requested Pendl to produce all documents relating to any

claimed reliance on advice of counsel in August of 2005. At that time, Pendl asserted the

attorney-client privilege and work-product doctrine. Subsequently, on October 12, 2006, Stites

notified Lexmark's counsel that Pendl would be relying at trial on advice of counsel as one of its defenses. Pendl then produced an attorney opinion letter referred to as the "Becker opinion,"[1] but did not produce any other documents relating to the subject matter of the opinion letter.

On October 18, 2006, Lexmark issued a subpoena on Stites (DN 1, Exh. 4). The subpoena required the law firm to produce certain categories of documents by October 27, 2006, and ordered the appearance of the law firm's counsel for deposition on November 2, 2006. The subpoena requested production of all documents relating to the subject matter of the Becker opinion letter; all communications between Stites and Pendl relating to the subject matter of the opinion letter; all communications between Stites and Pendl relating to Pendl's advice of counsel defense, and the scope, validity or enforceability of Lexmark's prebate program. The subpoena continued to request all documents containing communications between the law firm and Pendl regarding infringement of Lexmark's patents, the anti-trust implications and contract law concerns of Lexmark's prebate program, and all communications between the law firm and Pendl relating to the legal and/or factual bases of the Becker opinion letter (DN 1, Exh. 4, pp. 8-9). Included with the subpoena was a list of deposition topics identical in substance to the above described requests for production of documents.

## II. ARGUMENTS

### A.    Stites' Position.

Stites responded to the subpoena with a motion to quash. In support of its motion,

---

[1] The opinion letter has been filed under seal as Exhibit F to Lexmark's response to the motion to quash.

Stites included the affidavit of its counsel, Joel Beres, who avers that Pendl hired his law firm

solely to act as its trial counsel. Prior to being retained, Stites had never performed any legal

work for Pendl. According to the declaration, the firm has never provided the company with

advice concerning the validity of any Lexmark patent or the validity of the Becker opinion letter.

Beres's declaration insists that "every communication between Stites and Pendl [and each and

every document provided to Pendl] has been limited to discussions of litigation or trial strategy."

(DN 1, pp. 3-4). Accordingly, Stites concludes that Lexmark's actual intention in serving the

subpoena is to "pillage" its litigation files in an effort to gain an unfair advantage in the lawsuit

pending in the Eastern District.

Stites argues that the advice of counsel defense weighs only those

communications and documents that were created *before* the underlying lawsuit was filed.

Dunhall Pharms. v. Discus Dental, 994 F. Supp. 1202, 1206 (C.D.Cal. 1998) ("Once the lawsuit

is filed, the waiver of work-product protection ends."). Those courts that do extend the attorney-

client waiver beyond the filing of the lawsuit, according to Stites, supposedly limit discovery to

non-litigation counsel while protecting the attorney-client privilege as it applies to litigation

counsel. See Tivo v. Echostar, No. CIVA 2:04CV1, 2005 WL 4131649 at * 3-4 (E.D. Tex.

2005). Stites insists that even the most liberal federal courts still protect litigation files by

limiting production of litigation counsel opinions to those opinions that contradict the client's

previous patent opinion letters. See Intex Recreation Corp. v. Metalast, Civ. No. 01-1213(JDB),

2005 U.S. Dist. LEXIS 10149 at *10 (D.D.C. March 2005).

Stites also challenges the effort to depose its counsel (DN 1, pp. 7-8). Stites

argues that taking the deposition of opposing counsel is disfavored and is disruptive of the

attorney-client relationship. United States v. Yonkers Bd. of Ed., 946 F.2d 180, 185 (2nd Cir.

1991) (citing Alcorn Labs. v. Pharmacia Corp., 225 F. Supp.2d 340 (S.D. N.Y. 2002)).

Accordingly, Stites maintains that Lexmark must meet the test of Shelton v. American Motors

Corp., 805 F.2d 1323, 1327 (8th Cir. 1987) as adopted by the Sixth Circuit in Nationwide Mut.

Ins. Co. v. Home Ins. Co., 278 F.3d 621, 628-29 (6th Cir. 2002). Under this test, Lexmark must

show that not only is the information sought is not privileged, but also (1) "no other means exists

to obtain the information" and (2) "the information is crucial to the preparation of the case."

Nationwide Mut. Ins. Co., 278 F.3d at 628-29. Stites insists that Lexmark cannot meet the

Shelton test because the information sought remains privileged, other readily available means

exist to discover such information, and Lexmark has not shown that deposing Stites is "crucial"

to its case (DN 1, p. 8).


**B.    Lexmark's Position.**

       Lexmark responds that its subpoena is not an improper attempt to discover the

litigation strategy of Stites, and instead is supported by well-established case law. When a party

voluntarily discloses privileged communication, such as an attorney opinion letter, Lexmark

maintains that the party waives the attorney-client privilege and work-product protection for all

documents on the subject of the opinion letter, In re Columbia /HCA Healthcare Corp. Billing

Practices Litigation, 1293 F.3d 289,. 302-07 (6th Cir. 2002), as well as all communications with

counsel that involve the same subject. In re Powerhouse Licensing, 441 F.3d 467, 473 (6th Cir.

2002).

       Lexmark relies heavily on the recent patent decision of the Federal Circuit Court

4

in In re Echostar Communications Corp., 448 F.3d 1294, 1299 (Fed. Cir. 2006) to support its

waiver argument.  Under Echostar, when Pendl asserted the advice-of-counsel defense, Lexmark

reasons that it automatically waived the attorney-client privilege and work-product protection for

any document or communication to or from Pendl concerning the subject matter of the Becker

opinion letter, as well as any documents exchanged between Pendl and Stites that relate to the

subject matter of the letter because such communications relate directly to the state of mind of

Pendl and its willfulness.  Id. ("The widely applied standard for determining the scope of waiver

of attorney-client privilege is that the waiver applies to all other communications relating to the

same subject matter.") (citing James Corp. v. Solo Cup Co., 412 F.3d 1340, 1349 (Fed. Cir.

2005).

        Lexmark insists that waiver of the privilege applies equally to both opinion

counsel and litigation counsel although admittedly not to litigation counsel's trial strategy.

Lexmark reasons that waiver applies to litigation counsel because Echostar relies specifically on

the decision of Akeva, LLC v. Mizuno Corp., 243 F. Supp.2d 418 (M.D. N.C. 2003), in which

the court held that "all opinions received by the client relating to infringement must be revealed,

even if they come from defendants' trial attorney."  Akeva, 243 F.Supp.2d at 423.  Echostar also

extends the temporal scope of the waiver to advice given *after* suit was filed where "the advice is

relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the

litigation."  In re Echostar, 448 F.3d at 1303.  See also Akeva LLC v. Mizuno Corp., 423 F.

Supp. at 423.  ("[O]nce a party asserts the defense of advice of counsel, this opens to inspection

the advice received during the entire course of the alleged infringement.  Consequently, the

waiver of attorney-client privilege or work-product protection covers all points of time,

including up through trial.").

To hold otherwise, Lexmark reasons, would mean that a defendant in a patent infringement action could selectively waive the privilege as to favorable advice such as the Becker opinion letter, while simultaneously asserting the attorney-client privilege and work-product protection to prevent the disclosure of unfavorable advice, thereby unfairly using the attorney-client privilege as both a sword and a shield. See In re Echostar, 448 F.3d at 1301. ("[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive privilege for favorable advice while asserting its privilege on unfavorable advice.")

Lexmark adds that Magistrate Judge Todd has already ruled in Lexmark's favor in the underlying litigation in the Eastern District of Kentucky, Static Control Components, Inc. v. Lexmark International, Inc., 2006 U.S. Dist. LEXIS 40612 (E.D. Ky., 2006) (DN 3, p. 12, Exh. A). In his decision of June 15, 2006, Magistrate Judge Todd reaffirmed that Static Control had waived the attorney-client privilege and work-product protection by its reliance on what has become known as the "Blakey opinion letter" as to "all documents pertaining to Lexmark's prebate program." Id. at *22. See also, Convolve, Inc. v. Compac Computer Corp. and Seagate Tech. Inc., 2006 U.S. Dist. LEXIS 69425 (S.D. N.Y., Sept. 27, 2006) (finding a waiver of the attorney client privilege as to litigation counsel Stites in a separate patent infringement action in which the accused infringer asserted the advice-of-counsel defense).

Lexmark concludes that no per se rule prohibits it from taking the deposition of trial counsel. In fact, the district court for the Southern District of New York in Convolve v. Compac, 224 F.R.D. at 105 ordered defendant Seagate not only to produce all documents concerning communication with its attorneys, including trial counsel, but also to provide

6

deposition testimony on the subject matter of the opinion letter at issue in that case.

Accordingly, Lexmark reasons that a refusal to allow it to depose trial counsel who

communicated with Pendl concerning the validity, enforceability and/or infringement of the

Lexmark patents would be not only contrary to the <u>Convolve</u> decision, but also to the holding of

the federal circuit in <u>Echostar</u>.

### III.  LEGAL ANALYSIS

  Stites has filed a motion to quash the Lexmark subpoena pursuant to Rule 45(c) of

the Federal Rules of Civil Procedure.  Stites therefore has the burden of persuasion under Rule

45(c).  <u>Travelers Indemnity Co. v. Met. Life Ins. Co.</u>, 228 F.R.D. 111, 113 (D. Conn. 2005)

("The burden of persuasion in a motion to quash a subpoena is born by the movant.") (citing

<u>United States v. IBM</u>, 83 F.R.D. 97, 104 (S.D.N.Y. 1979); <u>Johnson v. Bryco Arms</u>, 226 F.R.D.

441, 445 (E.D. N.Y. 2005); <u>Green v. Baca</u>, 226 F.R.D. 624, 653 (C.D. Cal. 2005).  See also 9

Wright & Miller, <u>Federal Practice & Procedure,</u> § 2449 at p. 46 (1995).

  The quashing of a subpoena that otherwise seeks relevant evidence is considered

to be an extraordinary measure.  <u>See</u> <u>Flanagan v. Wyndham Int'l, Inc.</u>, 231 F.R.D. 98, 102

(D.D.C. 2005).  Absent extraordinary circumstances, such relief is usually considered to be

inappropriate when compared to the less drastic remedy of modification.  <u>Id.</u> (citing <u>Salter v.</u>

<u>Upjohn Company</u>, 593 F.2d 649, 651 (5th Cir. 1979)).  <u>See</u> Heat & Control, Inc. v. Hester

Industries, Inc.</u>, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (A court should be loathe to quash a

subpoena if other protection of less absolute character is possible.).  Therefore, the burden upon

a movant who seeks to quash a subpoena pursuant to Rule 45(c) is greater than if the movant

were seeking more limited protection. <u>Westinghouse Electric Corp. v. City of Burlington</u>, 351

F.2d 762, 766 (D.C. Cir. 1965).

       Here, Stites relies primarily upon the attorney-client privilege and work-product

doctrine as a basis on which to quash the challenged subpoena. The general law relating to

privileges in the Sixth Circuit provides that "the burden of establishing the existence of a

privilege rests with the person asserting it." <u>United States v. Dakota</u>, 197 F.3d 821, 825 (6th Cir.

2000). The Sixth Circuit explained in <u>In re Columbia/HCA Healthcare Corp. Billing Practices

Litigation</u>, 293 F.3d 289, 294 (6th Cir. 2002), <u>cert. dismissed,</u> 539 U.S. 977 (2003) that "claims of

attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of

information discoverable during the course of a lawsuit.'" <u>Id.</u> (citing <u>United States v. Collis</u>, 128

F.3d 313, 320 (6th Cir. 1997)). Accordingly, the privilege will apply only when needed to

achieve its purpose of protecting communications necessary to obtain legal advice. <u>In re

Antitrust Jury,</u> 805 F.2d 155, 162 (6th Cir. 1986).

       Although the law of the Sixth Circuit governs procedural matters that are not

unique to patent issues, <u>In re Regents of the Univ. of Calif.,</u> 101 F.3d 1386, 1390 n.2 (Fed. Cir.

1996), the resolution of discovery disputes and other procedural issues unique to patent litigation

is controlled by the case law of the federal circuit. <u>Intex Recreation Corp. v. Team Worldwide

Corp.,</u> 439 F. Supp.2d 46, 48 (D.D.C. 2006) (citing <u>Panduit Corp. v. Allstate's Plastic Manuf.

Co.,</u> 774 F.2d 1564, 1574-75 (Fed. Cir. 1984)). As explained in <u>Advanced Cardiovascular

Systems v. Medtronic</u>, 265 F.3d 1294, 1307 (Fed. Cir. 2001), "Federal Circuit law applies when

deciding whether particular written or other materials are discoverable in a patent case, if those

materials relate to an issue of substantive patent law. <u>Id.</u> Because "questions of privilege and

discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law," Federal Circuit law will govern issues relating to the scope of attorney-client privilege and work-product doctrine waiver that arise when an accused infringer asserts the advice-of-counsel defense. In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803-04 (Fed. Cir. 2000).

      The critical question in this instance certainly is one of substantive patent law. It involves the scope of the attorney-client privilege and work-product protection waiver that results when an accused patent infringer raises the advice-of-counsel defense to a claim of willful patent infringement. No dispute exists that Stites' client Pendl has raised the advice-of-counsel defense in this action based on the Becker opinion letter. The only question is how broad the resulting waiver should be as a result of the asserted defense and the alleged ongoing willful infringement.

      When an accused infringer is faced with a claim of willful patent infringement, one of the factors that the trier of fact may consider is "whether an accused infringer, with knowledge of a patent, investigated the scope of the patent and formed a good-faith belief it was invalid or not infringed." Read Corp. v. Portec, Inc., 970 F.2d 816, 826-28 (5th Cir. 1987). In other words, the accused must persuade the factfinder that it held a good-faith belief of non-infringement. Tivo, Inc. v. Echostar Comm. Corp., No. Civ. 2:04CV1 (DF), 2005 WL 4131649 at *4 (E.D. Tex. 2005). Willfulness, therefore, is a question of the infringer's state of mind with the primary focus falling on the reasonableness of the alleged infringer's beliefs and actions.[2]

---

[2] Whether the accused infringer obtained a competent patent opinion is only one of the factors to be considered under the totality of the circumstances test. See Coerced Waiver of the Attorney-Client Privilege for Opinions of Counsel in Patent Litigation, 80 Minn.L.Rev. 167, 172

<u>Ortho Pharm. Corp. v. Smith</u>, 959 F.2d 936, 944 (5th Cir. 1992); <u>American Medical Systems, Inc.</u> <u>v. Medical Engineering Corp.</u>, 6 F.3d 1523, 1531 (5th Cir. 1993).

The general rule in patent infringement actions is that once a party announces its reliance on the advice-of-counsel defense in response to a claim of willful infringement, the attorney-client privilege is waived. <u>In re Echostar Comm. Corp.</u>, 448 F.3d 1294, 1299 (Fed. Cir. 2006). Further, "The widely accepted standard for determining the scope of waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." <u>Ft. James Corp. v. Solo Cup Co.</u>, 412 F.3d 1340, 1349 (Fed. Cir. 2005); <u>Akeva LLC</u>, 243 F.Supp.2d at 422 ("The cases dealing with discovery of attorney-client and work-product material appear to be in general agreement that the client relying on advice of counsel waives attorney-client privilege with respect to the entire subject matter of the waiver and not just the specific opinion letter proffered.").

Federal law is decidedly unsettled, however, as to the complete scope of the privilege waived when advice-of-counsel is raised as a defense to willfulness in a patent action. <u>Tivo</u>, 2005 WL 4131649 at *4; J.Carraway, <u>Discovery Issues in Patent Cases</u>, 875 PLI Patents, Copyrights and Trademarks, 137 (Sept.-Nov. 2006) ("[T]here is substantial dispute among the district courts regarding how much the waiver encompasses."); Michael Molono, <u>In re Echostar,</u> <u>Attorney-Client Privilege and Work-Product Immunity</u>, 886 PLI Patents, Copyrights,

─────────────────

(1995). Other factors include: evidence of intentional copying; prior investigation of the scope of the patent claims; concealment by the alleged infringer; a good faith effort to "design around" the patented invention; the circumstances surrounding license negotiations; the behavior of the alleged infringer as a party to the litigation; the size and financial condition of the infringer; and the merit or non-merit of any issues of validity, infringement and willfulness. <u>Akeva</u>, 243 F.Supp.2d at 420 n. 2.

Trademarks 79, 87 (Nov.-Dec. 2006) ("Prior to Echostar ... the district courts varied wildly as to

the treatment of these waivers."). Nowhere is this confusion more pronounced than in those

courts considering whether the waiver of the privilege should extend to trial counsel in patent

actions. See Genetech, Inc. v. Insmed, Inc., 442 F. Supp.2d 842 (N.D. Cal. 2006) ("In short,

courts that have considered the issue of waiver with respect to trial counsel have not arrived at

any consistent rulings.") (collecting cases).

This division of opinion was discussed by Judge Brazil in Sharper Image Corp. v.

Honeywell Int'l, Inc., 222 F.R.D. 621, 625 n. 4 (N.D. Cal. 2004), wherein the Judge wrote:

> While the courts generally agree that a defendant who invokes the
> "advice of counsel" defense to a claim of willfulness waives the
> protections of the attorney-client privilege for communications that
> occurred before the suit was filed and that relate to subjects
> addressed in the invoked advice, there is considerable division of
> opinion about how far (if at all) the waiver extends to work-
> product that counsel generated before the suit was filed but did not
> share with the defendant..., There also are sharp divisions of
> opinion about whether any waiver reaches into the period after the
> defendant was served with the complaint.

Id. at 625 n. 4.

Some of the sharp division mentioned by Judge Brazil was resolved in the recent

decision of the Federal Circuit announced in In re Echostar Communications Corp., 448 F.3d

1294 (Fed. Cir. 2006). In Echostar, Tivo sued Echostar for patent infringement. Echostar, 448

F.3d at 1297. Echostar asserted reliance on advice of counsel as a defense. Before Tivo filed

suit, Echostar relied solely on the advice of its in-house counsel. Id. Echostar obtained

additional advice from outside patent counsel after suit was filed, but decided not to rely upon it.

Tivo sought production of documents in the possession of both Echostar's inside counsel and its

outside counsel, Merchant & Gould. Tivo made no attempt to obtain documents from trial

11

counsel. Id.

The district court held that by relying on advice of its in-house counsel, Echostar had waived the attorney-client privilege and work-product protection relating to the advice of Merchant & Gould. The district court also held that the scope of the waiver included communications made either before or after Tivo filed its complaint. Finally, the district court erroneously held, as it would turn out, that all such work product was discoverable, regardless of whether or not it was communicated to Echostar, although Echostar could redact information that related only to trial preparation or information unrelated to infringement. Id.

Echostar did produce two infringement opinions from Merchant & Gould, but it did not produce any work-product related to the opinions. The district court on reconsideration reiterated that the waiver of immunity extended to all work-product of Merchant & Gould regardless of whether it was communicated to Echostar. Id. at 1297. Echostar then filed a petition for a writ of mandamus in the Federal Circuit Court with respect to those documents of outside counsel that were not provided to it.

On appeal, the Federal Circuit Court agreed with the district court that the waiver of attorney-client privilege would apply to attorney-client communications related to the same subject matter "including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould." In re Echostar, 448 F.3d at 1299 (citing Akeva, LLC v. Mizuno Corp., 243 F. Supp.2d 418, 423 (M.D. N.C. 2003)). The Federal Circuit Court, however, did not agree with the trial court concerning the waiver of work-product not communicated to Echostar. On this point, the court noted that "the attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does

12

not necessarily waive the other." Id. at 1300 (citing Carter v. Gibbs, 909 F.2d 1450, 1451 (Fed. Cir. 1990) (*en banc*).

        In particular, the court pointed out that "Work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. Instead, work-product waiver only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product." Id. at 1302. In a footnote, the Federal Circuit rejected in part the argument of Echostar that the waiver of opinions does not extend to advice and work product given after litigation began. The court observed that "While this may be true when the work product is never communicated to the client, it is not the case when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation." Id. at 1302 n. 4 (citing Akeva LLC, 243 F. Supp.2d at 423) ("[O]nce a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement.")

        Ultimately, the Federal Circuit in Echostar recognized three categories of work product potentially relevant to the advice-of-counsel defense. Id. at 1302. The first category included those documents that contain communications between the attorney and the client concerning the subject matter of the case, such as an opinion letter. The court found this first category of documents to be discoverable holding that:

> As to the first category, we already noted in section A that when a party relies on the advice-of-counsel as a defense to willful infringement the party waives its attorney-client privilege for all communications between the attorney and the client, including any documentary communications such as opinion letter and memoranda.

Id. at 1302 (citing Akeva, 243 F. Supp.2d at 423).

The court also found a second category of work product to be discoverable - - documents that discuss a communication between an attorney and client concerning the subject matter of the case but are not themselves communications to or from the client. Id. at 1302 (citing Thorn EMI N.A. v. Microntech, 837 F. supp. 616, 621 (D. Del. 1993)). This category of documents includes those documents that although not provided to the client reference a specific communication to the client that substantively discusses the subject of the patent opinion letter. Id. at 1304.

The third and final category of work product discussed by the Federal Circuit in Echostar is that category that includes documents analyzing law, facts, and trial strategy that reflects the attorney's mental impressions but were not given to the client. Echostar holds that this category of work product, which was never communicated to the client, is not discoverable. Id. at 1303. This is so because

> work-product waiver extends only so far as to inform the court of the *infringer's state of mind.* Counsel's opinion is not important for its legal correctness. It is important to the inquiry whether ... [the infringer's investigation] is 'thorough enough, as combined with other factors, to instill a belief in the infringer that the court might reasonably hold the patent is invalid, not infringed or unenforceable.'

Id. at 1303 (citing Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992)). Accordingly, the Federal Circuit in Echostar in this respect reversed the ruling of the district court that had required the disclosure of non-communicated attorney work product. In all other respects, the Federal Circuit in Echostar affirmed the decision of the district court.

This Court has offered up a extended summary of Echostar for several reasons. First, Echostar is an important patent law case that is frequently cited by the federal courts and

14

commentators when faced with the question of waiver of the attorney-client privilege and work-product protection occasioned by an accused infringer's assertion of reliance on advice-of-counsel as a defense. Second, and just as importantly, Lexmark relies heavily on Echostar for the proposition that waiver of the privilege extends not only to an accused infringer's trial counsel, but also to all work product that in any fashion involves the subject matter of the Becker opinion letter, so long as it was communicated to Pendl.

Several federal courts have given Echostar the type of broad reading that Lexmark now urges upon this Court. See Convolve, Inc. v. Compaq Computer Corp. and Seagate Tech., Inc., 2006 U.S. Dist. LEXIS 69425 (S.D.N.Y. Sept. 27, 2006); Tivo, Inc. v. Echostar Comm. Corp., Case No. CIV A. 2:04CV1(DF), 2005 WL 4131649 (E.D. Tex. Sept. 26, 2005). At the other extreme, there are those courts that entirely refuse to extend the Echostar decision to issues of waiver that involve trial counsel. See Ampex v. Eastman Kodak Co., Case No. CIV A. 04-1373-KHA, 2006 WL 1995140 (D. Del. July 17, 2006) ("Echostar did not even address the issue of communications with trial counsel."). See gen. Lees, Summersgill & Hirsch, The Doctrine of Willful Patent Infringement After Knorr-Bremse: Practical Problems and Recommendations, 7 Sedona Conf. J. 169 (Fall 2006) ("Although trial counsel communications were not at issue [in Echostar], some have interpreted Echostar to extend even to communications with trial counsel.").

As one can see, Echostar did not authoritatively resolve the question of whether the waiver applies to trial counsel as well as opinion counsel. Echostar did resolve several major issues that had divided the federal courts. Echostar held that the waiver applies to post-suit communications thereby rejecting the approach of Dunhall, 994 F. Supp. at 1206. Echostar also

held that the waiver did not apply to work product which was not communicated to the alleged

infringer, thereby rejecting decisions such as Novartis Pharm. Corp. v. Eon Labs. Manuf., Inc.,

206 F.R.D. 396 (D. Del. 2002) (finding that all materials related to the subject matter of the

opinion letter, whether communicated or not to the client, were subject to the waiver). Echostar,

however, at best can only be read indirectly as support for the proposition that the waiver applies

to trial counsel. Molano, In re Echostar, Attorney-Client Privilege, and Work-Product

Immunity, 886 PLI Patents, Copyrights & Trademarks 79 (Nov. - Dec. 2006) ("Dicta [in

Echostar] indicates this [waiver] might apply to relevant communications with trial counsel....").

It must be kept in mind that Echostar did not involve the question of whether the

waiver applied to trial counsel. No attempt was made in Echostar by Tivo to obtain the work

product of trial counsel. What instead was at issue was the work product of outside opinion

counsel. While Echostar did cite to the Akeva decision, which did enforce the waiver as to trial

counsel, Akeva involved the unique situation in which trial counsel also acted as opinion

counsel. Stites has never acted as opinion counsel in this case. Therefore, Akeva is materially

distinguishable on its facts.

Examination of the case law rendered after Echostar strongly suggests that a

majority of federal courts to consider this issue after Echostar have concluded that the waiver of

attorney-client privilege and work-product protection arising from assertion of the advice-of-

counsel defense applies to trial counsel, as well as opinion counsel. See, Genetech, Inc. v.

Insmed Incorporation, 442 F. Supp.2d 838, 842 (N.D. Cal. 2006) (collecting cases); Afinion Net

Patents, Inc. v. Maritz, Inc., 440 F. Supp.2d 354, 356 (D. Del. 2006) (waiver of attorney-client

privilege applied "as to communications with 'litigation counsel' and any other counsel"); Beck

<u>Systems, Inc. v. Managesoft Corp.</u>, Case No. 05C 2036, 2006 WL 2037356 at *5 n. 1 (N.D. Ill. July 14, 2006) (acknowledging that <u>Echostar</u> did not involve production of materials by trial counsel, but concluding that the reasoning in <u>Echostar</u> and the supporting citation to <u>Akeva</u> "indicate that the Federal Circuit would extend this waiver to all attorneys other than those who provided the advice on which the defendant relies, irrespective of whether the other attorneys are trial counsel"); <u>Informatica Corp. v. Business Objects Data Integration</u>, Case No. C 02-3378 JSW (JL), 2006 WL 2038461 at * 8 (N.D. Cal. July 14, 2006) (finding that the accused infringer waived the privilege for pre- and post-filing pertinent attorney-client communications and work product and that "it is immaterial whether [the infringer's] opinion counsel and trial counsel are from the same firms, different firms or even the same person."); <u>Intex Recreation Corp. v. Team Worldwide Corp.</u>, 439 F. Supp.2d 46, 51-52 (D.D.C. 2006) (adopting a self-described "middle ground" approach in which the waiver "extends only to those trial counsel work-product materials that have been communicated to the client and contain conclusions or advice that contradict or cast doubt on the earlier opinions").

The above case law convinces the Court that while <u>Echostar</u> does not dispose of the question of whether trial counsel is included within the waiver, the majority of the federal courts to address the question have so concluded. Such a conclusion is appropriate in the Court's view. Resolution of the question of willful infringement requires the Court to examine the totality of the circumstances. <u>See</u> <u>Eaton Corp. v. Parker Hannifin Corp.</u>, 292 F. Supp.2d 555, 569 (D. Del. 2003) ("To find willful infringement there must be clear and convincing evidence in view of the totality of the circumstances that the infringer acted in disregard of the patent."). Accordingly, any advice or substantive communications of trial counsel that meaningfully

17

discusses the subject of patent validity, enforceability or infringement would seem to this Court

to be fair game to the extent that such advice or communications arguably affected the mind set

of the accused infringer. To totally preclude the opposing party from obtaining any attorney-

client communications or work product merely based on the status of trial counsel as such would

unfairly place the opposing party at an unconscionable disadvantage in refuting a defense of

advice-of-counsel.

On the other hand, a requirement that would compel trial counsel to surrender

virtually every document that contained a passing reference to the terms, "patent enforceability,"

"patent validity," or "patent infringement" would be equally unfair to the accused infringer, who

would be severely disadvantaged in his ability to communicate with trial counsel in preparation

for trial. Such an approach would, in the words of one court, "demolish ... the practical

significance of the attorney-client privilege." See Ampex v. Eastman Kodak Co., Case No. CIV

A 041373-KHA, 2006 WL 1995140 at *3 (D. Del. July 17, 2006).

Such a result also seems to extend Echostar far beyond any reasonable reading of

its holding in the context of the facts. First, even Echostar acknowledges the distinctions between

the attorney-client privilege and the work-product doctrine and observes that the two are not co-

equal. Echostar, 448 F.3d at 13012. Second, as Ampex points out, when Echostar refers to the

waiver of the privilege as to "all such" communications, the reference relates back in the same

passage to communications of a nature similar to the opinion letters as issue. Ampex, 2006 WL

1995140 at *3 ("[T]he Echostar court's use of the word 'such' to modify the phrase

'communications regarding the same subject matter' indicates that the court intended a far more

limited meaning for its statement than Ampex wishes to give it. The use of 'such' leads one

18

back to earlier language in that portion of the opinion in which the court is emphasizing the

unfairness of allowing a party to hold back its attorney's opinion that is inconsistent with a

different opinion it chooses to show the world.")

       While this Court does not agree with <u>Ampex</u> to the extent that it would totally

exclude trial counsel from the waiver of attorney-client privilege and work-product production,

the Court does believe that the scope of such waiver in the context of trial counsel is not nearly

so broad as to sweep in all communications between trial counsel and client that relate in any

minimal way to the subject matter of the opinion letter.  The Court in this regard shares the

views expressed by the authors of <u>The Doctrine of Willful Infringement After Knorr-Bremse:</u>

<u>Practical Problems & Recommendations</u>, 7 Sedona Conf. J. 169 (Fall 2006) wherein the authors

write:

> To the extent that <u>Echostar</u> is read to extend the waiver to trial
> counsel, it should not be read to compel the production of all
> communications between trial counsel and client relating in any
> way to the subject matter of the advice.  Both the language and
> rationale underlying the opinion suggest that only communications
> rising to the level of an opinion should be included in any such
> waiver.
>
> In its opinion, the Federal Circuit excluded from the scope of the
> waiver day-to-day communications regarding the prosecution and
> strategy of litigation:
>
>> By asserting the advice-of-counsel defense to a
>> charge of willful infringement, the accused infringer
>> and his or her attorney do not give their opponent
>> unfettered discretion to rummage through all of
>> their files and pillage all of their litigation
>> strategies.
>
> The court suggested instead that the waiver is limited to
> communications rising to the level of a 'traditional opinion letter.'
> The court's analysis was focused on ensuring that advice on the

subject matter at issue - - such as traditional opinion letters - -
could not be selectively produced.

....

This reading of Echostar is consistent with the underlying rationale
of the opinion - - to prevent the selective disclosure of advice
regarding liability.  Only communications rising to the level of
'favorable' and 'unfavorable' advice on the ultimate issue of
liability are potentially relevant to the defendant's state of mind.
That is, if an attorney gives the defendant an opinion regarding
whether the defendant's activities infringe, that opinion would
arguably be relevant to the question of whether the defendant
believed its activities were infringing.

Conversely, communications relating only to the prosecution of a
litigation - - addressing, for example, what discovery needs to be
produced, what arguments will be most effective before a jury, and
how arguments should be presented in a brief - - relate to litigation
strategy and therefore have virtually no bearing on the defendant's
state of mind with respect to the ultimate issue of liability.  A
waiver can only be justified therefore, with respect to
communications, such as opinions, that relate to the ultimate
question of liability.

Id. at 187 (footnotes omitted).

The federal courts to address this issue appear to have embraced this type of

"middle ground" approach.  See Intex Recreation Corp. v. Team Worldwide Corp., 439 F.

Supp.2d 46, 52 (D.D.C. 2006) (discussing BASF Aktiengesellschaft v. Reilly Industries, Inc.,

283 F. Supp.2d 1000, 1005-06 (S.D. Ind. 2003).  These courts hold that "waiver extends only to

those trial counsel work-product materials that have been communicated to the client and

'contain conclusions or advice that contradict or cast doubt on the earlier opinions [of opinion

counsel]."  Id.  This approach sometimes is referred to as the "cast a shadow" approach to

waiver.  See Genetech, Inc. v. Insmed Incorporation, 442 F. Supp.2d 838, 845-46 (collecting

20

case law on the "middle ground" approach).[3]

   A good discussion of the middle ground approach is found in BASF

Aktiengesellschaft v. Reilly Industries, Inc., 283 F. Supp.2d 1000, 1006-07 (S.D. Ind. 2003),

wherein the district court discusses the three different approaches applied to the waiver issue in

the context of trial counsel.  In the words of the court:

> Yet another line of cases takes the middle ground.  See Thermos
> Co. v. Starbucks Corp., 1998 WL 781120 at *5 (N.D. Ill. 1988);
> Micron Separations, Inc. v. Pall Corp., 159 F.R.D. 361, 366 (D.
> Mass. 1995); Clintec Nutrition Co. v. Baxa Corp., 1996 WL
> 153881 at *1 (N.D. Ill. 1996).  These courts reason that, consistent
> with the principle of fairness, a party should not be allowed to rely
> on self-serving statements while withholding damaging or
> contradictory information under the pretense of the attorney-client
> privilege.  However, the courts also noted a higher standard for
> waiver of opinion work product for trial counsel.  Using these
> guidelines, the courts concluded that waiver extended to trial
> counsel only to the extent documents were communicated to
> defendants and contained conclusions or advice that contradict or
> cast doubt on the earlier opinions.  See, Thermos, 1998 WL
> 781120 at *4-5; Micron, 159 F.R.D. at 364-65; Clintec, 1996 WL
> 153881 at *1.

> The Court finds the reasoning of this middle ground approach
> compelling and most applicable to the case at hand....  Fairness
> dictates that the waiver extends post-suit once a party relying on
> the advice-of-counsel defense changes or alters its position as
> stated in the earlier advice-of-counsel opinion.

BASF, 283 F. Supp.2d at 1006-07 (footnotes omitted).  This approach was subsequently adopted

by the district court for the District of Columbia in Intex Recreation Corp. v. Team Worldwide

---

[3]  For other pre-Echostar cases that adopt the middle ground approach, see Intex
Recreation Corp. v. Metalast S.A., 400 F. Supp.2d 123 (D.D.C. 2005); Beneficial Franchise Co.
v. Bank One N.A., 205 F.R.D. 212 (N.D. Ill. 2001); Micron Separations, Inc. v. Paul Corp., 159
F.R.D. 361, (D. Mass. 1995).

Corp., 439 F. Supp.2d 46, 52-53 (D.D.C. 2006), wherein the court ordered trial counsel to produce all documents generated by trial counsel "which either 'question or contradict in any way the confidence or validity of the opinion rendered.'" Id.

The Court agrees that the approach taken by BASF Aktiengesellschaft and Intex Recreation is the best approach. It appropriately weighs the needs of the party seeking information on the mental state of the accused infringer while protecting the ability of the infringer to adequately prepare for trial. Further, this approach is most in accord with the underlying circumstances that existed in Echostar, as discussed above. Materials prepared by trial counsel that were not communicated to the client or involved purely trial strategy are not subject to production under this approach. Therefore, those materials communicated to Pendl by Stites that call into question or contradict in any way the confidence or validity of the Becker patent opinion letter are subject to disclosure to Lexmark. Also subject to disclosure are all documents, including any and all attorney's notes, summaries and drafts of documents that discuss any communication to Pendl from Stites or from Pendl to Stites concerning whether the patent at issue is valid, enforceable and infringed. Any document that falls within the scope of the waiver, but which includes opinions or mental impressions never communicated to Pendl may be redacted to exclude the uncommunicated portions. Stites should prepare a privilege log to include those documents it believes continue to be protected from disclosure in light of the present opinion so that Lexmark may have the opportunity to request *in camera* review of any or all such documents should it so choose.

By its adoption of the "middle ground" approach, the Court specifically rejects the more expansive view adopted by decisions such as Akeva and Convolve in favor of BASF

Aktiengesellschaft and Intex Recreation. While the Court is aware of Stites' affidavit filed with its motion to quash, it will require Stites to make a formal response to the subpoena in light of this order which resolves the question as to the scope of the waiver.

The above discussion leaves several final matters to be resolved. One such matter is the scope of the waiver as it relates to work product involving anti-trust claims, contract law concerns and the Lexmark prebate program. Stites insists that these three categories fall outside the scope of the validity, enforceability and infringement of the toner cartridge patents at issue. Lexmark argues that because such items are referred to in the opinion letter, they are automatically subject to the waiver as set forth in Echostar.

The Court has considered Lexmark's argument, but finds it to be unpersuasive. First, Lexmark cites no Federal Circuit decision which has expanded the waiver to include topics outside the realm of patent validity, enforceability and infringement. Certainly, Echostar does not include matters beyond patent validity, enforceability and infringement. The Court's own research fails to find a published Federal Circuit decision that sweeps so broadly as to include anti-trust claims, contract claims or an entire product program within the scope of the waiver.

It must be kept in mind that the entire concept of waiver arises from the notion that a party places at issue its good faith reliance on the patent opinion letter of its patent counsel when it raises the advice-of-counsel defense. Thus, the mental state of the party is placed at issue. The mental state of the party, however, has no bearing upon whether a valid claim for a breach of contract or an anti-trust violation may be proven. Pendl's state of mind on these separate matters is simply irrelevant. No waiver of the privilege as it relates to these separate issues therefor results.

23

The only remaining matter for discussion is the question of whether Lexmark may take the deposition of counsel. Lexmark's subpoena notices the deposition of Stites. Stites vigorously resists such deposition and correctly points out that the law strongly disfavors the deposition of opposing counsel. See Hickman v. Taylor, 329 U.S. 495, 516 (1947) (Jackson, J. concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions ... on wits borrowed from the adversary."). Such depositions disrupt the attorney-client relationship and litigation preparation. Madanes v. Madanes, 199 F.R.D. 135, 151 (S.D. N.Y. 2001).

The law firm argues with some force that Lexmark has not met the test of Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1987) as adopted by the Sixth Circuit in Nationwide Mut. Ins. Co. v. Home Ins. Co., 278 F.3d 621, 628-29 (6th Cir. 2002). Under Shelton, Lexmark must show that no other means exists to obtain the information other than to depose opposing counsel, that the information is relevant and non-privileged, and that it is essential to the preparation of the case. Shelton, 805 F.2d at 1327. The Shelton test has been widely followed in the federal district courts. See Alcon Lab. Inc. v. Pharmacia Corp., 225 F. Supp.2d 340, 342 (S.D. N.Y. 2002) (collecting case law).

Lexmark has failed to overcome the substantial hurdles established by Shelton. Certainly, Lexmark has a readily available source for discoverable information communicated by Stites to Pendl concerning the substance of the Becker opinion letter. Pendl's own employees can testify to the information that Stites related to them. Here, the focus falls upon the mental state of the client Pendle. Its own employees are best situated to testify as to those communications from Stites affecting such mental state.

24

Lexmark has not shown sufficient justification for the disruption that would inevitably result if Stites were deposed, particularly given the ready availability of an obvious alternate source for the information sought. The Court notes that the present case is not similar to those situations in which a party seeks to depose an attorney who prosecuted a patent where such attorney was the sole source of information crucial to a claim of inequitable conduct. See Alcon Labs, 225 F. Supp.2d at 344. Such circumstances also might justify deposing a prosecuting attorney. We do not find any such circumstances in this case, however.

For the reasons set forth above, the motion of Stites to quash the subpoena served on it by Lexmark is **GRANTED IN PART AND DENIED IN PART** to the extent set forth above. Appeal of this order is governed by the terms and time limitations of Rule 72(a) of the Federal Rules of Civil Procedure. Stites shall have twenty (20) days from the date of entry of this order, or any order of the District Court that affirms this order should Lexmark file objections, in which to produce the subpoenaed documents, if any, that fall within the bounds of those documents subject to production as discussed above.

January 17, 2007

Copies to Counsel of Record

Dave Whalin, Magistrate Judge
United States District Court

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| STATIC CONTROL COMPONENTS, INC., ET AL. | ) ) ) | |
| Plaintiffs, | ) ) | CONSOLIDATED CIVIL ACTION NOS. |
| V. | ) ) | 02-571 AND 04-84 |
| LEXMARK INTERNATIONAL, INC., ET AL. | ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

*** *** *** ***

Currently before the Court for consideration are five objections to the Magistrate Judge's

Orders regarding nondispositive discovery issues in this case. [R. 187, 273 (objection renewed at

337), 276, 374, and 389]. Pursuant to Federal Rule of Civil Procedure 72(a), the Court will only

set aside or modify Magistrate Judge Todd's Orders if the Court finds that at least a portion of

the order is "clearly erroneous or contrary to law." "A finding is 'clearly erroneous' when

although there is evidence to support it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed." *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court will address each of the above-referenced

objections seriatim:[1]

**A.    Objections [R. 187] to Memorandum Opinion and Order of December 21,**

**2005 [R. 180]**

---

[1] As further discussed below, one of the objections [R. 374] is to a Report and
Recommendation by the Magistrate Judge [R. 361], rather than to a Magistrate Judge order.
Accordingly, because the Court will overrule the objection, the Court will also adopt the Report
and Recommendation.

In its Objections to Magistrate Judge Todd's ruling, Static Control Components ("SCC")

seeks a more in depth answer to its Interrogatory No. 3 directed to Lexmark International

("Lexmark"), which states:

> Set forth the complete basis for Lexmark's contention that the Patent Act preempts North
> Carolina General Statutes § 75-36 (2003), and
> (i)   Identify any person who communicated on behalf of Lexmark with any member of
>        the North Carolina Legislature or any staff member thereof regarding that statute
>        or any bill related to that statute;
> (ii)  identify all such members or staff; and
> (iii) provide the substance of such communications.

[R. 187 at 4]. "[T]he limited subject of [SCC's] Objection is whether Lexmark must provide a

response to subparts ( i), (ii) and (iii) of Interogatory No. 3." [R. 187 at 5].

SCC claims that the requested responses are reasonably calculated to lead to the

discovery of admissible evidence relevant to SCC's claims and defenses. [R. 187 at 10]. The

Court finds that Magistrate Judge Todd's ruling that the "information requested in these subparts

is not relevant to the claims and defenses asserted [by SCC]" is not clearly erroneous or contrary

to law. Rather, the interpretation and legal effect of North Carolina General Statute § 75-36 as

enacted is a matter of law that the Court alone decides; what impact Lexmark thought the statute

would have before its enactment is immaterial to the Court's legal analyses.

### B.    Objections [R. 273 and 337] to Memorandum Opinion and Order of March 31, 2006, [R. 266] as Amended on June 15, 2006 [R. 335]

On April 14, 2006, SCC objected to numerical paragraph 1.b. on page 12 of the

Magistrate Judge's March 31, 2006 Order, which directed SCC "to produce those documents and

communications relating to SCC's efforts to defeat Lexmark's Prebate program." [R. 266

(Order) and R. 273 (Objection)]. SCC objected at the time for the purpose of preserving its

objection while pursuing a Motion for Clarification and/or Reconsideration of said Order with

the Magistrate Judge. [R. 275 (Motion)]. The Magistrate Judge issued an Amended

Memorandum Opinion and Order regarding the directive in numerical paragraph 1.b. on June 15,

2006, and SCC renewed its Objections.[2] [R. 335 (Amended Order) and 337 (Renewed

Objections)]. In that Order the Magistrate Judge affirmed his prior Order, ruling that "SCC is

directed to produce *all documents*, both privileged and non-privileged, relating to SCC's efforts

to defeat Lexmark's Prebate program." [R. 335]. For the reasons that follow, the Magistrate

Judge's Orders will be affirmed as written. However, the Court will construe the Magistrate

Judge's Order narrowly as set forth below and therefore overrule in part and sustain in part

SCC's Objections.

> The current conflict arises from the fact that in 1998,
>
> SCC widely disseminated to its customers a copy of a five-page letter . . . from Mr.
> Walter Blakey, a contracts law professor at the University of North Carolina, addressed to
> William L. London, SCC's General Counsel, which expressed Mr. Blakey's opinions
> concerning the enforceability, validity, and general legality of Lexmark's Prebate
> program.

[R. 335 at 4]. The Magistrate Judge concluded that the "Blakey Letter" was a privileged

communication via the attorney/client privilege and that SCC waived that privilege by

disseminating the letter to its customers. *Id.* at 5. Additionally, the Blakey Letter "was the focal

point of SCC's [current] declaratory judgment action." *Id.* Accordingly, the Magistrate Judge

found that SCC "waived the attorney/client and work product privileges for all documents

pertaining to Lexmark's Prebate program." *Id.* at 7. The Court finds that the Magistrate Judge

---

[2] In the interim, SCC filed an "Erratum" to its Motion for Clarification and original
Objections. [R. 286, 287].

was not clearly erroneous in finding that the Blakey Letter fell within the ambit of attorney/client

privilege and that SCC waived that privilege by disseminating the letter to third parties.

Therefore, the Court turns to the scope of that waiver:

     In a general sense, this entire litigation for SCC is partially about "defeating Lexmark's

prebate program." As such, the Blakey Letter, even though its content is the centerpiece of

SCC's current suit, cannot be held to have forever foreclosed SCC's ability to maintain

confidential communications with litigation counsel about its strategy for prosecuting its case

and defending against Lexmark's claims. Lexmark states that the principal purpose of the waiver

doctrine is "to protect against the unfairness that would result from a party selectively disclosing

legal advice for its own benefit, revealing only the advice that supports its cause while claiming

the shelter of privilege to avoid disclosing other advice on the same subject matter that is less

favorable." [R. 340, citing *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir.

2006)]. While this is true, SCC correctly notes that implied waiver is to be narrowly construed

"'no broader than needed to ensure the fairness of the proceedings before'" the Court. [R. 337 at

13, citing *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) (habeas proceeding)].

     In balancing these above-referenced principles of waiver, the Court is of the opinion that

Lexmark is entitled to SCC's documents and communications that are related to the contents of

the 1998 Blakey Letter—i.e. "SCC's efforts to defeat Lexmark's Prebate program"—as the

Magistrate Judge held. However, the narrow construction of waiver leads the Court to conclude

that SCC must be able to avail itself to the attorney-client privilege when interacting with its

current litigation counsel.[3]  If such were not the case, then SCC would potentially be required to

disclose its entire trial strategy, including, for instance, an assessment of the strengths and

weaknesses of every potential witness, since SCC's goal in this litigation, whether meritorious or

not, is to "defeat Lexmark's prebate program."  Accordingly, the Magistrate Judge's Order will

be construed to read that the Order does not apply to documents ordinarily protected by the work-

product doctrine prepared by SCC's current *litigation* counsel, while working in their capacity as

*litigation* counsel, that were prepared after the commencement and *in the course of this case.*

However, this limitation should not be construed to protect documentation of activities by SCC,

if any, that go beyond the bounds of litigation preparation, such as continued communications

about prebate with customers following the filing of this suit.[4]

Lexmark cites authority for the common proposition that the scope of a waiver of

privilege is not defined temporally, but rather by subject matter. *See In re Grand Jury*

---

[3]  SCC states that it first engaged its current counsel four years after the Blakey Letter to defend itself against Lexmark's suit filed on December 30, 2002.  [R. 337 at 10, referring to Case No. 5:02-cv-571, R. 1].

[4]  In his Amended Memorandum Opinion and Order dated June 15, 2006 [R. 335], the Magistrate Judge stated:

> Having concluded . . . that SCC has waived the attorney/client and work privileges for all documents relative to Lexmark's Prebate program based on the disclosure of the Blakey Letter and the London Letter to its clients, the Magistrate Judge need not consider the merits of SCC's argument concerning the supplementation of its privilege log.

In accordance with this Order, any pre-litigation documents related to SCC's efforts to defeat Lexmark's Prebate program must be disclosed.  However, the Court agrees with SCC that litigation files are not generally the subject of privilege log entries, and also in accordance with this Order, SCC has no duty to disclose privileged litigation files for not listing those litigation files in its privilege log, unless that privilege is otherwise waived for reasons not considered in this Order.

*Proceedings*, 78 F.3d 251, 255 (6th Cir. 19960). In this case, however, SCC retained *new*

counsel to serve as litigation counsel, rather than, for example, retaining Mr. Blakey for trial.

This case is also unlike *In re EchoStar Commc'ns Corp.*, as cited by Lexmark [R. 340 at 24],

because SCC does not assert an "advice-of-counsel defense" regarding its current litigation

counsel. 448 F.3d 1294, 1299 (Fed. Cir. 2006). Unless the Court makes temporal distinctions in

this case, as a practical matter, there is no way to divide that which is truly preparation for trial,

about which Lexmark has no business knowing, and that which is a coordinated effort to defeat

Lexmark's prebate program beyond the esoteric notion that the very prosecution of this case is

meant to defeat the program. Therefore, the Court makes a temporal distinction not as a means

in itself, but rather as shorthand for what is the subject matter of SCC's waiver. This result is

consistent with the authority that "there is no bright line test for determining what constitutes the

subject matter of waiver, rather the courts weigh the circumstances of the disclosure, the nature

of the legal advice sought and the prejudice to the parties of permitting or prohibiting further

disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005); *see*

*also In re Grand Jury Proceedings*, 78 F.3d at 255-56 (6th Cir. 1996) (holding that the "district

court must be guided by fairness concerns" when determining the scope of waiver and reversing

district court for being overly broad in the scope of waiver).

**C.     Objections [R. 276] to Memorandum Opinion and Order of April 6, 2006 [R.
         270]**

Pendl Companies, Inc. and Wazana Brothers International, Inc. made Objections to the

Magistrate Judge's Memorandum Opinion and Order dated April, 6, 2006. The parties made

these Objections for preservation purposes, and the parties' requested that the Court reserve

judgment on these objections until the Magistrate Judge ruled on the parties' Motion for Partial

Reconsideration [R. 277] of the Magistrate Judge's April 6 Order. The Magistrate Judge granted

said Motion for Partial Reconsideration on June 15, 2006. [R. 336]. Accordingly, Pendl and

Wazana's Objections at R. 276 will be overruled as moot.

**D.    Objections [R. 374] to Magistrate Judge's Report and Recommendation of
    August 23, 2006 [R. 361]**

On May 3, 2006, SCC filed a Motion for Order Barring Lexmark from Alleging and/or

Offering Evidence that any Remanufactured Toner Cartridge Infringes any Lexmark Patent. [R.

300]. In that motion, SCC argued that Lexmark failed to adhere to the Magistrate Judge's

discovery Order dated April 5, 2006, which denied SCC's motion to compel discovery but set up

a four-step procedure for discovery under which the parties were to operate. [R. 268]. The

Magistrate Judge filed his Report and Recommendation on SCC's motion for sanctions on

August 23, 2006, recommending that the motion be denied. [R. 361]. Although SCC's motion

requested sanctions for the alleged violation of the Magistrate Judge's discovery order, the

Magistrate Judge filed a Report and Recommendation on the motion, rather than denying it

outright, because the relief sought by SCC is dispositive in nature. If SCC were to prevail on its

motion, then Lexmark would be prohibited from pursuing a portion of its counterclaim against

SCC.

In his Report and Recommendation, the Magistrate Judge determined that Lexmark did in

fact comply with the discovery order of April 5, 2006. Regarding other arguments that SCC

made in its motion, the Magistrate Judge determined, and this Court agrees, that "those

arguments are irrelevant to the issue of whether Lexmark complied with the Order of April 5,

-7-

2006." [R. 361].

The Court has reviewed SCC's Objections, which other parties join, and finds that SCC fails to establish that the recommendation not to impose sanctions was "clearly erroneous." Pursuant to Federal Rule of Civil Procedure 72, this Court will affirm a report and recommendation regarding non-dispositive matters unless that recommendation is "clearly erroneous or contrary to law." The Court reviews de novo magistrate judge decisions to which objections have been made that are dispositive of a claim. Fed. R. Civ. P. 72(b). In the context of a motion for sanctions, the magistrate judge's recommendation determines whether the motion is dispositive of a claim and the specific relief requested by the movant is irrelevant. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995). "To conclude otherwise would permit the party seeking sanctions to engage in a game of labels that would improperly dictate the standard of review." *Segal v. L.C. Hohne Contractors, Inc.*, 303 F. Supp. 2d 790, 794 (S.D. W. Va. 2004).

Given that SCC's motion requires the interpretation of a discovery order entered by the Magistrate Judge, the Magistrate Judge is in a better position to interpret that order than is this Court. Additionally, this Court would be hard pressed to identify a situation in which not dismissing a claim as a discovery sanction would be clearly erroneous.[5] Accordingly, the Court will overrule SCC's Objections [R. 374] and adopt the Magistrate Judge's Report and Recommendation. [R. 361].

**E.     Objections [R. 389] to Memorandum Opinion and Order of September 12,**

---

[5] The Court is cognizant that SCC seeks to bar Lexmark from making certain allegations or presenting certain evidence, rather than seeking to dismiss Lexmark's claims outright. However, a grant of that requested relief would have the effect of a *de facto* dismissal.

**2006 [R. 375]**

Lexmark requested in a telephone conference with Magistrate Judge Todd on August 10, 2006, that SCC be required to disclose certain information about two surveys conducted at the direction of SCC for use in this litigation. [R. 375]. The parties provided the Magistrate Judge with letters in support of their relative positions, rather than formally briefing the issues raised in the conference. *Id.* SCC has attached those letters by the parties as exhibits to its current Objections. [R. 389]. The Magistrate Judge ordered, *inter alia,* that "Static Control is directed to disclose the identity of the actual participants in the Johnson report to Lexmark" and "Static Control is directed to disclose the identity of the actual participants in the Simonson report only to Lexmark's Outside Counsel, pursuant to the terms of the Protective Order entered herein concerning the production of confidential information." [R. 375]. SCC's current objection is with this portion of the Magistrate Judge's Order regarding the disclosure of actual survey participants. [R. 389].

The case law on the subject of disclosure of the identities of survey participants is somewhat circumscribed, as this area of law is driven at the district court level with only a small "universe" of cases considering the issue. The parties reference three cases, as discussed below, and the Court finds one other.

First, in *Applera Corp. v. MJ Research, Inc.*, 389 F. Supp. 2d 344, 350 (D. Conn. 2005), the court declined to revisit its earlier opinion, in which it held:

> Defendants provided in discovery their invoice database from which Ford [the surveyor] selected respondents and thus MJ could have conducted its own survey of MJ customers to test the reliability of Ford's methodology and/or results. In fact, Dr. Ford and other researchers are prohibited by ethical rules from disclosing the actual individual identities of the survey respondents and instructed to defend against Court orders compelling

disclosure. *The Reference Manual for Scientific Evidence* published by the Federal Judicial Center instructs that, because of such ethical obligations, identifying information such as names and addresses should be removed from survey data before it is provided to opposing counsel.

(internal citations omitted); *see also* [R. 389 at 5].

Second, in *Comm-Tract Corp. v. Northern Telecom, Inc.*, the issues are on point with the current issue. 143 F.R.D. 20 (D. Mass. 1992). Regarding the disclosure of survey participants, the magistrate judge, who drafted the opinion, wrote:

> To the extent that the survey would be utilized as evidence of the respondents' state of mind, present sense impressions or subjective mental associations, Northern Telecom's need to know the identity of the participants and to tie the respondents with a specific response is de minimus. In such circumstances, the defendant can challenge the evidence by implicating the "circumstantial guarantees of trustworthiness," i.e., the methodology employed, the survey design, the form of questionnaires, the sampling techniques, etc. The same cannot be said to the extent that the survey is used as "no more than a summary and distillation of . . . extrajudicial declarations offered to prove the truth of the matters asserted in those declarations. . ." In that circumstance, the only way Northern Telecom could counter the evidence would be to test the specific individual responses of the survey participants. This is equally true whether the survey itself is sought to be admitted or whether an expert intends to offer such an opinion based on the survey results.

*Id.* at 22 (internal citations omitted). After briefing by the parties and in a subsequent order, the magistrate judge found that the survey had a "dual purpose, both to prove 'customer perception' and, at least in part, to prove the truth of the matters asserted" and ordered disclosure of participant identities." *Id.* at 24.

SCC argues that its surveys are geared toward divining the state of mind, present sense impressions or subjective mental associations of cartridge remanufacturers or lexmark customers. Having reviewed the surveys, the Court tends to agree that the participants' answers in both surveys are aggregated in a manner that would enable Lexmark, having knowledge of the

-10-

participant universe, to "challenge the evidence by implicating the 'circumstantial guarantees of trustworthiness,' i.e., the methodology employed, the survey design, the form of questionnaires, the sampling techniques, etc." Therefore, hearsay considerations warranting disclosure of participant identities are not compelling in this case.

Third, in *Lampshire v. Procter & Gamble Co.*, 94 F.R.D. 58 (N.D. Ga. 1982), in a case regarding toxic shock syndrome, the plaintiffs sought "to offer certain reports prepared by the Center for Disease Control ("CDC") into evidence." *Id.* at 59. Defendant Proctor & Gamble sought the personal identities of participants of the report "to enable it to contact the subjects of the CDC studies so as to determine the extent to which the studies were properly conducted." *Id.* at 60. The Court denied the request for personal identifiers, considering both that the information provided by the participants was "quite personal and sensitive" and that Proctor & Gamble had not "sufficiently demonstrated that it is necessary to have the personal identifying information about the subjects of the CDC studies in order to attack the validity of the studies." *Id.*

Finally, the Court finds another case in which that court noted that surveyors conducting work for litigation purposes have no legal privilege to maintain the confidentiality of the survey participants. *See United States Surgical Corp. v. Orris, Inc.*, 983 F. Supp. 963, 969 (D. Kan. 1997) (citing *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340 (1979)). In upholding the magistrate judge's decision to compel the disclosure of survey participants, the court held:

> Plaintiff contends that Magistrate Newman should not have compelled Dr. Jacoby to reveal to defendants the identities of the individuals who participated in the survey because Dr. Jacoby promised the individuals that their identities would remain confidential. Magistrate Newman concluded that confidentiality is not equal to privilege and is not alone sufficient to limit discovery. Magistrate Newman then balanced the

-11-

potential harm against the relevance of the information and concluded that disclosure was warranted. Neither conclusion is clearly erroneous or contrary to law.

As previously stated, confidential is not the equivalent of privileged. *See Merrill*, 443 U.S. at 362. Further, plaintiff should not be able to conduct a survey for litigation and subsequently protect the survey from scrutiny by promising confidentiality to the participants. . . . Magistrate Newman was not clearly erroneous in concluding that defendants' need to properly evaluate and rebut the reliability of the survey outweighed plaintiff's interest in shielding the survey participants.

*Id.* at 970.

These four cases alone, with the citations therein, appear to be the scope of authority on the topic of disclosing survey participants' identities. None of the cases are binding precedent, persuasive authority from an appellate court, or from this circuit. While the Court may have come to a different conclusion in deciding the issue of whether SCC must disclose the identities of the participants in the surveys it commissioned, this Court does not review the Magistrate Judge's decisions on non-dispositive matters de novo. Rather, "clearly erroneous or contrary to law" review applies, and given the undeveloped nature of the law in this area, this Court is in no position to rule that the Magistrate Judge was clearly erroneous. The Magistrate Judge considered and rejected the need for confidentiality of the survey participants, distinguishing this case from the sensitive information at play in *Lampshire*. 94 F.R.D. at 60. Additionally, these surveys were conducted for litigation purposes, and the Magistrate Judge ordered that the participants of the Simonson report be disclosed "only to Lexmark's Outside Counsel, pursuant to the terms of the Protective Order entered herein concerning the production of confidential information." [R. 375 at 5]. Accordingly, the Court finds that the Magistrate Judge exercised sound discretion in this matter, and SCC's Objections [R. 389] will be overruled.

## CONCLUSION

-12-

For the reasons set forth herein, it is hereby **ORDERED** as follows:

(A) SCC's Objection to the Memorandum Opinion and Order Dated December 21, 2005 **[R. 187]** is **OVERRULED**;

(B) SCC's Objections to Memorandum Opinion and Order Dated March 31, 2006 **[R. 273]** and SCC's Renewed Objections to Memorandum Opinion and Order Dated March 31, 2006, and Objections to Amended Memorandum Opinion and Order Dated June 15, 2006 **[R. 337]** are **OVERRULED** in part and **SUSTAINED** in part as follows:

> The Magistrate Judge's Amended Memorandum Opinion and Order of June 15, 2006, at numerical paragraph 2 is **CONSTRUED** to state: ". . . SCC is directed to produce *all documents*, both privileged and non-privileged, relating to SCC's efforts to defeat Lexmark's Prebate program. This Order does not apply to documents ordinarily protected by the work-product doctrine prepared by SCC's current litigation counsel, while working in their capacity as litigation counsel, that were prepared after the commencement and in the course of this case."

(C) MSE and Pendl's Objections to Memorandum Opinion and Order Dated April 6, 2006 **[R. 276]**, is **OVERRULED as MOOT**;

(D.1) SCC's, *et alia*, Objections to Magistrate Judge's Report and Recommendation by Counterclaim Defendants **[R. 374]** is **OVERRULED**;

(D.2) The Magistrate Judge's Report and Recommendation **[R. 361]** is **ADOPTED** in full and incorporated herein by reference as the opinion of this Court and, accordingly, SCC's Motion for sanctions **[R. 300]** is **DENIED**;

(D.3) In lieu of the Court's disposition on the Magistrate Judge's Report and

-13-

Recommendation regarding SCC's Motion for sanctions at R. 300, SCC's "Emergency Request for Ruling" **[R. 347]** on said Motion is **DENIED as MOOT**; and

(E)  SCC's Objections to Memorandum Order Dated September 12, 2006 **[R. 389]** is **OVERRULED**.

This the 10th day of January, 2007.



Signed By:
**_Gregory F. Van Tatenhove_**
**United States District Judge**

-14-