UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC. | |
| PLAINTIFF | |
| v. | Misc. Action No. 06-478 (JDB) |
| LEXMARK INTERNATIONAL, INC., | |
| DEFENDANT | |

**CONSTANTINE CANNON LLP'S NOTICE OF RULING:**

**ORDER ON PETITION FOR WRIT OF MANDAMUS
REGARDING *IN RE ECHOSTAR*, DATED JANUARY 26, 2007**

Constantine Cannon LLP  ("Constantine Cannon") respectfully notifies this Court of an

Order, dated January 26, 2007, by the United States Court of Appeals for the Federal Circuit in

*In re Seagate Technology LLC*, a copy of which is attached hereto.  The Order grants a Petition

for a Writ of Mandamus to consider *en banc* the following questions:

(1) Should a party's assertion of the advice of counsel defense to willful
infringement extend waiver of the attorney-client privilege to
communications with that party's trial counsel?  See In re EchoStar
Commc'n Corp., 448 F.3d 1294 (Fed. Cir. 2006).

(2)  What is the effect of any such waiver on work-product immunity?

(3)  Given the impact of the statutory duty of care standard announced in
Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380 (Fed. Cir.
1983), on the issue of waiver of attorney-client privilege, should this court
reconsider the decision in Underwater Devices and the duty of care standard
itself?

*In re Echostar* has been cited by both Lexmark International Inc. and Constantine

Cannon in connection with this motion to quash.


Dated: January 29, 2007                    Respectfully submitted,

                                            _/s/  Julie Chen Clocker_____
                                           Seth D. Greenstein (DC Bar # 416733)
                                           Julie Chen Clocker (DC Bar # 435434)
                                           CONSTANTINE CANNON LLP
                                           1627 Eye Street, N.W.
                                           Washington, DC 20006
                                           Telephone (202) 204-3509
                                           Fax (202) 204-3501

                                           *For itself and as attorneys for*
                                           *Plaintiff/Counterclaim Defendant*
                                           STATIC CONTROL COMPONENTS, INC.

86567.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 29th day of January 2007 by electronic mail to the following (*) individuals:

Charles F. Shivel, Jr.
Steven B. Loy*
Hanly A. Ingram
STOLL, KEENON & PARK, LLP
300 West Vine St., Suite 2100
Lexington, KY 40507
Fax: (859) 253-1093
Steven.Loy@SKOFirm.com
*Counsel for Lexmark Int'l, Inc.*

Joseph M. Potenza*
BANNER & WITCOFF, LTD.
1001 G Street, NW, 11th Floor
Washington, DC 20001
Fax: (202) 508-9299
JPotenza@BannerWitcoff.com
*Counsel for Lexmark Int'l, Inc.*

Michael L. Krashin
Christopher J. Renk
Binal J. Patel*
Jason S. Shull
Timothy C. Meece
BANNER & WITCOFF, LTD.
10 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Fax: (312) 715-1234
BPatel@BannerWitcoff.com
*Counsel for Lexmark Int'l, Inc.*

Andrew CopenHaver
Hada Haulsee
WOMBLE CARLYLE SANDRIDGE
 AND RICE, PLLC
One West Fourth St.
Winston-Salem, NC 27101
Fax: (336) 721-3660
ACopenHaver@WCSR.com
*Counsel for Lexmark Int'l, Inc.*

Andrew D. DeSimone*
Douglas L. McSwain
STURGILL, TURNER, BARKER
 & MOLONEY PLLC
155 E. Main St., Suite 400
Lexington, KY 40507-1317
Fax: (859) 231-0851
ADesimone@SturgillTurner.com
*Counsel for Wazana Brothers Int'l, Inc.*

A. Steven Dotan*
Darren S. Enenstein
Ned Gelhaar
James M. Gilbert
Jeffrey R. Glassman
Gregory Kim
Kimberly D. Lewis
Steven E. Moyer
Ira M. Siegel
MOLDO DAVIDSON FRAIOLI
SEROR & SESTANOVICH, LLP
1925 Century Park East, 16th Floor
Los Angeles, CA 90067
SDotan@MDFSLaw.com
*Counsel for Wazana Brothers Int'l, Inc.*

Joel T. Beres*
Jack A. Wheat
Jennifer L. Kovalcik
STITES & HARBISON, PLLC
400 W. Market St., Suite 1800
Louisville, KY 40202
Fax: (502) 587-6391
JBeres@Stites.com
*Counsel for Pendl Cos., Inc.*

Daniel E. Danford*
Elizabeth L. Thompson
STITES & HARBISON, PLLC
250 W. Main Street
2300 Lexington Financial Center
Lexington, KY 40507
Fax: (859) 253-9144
DDanford@Stites.com
*Counsel for Pendl Cos., Inc.*

Jay E. Ingle*
JACKSON & KELLY

86567.1

175 E. Main Street
P.O. Box 2150
Lexington, KY 40588
Fax: (859) 288-2849
Jingle@JacksonKelly.com
*Counsel for NER Data Products, Inc.*

Thomas C. O'Konski*
Michael R. Reinemann
CESARI & MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
Fax: (617) 951-3927
TOK@C-M.com
*Counsel for NER Data Products, Inc.*

Andrew C. Oatway
MORISI & OATWAY
1400 Hancock St., 3rd Floor
Quincy, MA 02169
Fax: (617) 479-6885
ACO@Morisi.com
*Counsel for NER Data Products, Inc.*

_____ / s / Julie Chen Clocker _____
Julie Chen Clocker

86567.1

Misc. No.  

IN THE

# UNITED STATES COURT OF APPEALS

For The Federal Circuit

IN RE SEAGATE TECHNOLOGY, LLC,

*Petitioner.*

On Petition for a Writ of Mandamus to the United States
District Court for the Southern District of New York
(Hon. George B. Daniels)

## SEAGATE TECHNOLOGY LLC'S
## PETITION FOR WRIT OF MANDAMUS TO VACATE
## DISCOVERY ORDERS COMPELLING DISCLOSURE
## OF PRIVILEGED COMMUNICATIONS OF TRIAL COUNSEL

TERRENCE P. MCMAHON
STEPHEN J. AKERLEY
LUCY K. KOH
MARY B. BOYLE
MCDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

RAPHAEL V. LUPO
PAUL DEVINSKY
BRIAN E. FERGUSON
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W., 12th Floor
Washington, D.C. 20005-3096
(202) 756-8000

*Attorneys for Petitioner Seagate Technology, LLC*

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

SEP 2 9 2006

JAN HORBALY
CLERK

## CERTIFICATE OF INTEREST

Pursuant to Circuit Rules 21(a)(2) and 47.4(a)(1), counsel for the petitioner certifies the following:

1.    The full name of every party represented by me is:

    Seagate Technology LLC.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    None

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

    Seagate Technology (US) Holdings, Inc., a Delaware corporation;

    Seagate Technology HDD Holdings, Cayman Islands; and

    Seagate Technology, Cayman Islands, (STX on NYSE).

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

    McDERMOTT WILL & EMERY LLP
    Terrence P. McMahon
    Stephen J. Akerley
    Lucy H. Koh
    Mary B. Boyle
    Edwin Wheeler
    Nicholas Chen
    Brian Baker
    Sabrina Chang
    Mark P. Wine
    Michael G. Oleinik
    Ray Lupo
    Paul Devinsky
    Brian Ferguson

Michael S. Sommer
Ann E. Schofield
Andrew Dallman  (no longer with firm)
Elaine M. Heal(no longer with firm)
Jennifer Ishimoto (no longer with firm)
Cora Schmid (no longer with firm)
Mitchell M. Blakely (no longer with firm)
Keaton Parekh (no longer with firm)
Lorrel A. Birnschein (no longer with firm)

ORRICK, HERRINGTON & SUTCLIFFE LLP
G. Hopkins Guy, III
Peter Bucci (no longer with firm)
David R. Jewell (deceased)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

I.     RELIEF REQUESTED ................................................................................. 1

II.    ISSUE PRESENTED .................................................................................. 6

III.   FACTS NECESSARY TO UNDERSTAND THE ISSUE
PRESENTED .............................................................................................. 7

    A.   Opinion Counsel ............................................................................... 8

    B.   Trial Counsel ................................................................................. 10

    C.   Discovery Sought From Trial Counsel and Subsequent
       Proceedings .................................................................................... 11

IV.   REASONS WHY THE WRIT SHOULD ISSUE ....................................... 14

    A.   Extension of Privilege Waiver to Separate and Independent Trial
       Counsel Would Unduly Burden the Attorney-Client Relationship
       and Violate Due Process and Other Constitutional Protections ......... 15

    B.   Seagate Did Not Automatically Waive Privilege for All Trial
       Counsel and Trial Strategy Communications Pertaining to Patent
       Infringement, Validity, and Enforceability by Asserting an Advice
       of Counsel Defense to Willful Infringement ..................................... 18

    C.   If EchoStar Meant To Extend Waiver of Privilege to Separate and
       Independent Trial Counsel, EchoStar Is in Irreconcilable Conflict
       with This Court's En Banc Decision in Knorr-Bremse ...................... 19

    D.   Based on EchoStar and Other Precedent of This Court, There
       Should Be No Waiver for Privileged Communications of Separate
       and Independent Trial Counsel Where, as Here, There Are No
       Sword-and-Shield Concerns ............................................................ 20

    E.   In Ampex, the Only Post-EchoStar Case To Analyze Privilege
       Waiver Law Under Facts Involving Separate and Independent Trial
       Counsel, the District Court Declined To Extend Waiver to Trial
       Counsel ......................................................................................... 23

    F.   This Court Has Rejected an "Automatic Waiver" of Privilege for
       Plaintiffs in an Analogous Context .................................................. 27

V.    CONCLUSION ........................................................................................ 29

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Affinion Net Patents, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360-JJF,
2006 WL 2096712 (D. Del. July 28, 2006) ........................................................ 23

*Akeva L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003) .................. 26

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980) ...................................... 14

*Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ,
2006 U.S. Dist. LEXIS 48702 (D. Del. July 17, 2006) ................................ *passim*

*Baker v. Carr*, 369 U.S. 186, 204 (1962) ............................................................. 17

*Beck Sys., Inc. v. ManageSoft Corp.*, No. 05 C 2036, 2006 WL 2037356
(N.D. Ill. July 14, 2006) ................................................................................... 23

*Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98 (S.D.N.Y. 2004) ...... 1, 7

*Dimick v. Schiedt*, 293 U.S. 474 (1935) .............................................................. 17

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) ..................... 22

*Genentech, Inc. v. Insmed Inc.*, No. C-04-5429 CW (EMC), 2006 U.S.
Dist LEXIS 55992 (N.D. Cal. Aug. 10, 2006) .................................................. 23

*Hickman v. Taylor*, 329 U.S. 495 (1947) ............................................................. 17

*Hunt v. Blackburn*, 128 U.S. 464 (1888) ............................................................. 16

*In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006),
*reh'g and reh'g en banc denied*, 2006 U.S. App. LEXIS 17511
(Fed. Cir. July 5, 2006) ..............................................................................*passim*

*In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370 (Fed. Cir. 2001) ........................ 14

*In re Regents of the Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996) ...................... 14

*Indiana Mills & Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04-cv-01102-
LJM-WTL, 2006 U.S. Dist. LEXIS 34023 (S.D. Ind. May 26, 2006),
*opinion withdrawn*, 2006 U.S. Dist. LEXIS 47852 (S.D. Ind.
July 14, 2006) ................................................................................................... 23

*Informatica Corp. v. Bus. Objects Data Integration*, No. C 02-3378
JSW (JL), 2006 WL 2038461 (N.D. Cal. July 14, 2006), *aff'd*, 2006
WL 2329460 (N.D. Cal. Aug. 9, 2006) ............................................................. 24

*Intex Recreation Corp. v. Team Worldwide Corp.*, No. Civ. A. 04-1785
PLF/DAR, 2006 WL 2023552 (D.D.C. July 14, 2006) ..................................... 24

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383
F.3d 1337, 1343 (Fed. Cir. 2004) ...................................................................*passim*

*Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989)...................................................... 14

*MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005)......... 1

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)......................... 17

*Upjohn Co. v. United States*, 449 U.S. 383 (1980)...................................................... 6

*Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985) .............. 28, 29

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................... 13

28 U.S.C. § 1651 ...................................................................................... 1, 29

**Rules**

Fed. R. Civ. P. 30(b)(6)............................................................................... 15

Fed. R. Civ. P. 72(a)................................................................................... 13

# I. RELIEF REQUESTED

Petitioner Seagate Technology LLC ("Seagate") respectfully requests the

issuance of a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651,

ordering the district court to vacate its Orders[1] which compel production of trial

counsel's privileged advice on the broad subject matter of opinion counsel's formal

opinions, "i.e., the infringement, validity, and enforcement of the [patents-in-suit],[2]

even though there are no sword and shield concerns.  These Orders flatly

contradict the controlling legal principles set forth in this Court's *Knorr-Bremse*

and *EchoStar* decisions.

In *Knorr-Bremse*, the *en banc* Court strongly affirmed a patent defendant's

right to rely on opinions of counsel as a defense to willfulness.  Moreover, the *en*

---

[1] The Orders submitted for this Court's review are Tab A, Docket No. 268, Magistrate Judge Francis' Order of May 28, 2004 (published as *Convolve, Inc. v. Compaq Computer Corp.*, 224 F.R.D. 98 (S.D.N.Y. 2004)); Tab B, Docket No. 299, Magistrate Judge Francis' Order of September 8, 2004; Tab C, Docket No. 505, District Judge Daniels' Order of July 11, 2006 denying Seagate's objections to Magistrate Judge Francis' Order of May 28, 2004; and Tab D, Docket No. 506, District Judge Daniel's Order of July 11, 2006 denying Seagate's objections to Magistrate Judge Francis' Order of September 8, 2004.  This Court has indicated that it reviews collectively as the "district court's rulings" the orders of a magistrate judge together with the district judge's orders sustaining the magistrate judge's orders.  *See MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1354 n.2 (Fed. Cir. 2005).

[2] Tab A at 17 (ordering production of "communications between Seagate (or its in-house counsel) and any of its attorneys, ***including trial counsel***, with respect to the ***subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '635, '267, and '473 patents.***"); *see also id.* at 16 ("Seagate's 'subject matter waiver' . . . extends to the entire subject matter of Mr. Sekimura's opinions – infringement, validity, and enforcement of the patents at issue.").

*banc Knorr-Bremse* Court overruled long-standing precedent to remove

"inappropriate burdens on the attorney-client relationship"[3] to allow more

flexibility in a patent defendant's ability to rely on opinions of counsel. The

Orders Seagate seeks to vacate contradict *Knorr-Bremse* by forcing a patent

defendant to choose between an opinion of counsel defense to willfulness and

preserving the confidentiality of its communications with trial counsel regarding

the merits of its case. The Orders force this untenable choice even though the

record is undisputed that Seagate has maintained separate and independent trial and

opinion counsel at all times. The Orders give the plaintiffs a license to invade the

most sacred of attorney-client communications—those directed to *trial* strategy

and preparation. As such, taken literally, the Orders destroy Seagate's ability, not

only to adequately defend itself, but even to fairly evaluate the case by consulting

with its trial lawyers. The net effect of the Orders is to essentially deprive a patent

defendant of the ability to rely on opinions of counsel. Such a result flatly

contradicts the statement in *Knorr-Bremse* that there are no special rules for patent

litigants that unduly burden the privilege and distort the attorney-client

relationship.[4]

---

[3] *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343 (Fed. Cir. 2004) (en banc).

[4] *See Knorr-Bremse*, 383 F.3d at 1344.

The Orders also conflict with the controlling legal principles set forth in *EchoStar*[5] and other precedent. In *EchoStar*, this Court set forth the following standard for determining the scope of any waiver: "[A] district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product."[6] This standard indicates that the overriding reason for a privilege waiver rule is to prevent sword-and-shield litigation tactics. In this case, there are no opinion shopping issues. There are no sword-and-shield concerns with respect to trial counsel. The record is undisputed that Seagate has maintained separate and independent litigation and opinion counsel at all times. As such, Seagate reasonably believed that waiver of the privilege associated with an advice of counsel defense would not extend to trial counsel. Under these facts, the policy balance weighs heavily on the side of protecting privilege for trial counsel, and there should be *no* discovery of privileged trial counsel communications. The district court abused its discretion in extending waiver to trial counsel's communications under the circumstances of this case.

The district court erroneously equated an assertion of an advice of counsel defense to willful infringement with the automatic waiver of privilege for the communications of trial counsel encompassing the broad subject matters of

---

[5] *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294 (Fed. Cir. 2006), *reh'g and reh'g en banc denied*, 2006 U.S. App. LEXIS 17511 (Fed. Cir. July 5, 2006).
[6] *Id.* at 1302.

infringement, validity, and enforceability. According to the district court's Orders,

trial counsel's advice on the subjects of infringement, validity, and enforceability

"must be disclosed *even if it is communicated in the context of trial preparation.*"[7]

Thus, the Orders also conflict with this Court's strong policy in favor of protecting

privilege. In *Echostar*, this Court stated: "We recognize the privilege in order to

promote full and frank communication between a client and his attorney so that the

client can make well-informed legal decisions and conform his activities to the

law."[8] Similarly, in *Knorr-Bremse*, this Court *en banc* stated: "There should be no

risk of liability in disclosures to and from counsel in patent matters; such risk can

intrude upon full communication and ultimately the public interest in encouraging

open and confident relationships between client and attorney."[9]

Moreover, trial counsel cannot do its job if it cannot communicate candidly

and confidentially with its client concerning the merits of the patent case. The

Supreme Court long ago recognized the "necessity" of attorney-client privilege in

making our justice system work.[10] In the instant case, plaintiffs are demanding

discovery of files of trial counsel and deposition testimony from the most senior

---

[7] Tab A, Magistrate Judge Francis' May 28, 2004 Order at 16-17 (emphasis added).
[8] *EchoStar*, 448 F.3d at 1300-01.

[9] *Knorr-Bremse*, 383 F.3d at 1344.

[10] *See Hunt v. Blackburn*, 128 U.S. 464, 470 (1888).

attorneys on Seagate's trial team. As one district court recently put it, if plaintiffs are correct that "everything [is] fair game for discovery," including everything that trial counsel says to its client about infringement, validity, and enforceability, it "demolish[es] the practical significance of the attorney-client privilege" for patent defendants.[11] The discovery sought in this case will expose the thought processes and legal strategy of defendant's trial counsel to the adversary. The exposure of defense counsel communications on substantive patent issues—communications containing the heart of trial strategy—puts an end to the patent litigation process as we know it.

Because *EchoStar* did not address the scope of the waiver as it applies to trial counsel, courts and litigants have been struggling with uncertainty regarding the law of privilege waiver as applied to trial counsel. Indeed, the *Echostar* decision set off a feeding frenzy among patentee plaintiffs, all seeking to eviscerate the hallowed protections afforded for hundreds of years under the privilege and work product protections. In the several months following *Echostar*, district courts have applied the decision to find waivers of varying scope. Several of the lower court decisions find that the waiver extends to trial counsel, but only when there is some indication either of opinion shopping or when opinion counsel

---

[11] *Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *6 & n.3, *10 (D. Del. July 17, 2006).

and trial counsel are the same or have somehow overlapped inappropriately. None, other than the Orders at issue here, have distorted *Echostar* to compel production of trial counsel communications even when those communications relate to trial strategy.

"An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."[12] Seagate asks this Court to clarify the law regarding the extension of privilege waiver to trial counsel and to find the district court's Orders are based on a clear error of law.

A writ is needed for Seagate to receive effective review of the Orders. Unless this Court grants the writ, Seagate will be deprived of any remedy for the district court's erroneous Orders. Once Seagate's litigation strategy has been exposed to the other side, that bell can never be unrung. Seagate respectfully asks this Court to issue a writ of mandamus instructing the district court to protect the privileged communications of trial counsel in this case.

## II. ISSUE PRESENTED

Whether an accused infringer that asserts an advice-of-counsel defense to a charge of willful infringement automatically waives attorney-client privilege and work-product protection for trial counsel communications relating to the

---

[12] *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1980).

substantive issues of infringement, validity, and enforceability, where trial counsel

and opinion counsel have been kept entirely separate and independent of one

another throughout the litigation.

## III. FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

Petitioner Seagate is a defendant in *Convolve, Inc. v. Compaq Computer*

*Corp.*, No. 1:00-cv-05141-GBD-JCF, a civil case pending in the United States

District Court for the Southern District of New York. Convolve, Inc. and the

Massachusetts Institute of Technology (collectively, "Convolve") filed a complaint

on July 13, 2000 alleging, among other claims, that Seagate and Compaq

Computer Corporation infringed two patents, U.S. Patent Nos. 4,916,635 (the

"'635 Patent") and 5,638,267 (the "'267 Patent"[13]). (Tab A, Magistrate Judge

Francis' May 28, 2004 Order at 1-2.). An amended complaint was filed January 25,

2002, adding a new patent, U.S. Patent No. 6,314,473 (the "'473 patent"), which

issued to Convolve, Inc. in November 2001. (*Id.* at 2.) The amended complaint

also alleged willful infringement and sought treble damages. (*Id.*)

---

[13] The '267 patent is no longer being asserted. *See* Tab G, Judge Daniels' Order of July 19, 2006, dkt. no. 509, ¶ 7 ("Plaintiffs' request that their previously stated position that infringement of the '267 Patent 'is no longer being asserted ...' be documented is granted.").

## A.    Opinion Counsel

In May 2000, Seagate retained Mr. Gerald T. Sekimura, then a partner with the law firm of Limbach & Limbach, to provide an opinion of counsel with regard to the '635 and '267 patents. (Tab E, October 6, 2003, Declaration of Betty Ann Durham in Support of Seagate Technology LLC's Opposition to Convolve, Inc.'s Motion to Compel Discovery from Seagate ¶ 2; *see also* Tab A at 2-3.) Mr. Sekimura provided three written opinions.

Mr. Sekimura provided Seagate with his first opinion, a preliminary written opinion of noninfringement and invalidity of the '635 and '267 patents, on July 24, 2000, only eleven days after the filing of the complaint. (Tab E ¶ 4; Tab A at 3.) In addition to opining on the '635 and '267 patents, the only patents asserted by plaintiffs at that time, Mr. Sekimura also examined the claims of Convolve's pending International Patent Application WO 99/45535 (the "PCT application"). (Tab E ¶¶ 2, 4; Tab A at 3.) The U.S. patent application corresponding to the PCT application issued as the '473 patent in November 2001. (Tab E ¶ 2.) Mr. Sekimura's July 24, 2000 written preliminary opinion concluded that the claims in the PCT application were either not infringed by Seagate and/or were invalid, but also noted that further analysis was needed because only 186 of the over 340 claims had been reviewed. (*Id.* ¶ 4, Tab A at 3.)

Mr. Sekimura provided Seagate with a written final opinion of noninfringement, invalidity, and unenforceability of the '635 and '267 patents on December 29, 2000.[14]  (Tab E ¶ 5; Tab A at 3.)  That report also recommended that further review of the PCT application be postponed and that further review be undertaken if and when a U.S. patent were to issue.  (Tab A at 3-4.)  The report noted again that only 186 claims had been reviewed.  (*Id.* at 4.)

Mr. Sekimura was retained again in March 2002 to provide an opinion regarding the '473 patent that issued in November 2001.[15]  (Tab E ¶ 9.)  Mr. Sekimura tendered a formal, written opinion of noninfringement and invalidity regarding the fifteen issued claims of the '473 patent to Seagate on February 21, 2003.  (*Id.* ¶ 10; Tab A at 4.)

In early 2003, pursuant to Special Master Razzano's scheduling order in the case, Seagate informed plaintiffs of its intention to rely on Mr. Sekimura's opinions of July 24, 2000, December 29, 2000, and February 21, 2003 for an

---

[14]  The discussion of unenforceability in the December 29, 2000 opinion was addressed to '267 patent, a patent which is no longer being asserted in this case. (Tab A at 3.)

[15]  After the '473 patent issued in November 2001, Seagate attempted to retain Mr. Sekimura to provide an opinion.  (Tab E ¶¶ 6, 7.)  However, Mr. Sekimura, now with the law firm of Gray Cary, initially declined because of a potential conflict with his new firm.  (*Id.* ¶ 7)  The amended complaint was filed in January 2002, adding a cause of action for infringement of the '473 patent, and adding allegations of willful infringement.  (*Id.* ¶ 8; Tab A at 2.)  In February 2002, Seagate again sought Mr. Sekimura's advice regarding the '473 patent, and, after he cleared the conflict, in March 2002, Mr. Sekimura was retained.  (Tab E ¶ 9.)

advice-of-counsel defense to the claim of willful infringement. (Tab A at 5.)

Seagate disclosed the three opinions to the plaintiffs, and made Mr. Sekimura

available for a deposition. (*Id.*) All correspondence and work product were

produced from Mr. Sekimura's files, as were communications with Mr. Sekimura

in Seagate's files. (*Id.*)

## B.    Trial Counsel

Seagate initially retained Orrick, Herrington & Sutcliffe LLP ("Orrick") as

trial counsel to represent Seagate in the Convolve litigation. (*Id.* at 2.)  In January

2002, Seagate retained new trial counsel, McDermott Will & Emery LLP

("McDermott"), shortly after Terrence McMahon, Seagate's lead trial counsel,

changed firms from Orrick to McDermott. (*Id.*)

Seagate's trial counsel and opinion counsel operated separately and

independently from one another. (*Id.* at 20.)  Seagate has only sought and has only

received opinions outside of Seagate regarding the '635, '267, and '437 patents-in-

suit from Mr. Sekimura.[16]  (Tab E ¶ 11.)  It is undisputed that neither Orrick nor

McDermott had any influence over the content of Mr. Sekimura's opinions.  (Tab

A at 20.)  No opinions were sought or obtained from trial counsel. (Tab E ¶¶ 11-

---

[16] In October 1999 Seagate's engineers conducted an internal analysis of
Convolve's '635 and '267 patents.  Seagate has produced the internal analysis
documents, and Convolve has deposed the engineers.

12.)  Further, Seagate never sought nor received advice from trial counsel

regarding the merits of the opinions of Mr. Sekimura.  (*Id.* ¶ 13.)

### C.   Discovery Sought From Trial Counsel and Subsequent Proceedings

Plaintiffs propounded discovery aimed at piercing Seagate's attorney-client

privilege with its trial counsel and filed a motion to compel such discovery on

October 1, 2003.  (Tab A at 7.)  Plaintiffs sought to obtain

> internal communications on the same subjects as the formal
> [Sekimura] opinions, communications between Seagate and any
> attorneys on the same subjects as the formal opinions, documents
> reflecting outside counsel's opinion as to the same subjects of the
> formal opinions, documents reviewed or considered, or forming the
> basis for outside counsel's opinion as to the subject matter of the
> formal opinions, and documents reflecting when oral communications
> concerning the subjects of the opinions occurred between Compaq
> and outside counsel.

(*Id.* at 7 (quoting Convolve's memorandum in support of its motion to compel)).

Oral argument on the motion was heard on January 20, 2004, before Magistrate

Judge Francis.  (*Id.* at 12 n.4.)

On May 28, 2004, Magistrate Judge Francis issued an Order imposing a

subject matter waiver for all attorney-client communications between Seagate and

outside counsel concerning the general subject matter of Mr. Sekimura's opinions.

(Tab A.)  The May 28, 2004 order stated that Seagate had waived attorney-client

privilege for all trial counsel's communications such that

> Seagate shall produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel, with respect to the subject matter of Mr. Sekimura's opinions, *i.e.*, the infringement, validity, and enforcement of the '635, '267, and '473 patents.

(*Id.* at 17.) The Order provided for in camera submission of documents that relate to trial strategy or planning advice regarding validity, infringement, and enforceability, recognizing that trial counsel would address trial strategy "in ways that [did] not implicate the advice-of-counsel defense." (*Id.*) However, the Order provided that trial counsel's advice on the subjects of infringement, validity, and enforceability "**must be disclosed even if it is communicated in the context of trial preparation.**" (*Id.* at 16-17.) (emphasis added.) With respect to the temporal scope of the waiver, the Order held that the privilege waiver "continues to such time as Seagate's alleged infringement ends." (*Id.* at 17). In other words, the Order appears to give plaintiffs a license to discover virtually anything and everything communicated by Seagate's trial counsel to Seagate on the central patent issues until such time as Seagate's alleged infringement ends.

Magistrate Judge Francis issued a second order, on September 8, 2004, which provided that communications and documents of non-trial counsel, including in-house counsel,[17] must be disclosed pursuant to the May 28, 2004

---

[17] Seagate's arguments regarding trial counsel communications apply equally to such communications with in-house counsel as well as to any trial strategy

(continued...)

Order.[18]  (Tab B ¶ 2.)  Seagate timely objected under Fed. R. Civ. P. 72(a) to both

the May 28, 2004 and September 4, 2004 Orders, and the district court denied both

sets of objections on July 11, 2006.  (Tabs C & D.)

On July 24, 2006 Seagate wrote a letter to Magistrate Judge Francis

requesting that he stay his May 28, 2004 and September 8, 2004 orders pending

mandamus review by this Court.  (Tab F.)  Magistrate Judge Francis denied

Seagate's letter application by memo endorsement on July 26, 2006, stating, in

pertinent part, that "[p]articularly in light of the Federal Circuit's decision in

*EchoStar*, Seagate's chances of prevailing on a mandamus petition are slim."  (*Id.*)

Seagate then applied to Judge Daniels for an emergency stay of the Orders on

August 1, 2006, and the court denied Seagate's motion on September 14, 2006.

(Tab H.)  On August 14, 2006, Seagate asked the district court to certify its Orders

for interlocutory appeal under 28 U.S.C. § 1292(b).  On September 27, 2006, the

district court denied Seagate's motion.  (Tab I.)

---

communications of in-house counsel.  Patent defendants should not face the
untenable Hobson's choice with either their trial counsel or in-house counsel.
[18] Magistrate Judge Francis interpreted Seagate's objections to the May 28, 2004
Order as applying only to the requirement to produce trial counsel documents and
communications and thus issued the September 8, 2004 order.

On September 26, 2006, plaintiffs requested that the Magistrate Judge

compel Seagate to comply with the Orders within five business days. (Tab J.) thus,

Seagate's need for immediate relief is clear.

## IV. REASONS WHY THE WRIT SHOULD ISSUE

The remedy of mandamus is limited to extraordinary situations involving a

clear abuse of discretion or usurpation of judicial power. *See EchoStar*, 448 F.3d

at 1297. The petitioner must show that there is no alternative relief available and

that the right to relief is "clear and indisputable." *Id.* (citing *Mallard v. U.S. Dist.*

*Court*, 490 U.S. 296, 309 (1989) and *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S.

33, 35 (1980)). A writ of mandamus is an appropriate remedy to prevent the

wrongful exposure of privileged communications and information protected by the

work-product privilege. *See id.* at 1297-98; *accord In re Regents of the Univ. of*

*Cal.*, 101 F.3d 1386, 1388 (Fed. Cir. 1996); *In re Pioneer Hi-Bred Int'l, Inc.*, 238

F.3d 1370, 1374 (Fed. Cir. 2001).

This Court reviews a district court's determination as to the scope of a

privilege waiver under an abuse of discretion standard. *See EchoStar*, 448 F.3d at

1300. In reviewing this petition, this Court will apply its own law because the

issue involves the scope of waiver of attorney-client privilege and work-product

immunity when a patent defendant asserts the advice-of-counsel defense in

response to a charge of willful patent infringement. *See id.* at 1298.

- 14 -

Petitioner meets the legal standards for the writ it seeks.  The discovery

orders are clearly and indisputably in error.  The district court abused its discretion

in finding that Seagate waived privilege and work product protection for trial

counsel's confidential communications.  A writ is needed to correct the district

court's erroneous Orders.  Unless this Court grants the writ, Seagate will have no

way to remedy the errors of the district court's Orders, and privileged information

will be wrongfully exposed.

### A.  Extension of Privilege Waiver to Separate and Independent Trial Counsel Would Unduly Burden the Attorney-Client Relationship and Violate Due Process and Other Constitutional Protections

The notion that *Echostar* allows the party opponent and their lawyers to see

the trial strategy of their adversary creates the potential for grave abuses and harm.

The attempts at and potential for grave abuses are nowhere presented more clearly

than in this case.  Within days of Magistrate Judge Francis' July 26, 2006 denial of

Seagate's request for a stay order, Convolve's lawyers sent demands for

depositions of nearly every one of Seagate's trial attorneys including Terrence P.

McMahon, Stephen J. Akerley, Lucy H. Koh, Hopkins Guy and Fed. R. Civ. P.

30(b)(6) depositions of both McDermott, Will & Emery and Orrick, Herrington &

Sutcliffe.  These demands were accompanied by requests for production of all trial

lawyer communications relating to the fundamental patent issues presented in this

case, namely, noninfringement, invalidity, and unenforceability of the patents at

issue. This is stark evidence of how the Orders prohibit the effective assistance of trial counsel, resulting in the denial of right to counsel and Due Process for Seagate and other defendants in patent cases.

The issue here is whether the right to confidential legal advice ends when an accused infringer raises the time-honored defense of reliance on opinion of counsel to willfulness. The answer must be that it does not. There are few aspects of the common law as sacred as the confidentiality that surrounds the attorney-client relationship. And with good reason. As the Supreme Court long ago recognized, the attorney-client privilege "is founded upon the *necessity*, in the interest and administration of justice" under our system, of the right to confide in one's lawyer and obtain legal advice "free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (emphasis added).

The practical effect of the Orders is that every time the words "patent", "infringement", "invalidity" or "unenforceability" are uttered by a defendant's trial counsel during the period of alleged infringement, ***plaintiffs' counsel*** should be invited to listen in on the conversation. The absurdity of the Orders is highlighted by the fact that in some cases such disclosures could continue up until and through trial.

The Court's Orders force Seagate to choose between reliance on advice of opinion counsel as a defense to willfulness and assistance of its trial counsel. This

is an unacceptable choice, particularly in a case where plaintiffs allege hundreds of millions of dollars in damages are at stake. Moreover, due process concerns are heightened if this Hobson's choice is forced upon defendants. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417-18 (2003). Indeed, due process of law is essentially identified with healthy adversarialism. Article III empowers a federal court to hear only "actual controversies" with "concrete adverseness which sharpens the presentation of issues." *See Baker v. Carr*, 369 U.S. 186, 204 (1962). Moreover, the Seventh-Amendment right to jury trial has, at its very heart, the notion of a *fair* trial, which is defeated by the inability of counsel to consult with and advise its client confidentially. Any restriction on jury trial rights is subject to the utmost scrutiny. *See Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care"). These Orders erroneously eliminate the immunity against the disclosure of trial strategy to the adversary described in *Hickman v. Taylor*, 329 U.S. 495 (1947).

If this Court does not instruct the district court to vacate its discovery orders, Seagate will be forced to disclose its trial counsel's communications regarding the core issues in the case through the period of alleged infringement to the opposing counsel and party. The Orders will *preclude any* communications between Seagate and its trial counsel on the central patent issues in the case through the period of

alleged infringement.  This is an untenable position for Seagate or any patent

defendant, and it turns the defense of willfulness on its head.

**B.    Seagate Did Not Automatically Waive Privilege for All Trial Counsel and Trial Strategy Communications Pertaining to Patent Infringement, Validity, and Enforceability by Asserting an Advice of Counsel Defense to Willful Infringement**

Seagate has consistently asserted attorney-client privilege and work product

protection for its communications with trial counsel.  The district court nonetheless

found that Seagate waived protection for communications of trial counsel

encompassing the broad subject matters of infringement, validity, and

enforceability, simply as a result of Seagate's decision to rely on advice of counsel

in response to plaintiffs' willfulness charge.  Seagate finds itself in this untenable

situation even though it "followed the rules" and intentionally kept opinion counsel

and trial counsel completely separate and independent.  It is undisputed that

Seagate's trial counsel played no role in selecting opinion counsel, did not

contribute to the opinion, and did not influence the drafting of the opinions in any

way.  Moreover, it is undisputed that Seagate did *not* engage in opinion shopping.

There is no indication that Mr. Sekimura's opinions are anything but *bona fide*, and

no indication that Seagate's reliance on the opinions is anything but reasonable and

*bona fide*.  The undisputed facts show there are no sword-and-shield concerns in

this case.

C.   If *EchoStar* Meant To Extend Waiver of Privilege to Separate and
     Independent Trial Counsel, *EchoStar* Is in Irreconcilable Conflict
     with This Court's *En Banc* Decision in *Knorr-Bremse*

If the steps Seagate took are not sufficient to preserve attorney-client

privilege with trial counsel, then the law obliterates attorney-client privilege for

patent defendants who elect to rely on opinion letters.  Such a result cannot be

squared with the cornerstone principle of *Knorr-Bremse* that there are to be no

special rules in patent law that unduly burden the privilege and distort the attorney-

client relationship.  *See Knorr-Bremse*, 383 F.3d at 1343.

Interpreting *EchoStar* as extending privilege waiver to separate and

independent trial counsel places *Echostar* in direct conflict with the *en banc*

opinion in *Knorr-Bremse*.  Indeed, it negates the entire rationale of *Knorr-Bremse*.

In *Knorr-Bremse*, the *en banc* Court plainly was attempting to allow more

flexibility in the reliance or non-reliance on opinions of counsel.  To that end,

*Knorr-Bremse* stated that it was overruling long-standing precedent to remove

"inappropriate burdens on the attorney-client relationship."  *Id*. at 1343.  This

Court could not have intended that the next step in the evolution of the law would

be to allow the use of opinions only in exchange for all trial counsel

communications.  Such an interpretation makes no sense.  *Knorr-Bremse* and

*EchoStar* together would result in an impossible Catch-22 for patent defendants.

That is not a rational view of the law.

Seagate believed, based upon decades of precedent, that, if it maintained separate trial and opinion counsel, waiver of the privilege associated with an advice of counsel defense would not extend to trial counsel. That is an entirely reasonable belief, in view of the stated purpose of privilege waiver—to prevent sword-and-shield tactics. *EchoStar* reaffirmed the law in this respect.

**D.    Based on *EchoStar* and Other Precedent of This Court, There Should Be No Waiver for Privileged Communications of Separate and Independent Trial Counsel Where, as Here, There Are No Sword-and-Shield Concerns**

Correctly read, *EchoStar* and *Knorr-Bremse* do not conflict on either law or policy. It bears emphasizing that *EchoStar* did not address the communications of trial counsel because such communications were not before the Court. The facts before the *EchoStar* Court concerned only opinion counsel. In *EchoStar*, this Court stated the general rule that when a party invokes reliance on advice of counsel as a defense to willful infringement, it waives the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter. *See EchoStar*, 448 F.3d at 1299. As the *EchoStar* Court explained, privilege waiver is driven by its purpose:

> [S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. In such a case, the party uses the attorney-client privilege as both a sword and a shield. ***To prevent such abuses***, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the

attorney-client privilege as to all such communications regarding the same subject matter.

*Id.* at 1301 (emphasis added) (citations omitted).

That is the *only* reason that we have the privilege waiver rule. As this Court has explained, "[t]he overarching goal of waiver ... is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *Id.* at 1303 (citations omitted). Yes, fairness requires the waiver rule. But equally for fairness reasons, the privilege waiver must be no broader than necessary to effectuate the goal of the waiver. Otherwise, the danger will be exactly the one with which Seagate is faced: an attempt by an opportunistic adversary to exercise "unfettered discretion to rummage through all of [trial counsels'] files and pillage all of their litigation strategies." *Id.* at 1303. If that is what the law in fact allows, the cure is worse than the disease.

Seagate preserved its attorney-client privilege with trial counsel. The way in which Seagate kept separate litigation and opinion counsel eliminated the specter of any sword-and-shield abuses. It would serve no beneficial purpose to extend waiver to Seagate's trial counsel, and it will compromise Seagate's litigation position. Sword-and-shield concerns are absent, so there is no basis in law or logic for finding a waiver here. This is in harmony with the statement made by this Court in *Fort James* that a court looks to a number of factors to determine a scope

of privilege waiver that is neither too broad nor too narrow: "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005). It would be inconsistent to find that *EchoStar*, in contrast, set forth a *per se* rule.

In *EchoStar*, this Court stated: "[A] district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product." 448 F.3d at 1302. This Court then applied a balancing analysis to the discoverability of opinion counsel's work product. What this Court did *not* say was that henceforth, there was to be a bright line rule of waiver for all communications to the client both by opinion counsel and separate trial counsel on the central patent issues. Indeed, such an automatic waiver rule would contradict *EchoStar*'s directive to the district court to balance the policies to determine whether waiver should be imposed. In applying that balance, sword-and-shield concerns are one side of the scale. If there are no sword-and-shield concerns as is the case here, there is certainly nothing to balance, and there can be no finding of waiver. Said another way, if there is nothing to balance against the policy to protect the privilege, the privilege must prevail.

- 22 -

It is undisputed that there are no opinion-shopping issues in this case. Trial counsel has done what trial counsel is supposed to do—advise on and run the litigation. Seagate has kept trial counsel and opinion counsel in their separate spheres and independent of one another. Without any specter of sword-and-shield tactics, there is nothing to counterbalance the policy to protect privileged communications and work product. Under these conditions, there should be no waiver of privilege for trial counsel communications. Therefore, on the undisputed record, the district court erred in finding waiver of privilege.

### E.   In *Ampex*, the Only Post-*EchoStar* Case To Analyze Privilege Waiver Law Under Facts Involving Separate and Independent Trial Counsel, the District Court Declined To Extend Waiver to Trial Counsel

Since *EchoStar*, there have been a number of district court decisions involving extension of privilege waiver to trial counsel. However, the vast majority of the cases involve opinion and trial counsel from the same firm.[19] Only

---

[19] Where trial counsel and opinion counsel overlap, the issue presented is not solely waiver of *trial counsel*'s communications, as here, but of *opinion counsel*'s communications as well. As *Ampex* observed, such overlap is "an unfortunate blending of roles that is, thankfully, rare and beyond the discussion provided here." *Ampex*, 2006 U.S. Dist. LEXIS 48702, at *11 n.4. The other post-*EchoStar* cases are *Affinion Net Patents, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360-JJF, 2006 WL 2096712 (D. Del. July 28, 2006); *Beck Sys., Inc. v. ManageSoft Corp.*, No. 05 C 2036, 2006 WL 2037356 (N.D. Ill. July 14, 2006); *Genentech, Inc. v. Insmed Inc.*, No. C-04-5429 CW (EMC), 2006 U.S. Dist LEXIS 55992 (N.D. Cal. Aug. 10, 2006), *objections overruled*, dkt. no. 576 (N.D. Cal. Sept. 5, 2006); *Indiana Mills & Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04-cv-01102-LJM-WTL, 2006 U.S. Dist. LEXIS 34023 (S.D. Ind. May 26, 2006), *opinion withdrawn*, 2006 U.S. Dist. LEXIS 47852 (S.D. Ind. July 14, 2006); *Informatica Corp. v. Bus. Objects Data*

(continued...)

one case, *Ampex*, specifically analyzes how *EchoStar* applies to trial counsel when opinion and trial counsel have been kept separate and independent. In that case, the district court declined to extend waiver to trial counsel. *Ampex Corp. v. Eastman Kodak Co.*, No. Civ. A. 04-1373-KAJ, 2006 U.S. Dist. LEXIS 48702, at *9 (D. Del. July 17, 2006) (Tab K). *Ampex* based its ruling on its understanding that *EchoStar* **did not** authorize the district court to go so far. *Id.* at *10-11.

In *Ampex*, the plaintiff sought all communications between Kodak and its trial counsel "bearing on the subject of infringement" on the grounds that "*Echostar* ... makes everything fair game for discovery."[20] *Id.* at *2, *6. The *Ampex* court rejected any reading of *EchoStar* that "[a]ny time trial counsel is talking to their client about infringement, [plaintiff] is entitled to know about it." *Id.* at *6.

---

*Integration*, No. C 02-3378 JSW (JL), 2006 WL 2038461 (N.D. Cal. July 14, 2006), *aff'd*, 2006 WL 2329460 (N.D. Cal. Aug. 9, 2006); *Intex Recreation Corp. v. Team Worldwide Corp.*, No. Civ. A. 04-1785 PLF/DAR, 2006 WL 2023552 (D.D.C. July 14, 2006).

[20] Interestingly, the *Ampex* court noted that initially the plaintiff contended that *EchoStar* entitled it to every communication from counsel. *Ampex*, 2006 U.S. Dist. LEXIS 48702, at *6 n.3. The court observed that plaintiff "backed off" that position and asserted instead that *EchoStar*'s "core holding" was that "discovery should not be permitted as a sword and shield" and "that principle [was] sufficient to require disclosure of trial counsel's communication [to its adversary in the *Ampex*] case." *Id.*

The *Ampex* court found no indication in *EchoStar* that showed "a desire by the Court of Appeals to have every communication a client has with its trial counsel on the very subject of an infringement trial open to review by opposing counsel." 2006 U.S. Dist. LEXIS 48702, at *9. Plaintiff's reading of *EchoStar*, the court stated, "[was] far too broad and [the plaintiff's motion was] an extravagant demand at odds with the generally understood contours of the attorney-client privilege." *Id.* at *7.

Instead, the *Ampex* court explained that the "broad language" in *EchoStar* must be taken in context. The court took note that *EchoStar* did not address the issue of communications with trial counsel. 2006 U.S. Dist. LEXIS 48702, at *11. Rather, in *EchoStar*, the concern was whether EchoStar was attempting to suppress an unfavorable opinion from opinion counsel on the basis of privilege while relying on another, more favorable opinion, the classic sword-and-shield fact pattern of selective disclosure. "It is hardly surprising that the [Federal Circuit], given those facts, would call that maneuver a foul." 2006 U.S. Dist. LEXIS 48702, at *9. In agreement with Seagate's reading of *EchoStar*, the *Ampex* court identified as the controlling principle that the attorney-client privilege cannot be used as a sword and a shield: "[S]elective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable

advice while asserting its privilege on unfavorable advice." *Id.* at *8 (citing *EchoStar*, 448 F.3d at 1301).[21]

The *Ampex* court further observed that "if all attorney-client discussions touching on the same subject were to be viewed as 'advice' or 'opinions' on a par with the legal opinions that were at issue in *Echostar*, the [*EchoStar*] court's comments would have to be understood as demolishing the practical significance of the attorney-client privilege." *Id.* at *10. Such a result would be flatly inconsistent with other portions of *EchoStar* and with the Federal Circuit's jurisprudence regarding attorney-client privilege, particularly *Knorr-Bremse*, 383 F.3d at 1344. *See id.*

The *Ampex* court is the only court since *EchoStar* to analyze privilege waiver under facts which are similar to Seagate's. Judge Jordan reached the correct result. The same outcome should apply here, and there should be no discovery of trial counsel's communications.

---

[21] The *Ampex* court specifically addressed and rejected plaintiff's contention that *EchoStar*'s citation of the *Akeva* case established that waiver should extend to separate and independent trial counsel. *See Ampex*, 2006 U.S. Dist. LEXIS 48702, at *11 (referencing *Akeva L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d 418 (M.D.N.C. 2003)). "What [the plaintiff] Ampex ignores is that *Akeva* dealt with circumstances in which the defendant expressly relied on its trial counsel's noninfringement opinion to continue operating, while awaiting a separate opinion from another source." *Id.* (referencing *Akeva*, 243 F. Supp. 2d at 419-20). "That is not akin to the facts in [the *Ampex*] case" nor to the facts in this case. *Id.*

### F.    This Court Has Rejected an "Automatic Waiver" of Privilege for Plaintiffs in an Analogous Context

In the *Zenith* case, this Court rejected an automatic waiver rule for plaintiffs

in an analogous context. *Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed.

Cir. 1985) (reversing orders to produce documents and other discovery). The issue

in *Zenith* was whether plaintiffs may bring a claim and then "hide behind the shield

of a privilege and withhold testimony that may materially aid the defense while

invoking the aid of the court in prosecuting a claim." *Id.* at 1579 (citation omitted).

In *Zenith*, this Court rejected outright an approach taken by some other

courts, namely, an "automatic waiver" rule. For similar reasons as in *Zenith*, no

automatic waiver rule should apply here. This Court explained that attorney-client,

work product, and executive communications privileges "involve subtle and

sensitive questions and ordinarily should not be breached without a more

penetrating analysis than the automatic waiver rule involves." *Id.* at 1580. "A

party does not automatically waive these privileges, which protect the formulation

of legal opinions or litigation strategy, simply by bringing suit." *Id.* Here, too, this

Court should clarify that a patent defendant cannot and does not automatically

waive its privileges as to all trial counsel communications simply because it raises

a defense to willfulness.

The Court in *Zenith* discussed two other approaches:  a balancing test, which

balances the need for discovery against the need for protecting discovery, and the

more demanding *Hearns* test, which considers whether, among other facts, the opposing party is seeking discovery "vital to his defense." *See id.* at 1579. *Zenith*'s balancing test is similar to the balancing approach in *EchoStar*. In *Zenith*, however, this Court found it unnecessary to choose between the two remaining tests because Zenith failed to make the "strong showing of need" to breach the privilege under either test. *See id.* at 1580. This Court stated, "These matters [sought to be discovered] are tangential to and remote from the central legal issue in the case [the government's rights under certain settlement agreements]. … [T]heir probative value is too weak to justify breaching the important privileges the government asserted …." *Id.* at 1580-81.

EchoStar* did not adopt an automatic waiver rule for all client communications of all counsel, including trial counsel, on infringement, validity, and enforceability. If, on the other hand, *EchoStar* marks the end of privilege (which it cannot) for trial counsel after an advice of counsel defense to willfulness, then there is no such defense going forward. No patent defendant will ever again assert reliance on an opinion letter, if it means that privilege is lost for communications with trial counsel on substantive patent issues. As observed *supra*, that is entirely inconsistent with the decision of the *en banc* Court in *Knorr-Bremse* to overrule long-standing, harsh precedent so that the law of privilege for patent cases would be brought into line with the law of privilege for other areas of law.

- 28 -

# V. CONCLUSION

Seagate has exhausted its remedies in the district court and has no choice but to seek review from this Court. Seagate respectfully requests that this Court clarify the law and eliminate the dilemma that currently exists for Seagate and other patent defendants. For all the above reasons, the Court should issue a writ of mandamus under 28 U.S.C. § 1651 ordering the district court to vacate its Orders of July 11, 2006, May 28, 2004, and September 8, 2004 to produce Seagate's trial counsel communications protected by attorney-client privilege and work-product protection.

Dated:  September 28, 2006

Respectfully Submitted,

Raphael V. Lupo
Paul Devinsky
Brian E. Ferguson
McDermott Will & Emery LLP
600 13th Street, N.W., 12th Floor
Washington, D.C.  20005-3096
(202) 756-8000

Terrence P. McMahon
Stephen J. Akerley
Lucy H. Koh
Mary B. Boyle
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 813-5000

Counsel for Petitioner Seagate Technology LLC

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - :

CONVOLVE, INC., and MASSACHUSETTS        : 00 Civ. 5141 (GBD) (JCF)
INSTITUTE OF TECHNOLOGY,                 :
                                         :
                    Plaintiffs,          :        MEMORANDUM
                                         :        AND  ORDER
     - against -                         :
                                         :
COMPAQ COMPUTER CORP. and SEAGATE        :
TECHNOLOGY, INC.,                        :
                                         :
                    Defendants.          :
                                         :
- - - - - - - - - - - - - - - - - - :

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     The plaintiffs in this action have sued the defendants,
Seagate Technology, Inc. ("Seagate") and Compaq Computer Corp.
("Compaq"), alleging, among other claims, willful patent
infringement of the plaintiffs' computer disk drive technology.
The defendants, in turn, assert that they acted in good faith
because they relied on the advice of counsel. They concede that by
relying on an advice-of-counsel defense, they have waived the
attorney-client privilege as well as work product immunity with
respect to communications with and documents created by opinion
counsel.  At issue now are two questions that have split the
courts:  to what extent does reliance on advice of counsel waive
the attorney-client privilege for communications with trial
counsel, and does any such waiver extend to trial counsel's work
product?

Background

     On July 13, 2000, the plaintiffs initiated this lawsuit
alleging, among other claims, theft of trade secrets and patent

infringement in connection with the plaintiffs' "Input Shaping" and "Quick and Quiet" technologies. The "Input Shaping" technology permits machines to operate more quickly and quietly by reducing vibrations associated with machine movement. (Amended Complaint ("Am. Compl."), ¶ 3). The "Quick and Quiet" application is a computer control panel feature that permits users to select between the fastest or quietest performance for computer disk drives. (Am. Compl., ¶ 6).

The "Input Shaping" technology is the subject of United States patent numbers 4,916,635 (the "'635 patent") and 5,638,267 (the "'267 patent"), which were issued to the plaintiffs on April 10, 1990, and June 10, 1997 respectively. (Am. Compl., ¶¶ 3, 109). A third patent, United States patent number 6,314,473 (the "'473 patent"), was issued on November 6, 2001, and covered the plaintiffs' "Quick and Quiet" technology. (Am. Compl., ¶¶ 6, 116). On January 25, 2002, the plaintiffs filed an Amended Complaint, adding the '473 patent to their patent infringement claim (Am. Compl., ¶¶ 115-120), and seeking treble damages on the ground that the defendants' infringement of the '635 and '267 patents was "knowing, willful and deliberate." (Am. Compl., ¶ 114).

Seagate initially retained the law firm of Orrick, Herrington & Sutliffe to serve as its trial counsel but later switched to the firm of McDermott, Will & Emery. Fish & Neave serves as trial counsel for Compaq.

After the filing of the original complaint, Seagate retained Gerald T. Sekimura, who was then with the law firm of Limbach &

Limbach L.L.P., to provide an opinion as to the legality of its conduct. Mr. Sekimura issued three written opinions. The first opinion, dated July 24, 2000 (the "7/24/00 Opinion"), concerned the '635 and '267 patents and International Application WO 99/45535 (the "'535 International Application"), which relates to technology similar to that covered by the '473 patent (Am. Compl., ¶ 4). The report reviewed the computer disk drive technology used in Seagate's products and the plaintiffs' patent claims and concluded that many of the plaintiffs' claims were invalid and that the plaintiffs had failed to show infringement by Seagate's existing products. (7/24/00 Opinion at 1-21). The report noted that further analysis was needed because only 186 of the over 340 claims made by the plaintiffs had been reviewed (7/24/00 Opinion at 1), and it noted that the '535 International Application analyzed in the report "is not an issued patent." (7/24/00 Opinion at 16).

On December 29, 2000, Mr. Sekimura forwarded to Seagate an "Updated Report Re Convolve Patents" (the "12/29/00 Opinion") concerning the same patents and application as the 7/24/00 Opinion. The 12/29/00 Opinion drew the same conclusions as the 7/24/00 Opinion but added, with respect to the '267 patent, that many of the plaintiffs' claims were not only invalid but may be unenforceable due to incomplete disclosures of prior art by the inventors. (12/29/00 Opinion at 2, 29). The report also recommended that further review of the '535 International Application be postponed until the U.S. Patent and Trademark Office evaluated the plaintiffs' claims to determine whether to issue a

3

patent. (12/29/00 Opinion at 2). The report noted again that only 186 claims had been reviewed, and that "[f]urther supplementation may be desired of this study." (12/29/00 Opinion at 1).

Finally, on February 21, 2003, Mr. Sekimura, now with the law firm of Gray Cary, provided Seagate with an opinion (the "2/21/03 Opinion") concerning the '473 patent. The report reviewed the eight "independent" and seven "dependent" claims made by the plaintiffs, and drew various conclusions regarding Seagate's non-infringement of the '473 patent and the invalidity of the plaintiffs' claims. (2/21/03 Opinion at 13-14, 32-35).

In late 2001 or early 2002, Compaq retained Michael S. Dowler of the law firm of Howrey Simon Arnold & White to prepare an opinion concerning the plaintiffs' patents. (Letter from Special Master Pasquale A. Razzano dated Sept. 18, 2003 (the "9/18/03 Order") at 2). Compaq thereafter instructed Mr. Dowler to stop work on his report after it learned of the Seagate opinions obtained from Mr. Sekimura. (9/18/03 Order at 2). Before that decision was made, however, Mr. Dowler forwarded to Compaq an email "draft opinion" or "template" that analyzed the "disclosures and prosecution histories" relating to the '635, '267, and '473 patents. (9/18/03 Order at 3). The "draft opinion" contained a "Conclusion" section, which stated, "Compaq ___'s do not infringe any of the system claims. . . ." (9/18/03 Order at 3).

On July 27, 2001, the Honorable John S. Martin, to whom the

4

case was then assigned,[1] appointed Pasquale A. Razzano to serve as a Special Master to hear and determine all discovery disputes relating to trade secret information.   Pursuant to a Scheduling Order issued by Mr. Razzano, both Seagate and Compaq notified the plaintiffs in early 2003 of their intent to rely on the 7/24/00, 12/29/00, and 2/21/03 Opinions from Mr. Sekimura as the basis for their advice-of-counsel defense to the claim of willful patent infringement.   (Letter from Pasquale A. Razzano dated September 23, 2003 (the "9/23/03 Order") at 2-3).   The defendants disclosed the three opinions to the plaintiffs, and made Mr. Sekimura available for a deposition.   (Defendant Compaq Computer Corporation's Opposition to Plaintiff Convolve, Inc.'s July 10, 2003 Motion to Compel Discovery from Compaq ("Compaq Opp.") at 1-2).   All "correspondences and work product (regardless of whether it was or was not communicated to Seagate)" were produced from Mr. Sekimura's files, as were communications with Mr. Sekimura in Seagate's files. (Seagate Technology LLC's Opposition to Convolve, Inc.'s Motion to Compel Discovery from Seagate ("Seagate Opp.") at 3).   Moreover, two of Compaq's in-house attorneys were deposed "on the subject of opinions of counsel," (Compaq Opp. at 2).

On May 23, 2003, the plaintiffs moved to compel discovery relating to Mr. Dowler from Compaq.   In an order dated September 18, 2003, the Special Master held that by asserting the advice-of-counsel defense, Compaq had waived the attorney-client and work

---

[1] This case was re-assigned to the Honorable George B. Daniels on July 23, 2003.

product privileges with respect to "all opinions of counsel on the same subject." (9/18/03 Order at 5). The Special Master ordered that Compaq produce the "draft" opinion from Mr. Dowler and "all other documents relating thereto," and he ordered Mr. Dowler to appear for a deposition. (9/18/03 Order at 6-7). The Special Master excluded Compaq's trial counsel, Fish & Neave, from his order, noting that trial counsel was the subject of a separate motion. (9/18/03 Order at 5 n.3).

On July 10, 2003, the plaintiffs again moved to compel discovery from Compaq with regard to the "work of Compaq and its various counsel, and communications among Compaq and between Compaq and others, including its counsel, which evidence relates to the infringement, validity and enforceability of the patents-in-suit." (Convolve, Inc.'s Memorandum of Points and Authorities in Support of its Motion to Compel Discovery from Compaq ("Pl. Compaq Memo.") at 2). In an order dated September 23, 2003, the Special Master ruled that Compaq must produce "all opinions communicated to it . . . by any counsel, including trial counsel, up to the date on which [Compaq] concluded [it] would rely on the Seagate opinions." (9/23/03 Order at 13) (emphasis omitted). Additionally, the Special Master ordered production of "all documents relied on or considered by such counsel . . . in connection with any opinions or information communicated to Compaq. . . ." (9/23/03 Order at 13). For the post-reliance period, the Special Master ordered that "communications between trial counsel [and Compaq]" be produced in camera for disclosure of "contradictory opinions of trial counsel,

6

or those casting doubt on earlier opinions." (9/23/03 Order at 14) (emphasis omitted).

By letter dated October 1, 2003, Compaq moved for clarification of the Special Master's order, requesting a ruling on the "scope of 'opinion' discovery contemplated by the Order." (Compaq Letter to Pasquale A. Razzano dated Oct. 1, 2003 ("Compaq 10/1/03 Letter") at 3). Compaq asserted that the term "opinion" should be construed to mean "a 'formal' opinion, whether written or oral, that was provided to a client in response to a request from the client for an opinion." (Compaq 10/1/03 Letter at 1).

On October 1, 2003, the plaintiffs moved to compel discovery from Seagate.[2] Contending that such discovery should extend beyond the "opinions" referenced in the 9/23/03 Order (Convolve, Inc.'s Memorandum of Points and Authorities in Support of its Motion to Compel Discovery from Seagate ("Pl. Seagate Memo.") at 2 n.1), the plaintiffs sought to obtain

> internal communications on the same subjects as the formal [Sekimura] opinions, communications between Seagate and any attorneys on the same subjects as the formal opinions, documents reflecting outside counsel's opinion as to the same subjects of the formal opinions, documents reviewed or considered, or forming the basis for outside counsel's opinion as to the subject matter of the formal opinions, and documents reflecting when oral communications concerning the subjects of the opinions occurred between Compaq and outside counsel.

(Pl. Seagate Memo. at 2) (emphasis omitted).

---

[2] While it appears from the record that some motions were made by plaintiff Convolve, Inc. ("Convolve"), and others by both plaintiffs, I will refer to all of the motions as "the plaintiffs' motions," as my ruling will apply to both plaintiffs in any event.

7

In a letter to the Special Master dated October 10, 2003, the plaintiffs asserted that a conflict of interest may exist with respect to Mr. Razzano, arising from the brief representation by Mr. Razzano's law firm, Fitpatrick, Cella, Harper & Scinto, of a defendant in another patent infringement action. (Plaintiffs' Letter to Pasquale A. Razzano dated Oct. 10, 2003 ("Pl. 10/10/03 Letter")).[3]  While expressing disagreement with the plaintiffs' position, the Special Master nevertheless recused himself on October 14, 2003. (Razzano 10/14/03 Letter at 3).

By letter dated October 24, 2003, the plaintiffs requested that the Honorable George B. Daniels set a pre-motion conference with respect to several outstanding discovery disputes, including the parties' disagreements over the Special Master's 9/23/03 Order. (Plaintiffs' Letter to Hon. George B. Daniels dated Oct. 24, 2003 ("Pl. 10/24/03 Letter") at 1, 4). In their letter, the plaintiffs moved for modification of the order such that the discovery ordered from Compaq not be "limited to 'opinions' and their supporting documents, but extend[] to other evidence concerning the subject matter of the opinions, i.e., validity, infringement or enforceability of the patents in suit." (Pl. 10/24/03 Letter at

---

[3] A decision in the other action, Michlin v. Canon, Inc., 208 F.R.D. 172 (E.D. Mich. 2002), also addressed the scope of a waiver of the privilege resulting from assertion of the advice-of-counsel defense to a claim of willful patent infringement. The plaintiffs noted that Mr. Razzano's firm had represented one of the defendants, Hewlett Packard, which later merged with Compaq. (Pl. 10/10/03 Letter). The overlap in time between Mr. Razzano's role as a Special Master in this case and his firm's representation of Compaq in Michlin was 19 days. (Letter of Pasquale A. Razzano to Hon. George B. Daniels dated Oct. 14, 2003 ("Razzano 10/14/03 Letter") at 2).

8

4).

On December 9, 2003, Judge Daniels referred the case to me for pre-trial supervision, including resolution of the pending disputes.

Discussion

A.    Legal Standards

Under 35 U.S.C. § 284, a trial court may, at its discretion, increase the damages awarded for patent infringement to a maximum of three times the compensatory award assessed by a jury. Although not mandated by statute, such enhanced damages have been approved "where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992) (citations omitted); accord Thorn EMI North America, Inc. v. Micron Technology, Inc., 837 F. Supp. 616, 620 (D. Del. 1993) (citing Mathis v. Spears, 857 F.2d 749, 754 (Fed. Cir. 1988)).

One important factor in determining the willfulness of an infringer's actions is whether legal advice was sought before the infringement occurred. See Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc., No. 90 Civ. 5593, 1994 WL 97572, at *1 (S.D.N.Y. March 18, 1994) ("[A] potential infringer having actual notice of another's patent has an affirmative duty of due care that normally requires the potential infringer to obtain competent legal advice before infringing or continuing to infringe.") (quoting Minnesota Mining and Manufacturing Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1580 (Fed.

9

Cir. 1992)); <u>Underwater Devices Inc. v. Morrison-Knudsen Co.</u>, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983). Where such advice is obtained, reliance on the advice must be reasonable; the central focus in a determination of willfulness is the infringer's state of mind. <u>See</u> <u>Ortho Pharmaceutical Corp. v. Smith</u>, 959 F.2d 936, 944 (Fed. Cir. 1992); <u>Thorn</u>, 837 F. Supp. at 620.

Where a party in a patent infringement action asserts the advice of counsel as a defense to a claim of willful infringement, it waives the attorney-client privilege as to the subject matter of the advice received. <u>See, e.g.</u>, <u>Carl Zeiss Jena GmbH v. Bio-Rad Laboratories Inc.</u>, No. 98 Civ. 8012, 2000 WL 1006371, at *1 (S.D.N.Y. July 19, 2000); <u>Saint-Gobain/Norton Industrial Ceramics Corp. v. General Electric Co.</u>, 884 F. Supp. 31, 33 (D. Mass. 1995). This rule follows from the general principle that if privileged communications are placed "in issue" by virtue of claims or defenses in litigation, then a "broad[] subject matter waiver [of the privilege] is effected." <u>Oxyn Telecommunications, Inc. v. Onse Telecom</u>, No. 01 Civ. 1012, 2003 WL 660848, at *6 (S.D.N.Y. Feb. 27, 2003); <u>accord</u> <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 183 & n.4 (2d Cir. 2000) (citing 8 J. Wigmore, Evidence § 2327 (McNaughton ed., 1961)). The rule seeks to promote fairness in patent litigation, since "it would be fundamentally unfair to allow a party to disclose opinions which support its position, and simultaneously conceal those which are adverse." <u>Saint-Gobain</u>, 884 F. Supp. at 33.

As codified in Rule 26(b)(3) of the Federal Rules of Civil

procedure, the work product doctrine requires that documents "prepared in anticipation of litigation or for trial" be produced only upon a showing of: (1) "substantial need" by the discovering party and (2) "undue hardship" if the documents must be obtained by other means. Even where the required showing is made, Rule 26(b)(3) mandates that "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney." Thus, such "mental impression" or "opinion" work product is accorded an even greater level of protection. <u>See</u> <u>United States v. Adlman</u>, 134 F.3d 1194, 1197 (2d Cir. 1998); <u>Lugosch v. Congel</u>, 218 F.R.D. 41, 48 (N.D.N.Y. 2003).

B.   Seagate

In this case, Seagate has asserted, as a defense to the plaintiffs' claim of willful patent infringement and enhanced damages under 35 U.S.C. § 284, that it relied on the 7/24/00, 12/29/00, and 2/21/03 Opinions from Mr. Sekimura. Seagate concedes that by asserting this defense, it has waived the attorney-client privilege and work product immunity with respect to Mr. Sekimura. (Seagate Opp. at 3). The dispute concerns the extent of the waiver with respect to attorneys other than Mr. Sekimura.

The plaintiffs contend that Seagate has waived both protections with respect to "all documents and other discovery that are relevant to the subject matter of [the Sekimura] opinions." (Pl. Seagate Memo. at 1). They seek both privileged communications and attorney work product relating to the same subject matter with regard to "any attorneys" retained by Seagate. (Pl. Seagate Memo.

11

at 2). In light of the "heightened protections for privileged information of trial counsel," the plaintiffs request that "documents and things which post-date Seagate's reliance on the [Sekimura] opinions" be produced in camera so that only "evidence contradicting or casting doubt upon the [Sekimura] opinions" can be selected for disclosure. (Pl. Seagate Memo. at 2, 15).

Construing the plaintiffs' motion as seeking "only the privileged communications between trial counsel and Seagate and the work product of Seagate's trial counsel" (Seagate Opp. at 3), Seagate contends that it has not waived any privilege with respect to trial counsel because it "never requested and never received reliance opinions from its trial counsel." (Seagate Opp. at 9). Seagate further contends that it "retained opinion counsel prior to litigation and has maintained its reliance on that counsel," and that opinion counsel was neither selected nor influenced by Seagate's trial counsel. (Seagate Opp. at 9-10). Seagate argues that the plaintiffs' motion, if granted, would have a chilling effect on communications with its trial counsel (Seagate Opp. at 2), and that a bright line should be drawn such that unless a formal opinion is issued by trial counsel, communications with that counsel should be absolutely protected. (Tr. at 51-52).[4]

### 1. Attorney-Client Privilege

As discussed above, a party that asserts the advice of counsel defense to a claim of willful patent infringement waives the

---

[4] "Tr." refers to the transcript of oral argument conducted on January 20, 2004.

12

attorney-client privilege as to the subject matter of the advice disclosed. This waiver extends not only to the attorney who rendered the opinion creating the waiver, but also to all other attorneys who may have advised or communicated with the client on the same subject matter. AKEVA L.L.C. v. Mizuno Corp., 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003) ("Since the waiver encompassed the subject matter of advice, that means that all opinions received by the client must be revealed, even those opinions the client receives from attorneys other than opinion counsel."); accord Beneficial Franchise Co. v. Bank One, N.A., 205 F.R.D. 212, 217 (N.D. Ill. 2001); D.O.T. Connectors, Inc. v. J.B. Nottingham & Co., No. 4:99 Civ. 311, 2001 WL 34104928, at *2 (N.D. Fla. Jan. 22, 2001); Carl Zeiss, 2000 WL 1006371, at *1; Fonar Corp. v. Johnson and Johnson, 227 U.S.P.Q. 886, 887 (D. Mass. 1985). As explained by the Court in AKEVA:

> Practical reasons exist for this rule. The exercise of due care requires a potential infringer to act reasonably. The infringer may not pick and choose between what opinions will be relied upon and which will be discarded. The totality of the circumstances test requires that all knowledge gained by the infringer relating to the advice subject matter must be revealed so that the factfinder can make its own determination as to whether the reliance was reasonable.

243 F. Supp. 2d at 423.

Here, Seagate has placed at issue the advice of its opinion counsel, Mr. Sekimura, and it has produced the otherwise privileged opinions communicated to Seagate. Seagate has therefore waived the privilege with respect to all communications not only with Mr. Sekimura, but also with its other attorneys, including trial

13

counsel, concerning the subject matter of Mr. Sekimura's advice. Although Seagate contends that it did not receive any "reliance opinions" from its trial counsel, this representation does not foreclose the possibility that trial counsel communicated informal opinions or oral advice. The subject matter waiver arising from the advice-of-counsel defense clearly extends to all such "communications," not just formal or written opinions. See Beneficial, 205 F.R.D. at 217 ("[A] party must produce not only other communications and opinions of the same attorney, but also privileged information from other counsel involving the same subject."); D.O.T., 2001 WL 34104928, at *2 ("The waiver extends to communications between [the defendant] and any attorney, including trial counsel. . . ."); Micron Separations, Inc., v. Pall Corp., 159 F.R.D. 361, 363 (D. Mass. 1995) (the advice-of-counsel defense effects a "'subject matter' waiver -- i.e., a waiver of all communications on the same subject matter").

With respect to the temporal scope of Seagate's waiver, it is well established that a potential infringer having "actual notice" of another's patent has a duty to exercise reasonable care, which normally includes obtaining "competent legal advice." Minnesota Mining, 976 F.2d at 1580. Since infringement is a continuing activity, this requirement of reasonable care is a continuing duty, meaning that the nature of any legal advice sought remains relevant "during the entire course of the alleged infringement." AKEVA, 243 F. Supp. 2d at 423; accord Micron, 159 F.R.D. at 363 ("[W]hen a party is charged with wilful infringement, what is relevant is that

14.

party's state of mind during the time when it is taking actions which allegedly infringe the patent."). Accordingly, a waiver of the privilege resulting from the advice-of-counsel defense extends throughout the period of infringement, "including up through trial." AKEVA, 243 F. Supp. 2d at 423; accord D.O.T., 2001 WL 34104928, at *2 & n.4.[5]

Here, the plaintiffs allege that Seagate learned of the '635 and '267 patents in 1995 and 1997 respectively (Pl. Seagate Memo. at 3; Am. Compl., ¶¶ 22, 34), and that they notified Seagate of its alleged infringement of the '473 patent shortly after the patent issued in November 2001. (Tr. at 72). It is undisputed that Seagate's alleged infringement -- namely, its manufacture of computer disk drives using technology that was allegedly stolen from the plaintiffs -- is continuing. (Am. Compl., ¶¶ 58-62, 111, 117). Accordingly, Seagate's waiver of the privilege resulting from its advice-of-counsel defense should extend from the time it became aware of the plaintiffs' patents until such time in the future that Seagate ceases its alleged infringement. AKEVA, 243 F. Supp. 2d at 423; Dunhall, 994 F. Supp. at 1206 (privilege is waived

---

[5] While some cases, most notably Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc., 994 F. Supp. 1202 (C.D. Cal. 1998), have limited the waiver of the privilege with respect to trial counsel to the period prior to commencement of suit, such a filing date cutoff seems inconsistent with the continuing duty of care imposed in ongoing infringement cases. The filing date rule is particularly unworkable for this case, since the opinions that triggered the waiver were not obtained until after the suit commenced, meaning that evaluating the effect of later-received contrary opinions on Seagate's state of mind would necessarily implicate the post-filing period.

for the "entire time period of the alleged infringement").

Next, the plaintiffs propose a subject matter limitation of Seagate's waiver such that discovery regarding trial counsel for the "post-reliance" period would be limited to "such evidence contradicting or casting doubt upon the [Sekimura] opinions," selected after in camera review. (Pl. Seagate Memo. at 15). This proposal mirrors the approach taken by the Special Master with respect to Compaq in his 9/23/03 Order. (9/23/03 Order at 14). While there is some case law supporting the "contradictory opinions" approach, see, e.g., Beneficial, 205 F.R.D. at 218; Thermos Co. v. Starbucks Corp., No. 96 Civ. 3833, 1998 WL 781120, at *4-5 (N.D. Ill. Nov. 3, 1998), such a limitation does not comport with the nature of Seagate's "subject matter waiver," which extends to the entire subject matter of Mr. Sekimura's opinions -- infringement, validity, and enforcement of the patents at issue. The waiver would therefore encompass information that is both consistent with and contrary to Mr. Sekimura's advice. See D.O.T., 2001 WL 34104928, at *2; Dunhall, 994 F. Supp. at 1205. Moreover, a waiver that encompasses both negative and positive information would not cause unfairness to Seagate, since the additional disclosure of favorable evidence would only bolster its advice-of-counsel defense.

Nevertheless, care should be taken to minimize the disclosure of communications pertaining to trial or litigation strategy. To be sure, trial counsel's advice that undermines the reasonableness of the client's reliance on advice of opinion counsel must be

16

disclosed even if it is communicated in the context of trial preparation. But, at the same time, trial counsel will surely address with the client trial strategy concerning validity, infringement, and enforcement in ways that do not implicate the advice-of-counsel defense. Therefore, to the extent that Seagate wishes to withhold or redact documents that would reveal trial strategy or planning, it shall submit those documents for my _in camera_ review.

For the foregoing reasons, the plaintiffs' motion with respect to Seagate's waiver of the attorney-client privilege is granted. Seagate shall produce all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel, with respect to the subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '635, '267, and '473 patents.[6] The time period of the waiver runs from the time Seagate became aware of the patents at issue and continues until such time as Seagate's alleged infringement ends. Any communications between Seagate and its trial counsel concerning the subject matter of Mr. Sekimura's opinions that also relate to trial strategy or planning shall be submitted for my review.

---

[6] To the extent that the plaintiffs' request for "internal communications on the same subjects as the [Sekimura] opinions" (Pl. Seagate Memo. at 2) refers to communications between Seagate and its in-house counsel, that request would be covered by this order. If "internal communications" relates to individuals within Seagate who are not attorneys, such communications are not subject to the attorney-client privilege and should be disclosed in any event.

17

2.  Work Product Immunity

While it is well established that assertion of the advice-of-counsel defense in patent litigation creates a subject matter waiver with respect to all privileged communications, the case law is inconsistent as to whether the waiver extends to an attorney's work product.  The central split in authority pertains to the issue of "uncommunicated work product," that is, work product that is not disclosed to the client.[7]  On one hand, the cases that decline to order disclosure of attorney work product reason that since the primary focus in an advice-of-counsel defense is the client's state of mind, an attorney's work product is not relevant unless it is communicated to the client.  See, e.g., Nitinol Medical Technologies, Inc. v. AGA Medical Corp., 135 F. Supp. 2d 212, 218 (D. Mass. 2000); Thorn, 837 F. Supp. at 622.  Cases to the contrary reason that because the standards for "admissibility and discoverability" differ, all evidence "reasonably calculated to lead to the discovery of admissible evidence" should be disclosed, including circumstantial evidence in an attorney's files of information that might have been communicated to the client.  Dunhall, 994 F. Supp. at 1204 (citing Fed. R. Civ. P. 26(b)(1)).  Such evidence could include information shedding light on additional oral advice that may have been given, Matsushita Electronics Corp. v. Loral Corp., No. 92 Civ. 5461, 1995 WL 527640,

---

[7] As noted by the Court in Dunhall, uncommunicated work product is in effect the equivalent of work product generally, since "communicated work product" would be covered by the attorney-client privilege.  994 F. Supp. at 1204.

at *2 (S.D.N.Y. Sept. 7, 1995), or unfavorable information where the inference can be drawn that it was conveyed to the client, Electro Scientific Industries, Inc. v. General Scanning, Inc., 175 F.R.D. 539, 545 (N.D. Cal. 1997).

In cases where separate and independent opinion counsel render the opinion underlying the advice-of-counsel defense, some courts have ordered work product disclosure only from that counsel, absent special circumstances. As explained by the court in AKEVA, "courts have expressed a concern about allowing a procedure that tempts attorneys and clients to cook up an advice opinion based mainly on its palatability for the trial while withholding unfavorable information." 243 F. Supp. 2d at 424; accord Dunhall, 994 F. Supp. at 1204 ("A narrowly circumscribed waiver, at the discovery stage, creates a danger of a defendant utilizing favorable opinion letters while allowing unfavorable evidence to languish in their attorney's files under the protection of the work product doctrine."). Nevertheless, the AKEVA court declined to order full work product disclosure for trial counsel because the defendants "[were] not asserting reliance on the opinion of trial attorneys, but only the opinion of an attorney separately retained for his opinion." 243 F. Supp. 2d at 422. The Court explained:

> [T]he broad waiver rule requiring full disclosure of
> documents, even if they were not given to the client, is
> best suited to the situation where the opinion counsel is
> trial counsel. In that situation, the opinion counsel
> has a dual role in advising the client and, thus, there
> is a greater need to make sure the opinion is not tainted
> by bias or other influences. . . . To the extent that a
> broader waiver of work product protection might also
> disclose the trial attorney has been orchestrating a sham
> opinion with opinion counsel, the Court finds that

19

> possibility to be sufficiently remote and more difficult
> to orchestrate.

Id. at 424.

The circumstances of this case are similar to those of AKEVA.
Here, Seagate has separately retained independent opinion counsel
to render advice on which Seagate relies as the basis for its
advice-of-counsel defense.  Seagate contends -- and the plaintiffs
do not dispute -- that its trial counsel played no role in
selecting Seagate's opinion counsel and did not influence the
drafting of Mr. Sekimura's opinions.   (Seagate Opp. at 9-10).[8]
Where there is no evidence that trial and opinion counsel have
conspired to create a "sham opinion" to gain an unfair advantage in
litigation, production of the un-communicated work product of trial
counsel is unwarranted.   Compare AKEVA, 243 F. Supp. 2d at 424
(ordering full disclosure of privileged communications but not
work product of trial counsel) with K.W. Muth Co. v. Bing-Lear
Manufacturing Group, L.L.C., 219 F.R.D. 554, 577 (E.D. Mich. 2003)
(work product discoverable where defendant was "less than
forthright" in disclosing oral advice of trial counsel); Electro
Scientific, 175 F.R.D. at 540, 545 (work product waived where facts
showed substantial communication between trial and opinion
counsel).

---

[8] The plaintiffs' do contend that there is a connection
between trial and opinion counsel as shown by the fact that certain
documents drafted by Seagate's trial counsel were later provided to
opinion counsel.   (Pl. Seagate Memo. at 8-9 & n.5).   But those
documents, along with others drafted by Convolve's counsel, were
provided to opinion counsel as part of the record of the litigation
and do not demonstrate an effort by Seagate's trial counsel to
influence opinion counsel.

20

The rationales advanced for a broader waiver of the work product immunity do not withstand scrutiny, at least in these circumstances. For example, the observation that the standard for discovery is broader than that for admissibility, see Dunhall, 994 F. Supp. at 1204, is accurate but immaterial, since the work product doctrine is specifically intended to create an immunity from discovery. Likewise, the contention that uncommunicated work product must be disclosed for fear that witnesses are not candid about what was communicated, see Electro Scientific, 175 F.R.D. at 545, is an argument that proves too much. Attorney work product could frequently be useful in challenging the credibility of a witness, but the mere suspicion that that might be the case is an insufficient basis for requiring its disclosure. Finally, while some courts that endorse a waiver of trial counsel's work product nevertheless seek to limit it to work product created before the lawsuit was filed, see Dunhall, 994 F. Supp. at 1205-06; Electro Scientific, 175 F.R.D. at 546, such a temporal constraint is illogical since a defendant's state of mind remains relevant as long as the defendant continues its alleged infringement.

For these reasons, the plaintiffs' motion to compel discovery withheld on the basis of the work product privilege is denied. Seagate's trial counsel is not obligated to disclose any work product, uncommunicated to Seagate, relating to the subject matter of the opinions issued by Mr. Sekimura.[9] However, the communicated

---

[9] This ruling does not implicate any of Seagate's attorneys other than trial counsel, since the plaintiffs have only requested work product discovery as to "outside counsel." (Pl. Seagate Memo.

21

work product of any of Seagate's attorneys is discoverable under Seagate's waiver of the attorney-client privilege. Such communicated work product shall include materials disclosing the fact or substance of Seagate's (or in-house counsel's) communications with any outside counsel; accordingly, this order encompasses the plaintiffs' request for "documents reflecting oral communications . . . between [Seagate] and outside counsel" that relate to the subject matter of the Sekimura opinions. (Pl. Seagate Memo. at 2).

C.   Compaq

Prior to seeking discovery from Seagate, the plaintiffs filed a similar motion concerning Compaq, requesting privileged communications and attorney work product with respect to attorneys other than Mr. Sekimura. The plaintiffs sought the "work of Compaq and its various counsel," and "communications among Compaq and between Compaq and others, including its counsel," relating to the subject matter of Mr. Sekimura's opinions. (Pl. Compaq Memo. at 2). As with Seagate, the plaintiffs contended that Compaq waived both the attorney-client privilege and work product immunity with respect to all of its attorneys, including trial counsel. (Pl. Compaq Memo. at 5-7). The plaintiffs argued that any "temporal

---

at 2). Seagate's "outside counsel" appear limited to its trial counsel, to whom this order applies, and its "opinion counsel," Mr. Sekimura, as to whom Seagate has conceded waiver. However, to the extent that the work product of Seagate's in-house counsel is at issue, disclosure is appropriate in any event. See Electro Scientific, 175 F.R.D. at 545-46 & n.4 ("[Materials] located in the files of a party's in-house lawyers would appear to bear directly on that party's state of mind.").

22

limitation" on Compaq's waiver should extend "at least through the date of reliance [on Mr. Sekimura's opinions]," since those opinions were received long after suit was filed;[10] the plaintiffs argued that they were "entitled to explore what was known to Compaq at and around the time it allegedly relied upon that opinion." (Pl. Compaq Memo. at 8, 10).

In its opposition papers, Compaq conceded waiver with respect to Mr. Sekimura's opinions, but argued that its waiver "should only extend to the opinions in [Mr. Sekimura's] opinion letter and not to every privileged communication or work product information that relates to the patents-in-suit." (Compaq Opp. at 3, 9). Compaq objected to discovery of any communications or work product from trial counsel, asserting that "[t]he opinions on which Compaq is relying were not drafted by Compaq's trial counsel, nor were they drafted by Compaq's outside counsel. There is no connection between the opinions and Compaq's trial counsel." (Compaq Opp. at 4). It also argued that "Compaq has not received any contrary opinion or any information that would call into question or cast doubt on the opinions in [Mr. Sekimura's opinions]." (Compaq Opp. at 5).

The Special Master issued a ruling on September 23, 2003, holding that Compaq had waived the privilege as to "any counsel,

---

[10] The parties do not appear to dispute that Compaq received at least the 12/29/00 Opinion from Seagate in or about November 2002. (Pl. Compaq Memo. at 3; Deposition of Taraneh Maghame dated May 13, 2003, attached as Exh. 1 to Convolve, Inc.'s Memorandum of Points and Authorities in Reply Re: Motion to Compel Discovery from Compaq, at 63-64).

including trial counsel." (9/23/03 Order at 13). He ordered the disclosure of all "opinions" communicated to Compaq by any such counsel, as well as related work product, concerning the subject matter of Mr. Sekimura's opinions. He also imposed temporal and subject matter limitations, ordering full disclosure for the period "up to the date on which [Compaq] concluded [it] would rely on the Seagate opinions," and disclosure of "contradictory opinions . . . or those casting doubt on earlier opinions," upon in camera review, for the post-reliance period. (9/23/03 Order at 13-14). The parties subsequently moved for clarification and modification of the 9/23/03 Order.

### 1. Law of the Case Doctrine

The "law of the case" doctrine posits that "when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case." Schwartz v. Chan, 142 F. Supp. 2d 325, 329 (E.D.N.Y. 2001) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)) (alteration in original). However, while the doctrine expresses a practice "generally to refuse to reopen what has been decided," it is "at best, a discretionary doctrine which does not constitute a limitation on the court's power." Devilla v. Schriver, 245 F.3d 192, 197 (2d Cir. 2001) (internal quotations and citations omitted); accord Arizona, 460 U.S. at 618 ("Law of the case directs a court's discretion, it does not limit the tribunal's power."). A prior decision should not be revisited "absent cogent or compelling reasons." Rezzonico v. H & R Block, Inc., 182 F.3d 144,

24

149 (2d Cir. 1999) (internal quotations and citation omitted).

Since the Special Master has already ruled on the plaintiffs' motion concerning Compaq, his 9/23/03 Order constitutes the "law of the case" for this Court. However, strict adherence to the Order may be unwarranted, as the Special Master has utilized a markedly different approach to the advice-of-counsel issues in this case from the one adopted above with respect to Seagate. Following the Special Master's ruling would therefore create inconsistent outcomes as between the two defendants and possibly cause confusion in the conduct of discovery.

Moreover, the 9/23/03 Order does not comport with the case law as construed above. Specifically, while the Special Master correctly found that by asserting the advice-of-counsel defense, Compaq waived the attorney-client privilege with respect to "any counsel, including trial counsel," he ordered only that any "opinions" of such counsel communicated to Compaq be disclosed, and that such disclosure be limited to the period preceding Compaq's decision to rely on Mr. Sekimura's opinions; only "contradictory opinions" were ordered produced for the post-reliance period. (9/23/03 Order at 13-14).

As previously discussed, the limitation of discovery to "opinions" communicated from counsel is inconsistent with the broad scope of a "subject matter waiver," which extends to "all communications on the same subject matter." Micron, 159 F.R.D. at 363. Moreover, the pre- and post-reliance distinction referenced in the Order is unsupported by any case authority, and appears to

25

be an effort by the Special Master to reconcile the case law that sets a temporal limit as of the time of suit with the fact that "the opinions involved [in this case] were rendered long after the suit was filed." (9/23/03 Order at 13). In light of Compaq's continuing duty to take reasonable care, however, any advice of counsel sought or rendered is relevant "during the entire course of the alleged infringement" up to the point of trial. <u>AKEVA</u>, 243 F. Supp. 2d at 423. Finally, the limitation to "contradictory opinions" in the post-reliance period does not comport with Compaq's "subject matter waiver," which pertains to both positive and negative information received from counsel.

### 2.  Procedural Issues

Compaq has raised two procedural objections that, if well-founded, could affect the weight that should be given to the law of the case doctrine. Namely, Compaq contends that the Special Master already issued a ruling on its motion for clarification during a telephone conference on September 26, 2003 (Compaq's 10/1/03 Letter at 1; Tr. at 43-44), and that the plaintiffs' motion for modification was untimely (Compaq's Letter to Hon. George B. Daniels dated October 29, 2003 ("Compaq 10/29/03 Letter") at 1-2, 5). If Compaq is correct, then the Special Master's Order would have been beyond my authority to review.

However, neither of Compaq's procedural objections has merit. With respect to the September 26 telephone conference, the Special Master unequivocally stated: "Putting aside for the moment the scope of what I intended to include within the term Opinion,

[Compaq's] e-mail of Sept. 29 accurately sets forth our discussion [on September 26]. <u>The scope of 'Opinion' will be dealt with in response to the motion for clarification</u>." (E-mail from Pasquale Razzano to Robert W. Morris and others dated Sept. 30, 2003) (emphasis added). Accordingly, Compaq's motion for clarification was <u>not</u> decided by the Special Master on September 26, 2003. With respect to timeliness, Compaq does not dispute that the Special Master extended the time to file objections to his ruling to October 24, 2003. (Compaq's 10/29/03 Letter at 5). While the plaintiffs' October 24 letter to Judge Daniels may have been styled as a request for a pre-motion conference under Local Rule 37.2 rather than a direct appeal of the Special Master's order under Rule 53 of the Federal Rules of Civil Procedure, it nevertheless raised objections to the underlying substance of the Special Master's ruling. The plaintiffs' motion for modification was therefore timely.

   3.   <u>Attorney-Client Privilege</u>

   As discussed above, a waiver of the privilege arising from the advice-of-counsel defense waives the privilege as to the subject matter of the advice rendered. This waiver pertains not only to the attorney rendering the advice but also to all other attorneys who may have communicated with Compaq about the subject matter of the advice. Moreover, since a potential infringer has a continuing duty to seek legal advice on patents of which it is aware, the nature of the advice received and the resulting waiver of the privilege extends throughout the period of alleged infringement.

27

In light of these principles, Compaq's initial contention that the scope of its waiver extends only to the opinions set forth in Mr. Sekimura's reports has no merit.    Under Compaq's "subject matter waiver," any communications it may have had with counsel on the issues of infringement, validity, and enforceability are discoverable, even if those communications do not refer specifically to Mr. Sekimura's reports.    Moreover, the fact that Compaq's trial counsel did not draft Mr. Sekimura's opinions has no bearing on the scope of waiver, since the independent advice of trial counsel concerning the subject matter in question would be probative of Compaq's state of mind.

With respect to temporal limitations, the time period of a waiver in continuing infringement cases extends, as noted above, from the time a potential infringer becomes aware of another's patent until the alleged infringement ends.    Here, the plaintiffs have alleged that Compaq learned of their '635 and '267 patents in 1998 (Pl. Compaq Memo. at 3; Am. Compl., ¶¶ 23-26, 34), and that they notified Compaq of its alleged infringement of the '473 patent in November 2001.    (Tr. at 9).    It is undisputed that Compaq's alleged infringement is continuing.    Accordingly, Compaq's waiver should extend from the time it became aware of the plaintiffs' patents until it ceases the alleged infringement.

Finally, a subject matter limitation to "contradictory opinions" is unwarranted in this case.    As discussed above, Compaq's waiver extends to all communications from counsel, not just contrary advice, on the subject matter of Mr. Sekimura's

28

opinions. Moreover, the plaintiffs need not rely on Compaq's representation that no contradictory information was received, as they are entitled to draw their own conclusions based on the discovery produced. See Dunhall, 994 F. Supp. at 1205 (discovery must not involve "gatekeeping by defense counsel").

Accordingly, the plaintiffs' motion to compel discovery withheld on the basis of the attorney-client privilege is granted with respect to Compaq. Compaq shall produce all documents, answers to interrogatories, and deposition testimony concerning communications between Compaq (or its in-house counsel) and any of its attorneys, including trial counsel, with respect to the subject matter of Mr. Sekimura's opinions, i.e., the infringement, validity, and enforcement of the '635, '267, and '473 patents. The time period of the waiver shall begin at the time Compaq became aware of the patents at issue and shall not end until such time Compaq's alleged infringement ends. Any communications between Compaq and its trial counsel concerning the subject matter of Mr. Sekimura's opinions but also containing or relating to trial strategy or planning may be submitted to the Court for in camera review.

    4.   Work Product Immunity

As discussed above, discovery of work product, while sometimes necessary to uncover circumstantial evidence of information communicated to the client, is most appropriate in the case of opinion counsel who has been retained to render an opinion on the patents at issue. Where there is no evidence of collusion between

trial and opinion counsel, disclosure of trial counsel's work product is unwarranted.   As with Seagate, Compaq relies on the separate and independent advice of Mr. Sekimura as the basis of its advice-of-counsel defense, and it has unequivocally stated that its trial counsel has "no connection" with Mr. Sekimura's opinions. Accordingly, work product disclosure from Compaq's trial counsel is unwarranted.

During a hearing before this Court, plaintiffs' counsel added, "[I]f trial counsel is feeding a defendant information that says go get an opinion because you're probably going to have to pay a reasonably royalty here, . . . [t]hat's not a reasonable opinion. It may be a perfectly reasonable opinion bought and paid for, but that's not the law."  (Tr. at 61-62).   As an example, plaintiffs' counsel noted, "Let's say that . . . prior to receiving an opinion on the ['473] patent, trial counsel said let's sit down together and figure out [how] not to infringe this patent, let's design around it.   And the opinion of counsel that you get months later says that you didn't infringe before; . . . I think those are two pretty different things."  (Tr. at 62).   Plaintiffs' counsel argued, "[T]hat happened here," alleging that in October 2002, Compaq's trial counsel "worked with Compaq to design around the ['473] patent," and that subsequently, Compaq decided to rely on Mr. Sekimura's non-infringement opinion in February 2003.  (Tr. at 62).

The representations of plaintiffs' counsel do not support a finding that work product privilege was waived with respect to

Compaq's trial counsel. Even assuming that trial counsel rendered contrary advice prior to Compaq's reliance on Mr. Sekimura's opinions, that fact does not show that trial counsel helped obtain a "sham" or biased opinion from Mr. Sekimura, or that trial counsel colluded with Mr. Sekimura to produce an opinion favorable to Compaq in this litigation. To the extent that inconsistent advice was rendered, the nature and substance of that advice can be explored, as discussed above, through discovery of privileged communications between Compaq and its trial counsel.

Accordingly, the plaintiffs' motion to compel discovery withheld on the basis of the work product privilege is denied with respect to Compaq. Compaq's trial counsel is not obligated to produce any work product, uncommunicated to Compaq, relating to the subject matter of the opinions issued by Mr. Sekimura. However, the communicated work product of any of Compaq's attorneys is discoverable under Compaq's waiver of the attorney-client privilege. Such communicated work product shall include materials disclosing the fact or substance of Compaq's (or in-house counsel's) communications with any outside counsel.

Conclusion

For the reasons set forth above, I grant the plaintiffs' motions to compel with respect to both defendants as to discovery withheld on the basis of the attorney-client privilege, but not as to that withheld on the basis of work product immunity. The defendants shall respond to the plaintiffs' discovery requests in accordance with this Memorandum and Order.

31

SO ORDERED.


*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


Dated:     New York, New York
           May 28, 2004

Copies mailed this date:

Kenneth A. Freeling, Esq.
Debra Brown Steinberg, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, New York  10038

Albert L. Jacobs, Jr., Esq.
Adam B. Landa, Esq.
Greenberg Traurig, LLP
885 Third Avenue
21st Floor
New York, New York  10022

Herbert F. Schwartz, Esq.
Robert J. Goldman, Esq.
Duane-David Hough, Esq.
Robert W. Morris, Esq.
Fish & Neave
1251 Avenue of the Americas
New York, New York  10020

Terrence P. McMahon, Esq.
Steven J. Akerley, Esq.
McDermott, Will & Emery
3150 Porter Drive
Palo Alto, CA  94304

Michael Sommer, Esq.
Ann E. Schofield, Esq.
McDermott, Will & Emery LLC
50 Rockefeller Plaza, 11th Floor
New York, New York  10020

32

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
CONVOLVE, INC. and MASSACHUSETTS    :    00 Civ. 5141 (GBD) (JCF)
INSTITUTE OF TECHNOLOGY,            :
                                    :         O R D E R
          Plaintiffs,               :
                                    :
     - against -                    :
                                    :
COMPAQ COMPUTER CORP. and SEAGATE   :
TECHNOLOGY, INC.,                   :
                                    :
          Defendants.               :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     A pretrial conference having been held on September 8, 2004,
it is hereby ORDERED as follows:

     1.  Maxtor shall appear at a time to be agreed upon by counsel
for the completion of its deposition.  The examination shall be
limited in duration to four hours and in scope to the subjects set
forth in the notice of deposition.  The continued deposition shall
consist of cross-examination by Convolve's counsel and, if
necessary, very brief redirect examination by Seagate's counsel.

     2.  Convolve's application to compel Seagate and Compaq to
produce forthwith all documents subject to disclosure under my May
28, 2004 Memorandum and Order (the "Order"), except those which are
communications with or work product of trial counsel, is granted.
Although the defendants have lodged objections to the Order, those
objections are fairly read as addressed only to those aspects of
the Order relating to trial counsel.  None of the defendants'
substantive arguments refer, for example, to those aspects of the
Order requiring disclosure of communications with or documents

1

generated by in-house counsel.

    3.  Counsel shall meet and confer concerning the dedesignation of documents that the defendants have identified as supersensitive. Failing agreement on a protocol for reviewing document designations, Convolve may move for an order removing the supersensitive designation from the documents they consider wrongly designated, with costs, including attorneys' fees, to be awarded to the prevailing party.

        SO ORDERED.

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          September 8, 2004

Copies mailed this date:

Kenneth A. Freeling, Esq.
Debra Brown Steinberg, Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, New York  10038

Albert L. Jacobs, Jr., Esq.
Adam B. Landa, Esq.
Greenberg Traurig, LLP
885 Third Avenue
21st Floor
New York, New York  10022

Herbert F. Schwartz, Esq.
Robert J. Goldman, Esq.
Duane-David Hough, Esq.
Robert W. Morris, Esq.
Fish & Neave
1251 Avenue of the Americas
New York, New York  10020

2

Terrence P. McMahon, Esq.
Steven J. Akerley, Esq.
McDermott, Will & Emery
3150 Porter Drive
Palo Alto, CA  94304

Michael Sommer, Esq.
Ann E. Schofield, Esq.
McDermott, Will & Emery LLC
50 Rockefeller Plaza, 11th Floor
New York, New York  10020

Cathy Ann Bencivengo, Esq.
Gray Cary Ware & Freidenrich LLP
401 B Street, Suite 2000
San Diego, CA  92101

# EXHIBIT C

TUE/JUL/18/2006 04:21 PM                                              P. 003/004

DC # 505

U.S. DISTRICT COURT
FILED
JUL 1 2 2006
S.D. OF N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

CONVOLVE, INC. and MASSACHUSETTS              ORDER
INSTITUTE OF TECHNOLOGY,

                          Plaintiffs,          00 CV 5141 (GBD)

          -against-

COMPAQ COMPUTER CORP. and SEAGATE
TECHNOLOGY LLC,

                          Defendants.

------------------------------------------------x

GEORGE B. DANIELS, District Judge:

       Defendant Seagate Technology LLC's July 26, 2004 motion for an order pursuant to Fed.

R. Civ. P. 72(a) sustaining its objections to, and overruling, the May 28, 2004 Memorandum and

Order issued by Magistrate Judge Francis is DENIED.

Dated: New York, New York
       July 11, 2006

                                        SO ORDERED:

                                        *George B. Daniels*

                                        GEORGE B. DANIELS
                                        United States District Judge

MICROFILM  JUL 1 2 2006  -2:02 PM

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CONVOLVE, INC. and MASSACHUSETTS                                    ORDER
INSTITUTE OF TECHNOLOGY,

                Plaintiffs,                            00 CV 5141 (GBD)

    -against-

COMPAQ COMPUTER CORP. and SEAGATE
TECHNOLOGY LLC,

                Defendants.

--------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

      Defendant Seagate Technology LLC's September 27, 2004 motion for an order pursuant

to Fed. R. Civ. P. 72(a) sustaining its objections to, and overruling, the September 8, 2004 Order

issued by Magistrate Judge Francis is DENIED.


Dated: New York, New York
      July 11, 2006


                         SO ORDERED:


                         _George B. Daniel_

                         GEORGE B. DANIELS
                         United States District Judge

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONVOLVE, INC. and MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiffs, <br><br> v. <br><br> COMPAQ COMPUTER CORP. and SEAGATE TECHNOLOGY LLC, <br><br> Defendants. | Index No. 00 Civ. 5141 (GBD) <br><br> **DECLARATION OF BETTY ANN DURHAM IN SUPPORT OF SEAGATE TECHNOLOGY LLC'S OPPOSITION TO CONVOLVE, INC.'S MOTION TO COMPEL DISCOVERY FROM SEAGATE** |

I, Betty Ann Durham, declare:

1.    I am Assistant Corporate Counsel at Seagate Technology LLC ("Seagate") and have directed Seagate's litigation since 1994. The matters stated herein are based upon my personal knowledge. If called upon, I would testify to the truth of the matters stated herein.

2.    In May 2000 Seagate contacted the law firm of Limbach & Limbach in San Francisco, California, to request opinions of counsel regarding U.S. Patent 5,638,267 ("'267 patent") which was assigned to Convolve, Inc. ("Convolve"); U.S. Patent 4,916,635 ("'635 patent") which was assigned to the Massachusetts Institute of Technology ("MIT"); and the PCT Application of Neil Singer, Mark Tanquary, and Kenneth Pasch (which in the United States later issued as U.S. Patent 6,314,473 ("'473 patent") and was assigned to Convolve). Mr. Gerald T. Sekimura, a Limbach & Limbach partner, was assigned to this task. Neither Orrick, Herrington & Sutcliffe, Seagate's former trial counsel in the above referenced litigation, nor McDermott, Will & Emery, Seagate's current trial counsel in the above referenced litigation, was involved in selecting Limbach & Limbach or Mr. Sekimura to provide these opinions.

3.    On July 13, 2000, Convolve and MIT filed a complaint against Compaq Computer Corp. ("Compaq") and Seagate alleging, among other things, infringement of the '635 and '267 patents.

DECLARATION OF BETTY ANN DURHAM                    - 1 -
MPK 67422-1.050936.0011

4.    On July 24, 2000, Mr. Sekimura provided to Seagate a written preliminary opinion of non-infringement and invalidity of the '635 and '267 patents and the PCT Application.

5.    On December 29, 2000, Mr. Sekimura provided to Seagate a written final opinion of non-infringement, invalidity, and unenforceability of the '635 and '267 patents and the PCT Application.

6.    On November 6, 2001, the '473 patent issued from the PCT Application.

7.    Towards the end of 2001, Seagate requested that Mr. Sekimura provide an opinion regarding the '473 patent. At that time Mr. Sekimura declined because he had changed law firms, and his new firm, Gray Cary Ware & Freidenrich, had a potential conflict.

8.    On January 16, 2002, Convolve and MIT amended their complaint to allege infringement of the '473 patent.

9.    In February 2002, Seagate again requested, and in March 2002, Seagate ultimately engaged Mr. Sekimura to provide a written opinion on the '473 patent.

10.    On February 21, 2003, Mr. Sekimura provided a written final opinion of non-infringement and invalidity of the '473 patent.

11.    Seagate has only sought and has only received reliance opinions outside of Seagate regarding the '635, '267, and '473 patents ("patents-in-suit") from Mr. Sekimura.

12.    Seagate never requested and never received reliance opinions regarding the patents-in-suit from Orrick, Herrington & Sutcliffe or McDermott, Will & Emery.

13.    Seagate never requested and never received an opinion from Orrick, Herrington & Sutcliffe or McDermott, Will & Emery regarding the merits of Mr. Sekimura's reliance opinions

//

//

DECLARATION OF BETTY ANN DURHAM          - 2 -
MPK 97422-1.060936/0011

regarding the patents-in-suit.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 6th day of October 2003 in Scotts Valley, California.

Betty Ann Durham

# EXHIBIT F

# McDermott
# Will & Emery

# MEMO ENDORSED

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington D.C.

Stephen J. Akerley
Attorney at Law
sakerley@mwe.com
650.813.5102

July 24, 2006

**VIA FACSIMILE**

Honorable James C. Francis IV
United States Magistrate Judge
   for the Southern District of New York
United States Courthouse
500 Pearl Street, Room 1960
New York, New York 10007

#511

        Re:    *Convolve, Inc. and Massachusetts Institute of Technology v.*
               *Compaq Computer Corporation and Seagate Technology LLC,*
               Case No. 00 Civ. 5141 (GBD)(JCF)

Dear Magistrate Judge Francis:

        We represent Seagate Technology LLC in the above-referenced action. We write in
regard to Judge Daniels' two Orders dated July 11, 2006 denying (1) Seagate's July 26, 2004
objections to your May 28, 2004 Memorandum and Order and (2) Seagate's Sept. 27, 2004
objections to your Sept. 8, 2004 Order, respectively.

        Seagate is considering whether to petition the Federal Circuit for a writ of mandamus in
view of the issues presented by the Orders. If Seagate so petitions, Seagate will do so by August
11, 2006. Seagate respectfully requests a stay of your May 28, 2004 and Sept. 8, 2004 Orders
until August 11, 2006, and, if Seagate files a petition on or before August 11, 2006, Seagate
requests that the stay be extended until the Federal Circuit resolves Seagate's writ petition. *See,
e.g., Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, No. 87 Civ. 5583 (TPG), 1990 U.S.
Dist. LEXIS 14001, at *1-2 (S.D.N.Y. Oct. 22, 1990) (stay of discovery order was granted
pending conclusion of mandamus proceeding in Court of Appeals).

        A stay is particularly needed in this case because the disclosure of privileged information
will result in irreparable harm and thus vitiate the right to mandamus relief. *See In re EchoStar
Commc'ns Corp.*, 448 F.3d 1294, 1298, Misc. Dkt. No. 803, 2006 U.S. App. LEXIS 11162, at
**5-6 (Fed. Cir. May 1, 2006) (petitioner retained the right to seek mandamus relief with respect
only to portions of discovery orders compelling disclosure of privileged information with which
petitioner had not complied), *reh'g and reh'g en banc denied*, 2006 U.S. App. LEXIS 17511
(Fed. Cir. July 5, 2006).

U.S. practice conducted through McDermott Will & Emery LLP.
3150 Porter Drive  Palo Alto, California  94304-1212  Telephone: 650.813.5000  Facsimile: 650.813.5100  www.mwe.com

/ 21 FAX  6508135100          McDermott-Will&Emery                    ☏ 003/003

The Honorable James C. Francis IV
July 24, 2006
Page 2


    Plaintiffs will not be prejudiced by the grant of the stay because no trial date has been set in this case, and the parties have not yet begun the 12-month schedule of expert discovery. Accordingly, Seagate respectfully requests a stay of your Orders.

                      Respectfully submitted,

                      *Stephen J. Akerley* /JHK

                      Stephen J. Akerley

cc:    Debra Brown Steinberg, Esq. (Via Facsimile)
       Albert Jacobs, Esq. (Via Facsimile)
       Robert Goldman, Esq. (Via Facsimile)
       Robert Morris, Esq. (Via Facsimile)


MPK.112027-6.060936.0011

*7/26/06*

*Application denied. Particularly in light of The Federal Circuit's decision in EchoStar, Seagate's chances of prevailing on a mandamus application are slim. Furthermore, Seagate has not shown that it is more likely to suffer prejudice than any other litigant whose claim of privilege has been overruled.*

*SO ORDERED.*

*James C. Francis IV*

*USMJ*

[Stamp: U.S. DISTRICT COURT FILED JUL 27 2006 S.D. OF N.Y.]

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CONVOLVE, INC. and MASSACHUSETTS
INSTITUTE OF TECHNOLOGY,

                        Plaintiffs,

    -against-

COMPAQ COMPUTER CORP. and SEAGATE
TECHNOLOGY LLC,

                       Defendants.

-------------------------------------------------------------x

                        ORDER

                  00 CV 5141 (GBD)

GEORGE B. DANIELS, District Judge:

    Plaintiffs' motion for leave to amend their "Final Disclosure of Asserted Claims and

Infringement Allegations" dated September 27, 2002 is granted in part and denied in part, as

ordered below.

    1.  Plaintiffs' request to add as "Accused Instrumentalities" six Seagate disk drives[1]

covered by Special Master Razzano's October 11, 2002 Order, as well as the Compaq products[2]

incorporating these accused drives, is denied.

    2.  Plaintiff's request to remove infringement allegations concerning certain "successor

drives"[3] to Seagate's Barracuda ATA-IV is granted.

---

[1] Barracuda ATA-II, Barracuda 36ES2, Cheetah 73LP, Cheetah 36ES, U Series 6, and U
Series 10 disk drives.

[2] This would add as Accused Instrumentalities the Compaq computer systems comprising
(1) the Cheetah 36ES, Cheetah 73LP, and Barracuda 36ES2 disk drives with respect to the '635
Patent; (2) the F10 BIOS Utility for selecting between quick and quiet modes in combination
with the Barracuda ATA-II, the U Series 6, and the U Series 10 disk drives with respect to
Claims 1, 3, and 4 of the '73 Patent; and (3) the Barracuda ATA-II, U Series 6, and U Series 10
disk drives with respect to Claims 7-15 of the '473 Patent.

[3] Avalanche, Alpine, Pluto, Neptune, and Mercury.

3. Plaintiffs' request to define the term "AAM drives" by the adverse evidentiary presumption imposed under this Court's Agust 17, 2004 decision is denied.

4. Plaintiffs' request to withdraw their allegation that Compaq computers containing Compaq's "F10 BIOS Utility" in combination with three Seagate disk drives[4] infringe Claims 1,3, and 4 of the '473 Patent since "discovery has shown that computers containing those particular drives employ a utility other than the F10 BIOS for selecting between Just-In-Time (JIT) seek modes" is granted.

5. Plaintiffs' request to modify their "prior contention that the first two elements of Claim 21 of the '635 Patent are present under to doctrine of equivalents in the Barracuda ATA-IV disk drive by conforming the contention to discovery evidencing that those claim elements are literally present in the Barracuda ATA-IV" is granted.

6. Plaintiffs' request to conform the Summary section of their amended infringement contentions to the original claims charts "in which Compaq's F10 BIOS Utility for selecting between quick and quiet modes in combination with Compaq computer systems is accused under Claims 7-15 of the '473 Patent" is granted.

7. Plaintiffs' request that their previously stated position that infringement of the '267 Patent "is no longer being asserted . . . ." be documented is granted.

Accordingly, plaintiffs are granted leave to serve their "Amended Final Disclosure of Asserted Claims and Infringement Allegations" to the extent they conform with this Order.

---

[4] Cheetah 73LP, Cheetah X15, 18LP, and Cheetah X15 36LP disk drives.

2

Dated: New York, New York
July 18, 2006

SO ORDERED:

JUL 1 9 2006

GEORGE B. DANIELS
United States District Judge
HON. GEORGE B. DANIELS

3

# EXHIBIT H

DOC #: 538

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

CONVOLVE, INC. and MASSACHUSETTS
INSTITUTE OF TECHNOLOGY,

                          Plaintiffs,                    ORDER

          -against-                                      00 CV 5141 (GBD)

COMPAQ COMPUTER CORP. and SEAGATE
TECHNOLOGY LLC,

                          Defendants.

-----------------------------------------------------------x

GEORGE B. DANIELS, District Judge:

          Defendants' Motion for an Emergency Stay of This Court's Orders of July 11, 2006 and

Magistrate Judge Francis' Orders of May 28, 2004 and September 8, 2004 is denied.


Dated: New York, New York
          September 14, 2006                             SO ORDERED:

                                                         *George B. Daniels*
                                                         GEORGE B. DANIELS
                                                         United States District Judge

U.S. DISTRICT COURT
FILED
SEP 1 5 2006
S.D. OF N.Y.

SEP 1 5 2006  -3:02 PM

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CONVOLVE, INC. and MASSACHUSETTS
INSTITUTE OF TECHNOLOGY,                          MEMORANDUM DECISION
                                                          AND ORDER
                          Plaintiffs,              00 Civ. 5141 (GBD)

            -against-

COMPAQ COMPUTER CORP. and SEAGATE
TECHNOLOGY LLC,

                          Defendants.
-------------------------------------------------------------------x

GEORGE B. DANIELS, District Judge:

     Seagate Technology LLC ("Seagate") moves for certification of an interlocutory appeal,

pursuant to 28 U.S.C. § 1292(b), of two orders issued by Magistrate Judge Francis, and two

motions denied by this Court, relating to defendants' obligation to produce certain

communications to and from their respective trial attorneys, which are relevant to defendants'

advice-of-counsel defense. The motion is denied.

     Plaintiffs Convolve, Inc. and Massachusetts Institute of Technology (collectively

"Plaintiffs") sued defendants Seagate and Compaq Computer Corp. ("Compaq") for, *inter alia*,

willful patent infringement of certain patents owned by Plaintiffs. Both Seagate and Compaq

asserted the advice-of-counsel defense, i.e., that they acted in good faith because they relied on

the advice of counsel when engaging in the allegedly infringing conduct. Seagate and Compaq

conceded that by asserting the advice-of-counsel defense, they waived the attorney-client

privilege as to communications between them and the attorneys they hired to provide opinions on

the legality of their conduct.[1]  Seagate and Compaq disputed, however, whether the waiver

extended to communications to and from their respective trial attorneys.  This Court referred the

case to Magistrate Judge Francis for pre-trial supervision and for resolution of these discovery

disputes.

Magistrate Judge Francis issued an order on May 28, 2004, published as <u>Convolve, Inc.</u>

<u>V. Compaq Computer Corp.</u>, 224 F.R.D. 98 (S.D.N.Y. 2004), holding that in asserting the

advice-of-counsel defense, Seagate "waived the attorney-client privilege as to all

communications not only with Mr. Sekimura, but also with its other attorneys, including trial

counsel, concerning the subject matter of Mr. Sekimura's advice."  <u>Id</u>. at 104.  Therefore,

Magistrate Judge Francis ordered Seagate to "produce all documents, answers to interrogatories,

and deposition testimony concerning communications between Seagate (or its in-house counsel)

and any of its attorneys, including trial counsel," related to the subject matter of the Sekimura

Opinions.  <u>Id</u>. At 105.  Magistrate Judge Francis issued a second order, dated September 8, 2004,

granting plaintiff Convolve's application to compel Seagate and Compaq to produce all

documents subject to disclosure under the May 28th order.

Seagate moved, pursuant to Fed. R. Civ. P. 72(a), for an order by this Court sustaining its

objections to, and overruling, the May 28th order.  Seagate also sought an order by this Court,

pursuant to Fed. R. Civ. P. 72(a), sustaining its objections to, and overruling, the Magistrate

Judge's Sept. 8th order.  Both of Seagate's Rule 72(a) motions were denied by this Court on July

11, 2006.  Seagate now seeks certification of an interlocutory appeal of all four decisions.

---

[1]In Seagate's case, that attorney was Gerald T. Sekimura.  His opinions will be referred to
as the "Sekimura Opinions."

2

An interlocutory appeal is "a rare exception to the final judgement rule that generally prohibits piecemeal appeals," Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865 (2d Cir. 1996), and only "exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment, In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (citations and alteration omitted). Certification of an interlocutory appeal is appropriate only if the challenged order (1) involves a controlling issue of law, (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); Taylor v. PPG Industries, Inc., 256 F.3d 1315, 1316 (Fed. Cir. 2001) (citing 28 U.S.C. § 1292(b)).

Seagate cannot satisfy the requirements of 28 U.S.C. § 1292(b). In this case, the orders at issue only address a pre-trial discovery dispute, namely, the scope of Seagate's waiver of the attorney-client and work-product privileges, a determination that lies within the sound discretion of the district court, see, e.g., In re EchoStar Communications Corp., 448 F.3d 1294, 1300 (Fed. Cir. 2006) ("We review the district court's determination as to the scope of the waiver for an abuse of discretion."), and "depends heavily on the factual context in which the privilege is asserted." In re Sealed Case, 877 F.2d 976, 981 (D.C. Cir. 1989); see also Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004) (stating that the district court has "broad discretion to direct and manage the pretrial discovery process"). Fact-dependent matters that are within the district court's discretion, such as the scope of a privilege waiver, do not involve a "controlling issue of law" under § 1292(b). See, e.g., White v. Nix, 43 F.3d 374, 376, 377-78 (8th Cir. 1994) (holding that the district court's order requiring production of documents claimed to be protected

3

by the attorney work product doctrine, a matter "committed to the district court's discretion," did not involve a controlling issue of law under § 1292(b) warranting certification for an interlocutory appeal); Casey v. Long Island R. Co., 406 F.3d 142, 146-47 (2d Cir. 2005) (holding that the district court's decision to set aside the jury award did not present a controlling issue of law warranting certification of an interlocutory appeal under § 1292(b) because the excessiveness of the jury's award "presents a question as to the proper evaluation of the evidence introduced at trial" and that evaluation "is accorded *deferential* review") (emphasis added); Schine v. Schine, 367 F.2d 685, 688 (2d Cir. 1966) (holding that an order denying defendants' motion for a separate trial did not meet the requirements for certification of an interlocutory appeal because "*whether the district court abused his discretion* in granting or denying a separate trial . . . may rarely, if ever, involve a 'controlling question of law'" under § 1292(b)) (emphasis added).

Nor has Seagate demonstrated that this is an extraordinary case warranting departure from the general rule that appeals may only be taken from final judgments. The material that Seagate is required to produce under the May 28th order is limited—only "documents, answers to interrogatories, and deposition testimony" that relate to the subject matter of the Sekimura Opinions must be produced. Convolve, Inc. 224 F.D.R. at 105. In addition, in an effort to minimize disclosure of trial or litigation strategy, any material that Seagate believes would reveal protected information can be submitted for *in camera* review. Even though Magistrate Judge Francis ordered the production of certain communications between Seagate and its trial counsel, he specifically provided:

> Nevertheless, care should be taken to minimize the disclosure of
> communications pertaining to trial or litigation strategy. To be sure,
> trial counsel's advise that undermines the reasonableness of the

4

client's reliance on advice of opinion counsel must be disclosed even if it is communicated in the context of trial preparation. But, at the same time, trial counsel will surely address with the client trial strategy concerning validity, infringement, and enforcement in ways that do not implicate the advice-of-counsel defense. Therefore, to the extent that Seagate wishes to withhold or redact documents that would reveal trial strategy or planning, it shall submit those documents for my *in camera* review.

Convolve, Inc. 224 F.D.R. at 105. Seagate's opportunity to submit for *in camera*

review any documents it "wishes to withhold or redact," makes this an issue not

ripe for appellate review.

Seagate's motion for certification of an interlocutory appeal pursuant to 28 U.S.C. §

1292(b) is DENIED.

Dated: New York, New York
September 27, 2006

SO ORDERED:

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

5

# EXHIBIT J

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000 Fax 212 504 6666
www.cadwalader.com

## Facsimile

| From: | Fax: | Direct Dial: |
|---|---|---|
| Kevin McNamee | 212 504 6666 | 212 504 5709 |
| | **Pages:** | **Date:** 9/26/2006 |

| For Immediate Delivery To: | Fax: | Phone: |
|---|---|---|
| **Terence P. McMahon, Esq.**<br>**Steven J. Akerley, Esq.**<br>**Lucy Koh, Esq.**<br>McDermott, Will & Emery | 650 813 5100 | 650-813-5000 |
| **Robert W. Morris, Esq.**<br>**Duane-David Hough, Esq.**<br>Ropes & Gray LLP | 212 596 9090 | 212 596 9000 |
| **Robert Goldman, Esq.**<br>Ropes & Gray LLP | 650 617 4090 | 650 617 4090 |
| **Albert L. Jacobs, Esq.**<br>Greenberg Traurig LLP | 212-801-6400 | 212-801-9200 |

**Message:**

The Information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If a reader of the facsimile message is not the intended recipient, the reader is hereby notified that any dissemination, distribution, or copy of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the original message to us at the address above.

Please call (212) 504-6739 if there are transmission problems.

USActive 3537662.1

# C A D W A L A D E R

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

September 26, 2006

**BY HAND**

Honorable George B. Daniels
United States District Court for the
 Southern District of New York
United States Courthouse
500 Pearl Street, Room 630
New York, New York 10007

> Re:   **Convolve, Inc. and Massachusetts Institute of Technology
> v. Compaq Computer Corp. and Seagate Technology LLC
> Case 00 Civ. 5141 (GBD) (JCF)**

Dear Judge Daniels:

  Plaintiffs Convolve, Inc. and Massachusetts Institute of Technology are in receipt of defendant Seagate Technology LLC's September 25, 2006 letter "request[ing] an emergency status conference in connection with [the Court's] Order entered September 18, 2006" for the purpose of "clarif[ying] . . . whether the Court will stay the privilege waiver Orders pending the Court's decision on Seagate's motion for [Section 1292(b)] certification." (Seagate's 9/25/06 Letter, at p. 1). The Court's 9/18/06 Order needs no clarification. It plainly and unambiguously denied a stay of the waiver Orders: "Defendants' Motion for an Emergency Stay of This Court's Orders of July 11, 2006 and Magistrate Judge Francis' Orders of May 28, 2004 and September 8, 2004 is denied." (Exh. A: 9/14/06 Order). There is no stay in place; there is no motion for a stay pending; and, therefore, there is no need for the "emergency status conference" Seagate has requested.

  Seagate claims to have "prepared a Petition for Writ of Mandamus for filing with the Federal Circuit to seek review of the privilege waiver Orders." (Seagate's 9/25/06 Letter, at p. 1). Seagate's decision to proceed by mandamus moots its pending Section 1292(b) certification motion and its request for oral argument on that motion. Moreover, the Court already has denied Seagate's motion for a stay pending the filing of a mandamus petition. Magistrate Judge Francis held on July 27, 2006: "Particularly in light of the Federal Circuit's decision in EchoStar, Seagate's chances of prevailing on a mandamus application are slim.

Hon. George B. Daniels                  - 2 -                    September 26, 2006

Furthermore, Seagate has not shown that it is more likely to suffer prejudice than any other litigant whose claim of privilege has been overruled." (Exh. B: 7/27/06 Francis Order, at p.2, aff'd, Exh. A: 9/18/06 Daniels Order).

After entry of the 9/18/06 Order denying a stay, plaintiffs proposed to defendants a schedule for complying with the waiver Orders, which defendants have rejected. Plaintiffs also have submitted to Magistrate Judge Francis a proposed order scheduling the discovery required under the Court's Orders. (Exh. C: Plaintiffs' 9/26/06 Letter to Magistrate Judge Francis). Rather than convening a conference to discuss a discovery stay that the Court has already denied, plaintiffs submit that the appropriate course is to refer the parties to Magistrate Judge Francis to schedule this long-overdue, Court-ordered discovery.

Respectfully submitted,

Debra Brown Steinberg

cc:    Magistrate Judge James C. Francis IV (By Hand)
       Stephen Akerley, Esq. (By Telefax)
       Lucy Koh, Esq. (By Telefax)
       Robert Morris, Esq. (By Telefax)
       Terrence McMahon, Esq. (By Telefax)
       Robert Goldman, Esq. (By Telefax)
       Duane-David Hough, Esq. (By Telefax)
       Albert Jacobs, Esq. (By Telefax)

USActive 5600935.1

09/26/2006 16 32 FAX          CADWALADER                    ☑ 004

# EXHIBIT A

006 16:32 FAX     CADWALADER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CONVOLVE, INC. and MASSACHUSETTS                    ORDER
INSTITUTE OF TECHNOLOGY,

                          Plaintiffs,               00 CV 5141 (GBD)

        -against-

COMPAQ COMPUTER CORP. and SEAGATE
TECHNOLOGY LLC,

                          Defendants.

-----------------------------------------------------------x

GEORGE B. DANIELS, District Judge:

        Defendants' Motion for an Emergency Stay of This Court's Orders of July 11, 2006 and

Magistrate Judge Francis' Orders of May 28, 2004 and September 8, 2004 is denied.


Dated: New York, New York
        September 14, 2006                          SO ORDERED:


                                                   *George B. Daniels*
                                                   GEORGE B. DANIELS
                                                   United States District Judge

09/26/2006 16:32 FAX                    CADWALADER                         ☑006

# EXHIBIT B

CADWALADER

26/2006 16 33 FAX

07/24/2006 18 20 FAX 6508135100     McDermott-Will&Emery     @002/003

## McDermott Will & Emery

# MEMO ENDORSED

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Stephen J. Akerley
Attorney at Law
sakerley@mwe.com
650.813.5102

July 24, 2006

#511

**VIA FACSIMILE**

Honorable James C. Francis IV
United States Magistrate Judge
    for the Southern District of New York
United States Courthouse
500 Pearl Street, Room 1960
New York, New York 10007

Re:     *Convolve, Inc. and Massachusetts Institute of Technology v.*
        *Compaq Computer Corporation and Seagate Technology LLC,*
        Case No. 00 Civ. 5141 (GBD)(JCF)

Dear Magistrate Judge Francis:

We represent Seagate Technology LLC in the above-referenced action. We write in regard to Judge Daniels' two Orders dated July 11, 2006 denying (1) Seagate's July 26, 2004 objections to your May 28, 2004 Memorandum and Order and (2) Seagate's Sept. 27, 2004 objections to your Sept. 8, 2004 Order, respectively.

Seagate is considering whether to petition the Federal Circuit for a writ of mandamus in view of the issues presented by the Orders. If Seagate so petitions, Seagate will do so by August 11, 2006. Seagate respectfully requests a stay of your May 28, 2004 and Sept. 8, 2004 Orders until August 11, 2006, and, if Seagate files a petition on or before August 11, 2006, Seagate requests that the stay be extended until the Federal Circuit resolves Seagate's writ petition. *See, e.g., Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.,* No. 87 Civ. 5583 (TPG), 1990 U.S. Dist. LEXIS 14001, at *1-2 (S.D.N.Y. Oct. 22, 1990) (stay of discovery order was granted pending conclusion of mandamus proceeding in Court of Appeals).

A stay is particularly needed in this case because the disclosure of privileged information will result in irreparable harm and thus vitiate the right to mandamus relief. *See In re EchoStar Comm'ns Corp.,* 448 F.3d 1294, 1298, Misc. Dkt. No. 803, 2006 U.S. App. LEXIS 11162, at **5-6 (Fed. Cir. May 1, 2006) (petitioner retained the right to seek mandamus relief with respect only to portions of discovery orders compelling disclosure of privileged information with which petitioner had not complied), *reh'g and reh'g en banc denied,* 2006 U.S. App. LEXIS 17511 (Fed. Cir. July 5, 2006).

U.S. practice conducted through McDermott Will & Emery LLP

3150 Porter Drive Palo Alto, California 94304-1212 Telephone: 650.813.5000 Facsimile: 650.813.5100 www.mwe.com

.21 FAX  6508135100            McDermott-Will&Emery            @ 003/003

The Honorable James C. Francis IV
July 24, 2006
Page 2

Plaintiffs will not be prejudiced by the grant of the stay because no trial date has been set in this case, and the parties have not yet begun the 12-month schedule of expert discovery. Accordingly, Seagate respectfully requests a stay of your Orders.

Respectfully submitted,

*Stephen J. Akerley* /JHK

Stephen J. Akerley

cc:   Debra Brown Steinberg, Esq. (Via Facsimile)
      Albert Jacobs, Esq. (Via Facsimile)
      Robert Goldman, Esq. (Via Facsimile)
      Robert Morris, Esq. (Via Facsimile)

MPK 112037-6 060936.0017

7/26/06

*Application denied. Particularly in light of the Federal Circuit's decision in EchoStar, Seagate's chances of prevailing on a mandamus application are slim. Furthermore, Seagate has not shown that it is more likely to suffer prejudice than any other litigant whose claim of privilege has been overruled.*

*SO ORDERED.*

*James C. Francis IV*

*USMJ*

U.S. DISTRICT COURT
FILED
JUL 27 2006
S.D. OF N.Y.

06  16.33 FAX                    CADWALADER                    009

# EXHIBIT C

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York  London  Charlotte  Washington  Beijing

One World Financial Center, New York, NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

September 26, 2006

**BY HAND**

Hon. James C. Francis IV
United States Magistrate Judge
United States District Court for the
    Southern District of New York
United States Courthouse
500 Pearl Street, Room 1960
New York, New York 10007

> Re:    **Convolve, Inc. and Massachusetts Institute of Technology v.
>          Compaq Computer Corp. and Seagate Technology LLC
>          00 Civ. 5141 (GBD) (JCF)**

Dear Magistrate Judge Francis:

Plaintiffs Convolve, Inc. and Massachusetts Institute of Technology request an immediate conference to schedule the discovery compelled under this Court's May 28, 2004 and September 8, 2004 Orders, as affirmed by Judge Daniels in Orders entered on July 11, 2006. By Order entered on July 26, 2006, Your Honor declined to stay defendants' compliance with the Court-ordered discovery. Judge Daniels subsequently denied defendants' motion to stay this discovery in his Order entered on September 14, 2006. Nevertheless, defendants still refuse to proceed in accordance with the Court's Orders.

On September 18, 2006, we wrote to defense counsel demanding compliance with the Court's discovery Orders in accordance with the following expedited schedule:

> By Order dated September 14, 2006, Judge Daniels denied "defendants' motion for an emergency Stay of [the] Court's Orders of 7/11/06 and Magistrate Judge Francis' Orders of 5/28/04 and 9/8/04. . . ." Accordingly, defendants and their counsel must comply forthwith with those Orders and with the EchoStar decision by producing all previously identified documents, interrogatory responses, responses to requests for admission, and witnesses, and any follow-on discovery that may be identified in this process. Compaq's production of all responsive documents

USActive 5594764.1

Hon. James C. Francis IV                    - 2 -                    September 26, 2006

> and written discovery shall be completed, as Compaq represented
> to the Court, within five (5) business days. Seagate's production
> of all responsive documents and written discovery shall be
> completed on or before September 29, 2006. Deposition discovery
> relating to both defendants shall begin on November 11, 2006, and
> shall continue on an expedited basis until completion. If you are
> unwilling to consent to this schedule, we will submit it to the Court
> with a request that it be included in an order.

(Exh. A: Plaintiffs' Counsel's 9/18/06 Email to Defense Counsel).[1]  Defendants responded by refusing to proceed with the discovery as ordered.  (Exh. C: Compaq's and Seagate's 9/21/06 Emails).

Accordingly, we request that the Court enter an Order, in the form proposed (Exh. D: Proposed Order), setting a schedule for defendants' compliance with their obligations under the Court's 5/28/04, 9/28/04 and 7/11/06 Orders and under the Federal Circuit's decision in In re Echostar Communications Corp., 448 F.3d 1294 (Fed. Cir. 2006).  Plaintiffs have waited more than three (3) years to obtain this critical discovery; they have secured multiple Court Orders requiring its disclosure; and the Court has denied defendants' motions to stay their Court-ordered discovery obligations.  The time has come, in fact it is long overdue, for defendants and their counsel to produce the documents, interrogatory answers, responses to requests for admission and witnesses as required under the Court's Orders and under Echostar.

                                    Respectfully submitted,

                                    Debra R. Steinberg
                                    Debra Brown Steinberg

cc:     Stephen Akerley, Esq. (By Telefax)
        Lucy Koh, Esq. (By Telefax)
        Robert Morris, Esq. (By Telefax)
        Terrence McMahon, Esq. (By Telefax)
        Robert Goldman, Esq. (By Telefax)
        Duane-David Hough, Esq. (By Telefax)
        Albert Jacobs, Esq. (By Telefax)

---

[1]  As the Court may recall, Compaq's counsel represented to Your Honor, on March 10, 2005, that Compaq would comply with the 5/28/04 Order "five days after Judge Daniels resolves Seagate's objections" to that Order.  (Exh. B: Compaq's 3/10/05 letter to the Court, at p. 2).  Judge Daniels denied Seagate's objections more than two months ago, and yet Compaq has flagrantly disregarded its counsel's representations to the Court by producing nothing, as of this date, in continued defiance of the Court's Orders.

USActive 5594764.1

## Steinberg, Debra

| | |
|---|---|
| **From:** | Steinberg, Debra |
| **Sent:** | Monday, September 18, 2006 4:50 PM |
| **To:** | 'sakerley@mwe.com'; 'lkoh@mwe.com'; 'robert.morris@ropesgray.com'; 'duane-david.hough@ropesgray.com'; 'robert.goldman@ropesgray.com'; 'tmcmahon@mwe.com' |
| **Cc:** | 'Al Jacobs, jr'; Fini. Tom M.; McNamee, Kevin |
| **Subject:** | WRT -- Judge Daniels' 9/14/06 Order |

By Order dated September 14, 2006, Judge Daniels denied "defendants' motion for an emergency Stay of [the] Court's Orders of 7/11/06 and Magistrate Judge Francis' Orders of 5/28/04 and 9/8/04. . . ." Accordingly, defendants and their counsel must comply forthwith with those Orders and with the EchoStar decision by producing all previously identified documents, interrogatory responses, responses to requests for admission, and witnesses, and any follow-on discovery that may be identified in this process. Compaq's production of all responsive documents and written discovery shall be completed, as Compaq represented to the Court, within five (5) business days. Seagate's production of all responsive documents and written discovery shall be completed on or before September 29, 2006. Deposition discovery relating to both defendants shall begin on November 11, 2006, and shall continue on an expedited basis until completion. If you are unwilling to consent to this schedule, we will submit it to the Court with a request that it be included in an order.

Debra Brown Steinberg
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY  10281
Tel.: 212.504.6598
Fax: 212.504.6666

**EXHIBIT A**

9/22/2006

6/2006  16:33 FAX                      ♦              CADWALADER                                            ☑013
...-... ...:...          ...                ...              ...  ...  ...              ...    ...  ...

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

ROBERT J. GOLDMAN
DIRECT DIAL  650.817.4035
DIRECT FAX  650.566.4180
E-MAIL  ROBERT.GOLDMAN@ROPESGRAY.COM

March 10, 2005

**BY HAND**

The Honorable James C. Francis, IV
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY  10007

<u>Convolve, Inc. et al. v. Compaq Computer Corp. et al.</u>
<u>Civil Action No. 00-CIV-5141 (GBD)(JCF)</u>

Dear Judge Francis:

I write in response to Convolve's March 10, 2005 letter to the Court regarding your May 28, 2004 Order ("the Order") on scope of the waiver issues relating to Defendants' assertion of an advice-of-counsel defense in this case.

Compaq was surprised by Convolve's letter because the parties were in the process of meeting and conferring on the timing of Compaq's responses to the Order. By e-mail on March 10 at 12:18 pm, counsel for Convolve indicated that it was breaking off those negotiations. (Tab A, attached). Compaq's copy of Convolve's letter to the Court shows that it was sent at 12:48 pm, thirty minutes later. Obviously, while Compaq thought we were negotiating, Convolve was in the process of preparing its letter.

The issue about which the parties were negotiating relates to the fact that Judge Daniels has not yet completed his review of your May 28, 2004 waiver order. As the Court may recall, both Compaq and Seagate had sought review of that order, on different grounds. Compaq did incorporate Seagate's objections, but only by reference. On January 12, 2005, Judge Daniels denied Compaq's objections to the order, but has not yet ruled on Seagate's objections. As you suggested at our last discovery conference, the parties have written to Judge Daniels to notify him that we have not received an order on the Seagate objections. That letter was sent on January 31, 2005. (Tab B, attached)  We have not yet received a response.

Because Judge Daniels has not yet ruled on Seagate's objections, Compaq proposed to Convolve that the parties agree to stay waiver discovery (if any) until immediately after Judge

**EXHIBIT B**

ROPES & GRAY LLP

The Honorable James C. Francis, IV
March 10, 2005
Page 2

Daniels acts. Towards that end, we have asked Convolve to identify the people who they believe they want to depose if Judge Daniels finally resolves the issue in Convolve's favor. (see e-mail from Debra Steinberg to Robert Morris dated February 17, 2005, attached at Tab C). Compaq has also begun to screen the documents that will need to be produced in response to the outstanding discovery requests once Judge Daniels rules.

Compaq's proposal to Convolve was that this discovery commence on the later of thirty days from the date of our proposed joint stay request to you or five days after Judge Daniels resolves Seagate's objections. (Tab D, attached). Compaq believed, and continues to believe, that this would move matters along expeditiously, but would also protect Compaq's privileged information if the Judge Daniels were to sustain Seagate's objections.

Convolve may disagree with Compaq's position, but Convolve is doing nothing but posturing when it suggests that Compaq has refused to comply with your order. The issue for Compaq is not whether but when this should happen. That was what we were trying to negotiate when Convolve was preparing its letter to the Court. Convolve's motion for sanctions is without merit and should be denied.

Compaq requests a telephone conference with the Court at your convenience to further discuss this issue. I am currently in New York on trial before Judge Pauley. We are not sitting on Friday. I can be reached in my New York office at 212.596,9138, or by e-mail. Trial will resume on Monday and will probably conclude on Tuesday, March 15. Mr. Morris will be available for a conference with the Court in my absence on Monday or Tuesday. His direct dial number is 212.596.9040.

Respectfully submitted,

Robert J. Goldman
Attorney for defendant
Compaq Computer Corporation

RJG:bc

cc:    Stephen J. Akerley, Esq.
       Debra Brown Steinberg

RE: Waiver Discovery         Page 1 of 2

---

## Steinberg, Debra

**From:** Hough, Duane-David [Duane-David.Hough@ropesgray.com]

**Sent:** Thursday, September 21, 2006 6:13 PM

**To:** Steinberg, Debra

**Cc:** lkoh@mwe.com; sakerley@mwe.com; Al Jacobs, jr; McNamee, Kevin; tmcmahon@mwe.com; Fini, Tom M.; Goldman, Robert J.; Morris, Robert W.; Chun, David S.; Cherry, Kevin W.

**Subject:** RE: Waiver Discovery

Sorry Debra. It should say does "not" unduly interfere with the parties preparation of expert reports. Thanks.

---

**From:** Hough, Duane-David

**Sent:** Thursday, September 21, 2006 6:08 PM

**To:** 'Debra Steinberg'

**Cc:** 'lkoh@mwe.com'; sakerley@mwe.com; Al Jacobs, jr; McNamee, Kevin; tmcmahon@mwe.com; Fini, Tom M.; Goldman, Robert J.; Morris, Robert W.; Chun, David S.; Cherry, Kevin W.

**Subject:** Waiver Discovery

Dear Debra:

I hope all is well with you.

Thank you for your note about waiver discovery in light of Judge Daniels' denial of Seagate's motion for an emergency stay of discovery.

As far as the scope of discovery, I believe Magistrate Judge Francis' May 28, 2004 Order sets forth the scope of permissible discovery. Compaq will, of course, comply with any obligations it has under that order.

With respect to timing, as you know, on August 1, 2006, Magistrate Judge Francis ordered that Compaq's obligation to provide discovery "shall be triggered at the same time as Seagate's." We understand that Seagate will file shortly a petition for mandamus in the Federal Circuit and will ask the Court to stay discovery until that petition can be resolved.

If Seagate's obligation to provide discovery is triggered by a denial of its request for a stay, Compaq is prepared to produce documents promptly.

With respect to interrogatories within the scope of the waiver, Compaq's response to those interrogatories was that it would produce responsive documents. Therefore, we do not believe amended responses to written discovery will be necessary. If for any reason you believe that this is not correct, please let us know.

I am advised that document collection and review is almost complete, but not quite. We may have additional documents in the next week or two, but I understand that you should have everything in hand comfortably before you begin depositions.

### EXHIBIT C

09/26/2006 16.34 FAX          CADWALADER                              5/2

RE: Waiver Discovery                                        Page 2 of 2

With respect to depositions, we are prepared to work with you to establish a
reasonable schedule that does unduly interfere with the parties preparation of
expert reports. I understand that you and Robert Morris corresponded in early
2005 about whom Convolve would want to depose on the Compaq side. If you would
send us your current thinking in this regard, we will start thinking about a
schedule that makes sense to everyone.


Please call me if you want to discuss any of this further.

Best regards.

9/25/2006

## Steinberg, Debra

| | |
|---|---|
| From: | lkoh@mwe.com |
| Sent: | Thursday, September 21, 2006 4:30 PM |
| To: | Steinberg, Debra |
| Cc: | duane-david.hough@ropesgray.com; Al Jacobs, jr; McNamee, Kevin; robert.goldman@ropesgray.com; robert.morris@ropesgray.com; sakerley@mwe.com; tmcmahon@mwe.com; Fini, Tom M. |
| Subject: | RE: Convolve -- Judge Daniels' 9/14/06 Order |

Dear Counsel:

Seagate will file a petition for writ of mandamus and motion for emergency stay with the Federal Circuit next week. Pending the Federal Circuit's review, Seagate will not produce the discovery requested below. As the Federal Circuit has indicated, disclosure of privileged information may vitiate the right to mandamus relief. See In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1298 (Fed. Cir. May 1, 2006) (petitioner retained the right to seek mandamus relief with respect to portions of discovery orders compelling disclosure of privileged information with which petitioner had not complied), reh'g and reh'g en banc denied, 2006 U.S. App. LEXIS 17511 (Fed. Cir. July 5, 2006). Moreover, the harm from wrongful exposure of privileged information is irreparable. See In re Regents of the Univ. of Cal., 101 F.3d 1386, 1387 (Fed. Cir. 1996) ("an appeal after disclosure of the privileged communication is an inadequate remedy").


|  |  |
|---|---|
| "Steinberg, Debra" <Debra.Steinberg@ cwt.com> | To |
| | sakerley@mwe.com, lkoh@mwe.com, robert.morris@ropesgray.com, |
| 09/18/2006 02:30 PM | duane-david.hough@ropesgray.com, robert.goldman@ropesgray.com, tmcmahon@mwe.com |
| | cc |
| | "Al Jacobs, jr" <jacobsa@gtlaw.com>, "Fini, Tom M." <Tom.Fini@cwt.com>, "McNamee, Kevin" <Kevin.McNamee@cwt.com> |
| | Subject |
| | RE: Convolve -- Judge Daniels' 9/14/06 Order |

1

     By Order dated September 14, 2006, Judge Daniels denied
"defendants' motion for an emergency Stay of [the] Court's Orders of
7/11/06 and Magistrate Judge Francis' Orders of 5/28/04 and 9/8/04. . . ."
Accordingly, defendants and their counsel must comply forthwith with those
Orders and with the EchoStar decision by producing all previously
identified documents, interrogatory responses, responses to requests for
admission, and witnesses, and any follow-on discovery that may be
identified in this process. Compaq's production of all responsive
documents and written discovery shall be completed, as Compaq represented
to the Court, within five (5) business days. Seagate's production of all
responsive documents and written discovery shall be completed on or before
September 29, 2006. Deposition discovery relating to both defendants shall
begin on November 11, 2006, and shall continue on an expedited basis until
completion. If you are unwilling to consent to this schedule, we will
submit it to the Court with a request that it be included in an order.


Debra Brown Steinberg
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Tel.: 212.504.6598
Fax: 212.504.6666


"EMF <CWT.COM>" made the following annotations.
------------------------------------------------------------------------------------


-------------------------- IRS Circular 230 Legend: Any advice
contained herein was not intended or written to be used, and cannot be
used, for the purpose of avoiding U.S. federal, state, or local tax
penalties. Unless otherwise specifically indicated above, you should assume
that any statement in this email relating to any U.S. federal, state, or
local tax matter was written in connection with the promotion or marketing
by other parties of the transaction(s) or matter(s) addressed in this
email. Each taxpayer should seek advice based on the taxpayer's particular
circumstances from an independent tax advisor. ======================= NOTE:
The information in this email is confidential and may be legally
privileged. If you are not the intended recipient, you must not read, use
or disseminate the information; please advise the sender immediately by
reply email and delete this message and any attachments without retaining a
copy. Although this email and any attachments are believed to be free of

2

2006 16:34 FAX                              CADWALADER                                              019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CONVOLVE, INC. and MASSACHUSETTS          :
INSTITUTE OF TECHNOLOGY,                  :
                                          :
                        Plaintiffs,       :
                                          :      Case No. 00 CIV 5141
            -against-                     :      (GBD) (JCF)
                                          :
COMPAQ COMPUTER CORP. and SEAGATE         :
TECHNOLOGY LLC,                           :
                                          :
                        Defendants.       :
------------------------------------------------------------x

## [PROPOSED] ORDER

WHEREAS, the Court has entered Orders on May 28, 2004, September 8, 2004,

and July 11, 2006 (the "Orders") compelling discovery from defendants Compaq Computer

Corporation and Seagate Technology LLC, and their counsel, relating to defendants' assertion of

an advice-of-counsel defense to willful patent infringement; and

WHEREAS, the Court has denied defendants' motions to stay compliance with

the Orders;

IT IS THEREFORE ORDERED, that defendants and their counsel, including

their in-house and trial counsel, shall comply with the Orders in accordance with the following

Schedule:

1. Defendants and their counsel, including their in-house and trial counsel, shall

produce, within five (5) business days, all previously demanded documents, answers to

previously served interrogatories, and responses to previously served requests for admission on

the subjects identified in the Orders. Defendants shall also serve, on that date, a log of any

documents withheld from production, identifying those documents with specificity, including

## EXHIBIT D

USActive 5595580.1

their author(s), recipient(s), date, and subject matter, and a statement of the basis on which the documents have been withheld.

2. Defendants and their counsel, including their in-house and trial counsel, shall produce for examination in New York all witnesses previously identified by plaintiffs. Deposition discovery shall begin on November 11, 2006, and it shall continue on an expedited basis until completion.

3. Nothing herein shall preclude plaintiffs from pursuing follow-up document discovery, written discovery, or depositions based upon information obtained in the course of the investigation undertaken pursuant to Paragraph Nos. 1 and 2 above.

Dated:    New York, New York
          September ___, 2006

                              SO ORDERED:

                              _____
                              Hon. James C. Francis IV
                              United States Magistrate Judge

# EXHIBIT K

LEXSEE

**AMPEX CORPORATION, Plaintiff, v. EASTMAN KODAK COMPANY, ALTEK CORPORATION, and CHINON INDUSTRIES, INC., Defendants.**

Civil Action No. 04-1373-KAJ

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2006 U.S. Dist. LEXIS 48702**

**July 17, 2006, Decided**

**CORE TERMS:** attorney-client, infringement, non-infringement, advice, written opinion, digital, patent, subject matter, electronic, advice-of-counsel, discovery, cameras, outside counsel, in-house, patent case, willfulness, licensing, confirmed, asserting, wholesale, consumer, withheld, selling, waive, log, briefing, logical, shield, inside, sword

**COUNSEL:** [*1]  For Ampex Corporation a Delaware corporation, Plaintiff: Jack B. Blumenfeld, Julia Heaney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; David R. Brightman, Gabrielle E. Higgins, James E. Hopenfeld, Karen A. Christiansen, Kelly L. Baxter, Norman H. Beamer, Ray R. Zado, Pro Hac Vice.

For Eastman Kodak Company a New Jersey corporation, Defendant: Collins J. Seitz, Jr., Jaclyn Michele Mason, Connolly, Bove, Lodge & Hutz, Wilmington, DE; Michael J. Summersgill, Pro Hac Vice.

For Chinon Industries Inc. a Japanese corporation, Altek Corporation a Taiwanese corporation, Defendants: Collins J. Seitz, Jr., Jaclyn Michele Mason, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

For Altek Corporation a Taiwanese corporation, Eastman Kodak Company a New jersey corporation, Chinon Industries Inc. a Japanese corporation, Counter Claimants: Jaclyn Michele Mason, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM ORDER**

**Introduction**

This is a patent case, presently set for trial on December 4, 2006. (Docket Item ["D.I."] 53 at P17.) The plaintiff, Ampex Corporation ("Ampex"), has filed [*2] a letter motion (D.I. 268; the "Motion") seeking to compel the defendants, Eastman Kodak Company, Altek Corporation, and Chinon Industries, Inc. (collectively "Kodak"), to disclose "all information communicated to ... [Kodak], or reflecting communications to ... [Kodak], on the same subject matter as their September 2, 2005 opinion of counsel;" and it further seeks an order requiring Kodak to "provide a log of all materials withheld on privilege or work-product grounds dated on or before April 11, 2006, the expiration date of the '121 patent in suit." (Id. at 1; D.I. 275 at 1.) In short, Ampex wants all of the attorney-client communications between Kodak and its trial counsel bearing on the subject of infringement, and it wants a log of all withheld materials relating to that subject. At the outset of the claim construction and summary judgment argument on July 13, 2006, I denied the Motion in a bench ruling. This memorandum order further memorializes the bases for that ruling.

**Background** n1

n1 The parties appear to be essentially in agreement on the background facts provided here, which are drawn primarily from the statements of fact provided in their letter submissions and briefing.

[*3]

On April 11, 1989, U.S. Patent No. 4,821,121 (the "'121 patent") issued and was assigned to Ampex. (D.I. 38 at Ex. 1.) It is entitled "Electronic Still Store with High Speed Sorting and Method of Operation." (Id.) The claimed invention "relates to a digital electronic still store for broadcast television signals and more particu-

larly to a still store providing a high speed multiimage [sic] scan or sort capability." (*Id.* at col. 1, ll. 11-14.) In 2001, twelve years after the patent issued, and five years after Kodak began selling digital cameras in the consumer electronics market, Ampex wrote to Kodak and invited Kodak to discuss (or, according to one's perspective, demanded that Kodak discuss) licensing the '121 patent. n2 (D.I. 275 at 3; D.I. 312 at 3.)

> N2 Kodak notes that, while it entered the consumer market for digital cameras in 1996, it had been selling digital cameras to photography professionals since 1991. (D.I. 312 at 3.) Ampex contends that Kodak was aware of the patent since at least 1992, when an in-house counsel at Kodak came across the patent and flagged it for further study. (*See* D.I. 275 at 3.)

[*4]

Kodak exchanged letters with Ampex about the '121 patent in 2001 and again in 2004. (DI. 275 at 3; D.I. 312 at 3-4.) After the first exchange, Kodak's in-house counsel undertook an analysis and, according to Kodak, concluded that Kodak did not infringe the '121 patent. (D.I. 312 at 3.) Neither the 2001 nor the 2004 exchange of letters led to licensing discussions. (*Id.*)

In August 2004, Kodak retained the law firm of Roylance, Abrams, Berdo and Goodman LLP ("Roylance") to provide an opinion on whether Kodak's products infringed the '121 patent. (D.I. 275 at 3; D.I. 312 at 4.) On October 21, 2004, Ampex filed an action against Kodak in the International Trade Commission ("ITC"), asserting infringement of the '121 patent. (D.I. 312 at 4.) On that same day, Ampex filed its complaint in this court (D.I. 1), but its suit here was stayed pending resolution of the ITC action. (D.I. 29.) A few weeks later, in November, Roylance provided to Kodak an oral opinion of non-infringement, which was later confirmed in a final written opinion to the same effect in September of 2005. (D.I. 312 at 4; *see also* D.I. 275 at 3-4.) In the meanwhile, on July 29, 2005, Ampex moved to withdraw its ITC [*5] complaint, which was then dismissed on August 23, 2005. (D.I. 312 at 4-5.) Consequently, the stay in this case was lifted. (*See* D.I. 33.)

**Standard of Review**

A district court's determination as to the scope of the waiver of the attorney-client privilege is reviewed under an abuse-of-discretion standard. *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006) (citing *In re Pioneer*, 238 F.3d at 1373 n. 2 ("[I]t appears that virtually all the circuits review the decision of a dis-

trict court [regarding waiver of privilege] underlying a petition for writ of mandamus for abuse of discretion.")).

**Discussion**

Relying on the Federal Circuit's recent opinion in *In re EchoStar, supra*, 448 F.3d 1294, Ampex argues that an advice-of-counsel defense in a patent case effects a wholesale waiver of privilege as to any communication that any attorney has with a client, so long as the communication touches on the same topic as the opinion on which the client relies to defend against a charge of willfulness. (*See* D.I. 268 at 2-3.) According to Ampex, it matters not when or in what context the subsequent [*6] communication occurs. Citing *Akeva L.L.C. v. Mizuno Corp.*, 243 F. Supp.2d 418 (M.D. N.C. 2003), a case also cited by the Federal Circuit in its *Echostar* opinion, Ampex contends that there is no temporal limitation on the waiver of privilege, if infringing activity continues, nor is there any distinction between advice received from trial counsel and that received from opinion counsel. Ampex asserts that the *Echostar* opinion, in conjunction with *Akeva*, makes everything fair game for discovery, including communications between trial counsel and client during trial. (*See id.*; 5/11/06 Tr. at 9-12.) n3

> n3 Citations to "5/11/06 Tr. at ___" are to pages of the transcript of the May 11, 2006 teleconference in this matter. In subsequent briefing, Ampex backed off its we-get-every-communication argument to a degree, saying that *Echostar's* "core holding" is that discovery should not be permitted as a sword and a shield and that that principle is sufficient to require disclosure of trial counsel's communication in this case. (*See* D.I. 275 at 2.) Nevertheless, the logic of Ampex's position remains the same, whether or not Ampex chooses to go all the way to the logical limit, as the following exchange demonstrates:

> > The Court: -- is the short answer to my question, yes, that ... your reading of *Echostar* is that the Federal Circuit has now stated that the patentee is entitled to go after discovery all the way through trial. Any time trial counsel is talking to their client about infringement, they're entitled to know about it. [Counsel for Ampex]: That is what the Federal Circuit has stated, but we don't have to address that issue in this case.

> (*See* 5/11/06 Tr. at 11-12.)

[*7]

I am compelled to reject Ampex's reading of *Echostar* as far too broad and its motion as an extravagant demand at odds with the generally understood contours of the attorney-client privilege.

To begin with, *Echostar* is, as I read it, an opinion aimed primarily at clarifying the scope of waiver of work product protection in the context of patent infringement cases involving an advice-of-counsel defense. The opinion gives clear and helpful direction on that difficult subject. It has less to say about the attorney-client privilege because that apparently was not the primary issue before the court. Perhaps that is why the court addressed the attorney-client privilege issue in relatively broad language, reasserting general principles. *Cf. Ind. Mills & Mfg., Inc. v. Dorel Indus., Inc.*, 2006 U.S. Dist. LEXIS 34023, No. 04CV001102-LJM-WTL, 2006 WL 1749413, *7, n.2 (S.D. Ind. May 26, 2006)* (noting that "the *Echostar* court paints with a broad brush" when discussing the attorney-client privilege). For example, *Echostar* states that the attorney-client privilege cannot be used as a sword and a shield. *448 F.3d at 1301.* That is a fundamental and well-understood rule, since, [*8] "selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice." *Id.* It is in the context of that general observation that the *Echostar* court made the comment so heavily relied on by Ampex here: "To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id.*

Ampex seems to ignore both the context of that remark and its exact language. As to the language chosen, the *Echostar* court's use of the word "such" to modify the phrase "communications regarding the same subject matter" indicates that the court intended a far more limited meaning for its statement than Ampex wishes to give it. The use of "such" leads one back to earlier language in that portion of the opinion, in which the court is emphasizing the unfairness of allowing a party to hold back an attorney's opinion that is inconsistent with a different opinion it chooses to show the world. *See id.* The modifier "such" [*9] thus strongly implies that the type of communications being discussed are opinions expressed in a manner comparable to the opinion that is disclosed, as was apparently the case in *Echostar* itself.

The context includes not only the sentences surrounding the one Ampex fixes on, but also includes the factual background in *Echostar*. The defendant in that case wanted to rely on its inside counsel's opinion on infringement, while cloaking with privilege an outside opinion it had obtained on the same subject. It is hardly surprising that the court, given those facts, would call that maneuver a foul. The court was knocking down the defendant's artificial and unpersuasive distinction between inside and outside counsel. Nothing in that context, however, indicates a desire by the Court of Appeals to have every communication a client has with its trial counsel on the very subject of an infringement trial open to review by opposing counsel.

This is not elevating form over substance, as Ampex implies. (D.I. 275 at 8-9.) It is not the form of the communication that matters, it is the content. If one received advice of non-infringement and also received an opinion on that same topic from [*10] another attorney, it would not matter on the question of waiver how the communication was labeled. But, if all attorney-client discussions touching on the same subject were to be viewed as "advice" or "opinions" on a par with the legal opinions that were at issue in *Echostar*, the court's comments would have to be understood as demolishing the practical significance of the attorney-client privilege, a result obviously at odds with other comments in *Echostar, see 448 F.3d at 1300-01* ("We recognize the privilege in order to promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law."), and with other emphatic pronouncements of the Federal Circuit regarding the privilege, *see Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1344 (Fed. Cir. 2004)* ("There should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney."). It will take more than [*11] the inference Ampex wants to draw from *Echostar* to persuade me that the Federal Circuit intends a wholesale revision of the historical understanding of the attorney-client privilege.

*Echostar* did not even address the issue of communications with trial counsel. To try to stretch the opinion to cover its position here, Ampex notes that *Echostar* cites the *Akeva* case, which did deal with trial counsel communications. (D.I. 275 at 5.) What Ampex ignores is that *Akeva* dealt with circumstances in which the defendant expressly relied on its trial counsel's non-infringement opinion to continue operating, while awaiting a separate opinion from another source. *Akeva, 243 F. Supp.2d at 419-20.* That is not akin to the facts in this case. n4

2006 U.S. Dist. LEXIS 48702, *

n4 I emphasize that the present case does not involve a party choosing to use an attorney as both opinion counsel and trial counsel. That choice involves an unfortunate blending of roles that is, thankfully, rare and beyond the discussion provided here.

[*12]

Finally, Ampex tries to justify its extraordinary waiver argument by saying that Kodak waited to obtain an opinion until after litigation had begun. That argument appears to rest on an erroneous factual assertion and, in any event, it assumes that trial counsel was providing non-infringement opinions in the interim. In the particular history of this case, Kodak asserts that it had a non-infringement opinion from its in-house counsel three years before any litigation commenced. (D.I. 312 at 3.) Before litigation began, Kodak sought from outside counsel an opinion regarding infringement. (*Id.* at 4; D.I. 275 at 3-4.) That opinion was provided orally shortly after suit was filed. (D.I. 312 at 4.) Ampex chose to proceed first in the ITC, where neither damages nor willfulness were at issue, so Kodak chose not to press for a written opinion (*see id.*) -- a logical choice, since the purpose of the advice-of-counsel defense in infringement litigation is typically to avoid enhanced damages. I thus fail to see anything nefarious in Kodak getting its written opinion from outside counsel only after Ampex abandoned its ITC case and reinitiated its claims, including damages claims, in this [*13] court. Under these facts, Ampex has failed to demonstrate that Kodak's obtaining a further written opinion from its opinion counsel is somehow a cover for non-infringement advice it was actually getting from its trial counsel.

**Conclusion**

For the foregoing reasons, it is hereby ORDERED that the bench ruling of July 13, 2006 is confirmed and the Motion (D.I. 268) is DENIED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

July 17, 2006
Wilmington, Delaware

## CERTIFICATE OF SERVICE

I, Robin A. Adkins, declare pursuant to Federal Rule of Appellate Procedure

21(a)(1), I hereby certify that on September 29, 2006, two copies of the foregoing

Petition for Writ of Mandamus were served by electronic mail and Federal Express

upon the following counsel for respondents:

Debra Brown Steinberg, Esq.
Cadwalader, Wickersham & Taft
One World Financial Center
New York, NY 10281
Telephone: 212.504.6000
Facsimile: 212.504.6666

Adam B. Landa
Albert L. Jacobs, Jr.
Greenberg Traurig LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: 212.801.9200
Facsimile: 212.801.6400

Robert W. Morris, Esq.
Ropes & Gray LLP
1251 Avenue of the Americas
New York, New York 10020
Telephone: 212.596.9000
Facsimile: 212.596.9090

Also, pursuant to Federal Rule of Appellate Procedure 21(a)(1), I hereby

certify that one copy of the foregoing Petition for Writ of Mandamus was provided

to the trial-court judge by filing a copy of the same with the court clerk for the U.S.

District Court for the Southern District of New York.

Robin A. Adkins

WDC99 1290922-1 060936 0011